# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRIETTA KLEIN, derivatively, on behalf of PFIZER INC., | C.A. No. 09-cv-7822-JSR |
| Plaintiff, | ECF CASE |
| v. | |
| DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT; W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON; STEPHEN W. SANGER; WILLIAM C. STEERE, JR., FREDA C. LEWIS-HALL, FRANK A. D'AMELIO, and IAN READ, | |
| Defendants, | |
| and | |
| PFIZER INC., | |
| Nominal Defendant. | |

[caption continues on the following page]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF AMALGAMATED BANK, AS TRUSTEE FOR LONGVIEW LARGECAP 500 INDEX VEBA FUND, LONGVIEW LARGECAP 500 INDEX FUND AND LONGVIEW QUANTITATIVE LARGECAP FUND, FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL AND CONSOLIDATION OF RELATED ACTIONS**

| | |
|---|---|
| JAMES KENNEY, derivatively, on behalf of PFIZER INC., | **C.A. No. 09-cv-7913-JSR** |
| Plaintiff, | **ECF CASE** |
| v. | |
| JEFFREY B. KINDLER, DOUGLAS M. LANKLER, DENNIS A. AUSIELLO, MICHAEL S. BROWN, ROBERT N. BURT, W. DON CORNWELL, CONSTANCE J. HORNER, JAMES M. KILTS, DANA G. MEAD; SUZANNE NORA JOHNSON, HENRY A. MCKINNELL, DAVID L. SHEDLARZ, WILLIAM R. HOWELL, STANLEY O. IKENBERRY, FRANKLIN D. RAINES, RUTH J. SIMMONS, and JEAN PAUL VALLES, | |
| Defendants, | |
| and | |
| PFIZER INC., a Delaware corporation, | |
| Nominal Defendant. | |

| | |
|---|---|
| ROBERT J. CASEY and WILLIAM A. HOUSTON, derivatively, on behalf of PFIZER INC., | **C.A. No. 09-cv-7983-JSR** |
| Plaintiffs, | **ECF CASE** |
| v. | |
| DENNIS A. AUSIELLO,  MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT, W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON, STEPHEN W. SANGER, WILLIAM C. STEERE, JR., FREDA C. LEWIS-HALL, FRANK A. D'AMELIO and IAN C. READ, | |
| Defendants, | |
| and | |
| PFIZER INC., a Delaware corporation, | |
| Nominal Defendant. | |

LOUISIANA SHERIFFS' PENSION AND RELIEF FUND, derivatively, on behalf of PFIZER INC.,

        Plaintiff,

v.

DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT, W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON, WILLIAM C. STEERE, JR.,  DOUGLAS M. LANKLER, FRANK. A. D'AMELIO, IAN C. READ, and JOSEPH M. FECZKO,

        Defendants,

and

PFIZER INC.,

        Nominal Defendant.

**C.A. No. 09-cv-8042-JSR**

**ECF CASE**

CATHY BUCH,

                    Plaintiff,

v.

DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT, W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON,  STEPHEN W. SANGER, WILLIAM C. STEERE,  JR., DOUGLAS M. LANKLER, FRANK A. D'AMELIO, IAN C. READ, JOSEPH M. FECZKO, HENRY A. MCKINNELL, DAVID L. SHEDLARZ, WILLIAM R. HOWELLSTANLEY O. IKENBERRY, FRANKLIN D. RAINES, RUTH J. SIMMONS, JEAN-PAUL VALLES, FREDA C. LEWIS-HALL, and PFIZER INC.,

                  Defendants.

**C.A. No. 09-cv-8289-JSR**

**ECF CASE**

AMALGAMATED BANK, AS TRUSTEE FOR
LONGVIEW LARGECAP 500 INDEX VEBA
FUND, LONGVIEW LARGECAP 500 INDEX
FUND and LONGVIEW QUANTITATIVE
LARGECAP FUND, derivatively, on behalf of
PFIZER INC.,

                    Plaintiff,

v.

DENNIS A. AUSIELLO, MICHAEL S. BROWN, M.
ANTHONY BURNS, ROBERT N. BURT, W. DON
CORNWELL, WILLIAM H. GRAY III, CONSTANCE
J. HORNER, JAMES M. KILTS, JEFFREY B.
KINDLER, GEORGE A. LORCH, DANA G. MEAD,
SUZANNE NORA JOHNSON,  WILLIAM C.
STEERE,  JR., WILLIAM R. HOWELL, HENRY A.
MCKINNELL, STANLEY O. IKENBERRY, RUTH J.
SIMMONS, DOUGLAS M. LANKLER, FRANK. A.
D'AMELIO,  IAN C. READ, and JOSEPH M.
FECZKO,

                    Defendants,

and

PFIZER INC.,

                    Nominal Defendant.

**C.A. No. 09-cv-8363-JSR**

**ECF CASE**

THE PORT AUTHORITY OF ALLEGHENY
COUNTY RETIREMENT AND DISABILITY
ALLOWANCE PLAN FOR EMPLOYEES
REPRESENTED BY LOCAL 85 OF
AMALGAMTED TRANSIT UNION,

                   Plaintiff,

v.

