## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HENRIETTA KLEIN, derivatively on behalf of PFIZER INC., | Civil Action No. 09-cv-7822(JSR) |
| Plaintiff, | |
| v. | |
| DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT, W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON, STEPHEN W. SANGER, WILLIAM C. STEERE, JR., FREDA C. LEWIS-HALL, FRANK D'AMELIO, and IAN READ, | |
| Defendants, | |
| and | |
| PFIZER INC., | |
| Nominal Defendant. | |

## MEMORANDUM IN OPPOSITION TO THE MOTION OF AMALGAMATED BANK, AS TRUSTEE FOR LONGVIEW LARGECAP 500 INDEX VEBA FUND, LONGVIEW LARGECAP 500 INDEX FUND AND LONGVIEW QUANTITATIVE LARGECAP FUND, FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL AND CONSOLIDATION OF RELATED ACTIONS

JAMES KENNEY, Derivatively on Behalf       :    Civil Action No. 09-cv-7913(JSR)
of PFIZER INC.,                            :
                                           :
                        Plaintiff,         :
                                           :
v.                                         :
                                           :
JEFFREY B. KINDLER, DOUGLAS M.             :
LANKLER, DENNIS A. AUSIELLO,               :
MICHAEL S. BROWN, ROBERT N.                :
BURT, W. DON CORNWELL,                     :
CONSTANCE J. HORNER, JAMES M.              :
KILTS, DANA G. MEAD, SUZANNE               :
NORA JOHNSON, HENRY A.                     :
MCKINNELL, DAVID L. SHEDLARZ,              :
WILLIAM R. HOWELL, STANLEY O.              :
IKENBERRY, FRANKLIN D. RAINES,             :
RUTH J. SIMMONS, AND JEAN-PAUL             :
VALLES                                     :
                                           :
                        Defendants,        :
                                           :
and                                        :
                                           :
PFIZER INC.,                               :
                                           :
                  Nominal Defendant.       :
                                           :

| | | |
|---|---|---|
| ROBERT J. CASEY and WILLIAM A. HOUSTON Derivatively on Behalf of PFIZER INC., | : | Civil Action No. 09-cv-7983(JSR) |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DENNIS A. AUSIELLO, MICHAEL S. BROWN, ANTHONY M. BURNS, ROBERT N. BURT, DON W. CORNWELL, WILLIAM H. GRAY, III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON, STEPHEN W. SANGER, WILLIAM C. STEERE, JR., FREDA C. LEWIS-HALL, FRANK D'AMELIO, and IAN READ, | : : : : : : : : : : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| PFIZER INC., | : | |
| | : | |
| Nominal Defendant. | : | |

| | | |
|---|---|---|
| LOUISIANA SHERIFFS' PENSION AND RELIEF FUND, Derivatively on Behalf of PFIZER INC., | : | Civil Action No. 09-cv-8042(JSR) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DENNIS A. AUSIELLO; MICHAEL S. BROWN; M. ANTHONY BURNS; ROBERT N. BURT; W. DON CORNWELL; WILLIAM H. GRAY III; CONSTANCE J. HORNER; JAMES M. KILTS; JEFFREY B. KINDLER; GEORGE A. LORCH; DANA G. MEAD; SUZANNE NORA JOHNSON; WILLIAM C. STEERE, JR.; DOUGLAS M. LANKLER; FRANK A. D'AMELIO; IAN C. READ; and JOSEPH M. FECZKO | : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| PFIZER INC., | : | |
| | : | |
| Nominal Defendant. | : | |

| | | |
|---|---|---|
| CATHY BUCH | : | Civil Action No. 09-cv-8289(JSR) |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| DENNIS A. AUSIELLO, MICHAEL S. | : | |
| BROWN, M. ANTHONY BURNS, | : | |
| ROBERT N. BURT, W. DON | : | |
| CORNWELL, WILLIAM H. GRAY III, | : | |
| CONSTANCE J. HORNER, JAMES M. | : | |
| KILTS, JEFFREY B. KINDLER, | : | |
| GEORGE A. LORCH, DANA G. MEAD, | : | |
| SUZANNE NORA JOHNSON, WILLIAM | : | |
| C. STEERE, JR., DOUGLAS M. | : | |
| LANKLER, FRANK A. D'AMELIO, IAN | : | |
| C. READ, JOSEPH M. FECZKO, HENRY | : | |
| A. MCKINNELL, DAVID L. | : | |
| SHEDLARZ, WILLIAM R. HOWELL, | : | |
| STANLEY O. IKENBERRY, FRANKLIN | : | |
| D. RAINES, RUTH J. SIMMONS, JEAN- | : | |
| PAUL VALLES, FREDA C. LEWIS- | : | |
| HALL, and PFIZER INC. | : | |
| | : | |
| Defendants. | : | |
| | : | |

| | | |
|---|---|---|
| AMALGAMATED BANK, AS TRUSTEE FOR LONGVIEW LARGECAP 500 INDEX VEBA FUND, LONGVIEW LARGECAP 500 INDEX FUND and LONGVIEW QUANTITATIVE LARGECAP FUND, derivatively, on behalf of PFIZER INC., | : : : : : : : : | Civil Action No. 09-cv-8363(JSR) |
| Plaintiff, | : : : | |
| v. | : : : | |
| DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT, W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON, WILLIAM C. STEERE, JR., WILLIAM R. HOWELL, HENRY A. MCKINNELL, STANLEY O. IKENBERRY, RUTH J. SIMMONS, DOUGLAS M. LANKLER, FRANK A. D'AMELIO, IAN C. READ, and JOSEPH M. FECZKO | : : : : : : : : : : : : : : : : : | |
| Defendants, | : : : | |
| and | : : : | |
| PFIZER INC., | : : : | |
| Nominal Defendant. | : | |

THE PORT AUTHORITY OF
ALLEGHENY COUNTY RETIREMENT
AND DISABILITY ALLOWANCE PLAN
FOR EMPLOYEES REPRESENTED BY
LOCAL 85 OF THE AMALGAMATED
TRANSIT UNION,

                                    Plaintiff,

v.

