# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRIETTA KLEIN, derivatively, on behalf of PFIZER INC., | **C.A. No. 09-cv-7822-JSR** |
| Plaintiff, | **ECF CASE** |
| v. | |
| DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT; W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON; STEPHEN W. SANGER; WILLIAM C. STEERE, JR.,  FREDA C. LEWIS-HALL, FRANK A. D'AMELIO,  and IAN READ, | |
| Defendants, | |
| and | |
| PFIZER INC., | |
| Nominal Defendant. | |

[caption continues on the following page]


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF AMALGAMATED BANK, AS TRUSTEE FOR LONGVIEW LARGECAP 500 INDEX VEBA FUND, LONGVIEW LARGECAP 500 INDEX FUND AND LONGVIEW QUANTITATIVE LARGECAP FUND, FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL AND CONSOLIDATION OF RELATED ACTIONS AND IN OPPOSITION TO THE MOTION FILED BY HENRIETTA KLEIN**

| | |
|---|---|
| JAMES KENNEY, derivatively, on behalf of PFIZER INC., | **C.A. No. 09-cv-7913-JSR** |
| Plaintiff, | **ECF CASE** |
| v. | |
| JEFFREY B. KINDLER, DOUGLAS M. LANKLER, DENNIS A. AUSIELLO,  MICHAEL S. BROWN, ROBERT N. BURT, W. DON CORNWELL, CONSTANCE J. HORNER, JAMES M. KILTS, DANA G. MEAD; SUZANNE NORA JOHNSON, HENRY A. MCKINNELL, DAVID L. SHEDLARZ, WILLIAM R. HOWELL, STANLEY O. IKENBERRY, FRANKLIN D. RAINES, RUTH J. SIMMONS, and JEAN PAUL VALLES, | |
| Defendants, | |
| and | |
| PFIZER INC., a Delaware corporation, | |
| Nominal Defendant. | |

| | |
|---|---|
| ROBERT J. CASEY and WILLIAM A. HOUSTON, derivatively, on behalf of PFIZER INC., | **C.A. No. 09-cv-7983-JSR** |
| Plaintiffs, | **ECF CASE** |
| v. | |
| DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT, W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON, STEPHEN W. SANGER, WILLIAM C. STEERE, JR., FREDA C. LEWIS-HALL, FRANK A. D'AMELIO and IAN C. READ, | |
| Defendants, | |
| and | |
| PFIZER INC., a Delaware corporation, | |
| Nominal Defendant. | |

LOUISIANA SHERIFFS' PENSION AND RELIEF
FUND, derivatively, on behalf of PFIZER INC.,

             Plaintiff,

v.

DENNIS A. AUSIELLO, MICHAEL S. BROWN, M.
ANTHONY BURNS, ROBERT N. BURT, W. DON
CORNWELL, WILLIAM H. GRAY III, CONSTANCE
J. HORNER, JAMES M. KILTS, JEFFREY B.
KINDLER, GEORGE A. LORCH, DANA G. MEAD,
SUZANNE NORA JOHNSON, WILLIAM C.
STEERE, JR.,  DOUGLAS M. LANKLER, FRANK.
A. D'AMELIO, IAN C. READ, and JOSEPH M.
FECZKO,

             Defendants,

and

PFIZER INC.,

             Nominal Defendant.

**C.A. No. 09-cv-8042-JSR**

**ECF CASE**

CATHY BUCH,

                    Plaintiff,

v.

DENNIS A. AUSIELLO, MICHAEL S. BROWN, M. ANTHONY BURNS, ROBERT N. BURT, W. DON CORNWELL, WILLIAM H. GRAY III, CONSTANCE J. HORNER, JAMES M. KILTS, JEFFREY B. KINDLER, GEORGE A. LORCH, DANA G. MEAD, SUZANNE NORA JOHNSON,  STEPHEN W. SANGER, WILLIAM C. STEERE,  JR., DOUGLAS M. LANKLER, FRANK A. D'AMELIO, IAN C. READ, JOSEPH M. FECZKO, HENRY A. MCKINNELL, DAVID L. SHEDLARZ, WILLIAM R. HOWELLSTANLEY O. IKENBERRY, FRANKLIN D. RAINES, RUTH J. SIMMONS, JEAN-PAUL VALLES, FREDA C. LEWIS-HALL, and PFIZER INC.,

                    Defendants.