DENNIS A. AUSIELLO, MICHAEL S. BROWN, M.
ANTHONY BURNS, ROBERT N. BURT, W. DON
CORNWELL, WILLIAM H. GRAY III, CONSTANCE
J. HORNER, JAMES M. KILTS, JEFFREY B.
KINDLER, GEORGE A. LORCH, DANA G. MEAD,
SUZANNE NORA JOHNSON,  STEPHEN W.
SANGER, WILLIAM C. STEERE,  JR., DOUGLAS
M. LANKLER, FRANK A. D'AMELIO,  IAN C.
READ, JOSEPH M. FECZKO, HENRY A.
MCKINNELL, DAVID L. SHEDLARZ, WILLIAM R.
HOWELL, STANLEY O. IKENBERRY, FRANKLIN
D. RAINES, RUTH J. SIMMONS, JEAN-PAUL
VALLES, FREDA C. LEWIS-HALL and PFIZER
INC.,

                   Defendants.

**C.A. No. 09-cv-8388-JSR**

**ECF CASE**

SKANDIA LIFE INSURANCE COMPANY LTD.,

            Plaintiff,

v.

JEFFREY B. KINDLER, DENNIS A. AUSIELLO,
MICHAEL S. BROWN, M. ANTHONY BURNS,
ROBERT N. BURT, W. DON CORNWELL,
WILLIAM H. GRAY III, CONSTANCE J. HORNER,
WILLIAM R. HOWELL, STANLEY O. IKENBERRY,
SUZANNE NORA JOHNSON, JAMES M. KILTS,
GEORGE A. LORCH, HENRY A. MCKINNELL,
DANA G. MEAD, FRANKLIN D. RAINES, DAVID L.
SHEDLARZ, RUTH J. SIMMONS, WILLIAM C.
STEERE, JR., JEAN-PAUL VALLES, FRANK A.
D'AMELIO,  JOSEPH M. FECZKO, DOUGLAS M.
LANKLER, and IAN C. READ,

            Defendants,

    and

PFIZER INC.,

            Nominal Defendant.

**C.A. No. 09-cv-8544-UA**

**ECF CASE**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

ARGUMENT ................................................................................................................. 7

I.  Amalgamated And Its Chosen Counsel Are Best Suited And Qualified To Lead The
    Pfizer Derivative Actions ...................................................................................... 7

    A.  Amalgamated Is A Sophisticated Institutional Investor With A Substantial
        Financial Interest In Pfizer And The Experience To Effectively Prosecute The
        Action ........................................................................................................... 9

    B.  Amalgamated Filed A Detailed And Comprehensive Complaint ......................... 11

    C.  Amalgamated's Chosen Counsel Has The Experience And Resources To
        Effectively Prosecute This Action ....................................................................... 12

II. Consolidation Is Appropriate ................................................................................... 15

CONCLUSION ............................................................................................................. 17

## Table of Authorities

**Page(s)**

CASES

*Dollens v. Zionts,*
    No. 01 Civ. 5931, 2001 WL 1543524, at *5 (N.D. Ill. Dec. 4, 2001) .......................................8

*Hirt v. U.S. Timberlands Servs. Co. LLC,*
    No. Civ. A. 19575, 2002 WL 1558342, at *2 (Del. Ch. July 3, 2002) ....................................11

*In re Bank of America Corp. Sec., Deriv. and ERISA Litig.,*
    258 F.R.D. 260, 267 (S.D.N.Y. 2009) ...................................................................................16

    258 F.R.D. at 271 ..................................................................................................................8

    258 F.R.D. at 272 ..........................................................................................................8, 9, 10

*In re Comverse Tech., Inc. Deriv. Litig.,*
    06 Civ. 1849(NGG)(RER), 2006 WL 3761986, at *1 (E.D.N.Y. Sept. 22, 2006) ...................7

    2006 WL 3761986, at *2 .........................................................................................................9

    2006 WL 3761986, at *3 .........................................................................................................9

    2006 WL 3761986, at *4 .......................................................................................................12

*In re Conseco, Inc. Sec. Litig.,*
    120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) .......................................................................8, 11

*In re Cox Commc'ns, Inc. S'holders Litig.,*
    879 A.2d 604, 609 (Del. Ch. 2005)......................................................................................11

*In re Doral Fin. Corp. Sec. Litig.,*
    No 05 MDL 1706 (RO), 2006 WL 1120491, at *1 (S.D.N.Y. April 27, 2006) ......................7

*In re JPMorgan Chase & Co. S'holder Deriv. Litig.,*
    No. 08-cv-974(DLC), 2008 WL 4298588, at *10 (S.D.N.Y. Sept. 19, 2008).........................8

*In re OCA, Inc. Sec. & Derivative Litig.,*
    No. 05-2165, slip op. at 37 (E.D. La. Nov. 18, 2005)........................................................8, 11

    No. 05-2165, slip op. at 44....................................................................................................11

*In re WorldCom, Inc. Sec. Litig.,*
    No. 02 CIV 3288 (DLC), 2004 WL 2591402, at *18 (S.D.N.Y. Nov. 12, 2004)...................14

    2004 WL 2591402, at *21 .....................................................................................................14

*MacAlister v. Guterma*,
    263 F.2d 65, 69 (2d Cir. 1958).................................................................16