DENNIS A. AUSIELLO, MICHAEL S.
BROWN, M. ANTHONY BURNS,
ROBERT N. BURT, W. DON
CORNWELL, WILLIAM H. GRAY III,
CONSTANCE J. HORNER, JAMES M.
KILTS, JEFFREY B. KINDLER,
GEORGE A. LORCH, DANA G. MEAD,
SUZANNE NORA JOHNSON, STEPHEN
W. SANGER, WILLIAM C. STEERE, JR.,
DOUGLAS M. LANKLER, FRANK A.
D'AMELIO, IAN C. READ, JOSEPH M.
FECZKO, HENRY A. MCKINNELL,
DAVID L. SHEDLARZ, WILLIAM R.
HOWELL, STANLEY O. IKENBERRY,
FRANKLIN D. RAINES, RUTH J.
SIMMONS, JEAN-PAUL VALLES,
FREDA C. LEWIS-HALL, and PFIZER
INC.,

                                    Defendants.

Civil Action No. 09-cv-8388

| | |
|---|---|
| SKANDIA LIFE INSURANCE COMPANY LTD., | : Civil Action No. 09-cv-8544 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| JEFFREY B. KINDLER, DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT, W. DON CORNWELL, WILLIAM H. GRAY, III, CONSTANCE J. HORNER, WILLIAM R. HOWELL, STANLEY O. IKENBERRY, SUZANNE NORA JOHNSON, JAMES M. KILTS, GEORGE A. LORCH, HENRY A. MCKINNELL, DANA G. MEAD, FRANKLIN D. RAINES, DAVID L. SHEDLARZ, RUTH J. SIMMONS, WILLIAM C. STEERE, JR., JEAN-PAUL VALLES, FRANK D'AMELIO, JOSEPH M. FECZKO, DOUGLAS M. LANKLER, and IAN C. READ | : |
| | : |
| Defendants. | : |
| | : |
| and | : |
| | : |
| PFIZER, INC., | : |
| | : |
| Nominal Defendant | : |

**MEMORANDUM IN OPPOSITION TO THE MOTION OF AMALGAMATED BANK, AS TRUSTEE FOR LONGVIEW LARGECAP 500 INDEX VEBA FUND, LONGVIEW LARGECAP 500 INDEX FUND AND LONGVIEW QUANTITATIVE LARGECAP FUND, FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL AND <u>CONSOLIDATION OF RELATED ACTIONS</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................ - 1 -

II.    THERE IS DOUBT THAT AMALGAMATED CAN FAIRLY AND
ADEQUATELY REPRESENT PFIZER'S INTERESTS AS THE LEAD
PLAINTIFF IN THE ACTIONS ....................................................................... - 4 -

    A.    Applicable Standards ............................................................................ - 4 -

    B.    Amalgamated May Lack The Requisite Standing ................................. - 5 -

        1.    Amalgamated May Not Be Properly Authorized To Assert The
Funds' Claims On Behalf Of Pfizer .......................................... - 5 -

        2.    If Amalgamated Can Bring Claims As "Trustee" For The Funds,
Its Standing May Still Be Impaired ........................................... - 7 -

    C.    Amalgamated's Article III Standing Is Also In Doubt ........................ - 8 -

    D.    Amalgamated Suffers From Potential Conflicts Of Interest ............... - 11 -

III.   CONCLUSION ............................................................................................. - 14 -

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp.2d 1215, 1222
(S.D.N.Y.2002) ................................................................................................................ - 11 -

*Barrett v. S. Conn. Gas Co*., 172 Conn. 362, 376-377 (1977)..................................... - 12 -

*Baylis v. Marriott Corp.*, 843 F.2d 658, 664-65 (2d Cir.1988) ................................... - 10 -

*Bensen v. American Ultramar Ltd.*, 1996 WL 48601 (S.D.N.Y Feb. 6, 1996) ........................ - 8 -

*Brickman v. Tyco*, 731 F. Supp. 101, 109 (S.D.N.Y. 1990).......................................... - 13 -

*Britton v. Parker*, 2009 WL 3158133, *14 (D. Colo. Sept. 23, 2009) ........................ - 9 -

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ............................... - 10 -

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ....................................... - 5 -

*Crawford v. Equifax Payment Servs., Inc.,* 201 F.3d 877, 880 (7th Cir. 2000) ........................ - 14 -

*General Electric Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992)........................... - 10 -

*Halpert Enterprises, Inc. v. Harrison*, 2007 WL 486561, *7 (S.D.N.Y. Feb. 14, 2007)............ - 9 -

*In re Asyst Tech., Inc. Deriv. Litig.*, 2008 WL 4891220, *4 (N.D. Cal. Nov. 12, 2008) ............ - 8 -

*In re Autodesk Inc., S'holder Deriv. Litig.*, 2008 WL 5234264, *11
(N.D. Cal. Dec. 15, 2008) ......................................................................................... - 8 -