**C.A. No. 09-cv-8289-JSR**

**ECF CASE**

AMALGAMATED BANK, AS TRUSTEE FOR
LONGVIEW LARGECAP 500 INDEX VEBA
FUND, LONGVIEW LARGECAP 500 INDEX
FUND and LONGVIEW QUANTITATIVE
LARGECAP FUND, derivatively, on behalf of
PFIZER INC.,

**C.A. No. 09-cv-8363-JSR**

        Plaintiff,

**ECF CASE**

v.

DENNIS A. AUSIELLO, MICHAEL S. BROWN, M.
ANTHONY BURNS, ROBERT N. BURT, W. DON
CORNWELL, WILLIAM H. GRAY III, CONSTANCE
J. HORNER, JAMES M. KILTS, JEFFREY B.
KINDLER, GEORGE A. LORCH, DANA G. MEAD,
SUZANNE NORA JOHNSON,  WILLIAM C.
STEERE,  JR., WILLIAM R. HOWELL, HENRY A.
MCKINNELL, STANLEY O. IKENBERRY, RUTH J.
SIMMONS, DOUGLAS M. LANKLER, FRANK. A.
D'AMELIO,  IAN C. READ, and JOSEPH M.
FECZKO,

        Defendants,

and

PFIZER INC.,

        Nominal Defendant.

THE PORT AUTHORITY OF ALLEGHENY
COUNTY RETIREMENT AND DISABILITY
ALLOWANCE PLAN FOR EMPLOYEES
REPRESENTED BY LOCAL 85 OF
AMALGAMTED TRANSIT UNION,

                Plaintiff,

v.

DENNIS A. AUSIELLO, MICHAEL S. BROWN, M.
ANTHONY BURNS, ROBERT N. BURT, W. DON
CORNWELL, WILLIAM H. GRAY III, CONSTANCE
J. HORNER, JAMES M. KILTS, JEFFREY B.
KINDLER, GEORGE A. LORCH, DANA G. MEAD,
SUZANNE NORA JOHNSON,  STEPHEN W.
SANGER, WILLIAM C. STEERE,  JR., DOUGLAS
M. LANKLER, FRANK A. D'AMELIO,  IAN C.
READ, JOSEPH M. FECZKO, HENRY A.
MCKINNELL, DAVID L. SHEDLARZ, WILLIAM R.
HOWELL, STANLEY O. IKENBERRY, FRANKLIN
D. RAINES, RUTH J. SIMMONS, JEAN-PAUL
VALLES, FREDA C. LEWIS-HALL and PFIZER
INC.,

                Defendants.

**C.A. No. 09-cv-8388-JSR**

**ECF CASE**

SKANDIA LIFE INSURANCE COMPANY LTD.,

                Plaintiff,

v.

JEFFREY B. KINDLER, DENNIS A. AUSIELLO,
MICHAEL S. BROWN, M. ANTHONY BURNS,
ROBERT N. BURT, W. DON CORNWELL,
WILLIAM H. GRAY III, CONSTANCE J. HORNER,
WILLIAM R. HOWELL, STANLEY O. IKENBERRY,
SUZANNE NORA JOHNSON, JAMES M. KILTS,
GEORGE A. LORCH, HENRY A. MCKINNELL,
DANA G. MEAD, FRANKLIN D. RAINES, DAVID L.
SHEDLARZ, RUTH J. SIMMONS, WILLIAM C.
STEERE, JR., JEAN-PAUL VALLES, FRANK A.
D'AMELIO,  JOSEPH M. FECZKO, DOUGLAS M.
LANKLER, and IAN C. READ,

                Defendants,

     and

PFIZER INC.,

                Nominal Defendant.