*McCall v. Scott*,
    239 F.3d 808 (6th Cir. 2001) ....................................................................14

*Rich v. Reisini*,
    266 N.Y.S.2d 492, 494 (N.Y. App. Div. 1966) .......................................11

*Skwortz v. Crayfish Co., Ltd.*,
    No. 00 Civ. 6766 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) ....................16

*TCW Tech. Ltd. P'ship v. Intermedia Comm'ns, Inc.*,
    No. 18336-CC, 2000 WL 1654504, at *3- 4 (Del. Ch. Oct. 17, 2000)....................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. 23.1 .............................................................................................8

Fed. R. Civ. P. 42(a) ..........................................................................................16

Plaintiff Amalgamated Bank, as trustee for LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund, and LongView Quantitative Largecap Fund ("Amalgamated"), respectfully submits this memorandum of law in support of its motion for entry of an Order consolidating the above-captioned actions, appointing Amalgamated as lead plaintiff and its counsel Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead counsel.

## INTRODUCTION

This landmark derivative case seeks to hold members of senior management and the Board of Directors ("Board") at Pfizer Inc. ("Pfizer" or the "Company") accountable for their role in subjecting Pfizer to the largest criminal fine in United States history, and the largest civil pharmaceutical fraud settlement ever. Pfizer's criminal marketing campaign spanned almost eight years, involved the illegal promotion of at least 13 of Pfizer's most important drugs through off-label marketing and kickbacks to doctors, and was carried out by employees throughout the organization. This years-long scheme was only made possible through the approval, or at the very least a conscious disregard, of this pervasive wrongdoing by senior management and the Board. Due to multiple prior rounds of fines and oversight agreements imposed on the Company, the Pfizer Board was advised semi-annually regarding Pfizer's compliance (and non-compliance) with relevant health care laws, knew it had a duty to put a stop to this illegal conduct, yet chose to let it continue.

In the days following the announcement of Pfizer's historic $2.3 billion settlement with the United States Department of Justice on September 2, 2009, a number of plaintiffs filed derivative actions on behalf of Pfizer seeking to hold certain members of Pfizer's senior management and Board of Directors accountable for the harm they had brought upon the

Company.

Recognizing the significance of this matter and the importance of having an experienced, sophisticated institution take the lead in enforcing the Company's rights against those ultimately responsible for carrying out the years-long scheme, Amalgamated, after deliberate and careful consideration by members of its Trust Committee, filed a detailed complaint on October 2, 2009 setting forth the bases for the Company's claims against these defendants.

Amalgamated respectfully submits that these related actions—which all arise out of the same off-label and illegal marketing scheme at Pfizer—should be consolidated, and that Amalgamated be appointed as lead derivative plaintiff and its counsel appointed as lead derivative counsel because they are best qualified to represent the interests of the Company in this litigation.

*First,* as a sophisticated institutional investor, Amalgamated has the experience and wherewithal to prosecute this action in the best interests of Pfizer and its shareholders. Amalgamated has a substantial financial interest in the Company—with holdings of 2,334,656 Pfizer shares, representing a nearly $40 million stake in the Company—and thus a substantial interest in prosecuting this case effectively. Further, Amalgamated has a proven ability to protect shareholder interests as demonstrated in its past success prosecuting claims in derivative and other shareholder litigation.

*Second*, Amalgamated and its counsel have demonstrated their ability to best protect the interests of Pfizer and its stockholders in this action by filing a comprehensive, detailed complaint that best articulates shareholders' claims. Notably, Amalgamated's complaint provides considerable detail regarding the Defendants' awareness of red flags of rampant lawbreaking at Pfizer—including Chief Compliance Officer reports required under Corporate

Integrity Agreements dating back to 2002, various FDA warning letters, and prior criminal and civil fines for illegal marketing—and the extensive harm to Pfizer shareholders through the $2.3 billion settlement and related products liability, *qui tam*, and consumer suits.

*Third*, Amalgamated's chosen counsel, Bernstein Litowitz, is well qualified to represent the interests of the Company and its shareholders in this action and has successfully prosecuted numerous derivative actions in this District and throughout the United States, including the historic UnitedHealth Group, Inc. derivative action, which represents the largest individual, derivative, and stock options backdating settlement in history.

For these reasons, and those more fully discussed below, Amalgamated respectfully requests that the Court consolidate the related actions and appoint it and Amalgamated's chosen counsel as those best qualified to serve as lead plaintiffs and lead counsel in this action.

## STATEMENT OF FACTS

On September 2, 2009, the U.S. Department of Justice announced that Pfizer agreed to pay $2.3 billion as part of a settlement to resolve civil and criminal charges that Pfizer illegally marketed its drugs for uses and dosages not approved by the FDA and paid kickbacks to doctors to induce them to prescribe Pfizer drugs.  The $2.3 billion settlement consists of a $1.3 billion criminal fine, a $1 billion civil fraud settlement, a felony guilty plea by Pfizer's subsidiary Pharmacia, and Pfizer's express admission of engaging in numerous illegal marketing practices. The scope, breadth and length of Pfizer's illegal conduct—involving at least 13 drugs over the course of almost eight years—demonstrate that the lawbreaking was not the work of a rogue employee, but rather a calculated business strategy that put short-term profit ahead of the needs of patients and the long-term interests of Pfizer and its shareholders.