*In re Bank of New York Deriv. Litig.*, 320 F.2d 291, 297 (2d Cir. 2003) .................................. - 4 -

*In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729 (S.D. Ind. 2000)......................................... - 6 -

*In re First Energy Corp. S'holder Deriv. Litig.*, 219 F.R.D. 584, 586 (N.D. Ohio 2004) .......... - 6 -

*In re IMAX Sec. Litig.,* 2009 WL 1905033, *3 (S.D.N.Y. Jun. 29, 2009) ................................. - 7 -

*In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) ........................................ - 12 -

*In re Pfizer Ins. Sec., Deriv., & ERISA Litig.*, 374 F. Supp.2d 1348, 1349
(Jud.Pan.Mult.Lit. 2005).......................................................................................... - 11 -

*In re Pfizer Sec. Litig.*, No. 04-cv-9866 (LTS) (S.D.N.Y.)................................................... - 11 -

*In re Seeburg-Commonwealth United Litig.*, No. 69 Civ. 5736, 1975 U.S. Dist. LEXIS 14185,
**4-5 (S.D.N.Y. Jan. 24, 1975) .............................................................................. - 5 -

*In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y 2009)......................................... - 7 -

*In re Teledyne Defense Contracting Deriv. Litig.,* 849 F. Supp. 1369, 1381
(C.D. Cal. 1993)..................................................................................................- 9 -

*In re Verisign, Inc., Deriv. Litig.*, 531 F. Supp.2d 1173, 1202 (N.D. Cal. 2007) .............- 8 -, - 10 -

*In re Zoran Corp. Deriv. Litig.,* 511 F. Supp.2d 986, 1014-17 (N.D. Cal. 2007) ....................- 10 -

*Koppel v. 4987 Corp.,* 167 F.3d 125, 133-34 (2d Cir. 1999)........................................- 9 -

*Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982) ....................................................- 6 -

*Louis v. St. Luke's Roosevelt Hosp. Ctr.*, No. 01 Civ. 11400(RWS), 2002 WL 1684175, at *3
(S.D.N.Y. July 24, 2002)...................................................................................- 11 -

*Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) ............................................- 10 -

*Marshall v. Spang & Co.*, 321 F. Supp. 1310, 1312 (W.D. Pa. 1971) .......................- 6 -

*Martens v. Thomann*, 273 F.3d 159, 173 (2d Cir. 2001)............................................- 14 -

*Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994)..............................................- 10 -

*Ryan v. Aetna Life Ins. Co.,* 765 F. Supp. 133, 135 (S.D.N.Y. 1991) .......................- 12 -

*Schneider v. Austin*, 94 F.R.D. 44, 46 (S.D.N.Y. 1982).............................................- 6 -

*Schwartzman v. McGavick,* 2007 WL 1174697, **11-12 (W.D. Wash. Apr. 19, 2007)...........- 9 -

*St. Clair Shores General Employees Retirement System v. Eibeler*, 2006 WL 2849783, 7
(S.D.N.Y. October 4, 2006)...............................................................................- 12 -

*Subin v. Goldsmith*, 224 F.2d 753, 761 (2d Cir. 1955) .............................................- 6 -

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) .............................- 10 -

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100
(2d Cir. 2008)...................................................................................................- 6 -

*Wall Street Sys., Inc. v. Lemence,* 2005 WL 292744 (S.D.N.Y. Feb. 8, 2005) .........- 13 -

*Wilson v. Great Am. Indus.*, 979 F.2d 924, 929 (22 Cir. 1992) ................................- 9 -

## RULES

Fed. R. Civ. P. 23.1..............................................................................- 1 -, - 3 -, - 4 -

Fed. R. Civ. P. 23.1(a) .........................................................................................- 4 -

Fed. R. Civ. P. 23.1(b)(1)......................................................................................- 4 -

Plaintiff Henrietta Klein ("Klein"), by and through her undersigned attorneys, hereby respectfully submits this memorandum of law in opposition to Amalgamated Bank, as trustee for LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund and LongView Quantitative Largecap Fund's ("Amalgamated") Motion for Appointment of Lead Plaintiff and Lead Plaintiff's Counsel and Consolidation of Related Actions (the "Amalgamated Motion").[1]

## I.    INTRODUCTION

Currently there are at least eight (8) substantially similar pending shareholder derivative actions on behalf of Pfizer Inc. ("Pfizer" or the "Company") on file in this Court (collectively, the "Actions"). Klein and Amalgamated have separately filed motions to consolidate the Actions, appoint a Lead Plaintiff, and appoint Lead Plaintiff's Counsel.[2] While Amalgamated is an institutional investor, there is doubt as to whether it can "fairly and adequately" serve as Lead Plaintiff under Fed. R. Civ. P. 23.1. For the reasons stated herein, simply too many serious questions exist regarding Amalgamated's suitability and adequacy to serve as Lead Plaintiff, and as such it should not be allowed to control the destiny of the Actions. Critically, Amalgamated suffers from both potential deficiencies regarding its standing to assert the claims alleged in the Actions,[3] as well as potential conflicts of interest. Klein does not suffer from Amalgamated's potential infirmities, and thus, she should be appointed Lead Plaintiff.

---

[1] Plaintiffs Klein and Amalgamated both agree that the Actions should be consolidated.

[2] Plaintiff Klein also moved for appointment of Liaison Counsel.