**C.A. No. 09-cv-8544-UA**

**ECF CASE**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.     Amalgamated Has The Largest Financial Interest In Pfizer And Has The Resources, Experience And Sophistication To Vigorously Prosecute This Action As Lead Plaintiff ..................................................................................... 3

II.    The Fact That Ms. Klein's Counsel Filed The First Complaint Does Not Qualify Her To Serve As Lead Plaintiff ................................................................ 7

CONCLUSION............................................................................................................. 10

## <u>Table of Authorities</u>

**Page(s)**

CASES

*Biondi v. Scrushy*,
  820 A.2d 1148, 1159 (Del. Ch. 2003)....................................................................2

*Hirt v. U.S. Timberlands Servs. Co.*,
  No. Civ. A. 19575, 2002 WL 1558342, at *2 (Del. Ch. July 3, 2002)....................................8

*Horn v. Raines*,
  227 F.R.D. 1, 3 (D.D.C. 2005)..................................................................................3

*In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*,
  258 F.R.D. 260, 272 (S.D.N.Y. 2009) .....................................................................5

*In re Comverse Tech., Inc. Deriv. Litig.*,
  No. 06-cv-1849(NGG)(RER), 2006 WL 3761986, at *3 (E.D.N.Y. Sept. 22, 2006) ..............9

*In re Conseco, Inc. Sec. Litig.*,
  120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) ..............................................................3

*In re Cox Commc'ns, Inc. S'holders Litig.*,
  879 A.2d 604, 609 (Del. Ch. 2005)..........................................................................8

*In re JPMorgan Chase & Co. S'holder Deriv. Litig.*,
  No. 08-cv-974(DLC), 2008 WL 4298588, at *10 (S.D.N.Y. Sept. 19, 2008)........................3

*In re OCA, Inc. Sec. & Derivative Litig.*,
  No. 05-2165, slip op., at 37 (E.D. La. Nov. 18, 2005)................................................3

*In re Razorfish, Inc. Sec. Litig.*,
  143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001) (Rakoff, J.) .........................................4

  143 F. Supp. 2d at 311 ...........................................................................................6

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and
  Securitization, LLC*,
  616 F. Supp. 2d 461, 466 (S.D.N.Y. 2009) (Rakoff, J.) ..........................................7

*Plumbers and Pipefitters Local 51 Pension Fund v. First Bancorp.*,
  409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (Rakoff, J.) ..........................................7

*Rich v. Reisini*,
  266 N.Y.S. 2d 492, 494 (N.Y. App. Div. 1966) .......................................................8

*TCW Tech. Ltd. P'ship v. Intermedia Comm'ns, Inc.*,
  No. 18336-CC, 2000 WL 1654504, at *3 (Del. Ch. Oct. 17, 2000).........................8

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ..............................................................................................4

Plaintiff Amalgamated Bank, as trustee for LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund, and LongView Quantitative Largecap Fund ("Amalgamated"), respectfully submits this memorandum of law in further support of its motion for entry of an Order consolidating the above-captioned actions, appointing Amalgamated as lead plaintiff and its counsel Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead counsel, and in opposition to the motion filed by Henrietta Klein.

## <u>INTRODUCTION</u>

Amalgamated is highly qualified to lead the above-captioned actions against members of senior management and the Board of Directors (the "Board") of Pfizer Inc. ("Pfizer" or the "Company") and should be appointed as lead plaintiff. Amalgamated, a sophisticated institutional investor that manages billions of dollars in assets and holds over 2.3 million Pfizer shares—a nearly $40 million stake in the Company—has every incentive to vigorously prosecute the Company's claims against those ultimately responsible for facilitating Pfizer's years-long criminal marketing campaign. Moreover, Amalgamated has extensive experience supervising counsel as a fiduciary and as a lead plaintiff in derivative and other shareholder litigation and has successfully implemented corporate governance reforms through its aggressive and vigorous program of shareholder advocacy. In short, there is no candidate better qualified to pursue these important claims.