This is Pfizer's fourth multi-million dollar settlement for illegal marketing and sales practices, and third criminal guilty plea, since 2002.  Under the terms of the earlier settlement

agreements, Pfizer had implemented internal reporting and disclosure programs to encourage employees to inform management of such illegal practices. Numerous employees reported the illegal off-label marketing and doctor kickbacks covered by the $2.3 billion settlement, and those reports were shared with senior management and the Pfizer Board. Rather than correct this ongoing illegal conduct, however, Pfizer's senior management and Board consciously disregarded their fiduciary duties and allowed the Company to retaliate against the very employees who were trying to put a stop to these ongoing illegal business practices. In doing so, Defendants encouraged the widespread lawbreaking to continue, thereby causing tremendous damage to Pfizer and its shareholders and placing the Company at risk of financial ruin. Amalgamated respectfully refers the Court to its verified derivative complaint for a more detailed description of the Defendants' misconduct and the resulting damage.

Several individual shareholders with relatively small Pfizer holdings filed derivative complaints in the days following the September 2, 2009 announcement of the $2.3 billion settlement. The *Klein* complaint was filed on September 10, the *Kenney* complaint was filed on September 15, the *Casey* complaint was filed on September 17, 2009, and the *Buch* complaint was filed on September 30, 2009.[1] Complaints filed by institutional investors followed. Specifically, the *Louisiana Sheriffs* complaint was filed on September 18, 2009, the *Amalgamated* and *Port Authority of Allegheny County* complaints were filed on October 2, 2009, and the *Skandia* complaint was filed on October 7, 2009.[2] In addition, on September 30, 2009,

---

[1] *See Klein v. Ausiello, et al.*, No. 09-cv-7822 (S.D.N.Y. filed Sept. 10, 2009); *Kenney v. Kindler, et al.*, No. 09-cv-7913 (S.D.N.Y. filed Sept. 15, 2009); *Casey, et al. v. Ausiello, et al.*, 09-cv-7893 (S.D.N.Y. filed Sept. 18, 2009); *Buch v. Ausiello, et al.*, 09-cv-8289 (S.D.N.Y. filed Sept. 30, 2009).

[2] *See Louisiana Sheriffs' Pension and Relief Fund v. Ausiello, et al.*, 09-cv-8042 (S.D.N.Y. filed Sept. 18, 2009); *Amalgamated Bank, as trustee for LongView Largecap 500 Index VEBA Fund,*

counsel for the individual plaintiffs in the *Klein* and *Casey* actions filed a motion seeking to consolidate the related actions, to appoint their firms as lead and liaison counsel, and to appoint Henrietta Klein—an individual Pfizer shareholder who owns 100 shares of the Company's stock—as lead plaintiff. That motion was later withdrawn that same day. *See* Notice of Withdrawal, *Klein v. Ausiello*, No. 09-cv-7822 (S.D.N.Y. filed Sept. 30, 2009) (Dkt. #5).

Before filing its complaint, Amalgamated, an institutional investor that manages billions of dollars in assets and holds over 2.3 million Pfizer shares, carefully considered the merits of a potential action against the Defendants and its options to best protect Amalgamated and its fellow shareholders' interests. After internal deliberation, members of Amalgamated's Trust Committee determined that the misconduct at issue in these actions warranted the involvement of a sophisticated and experienced institution that would have the resources and wherewithal to vigorously prosecute this action to ensure the Defendants would be held accountable for their actions. *See* Declaration of Thomas B. O'Donnell, attached hereto as Ex. A to the Declaration of Gerald H. Silk ("Silk Decl."), at ¶5. Moreover, Amalgamated determined that pursuing a role as

---

*LongView Largecap 500 Index Fund and LongView Quantitative Largecap Fund v. Ausiello, et al.*, 09-cv-8363 (S.D.N.Y. filed Oct. 2, 2009); *Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union v. Ausiello, et al.*, 09-cv-8388-JSR (S.D.N.Y. filed Oct. 2, 2009); *Skandia Life Insurance Company Ltd. v. Kindler, et al.*, 09-cv-8544 (S.D.N.Y. filed Oct. 7, 2009). The Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs"), one of the four institutional investors to have filed a complaint in this action, is also represented by Bernstein Litowitz in connection with its derivative claims against Pfizer. Recognizing Amalgamated's competency to prosecute this derivative action vigorously on behalf of Pfizer shareholders as well as Amalgamated's significant financial interest in Pfizer, Louisiana Sheriffs fully supports Amalgamated's application to serve as lead plaintiff in this action. Another institutional investor that has filed a complaint in this matter—the Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union ("Port Authority of Allegheny County")—which is represented by Barrack Rodos & Bacine, also supports Amalgamated's application for lead plaintiff appointment. *See Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union v. Ausiello, et al.*, 09-cv-8388-JSR (S.D.N.Y. filed October 2, 2009).

lead plaintiff in the Pfizer derivative action was consistent with, and presented an opportunity to advance, its goals in promoting corporate accountability and transparency. *See id.* at ¶8. Accordingly, Amalgamated decided to seek a leadership position in this action, and instructed its counsel to file a comprehensive, detailed complaint and this Motion. *See id.*