[3] Equally important, Amalgamated's standing issues are not "threshold" questions; rather, they are "unique defenses" that it will be subject to throughout the duration of the Actions, up to and including trial. Klein respectfully submits that it would be a particularly cruel result for Pfizer stockholders to see the Company's claims dismissed after (potentially) years of litigation (and the costs related thereto) because the Lead Plaintiff lacked the requisite standing or jurisdiction to prosecute these claims.

Specifically, as discussed at length herein, Amalgamated suffers from potentially fatal issues as to whether it possesses the requisite standing to prosecute the Actions on the Company's behalf.  Amalgamated filed its complaint purportedly acting "as trustee"[4] for the LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund and LongView Quantitative Largecap Fund."  Amalgamated Complaint, ¶13.[5]  This is troubling for several reasons -- first, although Amalgamated has not made this clear in its complaint or moving papers, apparently Amalgamated does not hold any shares of Pfizer stock in its own name; rather, one or all of the various moving "LongView Funds" purportedly hold Pfizer stock. Second, there is no evidence that any or all of the moving LongView Funds have specifically transferred ownership of, or title to, their derivative claims to Amalgamated, and therefore Amalgamated was not and is not properly authorized to assert such claims on their behalf. Further, it is unclear whether any or all of the LongView Funds continuously held Pfizer stock through the alleged period of wrongdoing.  Plaintiff Klein, on the other hand, unquestionably has standing as she has held Pfizer common stock continuously since September 27, 1998, or for the entire duration of the various "relevant periods" as set forth in each of the respective complaints filed on behalf of Pfizer (the longest being 2001 through the present).  *See* Declaration of Henrietta Klein In Support of Pfizer Inc. Stock Ownership ("Klein Dec."), ¶2.

---

[4] Importantly, even though Amalgamated has purportedly filed "as trustee" to the various funds, it has provided no evidence, such as any trust documents, to establish this relationship.

[5] In its moving papers, Amalgamated represents that it is "an institutional investor that manages billions of dollars in assets and holds over 2.3 million Pfizer shares."  Amalgamated Motion at 5. Amalgamated has also represented that it "has continuously held Pfizer shares throughout the period of wrong doing alleged in its complaint."  *Id*. at 7.  Despite these assertions, in Thomas B. O'Donnell's declaration ("O'Donnell Dec.") attached as Exhibit A to the Declaration of Gerald Silk In Support of the Amalgamated Motion, Mr. O'Donnell represents that "Amalgamated invests worker's retirement savings and other employee benefits through its LongView Funds, which invest in equity and fixed income."  O'Donnell Dec. ¶4.  The O'Donnell Dec. listed three specific funds: the LongView Largecap 500 Index VEBA Fund, the LongView Largecap 500 Index Fund, and the LongView Quantitative Largecap Fund (the "Funds"), for whom Amalgamated is acting as purported "trustee."  *Id*.

However, even assuming, *arguendo,* that the Court determines that Amalgamated has proper standing to "maintain" a shareholder derivative action on behalf of Pfizer, it is still unsuitable to serve as Lead Plaintiff because it cannot establish diversity of citizenship, which was the jurisdictional basis for many of the complaints filed in the Actions. Amalgamated is a "New York citizen" for diversity purposes.[6] Thus, Amalgamated has based its Article III jurisdiction upon a single federal claim asserted in its Complaint, which is purportedly brought under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). As discussed herein, if Amalgamated's Section 14(a) claim is dismissed (which is a distinct possibility, both due to the challenges inherent in successfully pleading this claim and because it is potentially time-barred), then the Court may well be forced to divest jurisdiction over the pending state law claims which are the *sine qua non* of the Actions. Conversely, Klein filed her complaint in this Court based on diversity of citizenship pursuant to 28 U.S.C. §1332(a)(2) and therefore is better suited to assert plaintiffs' numerous shared state-law claims on behalf of Pfizer.

Finally, there is also doubt that Amalgamated meets the adequacy requirements set forth in Fed. R. Civ. P. 23.1 because, *inter alia*, it is subject to "unique defenses" due to its participation as a plaintiff in a pending consolidated securities class action litigation against Pfizer (the "Securities Action"), which concerns some of the same factual allegations raised in the Actions. In the Securities Action, Amalgamated has sued Pfizer and primarily owes fiduciary duties to investors who held Pfizer stock in the past during the defined "Class Period," not to Pfizer itself or to its current stockholders. Klein, on the other hand, seeks to help protect the long-term value of the Company for the benefit of its long-term stockholders, and is extremely interested in ensuring that the Company is not harmed or damaged any further, and

---

[6] According to Amalgamated's website, it maintains its corporate headquarters at 275 Seventh Avenue, New York, NY 10001.

holding the defendants accountable for their actions.   Klein Dec., ¶3.   Accordingly, the

Amalgamated Motion should be denied in all respects (except as to consolidation), Klein should

be appointed Lead Plaintiff, and her selection of counsel should be approved.

## II.   THERE IS DOUBT THAT AMALGAMATED CAN FAIRLY AND ADEQUATELY REPRESENT PFIZER'S INTERESTS AS THE LEAD PLAINTIFF IN THE ACTIONS

### A.    Applicable Standards

Under Fed. R. Civ. P. 23.1, a derivative action "may not be maintained if it appears that

the plaintiff does not fairly and adequately represent the interests of shareholders or members

who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ.

P. 23.1(a).   Further, any derivative complaint filed must "allege that the plaintiff was a

shareholder or member at the time of the transaction complained of, or that the plaintiff's share or

membership later devolved on it by operation of law." Fed. R. Civ. P. 23.1(b)(1).[7]   Thus, any

prospective derivative plaintiff must meet these two criteria (at a minimum) in order to

"maintain" a derivative suit under Fed. R. Civ. P. 23.1.