The only other investor seeking appointment as lead plaintiff is Henrietta Klein, an individual investor who owns only 100 Pfizer shares. Despite the fact that two other institutional

investor plaintiffs that have filed complaints in this matter support Amalgamated's application,[1]

Ms. Klein argues that she should be appointed as lead plaintiff, and that her two law firms should

be appointed as lead and liaison counsel, principally on the basis that she was the first plaintiff to

file a complaint in this action.  *See* Mem. in Support of Plaintiff Klein's Motion to Consolidate

Actions, Appoint Lead Plaintiff, Lead Counsel and Liaison Counsel, at 6, *Klein v. Ausiello*, No.

09-cv-7822 (S.D.N.Y. filed Oct. 8, 2009) (Dkt. #9) ("Klein Br.").[2]  Courts have repeatedly

rejected the notion that being the first to file a complaint somehow qualifies an investor to serve

as lead plaintiff, however, and have instead held that "[t]he mere fact that a lawyer filed first for

a representative client is scant evidence of his adequacy, and may, in fact, support the contrary

inference."  *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003).

    In contrast to Ms. Klein, who has provided no evidence of her experience or other

qualifications to adequately represent the Company's claims in this action and supervise counsel,

Amalgamated has submitted the sworn declaration of Thomas B. O'Donnell, First Vice

---

[1] The Louisiana Sheriffs' Pension & Relief Fund and the Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union both support Amalgamated's application for lead plaintiff appointment.  *See Louisiana Sheriffs' Pension and Relief Fund v. Ausiello, et al.*, 09-cv-8042 (S.D.N.Y. filed Sept. 18, 2009); *Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union v. Ausiello, et al.*, 09-cv-8388-JSR (S.D.N.Y. filed October 2, 2009).

[2] Ms. Klein originally moved for appointment as lead plaintiff on September 30, 2009, at the time seeking the appointment of The Weiser Law Firm, P.C. as lead counsel and Coughlin Stoia Geller Rudman & Robbins, LLP ("Coughlin Stoia") as liaison counsel.  *See* Mem. in Support of Plaintiff Klein's Motion to Consolidate Actions, Appoint Lead Plaintiff, Lead Counsel and Liaison Counsel, *Klein v. Ausiello*, No. 09-cv-7822 (S.D.N.Y. filed Sept. 18, 2009) (Dkt. #3).  That motion was withdrawn later that same day.  *See* Notice of Withdrawal, *Klein v. Ausiello*, No. 09-cv-7822 (S.D.N.Y. filed Sept. 30, 2009) (Dkt. #5).  Following a telephonic conference with the Honorable Jed S. Rakoff's chambers and counsel for all parties on October 5, 2009, the Court granted permission to file the instant motions seeking lead plaintiff status.  In her latest submission, Ms. Klein no longer seeks the appointment of Coughlin Stoia as liaison counsel, and instead asks the Court to approve her selection of the Law Offices of Curtis Trinko, LLP to serve as liaison counsel.  Again, Ms. Klein provides no explanation for her most recent reversal.

President, Director of Equities, that details Amalgamated's resources, experience, commitment and competency to prosecute this action in the best interests of Pfizer and its shareholders. That declaration, and other publicly available information attesting to Amalgamated's success in pursuing shareholder litigation and other measures that seek to improve corporate accountability and transparency, confirm that Amalgamated is more than adequately qualified to lead the Pfizer shareholder derivative actions. Accordingly, Amalagamated respectfully requests that the Court appoint it as lead plaintiff, approve its selection of Bernstein Litowitz as lead counsel, and consolidate all related actions.