Specifically, on October 2, 2009, Amalgamated filed a comprehensive 65-page complaint detailing the extent of Pfizer's wrongdoing, the numerous red flags informing Pfizer's Board of this misconduct and the harm the Defendants have caused the Company, including the $2.3 billion settlement, as well as costs and legal expenses associated with dozens of related product liability, State consumer protection, personal injury, and *qui tam* "whistleblower" actions, and the loss of Pfizer's reputation as one of the world's premier pharmaceutical companies to that as one of the worst violators of federal law.[3]

Amalgamated is a sophisticated institutional investor that has a substantial financial interest in ensuring that the Defendants are held accountable. Amalgamated, an FDIC-insured commercial bank established in 1923 by the Amalgamated Clothing Workers of America, is the only union-owned bank in the United States. Amalgamated invests workers' retirement savings and other employee benefits through its LongView Funds, which have approximately $9.3 billion in assets under management. *See* Declaration of Thomas B. O'Donnell, Silk Decl. Ex. A, at ¶¶3-4. Amalgamated owned a substantial number of Pfizer shares at the time of the wrongdoing, and continues to own a large number of Pfizer shares, and therefore has a compelling financial interest in ensuring vigorous prosecution of the action. *See id.* at ¶5. Specifically, Amalgamated owns 2,334,656 shares of Pfizer common stock—a nearly $40

---

[3] *See Amalgamated Bank, as trustee for LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund and LongView Quantitative Largecap Fund v. Ausiello, et al.*, 09-cv-8363 (S.D.N.Y. filed Oct. 2, 2009).

million economic stake in the Company that is substantial by any means, and believed to be greater than any of the other plaintiffs who have filed complaints in this matter. *See id.* at ¶6. In fact, Amalgamated has continuously held Pfizer shares throughout the period of wrongdoing alleged in its complaint, maintaining holdings of at least one million shares at all relevant times. *See id.*

Amalgamated also has extensive experience prosecuting derivative and other complex shareholder litigation on behalf of investors to redress wrongdoing by senior management and boards of directors and, as discussed below, has achieved excellent results in the prior cases in which it has served as lead plaintiff.

## ARGUMENT

### I. Amalgamated And Its Chosen Counsel Are Best Suited And Qualified To Lead The Pfizer Derivative Actions

Although there is no specific statutory framework for the appointment of lead plaintiff and lead counsel in shareholder derivative actions, it is well-settled that the Court should appoint a lead plaintiff and lead counsel to ensure an "appropriate leadership structure to coordinate the litigation and avoid duplication." *In re Doral Fin. Corp. Sec. Litig.*, No 05 MDL 1706 (RO), 2006 WL 1120491, at *1 (S.D.N.Y. April 27, 2006) (*citing MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958)); *see also In re Comverse Tech., Inc. Deriv. Litig.*, 06 Civ. 1849(NGG)(RER), 2006 WL 3761986, at *1 (E.D.N.Y. Sept. 22, 2006) (holding that courts have "the inherent power to provide for the conduct of the proceedings" and can therefore appoint lead counsel in derivative actions) (*citing* Advisory Committee Note to Rule 23.1). Appointment of lead plaintiff and counsel is "helpful in 'clarify[ing] responsibility for protecting the interests of the class . . . such as making and responding to motions, conducting any necessary discovery. . . and moving for class certification.'" *In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*, 258

F.R.D. 260, 271-72 (S.D.N.Y. 2009) (*quoting* Federal Judicial Center, Manual for Complex Litig. § 21.11 (4th ed. 2004)).

Rule 23.1 requires that the lead plaintiff in a derivative action "fairly and adequately represent the interests of shareholders … who are similarly situated in enforcing the right of the corporation." Courts applying the requirements of Rule 23.1 in appointing lead plaintiffs and lead counsel in derivative actions examine several factors.

*First*, courts have looked to the experience and sophistication of the investor seeking to lead a derivative case and have relied on the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") in expressing a preference for institutional investors with large holdings in the issuer. *See Bank of America*, 258 F.R.D. at 272 (appointing institutional investor group lead plaintiffs based on experience as plaintiff in derivative actions); *In re JPMorgan Chase & Co. S'holder Deriv. Litig.*, No. 08-cv-974(DLC), 2008 WL 4298588, at *10 (S.D.N.Y. Sept. 19, 2008) (noting that in both derivative and PSLRA lawsuits "there is a need to have plaintiffs who can adequately represent other shareholders and exercise a meaningful role in critical decisions such as whether to file suit or to settle").[4]

*Second*, courts have relied upon the work counsel and plaintiffs have done in "identifying or investigating potential claims asserted in the action," as reflected in the "quality of the pleadings." *Bank of America*, 258 F.R.D. at 272; *accord Comverse*, 2006 WL 3761986, at *3 (relying on "quality of the pleadings to determine the work counsel and their respective clients

---

[4] *See also In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) (finding PSLRA criteria to be "persuasive" in selecting lead plaintiffs in derivative cases, invoking the statute's presumption in favor of "institutional investors or those with very large stock holdings."); *Dollens v. Zionts*, No. 01 Civ. 5931, 2001 WL 1543524, at *5 (N.D. Ill. Dec. 4, 2001); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, slip op. at 37 (E.D. La. Nov. 18, 2005) (holding that "economic interest…should be given substantial weight" in selecting derivative lead plaintiff and appointing the applicant with the largest shareholdings), attached as Ex. B to the Silk Decl.

have done thus far in investigating and identifying potential claims in this action"). And, *third*, courts have considered plaintiffs' and "counsel's experience in handling [derivative] actions, other complex litigation, and the types of claims asserted in the action." *Bank of America*, 258 F.R.D. at 272; *accord Converse*, 2006 WL 3761986, at *2 (same).