As Amalgamated concedes, "there is no specific statutory framework for the appointment

of lead plaintiff and lead counsel in shareholder derivative actions."   Plaintiff Amalgamated's

Memorandum of Law in Support of the Motion ("Amalgamated's Mem.") at 7.   Critically,

however, a stockholder who leads a shareholder derivative suit (perhaps because of the statutory

requirement that a stockholder must "fairly and adequately" represent the corporation's interests)

occupies a position "of a fiduciary character," in which "[t]he interests of all in the redress of the

---

[7] This second concept is generally referred to as "standing."  *See In re Bank of New York Deriv. Litig.*, 320 F.2d 291, 297 (2d Cir. 2003) ("Federal Rule of Civil Procedure 23.1, entitled 'Derivative Actions by Shareholder,' states that a plaintiff does not have standing to bring a derivative suit unless 'the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains.'").

wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949); *see also In re Seeburg-Commonwealth United Litig.*, No. 69 Civ. 5736, 1975 U.S. Dist. LEXIS 14185, **4-5 (S.D.N.Y. Jan. 24, 1975).

For the reasons stated herein, there is serious doubt as to whether Amalgamated can "fairly and adequately" represent Pfizer's interests because of unique defenses it is subject to. Because there are also doubts raised with regard to Amalgamated's potential conflicts of interest, plaintiff Klein respectfully submits that Amalgamated is not well-suited to occupy a position "of a fiduciary character" to represent the Company's interests, and, consequently, its Motion should be denied, Plaintiff Klein should be appointed Lead Plaintiff, and her selection of counsel should be approved.

## B.    **Amalgamated May Lack The Requisite Standing**

### 1.    **Amalgamated May Not Be Properly Authorized To Assert The Funds' Claims On Behalf Of Pfizer**

As stated above, Amalgamated filed its complaint purportedly acting "as trustee for the LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund and LongView Quantitative Largecap Fund." Amalgamated Complaint, ¶13. Implicit in Amalgamated's actions and allegations in this regard is that Amalgamated itself is not a "current Pfizer stockholder," presenting questions regarding its standing, and thus, its suitability to serve as Lead Plaintiff.[8] While these questions remain unanswered, it should not be appointed Lead Plaintiff.

---

[8] Plaintiff Klein's counsel attempted to clarify this situation by means of a letter dated October 9, 2009 which was directed to Amalgamated's moving counsel. *See* Letter from Robert Weiser to Gerald Silk, counsel to Amalgamated, dated October 9, 2009, attached hereto as Exhibit 1 to the Declaration of Robert Weiser In Support of Plaintiff Klein's Opposition to the Amalgamated Motion (the "Second Weiser Declaration"), filed concurrently herewith. As set forth in Exhibit 1, Klein's counsel sought basic stock ownership information from Amalgamated regarding its "Pfizer stock ownership," along with that of the Funds. Amalgamated's counsel has not responded to this inquiry to date.

It cannot be disputed that the "lead plaintiff" provisions in the Private Securities Litigation Reform Act of 1995 ("PSLRA") do not apply in the context of a shareholder derivative action.[9]  However, Amalgamated's reliance on various PSLRA cases is curious given the fact that it almost certainly would not be appointed Lead Plaintiff in any PSLRA case for the same reasons it should not be appointed here -- namely, that there is no evidence that any or all of the LongView Funds have transferred ownership of, or title to, their derivative claims to Amalgamated, and therefore Amalgamated was not and is not properly authorized to file and prosecute a derivative suit as their "trustee."

The seminal case in this regard is *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008).  In *Huff*, the Second Circuit found that the plaintiff, an investment advisor, did not have standing to assert claims on behalf of its clients because its "clients have not transferred ownership of, or title to, their claims to Huff." *Id.* at 109.  Notably, this was the standard even though "Huff's power-of-attorney permits it to serve as an agent of its clients and to conduct litigation on behalf of its clients as their attorney-in-fact." *Id.*

---

[9] The PSLRA, "by its terms, is limited to actions filed under the federal securities laws and does not apply outside this context" to derivative actions.  *See In re First Energy Corp. S'holder Deriv. Litig.*, 219 F.R.D. 584, 586 (N.D. Ohio 2004).  Amalgamated cites *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729 (S.D. Ind. 2000) in support of its contention that PSLRA criteria is "persuasive" in selecting lead plaintiffs in derivative cases.  Amalgamated Motion at 8.  However, in *Conseco*, the Southern District of Indiana stated that "the PSLRA does not directly apply to derivative actions." *Conseco,* 120 F. Supp.2d at 734.  Nonetheless, Amalgamated relies on the PSLRA in an effort to highlight its purported substantial holdings.  Amalgamated Motion at 9.  In fact, in determining the adequacy of a representative derivative plaintiff, the size of the plaintiff's investment is irrelevant.  *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982) (citing *Marshall v. Spang & Co.*, 321 F. Supp. 1310, 1312 (W.D. Pa. 1971)); *see also Subin v. Goldsmith*, 224 F.2d 753, 761 (2d Cir. 1955).  Further, the differences in the requirements for plaintiff representatives in derivative litigation and class actions have been recognized by courts in this District.  *See, e.g.*, *Schneider v. Austin*, 94 F.R.D. 44, 46 (S.D.N.Y. 1982) (holder of 200 shares who demonstrated conscientious prosecution of derivative action was deemed adequate representative and court noted "[d]ifferences between derivative and class actions, however, make clear that some factors used to evaluate class representatives are irrelevant when shareholders litigate for a corporation's benefit" and "extensive reliance on class action case law is inappropriate since Rule 23.1 has developed an independent jurisprudence").