## ARGUMENT

### I.   Amalgamated Has The Largest Financial Interest In Pfizer And Has The Resources, Experience And Sophistication To Vigorously Prosecute This Action As Lead Plaintiff

Although there is no statutory framework specifically addressing the appointment of lead plaintiffs in derivative actions, courts in this District and across the country have recognized the sound policies embodied in the Private Securities Litigation Reform Act of 1995 ("PSLRA") in examining the qualifications of lead plaintiffs in the shareholder derivative context. *See, e.g., In re JPMorgan Chase & Co. S'holder Deriv. Litig.*, No. 08-cv-974(DLC), 2008 WL 4298588, at *10 (S.D.N.Y. Sept. 19, 2008) (noting that in both derivative and PSLRA lawsuits "there is a need to have plaintiffs who can adequately represent other shareholders and exercise a meaningful role in critical decisions such as whether to file suit or to settle"); *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) (noting preference expressed by Congress in enacting PSLRA and appointing institutional investors as lead plaintiff in derivative action); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) (relying on the PSLRA's presumption in favor of "institutional investors or those with very large stock holdings" in selecting lead plaintiff in derivative action); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, slip op. at 37 (E.D. La.

Nov. 18, 2005) (holding that "economic interest…should be given substantial weight" and appointing the applicant with the largest shareholdings in derivative action), attached as Ex. B to the Declaration of Gerald H. Silk, filed Oct. 8, 2009 ("Silk Decl.") (Dkt. #14).

The PSLRA creates a presumption in favor of appointing as lead plaintiff the investor that, among other things, "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "The theory of these provisions [is] that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff—frequently a large institution or otherwise sophisticated investor—would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001) (Rakoff, J.) (*citing* Elliott J. Weiss & John S. Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 Yale L.J. 2053, 2089 (1995)).

Under the PSLRA's criteria, Amalgamated is uniquely qualified to lead the Pfizer shareholder derivative actions.  Amalgamated is a sophisticated institutional investor with holdings of over 2.3 million Pfizer shares—a nearly $40 million investment that will ensure Amalgamated's vigorous prosecution of shareholders' claims against those responsible for facilitating the Company's unlawful conduct.  Indeed, Amalgamated has been a long-time shareholder of the Company, and has maintained holdings of over a million shares of the Company during the period of misconduct alleged in the complaints on file in this action.  *See*

Declaration of Thomas B. O'Donnell, at ¶6, attached as Ex. A to the Silk Decl. (Dkt. #14) ("O'Donnell Decl.").[3]

Beyond its clearly superior financial interest in the effective and efficient prosecution of this action, Amalgamated has also amply demonstrated its qualifications to oversee the litigation, supervise its counsel and competently pursue this action in the best interests of the Company and its shareholders. As set forth in the declaration submitted by Mr. O'Donnell, Amalgamated is uniquely qualified to lead the Pfizer derivative actions and exemplifies the type of institutional investor Congress envisioned would serve as lead plaintiff. Amalgamated manages approximately $9.3 billion in assets on behalf of its LongView collective funds and has significant experience in, and an established program committed to, aggressively pursuing corporate governance reforms—an investment philosophy and approach to shareholder advocacy that is driven by the belief that transparency and accountability promote stable markets, which drive economic growth and support the long-term value of Amalgamated's investments. *See* O'Donnell Decl., at ¶4.

Amalgamated's history of successfully pursuing prior derivative and other shareholder litigation, and its experience in leading other initiatives to promote good corporate governance practices, confirms that it has the competency and wherewithal to pursue Pfizer's derivative claims and will conduct the litigation in a manner that best serves the long-term interests of the Company and its shareholders. *See In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009) (appointing institutional investors as lead plaintiff and noting their prior experience in litigating other shareholder actions made them "well-suited to

---

[3]    Specifically, each of the three LongView funds that Amalgamated Bank represents as trustee—LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund, and LongView Quantitative Largecap Fund—has continuously held Pfizer shares since at least 1999 and throughout the period of wrongdoing alleged in the complaints on file in this action.

acting on behalf of the putative class" in a derivative action). Indeed, Amalgamated has successfully led numerous prior derivative and other shareholder actions, including serving as lead plaintiff in the securities class action against Cardinal Health, Inc. in which a record-breaking $600 million settlement was obtained on behalf of shareholders. *See* O'Donnell Decl., at ¶7.