As set forth below, under each of these criteria, Amalgamated and its chosen counsel, Bernstein Litowitz, are best suited to represent the interests of Pfizer and its shareholders in these derivative actions.

### A. Amalgamated Is A Sophisticated Institutional Investor With A Substantial Financial Interest In Pfizer And The Experience To Effectively Prosecute The Action

Amalgamated, which has holdings of 2,334,656 Pfizer shares, is a sophisticated institutional investor that has a substantial economic interest in ensuring the vigorous prosecution of this action. Amalgamated has significant experience serving as a fiduciary and as a lead plaintiff in derivative and other shareholder litigation and will ensure that the action will be diligently litigated on behalf of Pfizer and its shareholders. Moreover, as an institutional investor that has successfully led prior stockholder actions, Amalgamated has proven its ability to supervise counsel in complex litigation and is committed to working efficiently and avoiding unnecessary legal expenses.

Amalgamated has served as lead plaintiff in a number of derivative and shareholder actions, including a derivative action on behalf of Tyson Foods, captioned *In re Tyson Foods, Inc. Consolidated Shareholder Litigation*, C.A. No. 1106-CC (Del. Ch.), that challenged the timing of stock option grants and other breaches of fiduciary duty by the company's directors and officers. Amalgamated's prosecution of the action—in which the Delaware Chancery Court issued a number of historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans—resulted in a substantial cash

settlement that required the company to install significant corporate governance reforms in the nomination and appointment of directors. Bernstein Litowitz represented Amalgamated in a shareholder derivative action against certain directors of Activision, Inc., *In re Activision Shareholder Derivative Litigation*, Master File No. SC090343 (Cal. Super. Ct., Los Angeles County), in which Amalgamated's efforts resulted in corporate governance reforms and a recovery of funds wrongfully taken through options-backdating practices. Amalgamated also has significant experience in serving as lead plaintiff in securities class actions litigated under the PSLRA. In fact, in *In re Cardinal Health, Inc. Securities Litigation*, No. 04-cv-575-ALM-NMK (S.D. Ohio), Amalgamated acted as lead plaintiff in the securities class action against another health care company, Cardinal Health, Inc., in which a record-setting $600 million settlement was obtained on behalf of investors.

As Judge Chin recently held, "institutional investors … are well-suited to acting on behalf of the putative class" in a derivative action. *Bank of America*, 258 F.R.D. at 272. In *Bank of America*, the court relied on the institutional investors' substantial experience litigating derivative and similar actions in selecting them to serve as lead plaintiffs over individual plaintiffs, holding that the institutions' "experience and expertise" made them best situated to litigate the derivative action efficiently. *Id.*

Amalgamated's ability and desire to vigorously prosecute this action and seek meaningful corporate governance reforms at Pfizer stems in part from its substantial financial interest in the Company, with stockholdings representing a nearly $40 million stake in Pfizer. As the derivative lead plaintiff applicant with the largest economic stake in a favorable outcome of this litigation, Amalgamated is best qualified to serve as lead plaintiff. *See In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, slip op. at 37, 44 (E.D. La. Nov. 18, 2005) (holding that

"economic interest… should be given substantial weight" in selecting derivative lead plaintiff

and appointing applicant with largest shareholdings); *In re Conseco*, 120 F. Supp. 2d at 734.[5]

Accordingly, due to its sophistication, extensive experience and substantial financial

interest in ensuring that the Company's claims are vigorously prosecuted, Amalgamated is best

qualified to lead the Pfizer derivative actions and should be appointed as lead plaintiff.

### B.    Amalgamated Filed A Detailed And Comprehensive Complaint

The quality of the pleadings also weighs heavily in favor of appointing Amalgamated as

lead plaintiff.  Amalgamated filed a highly detailed and comprehensive complaint that reflects

the care and commitment Amalgamated and its counsel have devoted, and will continue to

devote, to this litigation.