Specifically, a "mere power-of-attorney…does not confer standing to sue in the holder's own right because a power-of-attorney does not confer an ownership interest in the claim." *Id.* at 108. Further, "the minimum requirement for injury-in-fact is that the plaintiff have legal title to, or a property interest, in the claim." *Id.*

These sentiments were recently echoed by Judge Pauley of this Court in *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y 2009). In *SLM*, the court held that a plaintiff, as a mere investment advisor without any valid assignment of its clients' claims, "did not have Article III standing…" *Id.* at 115. Significantly, this is a problem which cannot be cured after-the-fact. *Id.* at 114-15 (full assignment of claims after a lawsuit commences is improper because a party must have Article III standing at the onset of litigation).[10]

Consequently, at the very least, these decisions concerning standing raise a significant doubt as to the adequacy and suitability of Amalgamated as Lead Plaintiff. It is readily apparent that Amalgamated does not itself hold Pfizer stock, and it is unclear whether any or all of the Funds have specifically transferred ownership of, or title to, their derivative claims to Amalgamated. If they have not, Amalgamated cannot cure this defect now. *See SLM*, 258 F.R.D. at 114-115. Given these serious potential pitfalls, it is clear that Amalgamated is not the best choice to serve as Lead Plaintiff and, accordingly, the Motion at bar should be denied.

2.    **If Amalgamated Can Bring Claims As "Trustee" For The Funds, Its Standing May Still Be Impaired**

It is well-settled that in order to maintain a shareholder derivative suit, a plaintiff must allege that "the plaintiff was a shareholder at the time of the transaction which the plaintiff's

---

[10] *See also In re IMAX Sec. Litig.,* 2009 WL 1905033, *3 (S.D.N.Y. Jun. 29, 2009) ("irrespective of whether the assignments of claim cure [the plaintiff's] deficient Article III standing, [the plaintiff] now "faces unique legal issues that other class members do not." [citation omitted]. "Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal. There seems little reason for us to subject the class members to such a risk.")

lawsuit challenges." *Bensen v. American Ultramar Ltd.*, 1996 WL 48601 (S.D.N.Y Feb. 6, 1996). Further, a plaintiff must allege that the plaintiff has continuously held the stock from the time of purchase up to the present. *In re Verisign, Inc., Deriv. Litig.*, 531 F. Supp.2d 1173, 1202 (N.D. Cal. 2007).

Here, in addition to the questions of whether Amalgamated actually owns Pfizer common stock, or whether the Funds specifically transferred ownership of, or title to, their derivative claims to Amalgamated, numerous other issues remain. Most importantly, it is unclear whether any or all of the Funds individually held Pfizer common stock continuously throughout the Relevant Period, thereby satisfying the "continuous ownership" requirement for prosecuting a derivative claim.[11] In the hopes of shedding light on these mysteries, counsel for Klein sent a letter dated October 9, 2009 to counsel for Amalgamated containing these inquiries. *See* Exhibit 1 to the Second Weiser Declaration. However, Klein's counsel has not received any response. If none of the Funds have continuously held Pfizer common stock throughout the entire Relevant Period, then Amalgamated's standing is impaired.

Given the numerous and potentially fatal questions regarding Amalgamated's "standing status," it is evident that Amalgamated is not best-suited to serve as Lead Plaintiff. Consequently, Amalgamated's Lead Plaintiff Motion should be denied.

### C.    Amalgamated's Article III Standing Is Also In Doubt

In its complaint, Amalgamated avers that "[t]his Court has jurisdiction of this action

---

[11] It is important to note that just because one plaintiff in a shareholder derivative action satisfies the "continuous ownership" requirement, other plaintiffs who do not satisfy the "continuous ownership" requirement may not "cure" their deficiencies based on the inclusion of the plaintiff with proper standing. *See, e.g., In re Autodesk Inc., S'holder Deriv. Litig.*, 2008 WL 5234264, *11 (N.D. Cal. Dec. 15, 2008) (dismissing one plaintiff for lack of standing where the other plaintiff had alleged continuous ownership); *In re Asyst Tech., Inc. Deriv. Litig.*, 2008 WL 4891220, *4 (N.D. Cal. Nov. 12, 2008) (dismissing two of three plaintiffs in a derivative action for lack of standing).

under federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States." Amalgamated Complaint, ¶11. Amalgamated rests this assertion on the inclusion in its complaint of a claim brought under "Section 14(a) of the Exchange Act." *Id.* Further, Amalgamated claims that this Court "has supplemental jurisdiction over the non-federal claims." *Id.* Without directly addressing the merits of Amalgamated's Exchange Act claim, it is apparent that, at the very least, its Article III jurisdiction in this Court may be problematic and, consequently, Amalgamated is not the most suitable choice for Lead Plaintiff.