Mr. O'Donnell's declaration also provides additional context for the Court to assess Amalgamated's motivations and commitment to pursuing the Pfizer's derivative claims. Specifically, Mr. O'Donnell's declaration notes that Amalgamated's Trust Committee deliberated and carefully considered filing this action and seeking a position as lead plaintiff. The Trust Committee reviewed the facts and merits of the action and considered the scope and severity of Pfizer's misconduct, Amalgamated's substantial financial interest in the Company, and the opportunity to advance its agenda of promoting corporate accountability and transparency, in determining to pursue a leadership role in this action. *See* O'Donnell Decl., at ¶8. Through Mr. O'Donnell's sworn declaration, Amalgamated has committed to being actively involved in the lawsuit and contributing to all major litigation decisions, and has pledged to vigorously represent the interests of the Company and its fellow shareholders throughout the course of the litigation. *See* O'Donnell Decl., at ¶9. In short, Amalgamated is the prototypical institutional investor to lead a case like this. *Cf. In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d at 311 (appointing as lead plaintiff division of a "very large financial institution" that managed $1.2 billion in assets and had the largest financial interest in the action, noting that it "closely fits the profile of the kind of lead plaintiff Congress had in mind when it enacted the Reform Act").

By contrast, the perfunctory three-paragraph declaration submitted by Ms. Klein provides a woefully insufficient basis upon which to assess her ability to lead this action. *See* Declaration

of Henrietta Klein, filed October 8, 2009 (Dkt. #11) ("Klein Decl.").  Other than noting her small financial interest in the Company through her ownership of 100 Pfizer shares, Ms. Klein offers no reason to suggest that she has any familiarity with financial matters or shareholder litigation, any experience conducting litigation or monitoring counsel, or that she even possesses a rudimentary understanding of the facts and legal claims in this case or the fiduciary obligations of serving as a derivative lead plaintiff.[4]  In fact, unlike Amalgamated, Ms. Klein has not provided any evidence that she has the resources or ability to monitor this litigation or her counsel, understands the obligations of the role she seeks, or is committed to the vigorous prosecution of the Company's claims beyond her mere promise to not sell her Pfizer shares during the litigation.  *See* Klein Decl., at ¶2.  Such a scant record is hardly a sufficient basis to entrust her with the crucial responsibility of managing this complex litigation or prosecuting the Company's claims in this important derivative action.

Accordingly, Amalgamated respectfully requests that the Court appoint it as lead plaintiff and approve its selection of Bernstein Litowitz to serve as lead counsel.

## II.    The Fact That Ms. Klein's Counsel Filed The First Complaint Does Not Qualify Her To Serve As Lead Plaintiff

Apparently recognizing Amalgamated's clearly superior financial interest and experience in litigating derivative actions, Ms. Klein attempts to bolster her motion seeking appointment as lead plaintiff, and approval of her two law firms as lead and liaison counsel, by suggesting that

---

[4] *See, e.g., Plumbers and Pipefitters Local 51 Pension Fund v. First Bancorp.*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (Rakoff, J.) (expressing concern that individual investor with "very little investment expertise and virtually no prior experience with litigation of this kind" would be able to "fulfill the important lead-plaintiff functions contemplated by the PSLRA"); *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC*, 616 F. Supp. 2d 461, 466 (S.D.N.Y. 2009) (Rakoff, J.) (rejecting proposed lead plaintiff as inadequate because, among other reasons, the "Court, from its own observation of the testimony and demeanor of the Fund's administrator, readily perceived that he was not particularly sophisticated in evaluating securities class actions and, indeed, had only a rough idea of what this lawsuit was all about.").

the fact that she filed the first complaint in this action qualifies her to prosecute the Company's claims in this action.  *See* Klein Br., at 6.