In particular, Amalgamated's complaint alleges numerous claims under state and federal

law and includes thoughtful and comprehensive allegations regarding Pfizer's illegal marketing

campaign and Defendants' involvement in and endorsement of this business strategy.  *See, e.g.,*

Compl., at ¶¶116-22, 159-181, *Amalgamated Bank, as trustee for LongView Largecap 500 Index*

---

[5] In her motion, which has since been withdrawn, Ms. Klein contends that the fact that she was
the first to file a complaint supports her application for lead plaintiff.  Courts have repeatedly
rejected this argument, however, and have instead favored more objective factors, such the size
of the plaintiff's holdings, that were identified by Congress in enacting the PSLRA.  *See, e.g., In
re Cox Commc'ns, Inc. S'holders Litig.*, 879 A.2d 604, 609 (Del. Ch. 2005) (appointing lead
counsel in derivative action based on "rational factors, such as the quality of the pleadings," and
"the large stock holdings of the [] firm's [institutional investor] client," as opposed to the order
in which the plaintiff filed a complaint); *TCW Tech. Ltd. P'ship v. Intermedia Comm'ns, Inc.*,
No. 18336-CC, 2000 WL 1654504, *3-4 (Del. Ch. Oct. 17, 2000) (C. Chandler) (rejecting notion
that "the race to the courthouse door" should determine leadership status and instead giving
preference to "large shareholders or significant institutional investors"); *see also Hirt v. U.S.
Timberlands Servs. Co. LLC*, No. Civ. A. 19575, 2002 WL 1558342, at *2 (Del. Ch. July 3,
2002) (recognizing "that no special weight or status will be accorded to a lawsuit 'simply by
virtue of having been filed earlier than any other pending action'") (internal citation omitted);
*Rich v. Reisini*, 266 N.Y.S.2d 492, 494 (N.Y. App. Div. 1966) (rejecting argument that "the
dominating factor should be the institution of the first [derivative] suit, with the consequence that
plaintiff's attorney in that suit should be the counsel," and holding instead that "[t]he guiding
principle in the selection of counsel is to find among those eligible the one who will best serve
the interest of the plaintiffs").

*VEBA Fund, LongView Largecap 500 Index Fund and LongView Quantitative Largecap Fund v. Ausiello, et al.*, 09-cv-8363 (S.D.N.Y. filed Oct. 2, 2009) (Dkt. #1).  For example, the complaint includes well-researched allegations highlighting the Board's awareness of numerous facts revealing their knowledge of Pfizer's illegal activities, such as the four FDA letters warning of precisely the illegal conduct involved in the $2.3 billion settlement and the semi-annual Chief Compliance Officer reports on the status of legal compliance required under Pfizer's 2002 and 2004 Corporate Integrity Agreements.  *See id.* at ¶¶119, 141.  Further, the complaint highlights the fact that Pfizer received two FDA letters since April 2008—one directly to the CEO regarding improper marketing of Viagra, and another warning the Company that its illegal promotion of certain of its products, including Lyrica and Celebrex, had continued—indicating that the Company's Board and management continue to put Pfizer and its shareholders at serious risk of future liability.  *See id.* at ¶¶119, 123-24, 141.

In sum, the detailed and comprehensive allegations in the complaint filed by Amalgamated demonstrate that it is best-suited to serve as Lead Plaintiff.  *See Comverse*, 2006 WL 3761986, at *4 (relying on "more comprehensive allegations" in complaint in appointing lead counsel).

### C.    Amalgamated's Chosen Counsel Has The Experience And Resources To Effectively Prosecute This Action

Amalgamated's chosen counsel, Bernstein Litowitz, has already taken significant steps to advance this litigation.  Bernstein Litowitz, which has prosecuted some of the most significant securities and derivative shareholder cases in history, has already commenced an independent investigation into the bases for the claims asserted in this action and has devoted significant resources to researching, investigating and drafting detailed pleadings, including the preparation of the complaint filed by Amalgamated on October 2, 2009.

Since its founding in 1983, Bernstein Litowitz has successfully litigated some of the most complex and high-profile shareholder disputes in recent history, and has recovered over $20 billion on behalf of investors it has represented. *See* Bernstein Litowitz Firm Biography, attached as Ex. C to the Silk Decl. The excellent results it has achieved in past representations show that Bernstein Litowitz is committed to providing the resources that are required to prosecute this litigation through all phases, including rigorous motion practice, discovery, summary judgment and trial.

In fact, Bernstein Litowitz represented shareholders' interests in *UnitedHealth Group, Inc. Shareholder Derivative Litigation*, Case No. 06-cv-1216 (D. Minn.), a derivative action that resulted in significant corporate governance reforms and a $920 million recovery that stands as the largest shareholder derivative settlement in history. In another derivative case, *McCall v. Scott (Columbia HCA Derivative Litigation)*, No. 99-6387 (N.D. Tenn. 1999), Bernstein Litowitz successfully prosecuted an action against certain former senior executives and HCA's board of directors arising out of one of the largest healthcare frauds in U.S. history before this case. In the *Columbia HCA Derivative Litigation*, Bernstein Litowitz successfully pursued an appeal of the district court's dismissal of the action to the Court of Appeals for the Sixth Circuit, which reversed the district court and issued a seminal opinion regarding demand futility in shareholder derivative litigation. *See McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001). In February 2003, Bernstein Litowitz negotiated a settlement agreement including a far-reaching corporate governance plan to ensure that any future lawbreaking by HCA employees would not go undetected, including the requirement that the company's external auditing firm rotate frequently and the establishment of specific internal control and compliance procedures that must be followed in the event the company's board of directors becomes aware of any material deviation

from corporate compliance programs. Similar issues regarding demand futility and appropriate remedial action will likely be hotly contested here, and the outcome of these disputes will be critical to the success of the litigation.