Section 14(a) claims are challenging to prosecute and are often dismissed on pleading motions.[12] *See, e.g., Koppel v. 4987 Corp.,* 167 F.3d 125, 133-34 (2d Cir. 1999) ("no general cause of action lies under §14(a) to remedy a simple breach of fiduciary duty."); *Halpert Enterprises, Inc. v. Harrison*, 2007 WL 486561, *7 (S.D.N.Y. Feb. 14, 2007) ("The Section 14(a) claim amounted to 'an attempt to dress up an ordinary state breach of fiduciary duty claim in federal securities law clothing.'") (citations omitted); *Britton v. Parker*, 2009 WL 3158133, *14 (D. Colo. Sept. 23, 2009) ("Plaintiff has failed to adequately allege an "essential link" between the corporate transactions embodied by the 2004 and 2005 Proxy Statements and any

---

[12] Plaintiff Klein also notes that Amalgamated's Section 14(a) claim is merely a variant of the state law claims that she has already alleged and that the inclusion of this claim does not offer Pfizer any unique remedies in addition to those which she has sought. *See, e.g., Wilson v. Great Am. Indus.*, 979 F.2d 924, 929 (22 Cir. 1992) (noting that Section 14(a) claims do not "provide greater relief than that provided under state law"); *Schwartzman v. McGavick,* 2007 WL 1174697, **11-12 (W.D. Wash. Apr. 19, 2007) (dismissing Section 14(a) claim where allegations were "little more than an attempt to present a breach of fiduciary duty claim as a Section 14(a) claim."). This is because, among other things, the remedies sought by plaintiffs under Section 14(a) are often "readily attainable through more traditional state law corporate remedies." *See In re Teledyne Defense Contracting Deriv. Litig.,* 849 F. Supp. 1369, 1381 (C.D. Cal. 1993) (dismissing Section 14(a) claim and citing statutes providing remedies available under state corporate law, including relevant provisions of the Delaware Corporations Code). Accordingly, Plaintiff Klein respectfully submits that Amalgamated has added nothing of value by alleging this claim in the Amalgamated Complaint; rather, it has merely recast Klein's allegations, which purportedly provided it with federal jurisdiction.

injury to Delta. Without such a link the Section 14(a) claim must be dismissed as against all remaining Defendants").[13]

Moreover, even where a Section 14(a) claim appears otherwise meritorious, in cases such as the Actions where the period of alleged wrongdoing stretches back many years, the application of statutes of limitations and repose may result in dismissal. *See, e.g, In re Zoran Corp. Deriv. Litig.,* 511 F. Supp.2d 986, 1014-17 (N.D. Cal. 2007) (although plaintiffs adequately alleged demand futility based on allegations of misconduct dating back to 1997, plaintiffs' §14a claims were nevertheless partially time-barred); *VeriSign,* 531 F. Supp.2d at 1210-13 (where derivative action was based on allegations of misconduct dating back to 1998, plaintiffs' §14(a) claims were completely time-barred).

Dismissal of Amalgamated's Section 14(a) claim (for any reason) would be disastrous to its ability to remain in this Court. "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) (citing *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994); *Baylis v. Marriott Corp.*, 843 F.2d 658, 664-65 (2d Cir.1988)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *87th St. Owners Corp. v. Carnegie Hill-*

---

[13] *See also General Electric Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) ("the mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss."); *Verisign*, 531 F. Supp.2d at 1211 (holding that plaintiffs failed to allege an injury stemming directly from the transaction that was at immediate issue in the proxy, the election of directors).

*87th St. Corp.*, 251 F. Supp.2d 1215, 1222 (S.D.N.Y.2002) (declining to exercise supplemental jurisdiction and noting that "[t]his is the preferred course when all federal claims have been dismissed pre-trial," particularly where "difficult issues of state law more appropriately addressed to the state courts" are at stake); *Louis v. St. Luke's Roosevelt Hosp. Ctr.*, No. 01 Civ. 11400(RWS), 2002 WL 1684175, at *3 (S.D.N.Y. July 24, 2002) (noting the "well-established rule of dismissing pendant state and municipal claims where the federal claim providing jurisdiction has been dismissed").

Consequently, given that Amalgamated's sole basis for subject matter jurisdiction in this Court is an Exchange Act claim that could be dismissed at any stage of the Actions, it is clear that Amalgamated cannot possibly best represent the interests of the plaintiffs to the Actions. This is particularly true in light of the fact that other plaintiffs (namely, Klein) bring solely state law claims based on subject matter jurisdiction pursuant to diversity grounds, thereby ensuring their ability to remain in this Court. Consequently, the Motion should be denied, Klein should be appointed Lead Plaintiff, and her selection of counsel should be approved.

### D.    **Amalgamated Suffers From Potential Conflicts Of Interest**

Finally, Amalgamated suffers from potential conflicts of interest that prevent it from fairly and adequately serving as Lead Plaintiff. This conflict stems from the direct class action claims it has asserted against Pfizer, as mentioned above. Specifically, in 2005, Amalgamated filed a complaint in the Securities Action against Pfizer alleging, *inter alia*, that Pfizer and others misrepresented the safety risks of the blockbuster drug Bextra. *See In re Pfizer Ins. Sec., Deriv., & ERISA Litig.*, 374 F. Supp.2d 1348, 1349 (Jud.Pan.Mult.Lit. 2005). The Securities Action was subsequently consolidated as *In re Pfizer Sec. Litig.*, No. 04-cv-9866 (LTS) (S.D.N.Y.). Amalgamated sought appointment as lead plaintiff in the Securities Action, but was unsuccessful

11

in that effort. *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005). In the Amalgamated Complaint, Amalgamated again has alleged misconduct relating to Bextra, this time for illegal marketing of the drug. Amalgamated Complaint, ¶80.