Courts have repeatedly rejected this notion, however, recognizing that there is neither "empirical nor logical support" to reward plaintiffs for being the first to file.  *TCW Tech. Ltd. P'ship v. Intermedia Comm'ns, Inc.*, No. 18336-CC, 2000 WL 1654504, at *3 (Del. Ch. Oct. 17, 2000) (Chandler, C.).   Rather, courts have instead relied on "rational factors, such as the quality of the pleadings" and "the large stock holdings of the [] firm's [institutional investor] client" when appointing a leadership structure in shareholder litigation.  *In re Cox Commc'ns, Inc. S'holders Litig.*, 879 A.2d 604, 609 (Del. Ch. 2005).[5]

In fact, in her rush to file a complaint, it appears that Ms. Klein may have neglected to include significant facts demonstrating the Board's knowledge of Pfizer's wrongdoing that are central to the Company's claims in these actions.  *See, e.g.*, Verified Shareholder Derivative Compl., at ¶85, *Klein v. Ausiello*, No. 09-cv-7822 (S.D.N.Y. filed Sept. 10, 2009) (Dkt. #1) ("Klein Compl.").  For example, the *Klein* complaint fails to allege facts regarding the provisions in prior corporate integrity agreements that required semiannual reports directly to the Company's Board regarding Pfizer's compliance (or non-compliance) with the very health regulations it continued to violate—allegations that are directly relevant to pleading and proving the Company's breach of duty claims and overcoming arguments regarding demand futility.

---

[5] *See also Hirt v. U.S. Timberlands Servs. Co.*, No. Civ. A. 19575, 2002 WL 1558342, at *2 (Del. Ch. July 3, 2002) (recognizing "that no special weight or status will be accorded to a lawsuit 'simply by virtue of having been filed earlier than any other pending action'") (internal citation omitted); *Rich v. Reisini*, 266 N.Y.S. 2d 492, 494 (N.Y. App. Div. 1966) (rejecting argument that "the dominating factor should be the institution of the first [derivative] suit, with the consequence that plaintiff's attorney in that suit should be the counsel," and holding instead that "[t]he guiding principle in the selection of counsel is to find among those eligible the one who will best serve the interest of the plaintiffs").

Rather than sacrifice quality for speed, Amalgamated, after deliberate and careful consideration by its Trust Committee, instructed its counsel to file a comprehensive, detailed complaint that is twice the length of Ms. Klein's and includes well-developed allegations that, by every measure, better articulate the Company's claims against the defendants. *See, e.g.*, Verified Shareholder Derivative Compl., at ¶¶119, 137-58, *Amalgamated Bank, as trustee for LongView Largecap 500 Index VEBA Fund, LongView Largecap 500 Index Fund, and LongView Quantitative Largecap Fund*, No. 09-cv-8363 (S.D.N.Y. filed Oct. 2, 2009) (Dkt. #1); *see also In re Converse Tech., Inc. Deriv. Litig.*, No. 06-cv-1849(NGG)(RER), 2006 WL 3761986, at *3 (E.D.N.Y. Sept. 22, 2006) (declining to appoint counsel who filed first complaint in the action and instead relying on "quality of the pleadings to determine the work counsel and their respective clients have done thus far in investigating and identifying potential claims in this action"). The diligence and care with which Amalgamated has devoted to this action, as reflected in its pleadings, further supports Amalgamated's appointment as lead plaintiff.

## CONCLUSION

For the reasons set forth above, as well as those in Amalgamated's prior memorandum of law in support of its motion, Amalgamated respectfully requests that the Court (i) consolidate all related derivative actions; (ii) appoint Amalgamated as lead plaintiff; (iii) appoint Amalgamated's counsel, Bernstein Litowitz Berger & Grossmann LLP, as lead counsel; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: October 13, 2009
New York, New York

                       **BERNSTEIN LITOWITZ BERGER
                       & GROSSMANN LLP**

                       By:       /s/ Gerald H. Silk
                               Gerald H. Silk
                               Mark Lebovitch
                               Samuel J. Lieberman
                               Jeroen van Kwawegen

                               1285 Avenue of the Americas, 38th Floor
                               New York, New York 10019
                               Tel: 212-554-1400
                               Fax: 212-554-1444

                               *Counsel for Amalgamated Bank, as Trustee
                               for LongView Largecap 500 Index VEBA
                               Fund, LongView Largecap 500 Index Fund
                               and LongView Quantitative Largecap Fund*