Many Judges in this District have recognized the professional competence and diligence of Bernstein Litowitz and its attorneys. For example, Judge Denise Cote made several remarks on the record regarding the quality of Bernstein Litowitz's ongoing representation of investors in the securities class action against WorldCom—one of the largest securities class action recoveries in history. In granting final approval of the $2.575 billion settlement with certain Defendants, Judge Cote stated:

> "The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy....The quality of the representation given by Lead Counsel...has been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative…. Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

*In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2004 WL 2591402, *18, *21 (S.D.N.Y. Nov. 12, 2004). Bernstein Litowitz has also been appointed as lead or co-lead counsel in numerous cases in this District, including:

- *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, 07-CV-9633(JSR) (appointed bond counsel by Judge Jed S. Rakoff);

- *In re Wachovia Preferred Securities and Bond/Notes Litigation*, 09 Civ. 6351 (RJS) (appointed co-lead counsel in the debt securities litigation by Judge Richard J. Sullivan);

- *In re Bank of Americas Corp. Securities, Derivative and ERISA Litigation*, 09 MDL 2058 (DC), 09 Civ. 580 (DC) (appointed co-lead counsel in the securities litigation by Judge Denny Chin);

- *In re Lehman Brothers Equity/Debt Securities Litigation*, 08 Civ. 5523 (LAK) (appointed co-lead counsel in the debt securities litigation by Judge Lewis Kaplan);

- *In re Citigroup, Inc. Bond Action Litigation*, 08 Civ. 9522 (SHS) (appointed lead bond counsel by Judge Sidney Stein); and

- *In re Refco, Inc. Securities Litigation*, 05 Civ. 8626 (GEL) (appointed co-lead counsel by then-Judge Gerard Lynch).

In sum, there is a more than adequate basis to appoint Bernstein Litowitz as lead counsel on behalf of Pfizer and its shareholders.

## II.    Consolidation Is Appropriate

There are at least eight derivative complaints pending in the Southern District of New York on behalf of Pfizer and its shareholders:

| Case Number | Abbreviated Case Name | Date Filed |
|---|---|---|
| 09-cv-7822 | *Klein v. Ausiello, et al.* | September 10, 2009 |
| 09-cv-7913 | *Kenney v. Kindler, et al.,* | September 15, 2009 |
| 09-cv-7983 | *Casey, et al., v. Ausiello, et al.* | September 17, 2009 |
| 09-cv-8042 | *Louisiana Sheriffs' Pension and Relief Fund v. Ausiello, et al.* | September 18, 2009 |
| 09-cv-8292 | *Buch v. Ausiello, et al.* | September 30, 2009 |
| 09-cv-8363 | *Amalgamated Bank, as trustee for LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund and LongView Quantitative Largecap Fund v. Ausiello, et al.* | October 2, 2009 |
| 09-cv-8388 | *Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union v. Ausiello, et al.* | October 2, 2009 |
| 09-cv-8544 | *Skandia Life Insurance Company Ltd. v. Kindler, et al.* | October 7, 2009 |

The *Amalgamated*, *Louisiana*, *Skandia*, *Port Authority of Allegheny County*, *Buch*, *Klein*, *Kenney*, and *Casey* actions contain similar claims for breaches of fiduciary duties and other

15

causes of action against overlapping sets of defendants based on nearly identical allegations of

illegal promotion of Pfizer drugs through off-label marketing and unlawful kickbacks to doctors.

Because these actions involve "common issues of law or fact," consolidation is appropriate under

Rule 42(a) of the Federal Rules of Civil Procedure.  *See Skwortz v. Crayfish Co., Ltd.*, No. 00

Civ. 6766 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) (noting that "courts have

taken the view that considerations of judicial economy favor consolidation") (*citing Johnson v.

Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990)).   Further, consolidation will serve the

interests of judicial economy by reducing repetition and duplication.   As explained by the

Second Circuit Court of Appeals in *MacAlister v. Guterma*, "[t]he benefits achieved by

consolidation and the appointment of general counsel, i.e., the elimination of duplication and

repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions

and discovery proceedings will be channeled, will most certainly redound to the benefit of all

parties to the litigation."  263 F.2d 65, 69 (2d Cir. 1958).  *See also Bank of America*, 258 F.R.D.

at 267.

   For the same reasons, any actions that are later filed and which arise out of or are related

to the same facts as alleged in the Amalgamated derivative complaint should likewise be

consolidated once brought to the Court's attention.

## CONCLUSION

For the reasons set forth above, Amalgamated respectfully requests that the Court grant its motion (i) consolidating all related derivative actions; (ii) appointing Amalgamated as lead plaintiff; (iii) appointing Amalgamated's counsel, Bernstein Litowitz Berger & Grossmann LLP, as lead counsel; and (iv) granting such other and further relief as the Court may deem just and proper.

Dated: October 8, 2009
New York, New York

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP


By:      /s Gerald H. Silk
          Gerald H. Silk
          Mark Lebovitch
          Samuel J. Lieberman
          Jeroen van Kwawegen

          1285 Avenue of the Americas, 38th Floor
          New York, New York 10019
          Tel:  212-554-1400
          Fax:  212-554-1444

          *Counsel for Amalgamated Bank, as Trustee*
          *for LongView Largecap 500 Index VEBA*
          *Fund, LongView Largecap 500 Index Fund*
          *and LongView Quantitative Largecap Fund*