Courts in this circuit often apply a strict standard in scrutinizing simultaneous direct and derivative actions for signs of conflict. *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 135 (S.D.N.Y. 1991) (citing cases in which a strict standard was applied); *see also St. Clair Shores General Employees Retirement System v. Eibeler*, 2006 WL 2849783, 7 (S.D.N.Y. October 4, 2006) ("Courts in this Circuit have long found that plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest.").[14]  In *Ryan*, defendants contended that there was a *per se* rule prohibiting a plaintiff from pursuing simultaneous direct and derivative actions. 765 F. Supp. 133, 135. The plaintiff, in contrast, argued that no such rule existed and that the weight of authority was against a *per se* rule. *Id*. This Court did not rule on the issue, but concluded that courts in this District have applied a strict standard in scrutinizing simultaneous direct and derivative actions for signs of conflict. *Id*. In *Ryan*, the plaintiff also argued that any potential conflict would not be manifest until the remedial stage of the litigation, and that the court could later use its powers to prevent a conflict of interest from affecting any represented party. *Id*. at 136. This Court, however, found that early intervention was the more efficient course of action and that the plaintiff "must elect a single representative role." *Id*. The Court reasoned that the plaintiff was unlikely to pursue a derivative action with the same fervor as a class action, given that any recovery in the derivative action would go to the corporation. *Id*.

---

[14] The Second Circuit also disfavors plaintiffs who have pre-existing adversarial relationships with the nominal defendant in derivative cases. *Barrett v. S. Conn. Gas Co*., 172 Conn. 362, 376-377 (1977) (finding high likelihood of abuse existed with Barrett's derivative action because Barrett and the corporation had a prior adverse relationship).

The *Ryan* holding is echoed in *Brickman v. Tyco,* which explores the same debilitating conflict but from the class perspective. 731 F. Supp. 101, 109 (S.D.N.Y. 1990). In *Brickman*, the defendants argued that the plaintiff could not sue derivatively on behalf of Tyco and also bring a class action against the corporation and its directors. *Id*. at 108. This Court agreed with the defendants that the plaintiff's concurrent prosecution of a derivative suit on behalf of Tyco and a securities class action against Tyco would violate the adequacy prong of Rule 23(a), which requires that a class plaintiff possess no interest antagonistic to that of the class. *Id.* The Court reasoned that, at the very least, a potential conflict existed and that a putative class representative must explain why such conflicts were unlikely to materialize. *Id*. at 109. The Court ruled that since the plaintiff was unable to do so, the class could not be certified while the plaintiff maintained his derivative action. *Id*.

This Court reach a nearly identical conclusion in *Wall Street Sys., Inc. v. Lemence,* 2005 WL 292744 (S.D.N.Y. Feb. 8, 2005). In *Wall Street*, a plaintiff simultaneously brought a direct and a derivative action. *Id*. at *3. This Court found that the plaintiff could not fairly and adequately represent the shareholders' interests as required under Rule 23.1. *Id*. This Court reasoned that when a plaintiff brings both a direct and derivative action, there is a conflict of interests that prevents adequate representation of the other shareholders. *Id*.

As illustrated by *Ryan, Brickman*, and *Wall Street*, when Amalgamated filed its class action complaint, it elected to sue Pfizer rather than bring claims on the Company's behalf.[15] Given the overlapping issues (relating to Bextra) in the Securities Action and these Actions, there is, at the least, a potential conflict of interest. *See Ryan,* 765 F. Supp. at 135 (finding a conflict between seeking to recover on behalf of the corporation and then requesting relief that

---

[15] According to the docket, the Securities Action, while currently on appeal, is ongoing.

would be detrimental to the corporation).[16]  Consequently, the Motion should be denied (except as to consolidation), Klein should be appointed Lead Plaintiff, and her selection of counsel should be approved.

## III.    CONCLUSION

For the foregoing reasons, the Court should not appoint Amalgamated as Lead Plaintiff.

Dated: October 13, 2009                    Respectfully submitted,

                                           ___ s/ Curtis V. Trinko
                                           **LAW OFFICES OF CURTIS V. TRINKO, LLP**
                                           Curtis V. Trinko
                                           Kinny Wai Chan
                                           16 West 46th Street, 7th Floor
                                           New York, New York 10036
                                           Tel: 212 490-9550
                                           Fax: 212 986-0158
                                           ctrinko@trinko.com
                                           kchan@trinko.com

                                           [Proposed] Liaison Counsel for Plaintiffs and
                                           Counsel for Plaintiff Henrietta Klein

                                           **THE WEISER LAW FIRM, P.C.**
                                           Robert B. Weiser
                                           Brett D. Stecker
                                           Jeffrey J. Ciarlanto
                                           121 N. Wayne Avenue
                                           Suite 100
                                           Wayne, PA 19087
                                           Tel.: 610-225-2677
                                           Fax: 610-225-2678

                                           [Proposed] Lead Counsel for Plaintiffs and counsel
                                           for Plaintiff Henrietta Klein

---

[16] Moreover, a party that files a class action owes fiduciary duties to the would-be class. *Crawford v. Equifax Payment Servs., Inc.,* 201 F.3d 877, 880 (7th Cir. 2000) (stating that "[a] representative plaintiff acts as fiduciary for the" other class members).  Given these fiduciary responsibilities, Amalgamated is prevented from taking any action that would prejudice the class's interests, or further its personal interests at the expense of the class.  *See Martens v. Thomann*, 273 F.3d 159, 173 (2d Cir. 2001) (stating that class representatives assume certain fiduciary responsibilities to the Class and, as a result, may not take any action that will prejudice the Class's interest).