UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09 Civ. 7822 (JSR)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED,
AMENDED AND VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

DLA PIPER LLP (US)
Loren H. Brown
1251 Avenue of the Americas
New York, New York  10020-1104
Telephone:  (212) 335-4846

Attorneys for Nominal Defendant
Pfizer Inc.

CADWALADER, WICKERSHAM & TAFT LLP
Dennis J. Block
Gregory A. Markel
Jason M. Halper
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000

Attorneys for Defendants Dennis A. Ausiello, Michael S. Brown, M. Anthony Burns, Robert N. Burt, W. Don Cornwell, William H. Gray III, Constance J. Horner, James M. Kilts, Jeffrey B. Kindler, George A. Lorch, Suzanne Nora Johnson, Dana G. Mead, Stephen W. Sanger, William C. Steere, Jr., William R. Howell, Stanley O. Ikenberry, Henry A. McKinnell, Ruth J. Simmons, Frank A. D'Amelio, Joseph M. Feczko, Doulas M. Lankler, Ian Read and Allen P. Waxman.

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 5

      A.    The Parties ........................................................................... 5

      B.    The Alleged Wrongdoing ...................................................... 7

      C.    The Role Of The Board ........................................................ 10

           1.    Pfizer's Monitoring Systems And Controls .................... 10

      D.    The 2004 Corporate Integrity Agreement ............................. 11

      E.    The Claims Asserted In The Complaint .................................. 13

ARGUMENT ......................................................................................................... 14

POINT I     THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD PARTICULARIZED FACTS DEMONSTRATING THAT DEMAND IS EXCUSED ......................................... 14

      A.    The Demand Requirement Serves Important Corporate Governance Purposes And Requires The Pleading Of Particularized Facts Beyond Those Ordinarily Required To State A Claim .............................. 15

      B.    Plaintiffs Have Not Pleaded The Particularized Facts Required By Delaware Law To Excuse Their Failure To Make A Demand On Pfizer's Board ...................................................................... 16

      C.    Demand Is Not Excused With Respect To Plaintiffs' Claims ........ 17

           1.    The Director Defendants Would Be Disinterested In A Demand ..................................................................... 18

               a.    The Complaint Does Not Allege Particularized Facts Demonstrating That The Director Defendants Confront A "Substantial Likelihood" Of Liability With Respect To Plaintiffs' Failure Of Oversight Claims ............................ 18

**PAGE**

    i.  The Complaint Concedes That The Board Implemented Monitoring Systems And Controls ................................................................22

    ii.  The Complaint Does Not Plead That The Board Consciously Ignored Red Flags ................................23

   b. Mere Membership On Certain Board Committees Does Not Establish A Substantial Likelihood Of Liability .............25

   c. The Complaint Does Not Allege Particularized Facts Demonstrating That The Director Defendants Confront A "Substantial Likelihood" Of Liability With Respect To Plaintiffs' Section 14(a) Claim ........................................26

    i.  Plaintiffs' Claims Regarding The 2007 And 2008 Proxies Are Moot ..............................................28

    ii.  The Complaint Does Not Allege That The Director Defendants Failed To Disclose Any Information They Were Required To Disclose In The 2009 Proxy ......................................................29

    iii. Plaintiffs' Conclusory Allegations That Alleged Omissions In The Proxy Statements Indirectly Led To Mismanagement Do Not State A Section 14(a) Claim ......................................31

    iv. The Complaint Fails To Plead Fraud With The Particularity Required By Rule 9(b) And The PSLRA ...................................................................32

   d. The Director Defendants Are Rendered Disinterested By Pfizer's Certificate Of Incorporation ..............................33

   e. Conclusory Allegations Of The Directors' Purported Motive To Avoid A Suit That Would Reveal Additional Wrongdoing Do Not Render Them Interested ..........................................................................33

POINT II THE DUE CARE CLAIMS AGAINST PFIZER'S PRESENT AND FORMER DIRECTORS SHOULD BE DISMISSED PURSUANT TO PFIZER'S CHARTER ......................................................................34

POINT III THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM ..................................................36

**PAGE**

A.    The Complaint Does Not State A Claim For Breach Of The Duty Of Oversight Against The Director Defendants .................................................37

B.    The Complaint Does Not State A Claim For Breach Of The Duty Of Loyalty Or Good Faith By The Executive Defendants ................................37

C.    The Complaint Does Not State A Claim For Breach Of The Duty Of Disclosure Against Any Of The Defendants ...............................................38

D.    The Complaint Does Not State A Claim For Unjust Enrichment.................39

E.    The Complaint Does Not State A Claim Under Section 14(a)....................40

POINT IV    LEAD PLAINTIFF DOES NOT HAVE STANDING TO PURSUE THE CLAIMS ASSERTED IN THE COMPLAINT ......................................................40

CONCLUSION .........................................................................................................41

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### <u>CASES:</u>

<u>Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.</u>,
   2004 WL 51224 (S.D.N.Y. Jan. 9, 2004)..............................................................................32

<u>Arnold v. Society for Sav. Bancorp, Inc.</u>,
   1993 WL 183698 (Del. Ch. May 29, 1993) ..........................................................................39

<u>Aronson v. Lewis</u>,
   473 A.2d 805 (Del. 1984), <u>overruled on other grounds by</u>
   <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000)....................................................................15, 18

<u>Ashcroft v. Iqbal</u>,
   129 S. Ct. 1937 (2009) .........................................................................................................36

<u>Bell Atl. Corp. v. Twombly</u>,
   550 U.S. 544 (2007)..............................................................................................................36

<u>Brehm v. Eisner</u>,
   746 A.2d 244 (Del. 2000)......................................................................................................16

<u>Brinckerhoff v. Texas E. Prod. Pipeline Co., LLC</u>,
   2008 WL 4991281 (Del. Ch. Nov. 25, 2008)........................................................................39

<u>Cede & Co. v. Technicolor, Inc.</u>,
   634 A.2d 345 (Del. 1993), <u>modified</u>,
   636 A.2d 956 (Del. 1994)................................................................................................36, 37

<u>David B. Shaev Profit Sharing Acct. v. Armstrong</u>,
   No. Civ. A. 1449-N, 2006 WL 391931 (Del. Ch. Feb. 13), <u>aff'd</u>,
   911 A.2d 802 (Del. 2006)......................................................................................................19

<u>Debussy LLC v. Deutsche Bank AG</u>,
   2006 WL 800956 (S.D.N.Y. Mar. 29, 2006), <u>aff'd</u>,
   242 Fed. Appx. 735 (2d Cir. 2007) (Summary Order)...........................................................37

<u>Emerald Partners v. Berlin</u>,
   787 A.2d 85 (Del. 2001)....................................................................................................34-35

<u>Fadem v. Ford Motor Co.</u>,
   2003 WL 22227961 (S.D.N.Y. Sept. 25, 2003) .................................................................3, 10

<u>Fink v. Komansky</u>,
   2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004).....................................................................14, 15

iv

**PAGE(S)**

Fink v. Weill,
    2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) ................................................................ passim

Freer v. Mayer,
    796 F. Supp. 89 (S.D.N.Y. 1992) ............................................................................29

Funke v. Life Fin. Corp.,
    237 F. Supp. 2d 458 (S.D.N.Y. 2002)......................................................................36

GE Co. v. Cathcart,
    980 F.2d 927 (3d Cir. 1992) ............................................................................28, 31

Graham v. Allis-Chalmers Mfg. Co.,
    188 A.2d 125 (Del. 1963)........................................................................................23

Grimes v. Donald,
    673 A.2d 1207 (Del. 1996), overruled on other grounds by
    Brehm v. Eisner, 746 A.2d 244 (Del. 2000)..............................................15-16, 17

Grobow v. Perot,
    539 A.2d 180 (Del. 1988), overruled on other grounds by
    Brehm v. Eisner, 746 A.2d 244 (Del. 2000).............................................. 6, 16, 18

Gross v. Summa Four, Inc.,
    93 F.3d 987 (1st Cir. 1996) ....................................................................................32

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003) ..........................................................................19, 21

Halpert Enters., Inc. v. Harrison,
    362 F. Supp. 2d 426 (S.D.N.Y. 2005)....................................................................23

Harrison v. Rubenstein,
    2007 WL 582955 (S.D.N.Y. Feb. 26, 2007) ...........................................................30

Highland Legacy Ltd. v. Singer,
    2006 WL 741939 (Del. Ch. Mar. 17, 2006) ...........................................................39

In re Affiliated Computer Servs. Deriv. Litig.,
    540 F. Supp. 2d 695 (N.D. Tex. 2007).....................................................................31

In re American Exp. Co. S'holder Litig.,
    840 F. Supp. 260 (S.D.N.Y. 1993), aff'd,
    39 F.3d 395 (2d Cir. 1994) .....................................................................................30

**PAGE(S)**

In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,
  381 F. Supp. 2d 192 (S.D.N.Y. 2004) .......................................................27

In re Baxter Int'l, Inc. S'holders Litig.,
  654 A.2d 1268 (Del. Ch. 1995) ....................................................... 18, 33

In re Browning-Ferris Indus., Inc. S'holder Litig.,
  830 F. Supp. 361 (S.D. Tex. 1993), aff'd sub nom.
  Cohen v. Ruckelshaus, 20 F.3d 465 (5th Cir. 1994) ...............................30

In re Caremark Int'l Inc. Deriv. Litig.,
  698 A.2d 959 (Del. Ch. 1996) .................................................... passim

In re Cendant Corp. Deriv. Action Litig.,
  96 F. Supp. 2d 394 (D.N.J. 2000) ..............................................................3

In re Citigroup, Inc. Sec. Litig.,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004) ......................................................30

In re E.F. Hutton Banking Pracs. Litig.,
  634 F. Supp. 265 (S.D.N.Y. 1986) ............................................................23

In re Elan Corp. Sec. Litig.,
  2004 WL 1305845 (S.D.N.Y. May 18, 2004) ..................................... 28, 31

In re Fuqua Indus., Inc. S'holder Litig.,
  1997 WL 257460 (Del. Ch. May 13, 1997) ................................................3

In re GM Class E Stock Buyout Sec. Litig.,
  790 F. Supp. 77 (D. Del. 1992) ...................................................................4

In re Intel Corp. Deriv. Litig.,
  621 F. Supp. 2d 165 (D. Del. 2009) .........................................................24

In re JP Morgan Chase Sec. Litig.,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ......................................................28

In re Livent, Inc. Noteholders Sec. Litig.,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................36-37

In re Marsh & McLennan Cos. Sec. Litig.,
  536 F. Supp. 2d 313 (S.D.N.Y. 2007) .......................................... passim

In re Merrill Lynch & Co., Sec., Deriv. & ERISA Litig.,
  597 F. Supp. 2d 427 (S.D.N.Y. 2009) (Rakoff, J.) ...................................40

**PAGE(S)**

In re Morgan Stanley Deriv. Litig.,
  542 F. Supp. 2d 317 (S.D.N.Y. Mar. 27, 2008)..........................................................................17

In re Parmalat Sec. Litig.,
  479 F. Supp. 2d 332 (S.D.N.Y. 2007)......................................................................................32

In re Pfizer Inc. Deriv. Sec. Litig.,
  307 Fed. Appx. 590 (2d Cir. 2009) (Summary Order)....................................................20, 33

In re Pozen S'holders Litig.,
  2005 WL 3035783 (N.C. Super. Ct. Nov. 10, 2005) ................................................................34

In re SeaChange Int'l, Inc.,
  2004 WL 240317 (D. Mass. Feb. 6, 2004)..............................................................................29

In re Westinghouse Sec. Litig.,
  832 F. Supp. 989 (W.D. Pa. 1993).....................................................................................28-29

Kamen v. Kemper Fin. Servs., Inc.,
  500 U.S. 90 (1991)....................................................................................................2, 14-15

Kelley v. Rambus, Inc.,
  2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) .............................................................27, 28, 31

Kernaghan v. Franklin,
  2008 WL 4450268 (S.D.N.Y. Sept. 29, 2008) .........................................................................34

King v. Baldino,
  648 F. Supp. 2d 609 (D. Del. 2009).................................................................................20-21, 23

Kramer v. Time Warner Inc.,
  937 F.2d 767 (2d Cir. 1991) .....................................................................................................3

Laties v. Wise,
  2005 WL 3501709 (Del. Ch. Dec. 14, 2005) ...........................................................................35

Levine v. Smith,
  1989 WL 150784 (Del. Ch. Nov. 27, 1989), aff'd,
  591 A.2d 194 (Del. 1991)........................................................................................................16

Levine v. Smith,
  591 A.2d 194 (Del. 1991), overruled on other grounds by
  Brehm v. Eisner, 746 A.2d 244 (Del. 2000)...................................................................2, 4, 15

Logicom Inclusive, Inc. v. W.P. Stewart & Co.,
  2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004)...........................................................................4

**PAGE(S)**

Loudon v. Archer-Daniels-Midland Co.,
    700 A.2d 135 (Del. 1997)....................................................................................39

Louisiana Mun. Police Empls. Ret. Sys. v. Blankfein,
    2009 WL 1422868 (S.D.N.Y. May 19, 2009) ...........................................................26

Louisiana Mun. Police Empls. Ret. Sys. v. Pandit,
    2009 WL 2902587 (S.D.N.Y. Sept. 10, 2009) ..............................................24, 26

Malpiede v. Townson,
    780 A.2d 1075, (Del. 2001)........................................................................35, 36

McMichael v. United States Filter Corp.,
    2001 WL 418981 (C.D. Cal. Apr. 17, 2001)..............................................................4

McPadden v. Sidhu,
    964 A.2d 1262 (Del. Ch. 2008) ...............................................................................35

McSparran ex rel. Career Educ. Corp. v. Larson,
    2007 WL 684123 (N.D. Ill. Feb. 28, 2007)........................................................24-25

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993) ....................................................................................32

Mitzner v. Hastings,
    2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ..............................................................17

Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins,
    2004 WL 1949290 (Del Ch. Aug. 24, 2004).......................................................39-40

Playford v. Lowder,
    635 F. Supp. 2d 1303 (M.D. Ala. 2009) ..................................................................26

Rales v. Blasband,
    634 A.2d 927 (Del. 1993)................................................................................passim

Rattner v. Bidzos,
    2003 WL 22284323 (Del. Ch. Oct. 7, 2003) .............................................................3

Resnik v. Swartz,
    303 F.3d 147 (2d. Cir. 2002) ..................................................................27, 29, 31

Richardson v. Graves,
    1983 WL 21109 (Del. Ch. Mar. 7, 1983).................................................................16

Seminaris v. Landa,
    662 A.2d 1350 (Del. Ch. 1995) ........................................................................17, 34

**PAGE(S)**

Serabian v. Amoskeag Bank Shares, Inc.,
   24 F.3d 357 (1st Cir. 1994) ...................................................................32

Shaev v. Hampel,
   2002 WL 31413805 (S.D.N.Y. Oct. 25, 2002), aff'd,
   74 Fed. Appx. 154 (2d Cir. 2003) (Summary Order) ..............................31

Silverzweig v. Unocal Corp.,
   1989 WL 3231 (Del. Ch. Jan. 19, 1989), aff'd,
   561 A.2d 993 (Del. 1989)........................................................................39

Skeen v. Jo-Ann Stores, Inc.,
   750 A.2d 1170 (Del. 2000).................................................................38, 39

Stone ex rel. AmSouth Bancorp. v. Ritter,
   911 A.2d 362 (Del. 2006).................................................................passim

Total Care Physicians, P.A. v. O'Hara,
   2002 WL 31667901 (Del. Super. Ct. Oct. 29, 2002) ..............................39

Wayne Cty. Empls.' Ret. Sys. v. Corti,
   2009 WL 2219260 (Del. Ch. Jul. 24, 2009) ...........................................38

White v. Panic,
   783 A.2d 543 (Del. 2001)....................................................................2, 15

Wood v. Baum,
   953 A.2d 136 (Del. 2008)................................................. 17, 21, 26, 33

Zirn v. VLI Corp.,
   681 A.2d 1050 (Del. 1996)......................................................................36

**STATUTES & OTHER AUTHORITIES:**

15 U.S.C. § 78u-4(b)(1)(B) .............................................................................27

Fed. R. Civ. P.:
   9(b)............................................................................................................28
   12(b)(6).....................................................................................................36
   23.1(b)(3)..................................................................................................14

Del. Code Ann. tit. 8 (2006):
   § 102(b)(7).............................................................................................5, 34
   § 327........................................................................................................40

## PRELIMINARY STATEMENT

Defendants Dennis A. Ausiello, Michael S. Brown, M. Anthony Burns, Robert N. Burt, W. Don Cornwell, William H. Gray III, Constance J. Horner, James M. Kilts, Jeffrey B. Kindler, George A. Lorch, Suzanne Nora Johnson, Dana G. Mead, Stephen W. Sanger, William C. Steere, Jr., William R. Howell, Stanley O. Ikenberry, Henry A. McKinnell, Ruth J. Simmons, Frank A. D'Amelio, Joseph M. Feczko, Douglas M. Lankler, Ian Read, and Allen P. Waxman (collectively, the "Individual Defendants"), and Nominal Defendant Pfizer Inc. ("Pfizer" or the "Company," and collectively, "Defendants") respectfully submit this memorandum of law, the accompanying Declaration of Jason M. Halper, dated December 16, 2009 (the "Halper Decl."), and the exhibits attached thereto in support of their motion to dismiss Plaintiffs' Consolidated, Amended and Verified Shareholder Derivative Complaint (the "Complaint" or "Compl.")[1]

The Complaint should be dismissed because Plaintiffs have failed to state a cause of action for three separate and independent reasons:

> Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure because Plaintiffs have failed to comply with the pre-litigation demand requirement;

> Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as to Pfizer's current and former directors, because Pfizer's shareholders, acting pursuant to Section 102(b)(7) of the Delaware General Corporation Law, voted to amend Pfizer's Certificate of Incorporation to eliminate the personal monetary liability of Pfizer's directors to the corporation or its stockholders on the types of claims asserted in the Complaint; and

> Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs have failed to adequately plead the claims asserted in the Complaint, namely a violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), breach of fiduciary duty, and unjust enrichment.[2]

---

[1]   Beginning on September 10, 2009, nine shareholder derivative actions purportedly brought on behalf of Pfizer and asserting similar causes of action as in the Complaint were commenced against certain present and former Pfizer directors, officers and employees.  On October 22, 2009, the Court consolidated these actions.  On November 18, 2009, Plaintiffs filed the Complaint, a copy of which is attached as Exhibit A to the Halper Declaration.

[2]   In addition, Lead Plaintiff Amalgamated Bank does not have standing to pursue the claims asserted in the Complaint because it does not directly own Pfizer shares.  See Point IV.

This is a shareholder derivative action.  Unlike a claim a plaintiff brings on his or her own behalf, "[a] shareholder derivative suit is a uniquely equitable remedy in which a shareholder asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation."  Levine v. Smith, 591 A.2d 194, 200 (Del. 1991), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).  Shareholder derivative litigation thus is a unique form of litigation subject to special pleading and standing rules.  The three separate and independent grounds upon which the Complaint is subject to dismissal reflect these special rules.

First, Plaintiffs have no standing to maintain a shareholder derivative suit on behalf of Pfizer because they failed to make a pre-litigation demand upon Pfizer's Board as required by governing Delaware law (Pfizer is incorporated under Delaware law) or plead particularized facts excusing demand.[3]  The demand requirement "implements 'the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors,'" and not by minority shareholders, such as Plaintiffs here.  Kamen, 500 U.S. at 101 (citation omitted); see also White v. Panic, 783 A.2d 543, 550 (Del. 2001) (the corporation's board has "sole authority to initiate or to refrain from initiating legal actions asserting [a] right held by the corporation").

Because derivative claims belong to the corporation, a shareholder must demand that the board of directors commence the litigation that the shareholder seeks to pursue.  See Rales v. Blasband, 634 A.2d 927, 932 (Del. 1993).  Where, as here, a plaintiff asserts claims based on the absence of board action, the requirement to make such a demand is excused under Delaware law only in the exceptional case in which a shareholder plaintiff pleads "with particularity" facts – not mere conclusory assertions or characterizations – creating a reasonable doubt that at least

_____

[3]   It is well settled that issues concerning corporate governance, including the threshold demand issue, are governed by the law of the state in which the corporation is chartered.  See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98-99 (1991); Fink v. Weill, 2005 WL 2298224, at *3 n.5 (S.D.N.Y. Sept. 19, 2005) ("Weill").  Delaware law applies here because Pfizer is a Delaware corporation.  (Compl. ¶ 23.)

half of the corporation's directors are "interested" in the subject matter of the action or lack "independence" from an interested director. Rattner v. Bidzos, 2003 WL 22284323, at *9 (Del. Ch. Oct. 7, 2003). Here, the Complaint fails to plead any particularized facts challenging the disinterest and independence of at least seven of the fourteen individuals who were members of Pfizer's Board when the pre-consolidated derivative actions were commenced.[4] In fact, twelve of these fourteen Directors are non-management, non-employee directors whose interest and independence are not legitimately called into question by the allegations in the Complaint.[5]

Where, as here, a plaintiff alleges that board members are interested because they face a "substantial likelihood" of personal liability in connection with alleged failures of oversight, their allegations are governed by the standard set forth in In re Caremark Int'l Inc. Derivative Litigation, 698 A.2d 959 (Del. Ch. 1996), which was adopted by the Delaware Supreme Court in Stone ex rel. AmSouth Bancorp. v. Ritter, 911 A.2d 362 (Del. 2006) ("AmSouth"). In order to

---

[4]  Pfizer's Board currently has sixteen members, but Plaintiffs' compliance with the demand requirement is determined based on whether the Board as constituted at the time the derivative claim was first asserted could have fairly considered a demand. See In re Fuqua Indus., Inc. S'holder Litig., 1997 WL 257460, at **13-14 (Del. Ch. May 13, 1997); In re Cendant Corp. Deriv. Action Litig., 96 F. Supp. 2d 394, 401 (D.N.J. 2000). In September 2009, when these actions were commenced, the Board had fourteen members. (Compl. ¶¶ 25-38.) Non-parties Frances D. Fergusson and John P. Mascotte are also current non-employee, non-management members of Pfizer's Board of Directors, but were not members of Pfizer's Board when these actions were commenced.

[5]  The Complaint alleges that Messrs. Kindler and Steere are inside, management directors. (Compl. ¶¶ 33, 37, 194.) As confirmed in Pfizer's 2009 Proxy Statement, a copy of which is attached as Exhibit B to the Halper Declaration, none of the other members of Pfizer's Board is alleged to have been or in fact was an officer or employee of Pfizer when these actions were commenced. See Halper Decl., Ex. B (Pfizer's 2009 Proxy Statement), at 21-25. This Court may take judicial notice of Pfizer's 2009 Proxy Statement and other publicly available documents filed with the Securities and Exchange Commission (the "SEC"). See, e.g., Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("court may take judicial notice of contents of relevant public disclosure documents"). The Court may also take judicial notice of Pfizer's 2009 Proxy Statement because it is incorporated by reference into the Complaint. See Fadem v. Ford Motor Co., 2003 WL 22227961, at *2 (S.D.N.Y. Sept. 25, 2003) (the court may take judicial notice of public disclosure documents filed with the SEC, and consider the full text of any document quoted or referred to in the complaint); Compl. ¶¶ 157-69.

excuse demand based upon director interest due to a "substantial likelihood" of personal liability, the complaint must plead that: "(a) the directors utterly failed to implement any reporting or information systems or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations." AmSouth, 911 A.2d at 370 (emphasis omitted). Delaware courts have recognized that such claims for failure of oversight are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In re Caremark, 698 A.2d at 967. The allegations in the Complaint plainly do not satisfy either method of pleading such a Caremark claim.[6] See Point I.

Second, the claims against Pfizer's current and former directors are barred by Article Seventh, Paragraph 14 of Pfizer's Certificate of Incorporation. Specifically, Pfizer's shareholders, acting pursuant to Section 102(b)(7) of the Delaware General Corporation Law, voted to amend Pfizer's Certificate of Incorporation in 1987 to eliminate "[t]he liability of the Corporation's Directors to the Corporation or its shareholders . . . to the fullest extent permitted by the Delaware General Corporation Law as amended from time to time." See Halper Decl., Ex. C (Restated Certificate of Incorporation of Pfizer Inc.), at 33.[7] Under Section 102(b)(7), a company's certificate of incorporation may eliminate or limit "the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director," with the exception of liability: (i) for breach of the director's "duty of loyalty"; (ii) for

---

[6]  Plaintiffs' failure to make the requisite demand on Pfizer's Board of Directors requires dismissal of this action. The demand requirement does not leave Plaintiffs without a remedy, however, because Plaintiffs easily can make the required demand on Pfizer's Board. If Plaintiffs' demand then is refused for reasons Plaintiffs consider unsatisfactory, Plaintiffs can file a new action alleging that their demand was wrongfully refused. See, e.g., Levine, 591 A.2d at 208-15; In re GM Class E Stock Buyout Sec. Litig., 790 F. Supp. 77, 79-81 (D. Del. 1992).

[7]  The Court may take judicial notice of Pfizer's Certificate of Incorporation, a copy of which is attached as Exhibit C to the Halper Declaration. See McMichael v. United States Filter Corp., 2001 WL 418981, at *8 (C.D. Cal. Apr. 17, 2001) ("The certificate of incorporation of a Delaware corporation is a publicly filed document, and as such, can be judicially noticed"); Logicom Inclusive, Inc. v. W.P. Stewart & Co., 2004 WL 1781009, at **1, 3-4 (S.D.N.Y. Aug. 10, 2004) (same).

"acts or omissions not in good faith," or that "involve intentional misconduct or a knowing violation of law"; (iii) under Del. Gen. Corp. Law § 174, which prohibits unlawful payments of dividends and unlawful stock purchases and redemptions; and (iv) for "any transaction from which the director derived an improper personal benefit."  Del. Code Ann. tit. 8, § 102(b)(7) (2006).  No such exceptional claim is alleged in the Complaint.  See Point II.

Third, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  The allegations in the Complaint simply do not adequately plead claims for violation Section 14(a) of the Exchange Act, breach of fiduciary duty and unjust enrichment.  See Point III.

## STATEMENT OF FACTS

### A.    The Parties

Lead Plaintiff Amalgamated Bank ("Amalgamated") and additional named plaintiffs Skandia Life Insurance Company, Ltd., Louisiana Sheriffs' Pension and Relief Fund, Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union, LIUNA Staff & Affiliates Pension Fund, Laborers' International Union of North America National (Industrial) Pension Fund and Henrietta  Klein (collectively, "Plaintiffs") purport to bring these consolidated shareholder derivative actions on behalf of Pfizer.  (Compl. ¶¶ 16-22, 170.)  However, Amalgamated does not directly own any shares of Pfizer stock.  See Halper Decl., Ex. D (Transcript of Conference, dated November 4, 2009), at 35 (Pfizer stock "purchased through the index funds"); Compl. ¶ 16 (Amalgamated serves as "trustee" for the LongView Funds, which allegedly own Pfizer shares).

Defendants Dennis A. Ausiello, Michael S. Brown, M. Anthony Burns, Robert N. Burt, W. Don Cornwell, William H. Gray III, Constance J. Horner, James N. Kilts, Jeffrey B. Kindler, George A. Lorch, Suzanne Nora Johnson, Dana G. Mead, Stephen W. Sanger and William C. Steere, Jr. are current members of Pfizer's Board of Directors (collectively, the "Director Defendants").  (Compl. ¶¶ 25-38.)  Defendants William R. Howell, Stanley O. Ikenberry, Henry

A. McKinnell and Ruth J. Simmons are former members of Pfizer's Board, who were not members of the Board when these actions were commenced (collectively, the "Former Director Defendants"). (Id. ¶¶ 40-43.) Defendants Frank A. D'Amelio, Joseph M. Feczko, Douglas M. Lankler, Ian Read and Allen P. Waxman are current or former officers and/or employees of the Company who have never served on Pfizer's Board (collectively, the "Executive Defendants").[8] (Id. ¶¶ 46-50.)

With the exception of Messrs. Kindler and Steere[9], none of the Director Directors is alleged to have been an inside, employee, management director of the Company, and thus each may be presumed to be (and in fact is), a non-employee, non-management director. See Grobow v. Perot, 539 A.2d 180, 184 n.1 (Del. 1988) (where plaintiffs do not allege that particular directors are members of management, "we will presume that they were outside directors," with the term "outside director" defined to mean "nonemployee, nonmanagement directors"), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).[10]

Not only do none of the twelve "outside," non-management directors work for Pfizer, but each has impressive credentials independent of the Company: Dr. Ausiello is a Professor of Clinical Medicine at Harvard Medical School and the Chief of Medicine at Massachusetts General Hospital; Dr. Brown is the Distinguished Chair in Biomedical Sciences and Regental Professor at the University of Texas Southwestern Medical Center at Dallas, and a co-recipient of the Nobel Prize in Physiology or Medicine (1985); Mr. Burns is a former Chairman of the

---

[8]   Mr. Waxman was the only individual named as a defendant in the Complaint who had not been named as a defendant in one of the nine pre-consolidated complaints. Mr. Waxman has not been served with the Complaint. Thus, the Complaint should be dismissed as to Mr. Waxman pursuant to Fed. R. Civ. P. 12(b)(5).

[9]   Mr. Steere retired from his position as Pfizer's Chief Executive Officer in 2001. See Halper Decl., Ex. B (2009 Proxy Statement), at 18. He has not served as an officer of the Company since that date.

[10]   Pfizer's 2009 Proxy Statement, which includes biographies of all of Pfizer's directors, verifies the inside or outside status of the Director Defendants. See Halper Decl., Ex. B (2009 Proxy Statement), at 21-25.

Board and Chief Executive Officer of Ryder System, Inc.; Mr. Burt is a former Chairman and Chief Executive Officer of FMC Corporation and FMC Technologies Inc.; Mr. Cornwell is the Chairman and Chief Executive Officer of Granite Broadcasting Corporation; Mr. Gray is the Chairman of the Amani Group and a former U.S. Congressman; Ms. Horner is a former Commissioner of the U.S. Commission on Civil Rights and a former Deputy Secretary of the U.S. Department of Health and Human Services; Mr. Kilts is a Founding Partner of Centerview Partners Management, LLC, and a former Chairman and Chief Executive Officer of The Gillette Company; Mr. Lorch is a former Chairman and Chief Executive Officer of Armstrong Holdings, Inc.; Dr. Mead is the Chairman of the Massachusetts Institute of Technology Corporation, and a former Chairman and Chief Executive Officer of Tenneco, Inc.; Ms. Johnson is a former Vice Chairman of Goldman Sachs Group, Inc.; and Mr. Sanger is a former Chairman and Chief Executive Officer of General Mills, Inc. See Halper Decl., Ex. B (2009 Proxy Statement), at 21-25.

Nominal Defendant Pfizer Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in New York. (Compl. ¶ 23.)

**B.    The Alleged Wrongdoing**

The Complaint seeks to impose personal liability on the Individual Defendants on the grounds that they failed to prevent Pfizer from promoting certain Pfizer drugs for off-label use and/or engaging in other allegedly improper marketing activities. While the Complaint contains allegations concerning Pfizer's conduct with respect to off-label marketing, and Pfizer's settlement of government investigations regarding such marketing practices, the Complaint alleges no factual basis for any claim against the Individual Defendants. Indeed, there are absolutely no particularized allegations in the Complaint linking the alleged activities of Pfizer to the Individual Defendants. Rather than pleading such particularized facts, Plaintiffs ask the Court to presume that the Individual Defendants knew about Pfizer's alleged wrongful promotional practices based on four settlement agreements between Pfizer and the government

between 2002 and 2009.  Such a presumption is neither permitted by Delaware law nor justified by the allegations in the Complaint.

Most recently, on September 2, 2009, Pfizer announced that it had finalized a previously disclosed agreement in principle with the U.S. Department of Justice to resolve certain government investigations regarding the marketing and promotion of Bextra, Geodon, Zyvox and Lyrica.[11]  In connection with that settlement, Pfizer agreed to pay a total of $2.3 billion, and a Pfizer subsidiary, Pharmacia & Upjohn Company, Inc., agreed to plead guilty to one criminal count of violating the U.S. Food, Drug, and Cosmetic Act related to off-label promotion of Bextra.  Pfizer expressly denied all civil allegations of wrongdoing, with the exception that it acknowledged certain improper actions related to the promotion of Zyvox.

Plaintiffs do not and cannot allege that any Individual Defendant, or for that matter any of Pfizer's 81,000 employees, was ever found (or even alleged) to have known about or engaged in any of the conduct in question.  Nor do Plaintiffs allege that the government found evidence that the Individual Defendants were aware of alleged misconduct and took no action to stop it. In addition, while Plaintiffs repeatedly characterize Pfizer's recent settlement of government investigations regarding off-label promotions as "Pfizer's fourth major fine, and third criminal guilty plea, for illegal marketing and sales practices since 2002" (Compl. ¶ 3), that allegation blatantly mischaracterizes the three prior settlements.

Documents of which the Court may take judicial notice demonstrate that each of the prior settlements referenced in the Complaint relates not to illegal or improper conduct by Pfizer, but rather to alleged improper marketing practices of companies which Pfizer acquired.  In each

---

[11]   Pfizer's 2008 Financial Report, which was attached as Exhibit A to Pfizer's 2009 Proxy Statement, disclosed that Pfizer had "entered into an agreement in principle with the U.S. Department of Justice to resolve the previously reported investigation regarding allegations of past off-label promotional practices concerning Bextra, as well as certain other open investigations." See Halper Decl., Ex. B (2009 Proxy Statement), 2008 Financial Report at 56. Pfizer disclosed that it had recorded a $2.3 billion charge in connection with that agreement. Id.

case, the allegedly improper or illegal marketing practices occurred <u>prior to</u> Pfizer's acquisition of the subject company.  Plaintiffs do not and cannot explain how allegedly improper promotional practices occurring at companies subsequently acquired by Pfizer renders the Director Defendants interested or not independent.  For example, the Complaint alleges that in 2002 Pfizer agreed to pay $49 million to resolve charges that its subsidiary, Warner-Lambert Company, had "illegally concealed cash discounts given to a managed care organization in New Orleans."  (Compl. ¶ 89.)  However, the Complaint concedes that this alleged misconduct took place "prior to [Warner-Lambert's] 2001 acquisition by Pfizer."  <u>Id.</u>

The Complaint also asserts that Pfizer agreed to pay $430 million in 2004 to resolve government investigations regarding off-label promotion and violations of the Federal anti-kickback statute in connection with the marketing of Neurontin.  (Compl. ¶ 100.)  However, the Sentencing Memorandum submitted by the United States in connection with that matter states that the alleged marketing practices took place prior to Pfizer's acquisition of Warner-Lambert in June 2000.  <u>See</u> Halper Decl., Ex. E (Sentencing Memorandum of the United States, dated June 2, 2004) at 12 ("In June of 2000, after the events in which Warner-Lambert has agreed to plead guilty and the events alleged herein, Warner-Lambert was purchased by Pfizer"), 48 ("The evidence also demonstrates that the [conduct] diminished somewhat after September of 1997 and thereafter tailed off after the first quarter of 1999").

Finally, Plaintiffs allege that "Pfizer pa[id] yet another criminal fine" in 2007 to resolve government investigations regarding the marketing of Genotropin.  (Compl. ¶ 102, Heading 4).  Genotropin was marketed by Pharmacia Corporation ("Pharmacia") until Pharmacia was acquired by Pfizer in April 2003.  The Criminal Information prepared by the U.S. Attorney's Office in connection with the Genotropin investigation specifically states that the alleged off-label promotion of Genotropin occurred prior to Pfizer's acquisition of Pharmacia.  <u>See</u> Halper Decl., Ex. F (Appendix A to the Deferred Prosecution Agreement, dated March 27, 2007, between the U.S. Department of Justice and Pharmacia and Upjohn Company LLC), at 5

(conduct at issue occurred "[d]uring the period January 1, 2000 through March 31, 2003").[12] The Deferred Prosecution Agreement further states that "in May 2003, one month after its acquisition of Pharmacia and Upjohn Company, Pfizer initiated a self-disclosure of the conduct that is the subject of this agreement to the Officer of Inspector General for the Department of Health and Human Services ("OIG-HHS"), to the United States Food and Drug Administration ("FDA"), and to the United States Department of Justice."  See Halper Decl., Ex. F (Deferred Prosecution Agreement), at 1. Thus, not only did the allegedly improper marketing practices regarding Genotropin take place before Pfizer acquired Pharmacia in April 2003, but Pfizer voluntarily reported those activities as soon as it learned they had occurred.

**C.    The Role Of The Board**

    Notably absent from the Complaint are anything more than conclusory allegations regarding the knowledge, let alone participation, of the Board of Directors in the misconduct alleged in the Complaint.  The few facts actually pled in the Complaint demonstrate that that Board was discharging its duties appropriately.

**1.    Pfizer's Monitoring Systems And Controls**

    Although Plaintiffs primarily assert claims against the Individual Defendants for alleged failures of oversight, the Complaint acknowledges the extensive monitoring systems and controls in place at Pfizer.  Significantly, the Complaint concedes that Pfizer's Board maintains several standing committees, including an Audit Committee and a Corporate Governance Committee. (Compl. ¶ 24.)

    The Board carries out is oversight of the Company's internal controls and financial reporting through its Audit Committee, which oversees: (a) the integrity of the Company's financial statements and internal controls; (b) the Company's compliance with legal and

---

[12]   The Court may take judicial notice of the Neurontin Sentencing Memorandum, the Deferred Prosecution Agreement, and the exhibits attached thereto, because they are incorporated by reference into the Complaint.  See Fadem, 2003 WL 22227961, at *2; Compl. ¶¶ 99-100, 108.

regulatory requirements, including by reviewing reports from management relating to the status of compliance with laws, regulations and internal procedures; (c) the qualifications, independence and performance of the Company's independent public accounting firm; and (d) the performance of the Company's internal audit division.  <u>See</u> Halper Decl. Ex. B (Pfizer's 2009 Proxy Statement) at 12 and Annex 2 (Audit Committee Charter); Compl. ¶ 71.  The Audit Committee is required to meet at least six (6) times annually and met thirteen (13) times in 2008. <u>See</u> Halper Decl. Ex. B (2009 Proxy Statement) at 12 and Annex 2.

The Board's Corporate Governance Committee exercises oversight related to, among other things: (a) matters relating to the practices, policies and procedures of the Board and its Committees; (b) Pfizer's Director Qualification Standards and director retirement policies; (c) the functions, job performance and outside activities of senior Pfizer executives; and (d) emerging issues potentially affecting the reputation of the pharmaceutical industry and the Company.  <u>See</u> Compl. ¶ 74; Halper Decl. Ex. B (Pfizer's 2009 Proxy Statement) at 13 and Annex 3 (Corporate Governance Committee Charter).  The Corporate Governance Committee is required to meet at least four (4) times per year and met six (6) times in 2008.  <u>See</u> Halper Decl. Ex. B (2009 Proxy Statement) at 13 and Annex 3.

The Complaint also concedes that Pfizer maintains an ongoing "Director Orientation and Continuing Education" program for directors, which "includes extensive materials, meetings with key management and visits to Company facilities."  (Compl. ¶ 66.)

**D.     The 2004 Corporate Integrity Agreement**

In May 2004, in connection with resolving government investigations regarding Warner-Lambert's promotion of Neurontin (prior to Pfizer's acquisition of Warner-Lambert), Pfizer entered into a five-year Corporate Integrity Agreement (the "CIA") with OIG-HHS.  (Compl.

¶ 6.)[13]  Prior to entering into the CIA, Pfizer had already "initiated certain voluntary compliance measures" concerning its promotional practices "which include[d], among other actions, the appointment of a Compliance Officer and designated compliance agents, the appointment of a Compliance Committee, a Disclosure Program, screening measures for Ineligible Persons, and regular mandatory training for all employees concerning Pfizer's Code of Conduct.."  See Halper Decl., Ex. G (2004 CIA), at 1.  Pursuant to the CIA, Pfizer has been required to take (and has in fact taken) the following actions:

> Employ a Compliance Officer and Deputy Compliance Officer who, among other things: (a) "shall be responsible for developing and implementing policies, procedures, and practices designed to ensure compliance with the requirements [of the] CIA and with Federal health care program requirements and FDA requirements"; (b) "shall make [and has made] periodic (at least semi-annual) reports regarding compliance matters directly to the Board of Directors of Pfizer (or its designated subcommittee, in such form or manner as the Board of Directors determines)"; and (c) "shall be responsible for monitoring the day-to-day compliance activities engaged in by Pfizer as well as for any reporting obligations created under this CIA" (id. at 5-6 (emphasis added); Compl. ¶¶ 115, 120);

> Maintain a Compliance Committee (which must include the Compliance Officer and "other members of senior management necessary to meet the requirements of the CIA"), which, among other things: "shall support the Compliance Officer in fulfilling his/her responsibilities (e.g., shall assist in the analysis of the organization's risk areas and shall oversee monitoring of internal and external audits and investigations)" (see Halper Decl., Ex. G, at 6);

> Distribute a written code of conduct (the "Blue Book") to Pfizer employees regarding, among other things, the Company's promotional practices, and "make the promotion of, and adherence to, the Blue Book, or other relevant compliance policies and procedures, an element in evaluating the performance of all employees" (id. at 7);

> Distribute to Pfizer employees "written Policies and Procedures regarding the operation of Pfizer's compliance program and its compliance with Federal heath care program and FDA requirements," including with respect to promotional activities (id. at 8);

> Implement a training program pursuant to which employees performing "Promotional and Product Services Related Functions" shall receive special training regarding, among other things: (a) all Federal health care program requirements regarding proper marketing and promotion of Pfizer's products, "including, but not limited to, the

---

[13]   The Court may take judicial notice of the CIA because it is referred to, quoted in, and thereby incorporated by reference into, the Complaint.  (Compl. ¶¶ 6, 101, 114-16.)

requirements of the Federal anti-kickback statute; the Civil Monetary Penalties law; the civil False Claims Act; and the Medicaid Drug Rebate statute"; (b) "all applicable FDA requirements regarding the proper methods for selling, marketing, promoting, and advertising Pfizer's products, and disseminating information about off-label uses of Pfizer's products including, but not limited to, the requirements of the Federal Food, Drug and Cosmetic Act and FDA regulations"; and (c) "the personal obligation of each Covered Person involved in the sales, marketing, promotion, advertising, or disseminating information about off-label uses of Pfizer's products to comply with all applicable legal requirements" (id. at 10-13);

Retain an accounting, auditing or consulting firm (an "Independent Review Organization" or "IRO") to "perform Engagements to assist Pfizer in assessing and evaluating its systems, processes, policies and practices related to the Medicaid Rebate Program, to Managed Care Contracting Related Functions and to Promotional and Product Services Related Functions" (id. at 14); and

Maintain "a disclosure program designed to facilitate communications relating to compliance with Federal health care program requirements and FDA requirements and Pfizer's policies . . . that includes a mechanism (e.g., a toll-free compliance telephone line) to enable individuals to disclose . . . any identified issues or questions associated with Pfizer's policies, conduct, practices, or procedures with respect to Federal health care program requirements or FDA requirements believed by the individual to be a potential violation of criminal, civil or administrative law." (Id. at 18; Compl. ¶ 114.)

## E.    **The Claims Asserted In The Complaint**

Based on allegations of wrongdoing by Pfizer, and without linking such alleged conduct to any of the Individual Defendants, let alone the Director Defendants, the Complaint asserts that: (i) the Director and Former Director Defendants violated Section 14(a) of the Exchange Act; (ii) all of the Individual Defendants breached their fiduciary duty to accurately disclose material information to Pfizer's shareholders; (iii) the Director Defendants breached the duty of oversight by allegedly allowing improper marketing activities to occur; (iv) the Executive Defendants breached the duties of good faith and loyalty by allegedly authorizing the improper marketing practices; and (v) all of the Individual Defendants were unjustly enriched.  As explained below, however, the Plaintiffs have no standing to assert these claims on behalf of Pfizer, the claims against the Director and Former Director Defendants are barred by Pfizer's Certificate of Incorporation, and the Complaint fails to adequately plead any of the claims asserted in the Complaint.  As a result, the Complaint must be dismissed as a matter of law.

**ARGUMENT**

**POINT I**

**THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD PARTICULARIZED FACTS DEMONSTRATING THAT DEMAND IS EXCUSED[14]**

Rule 23.1 of the Federal Rules of Civil Procedure requires that in any derivative action brought by shareholders to enforce a right of the corporation, the complaint must allege "<u>with particularity</u>: (A) any effort made by the plaintiff to obtain the desired action from the directors or comparable authority; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3) (emphasis added). "Rule 23.1 is an exception to the traditional and less stringent requirement of notice pleadings." <u>Fink v. Komansky</u>, 2004 WL 2813166, at *3 (S.D.N.Y. Dec. 8, 2004) ("<u>Komansky</u>"). "The standard of pleading 'with particularity' means with specificity." <u>Id.</u> at *6. "[C]onclusionary allegations of fact or law not substantiated with specific facts are insufficient" to excuse demand. <u>Id.</u> at *4.

While Rule 23.1 addresses the "adequacy of the shareholder representative's pleadings" by requiring the pleading of facts with particularity, state law governs the substance of the demand requirement, and thus state law determines whether the justifications offered by a plaintiff for failing to make demand are acceptable such that demand on the corporation's board of directors is excused as futile. <u>Kamen</u>, 500 U.S. at 96-99; <u>see also</u> <u>Komansky</u>, 2004 WL 2813166, at *3 ("Although Rule 23.1 creates a procedural and federal standard as to the

---

[14]   Pfizer has moved to dismiss pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and Section 327 of the Delaware General Corporation Law, and therefore joins in the arguments in Points I and IV. Pfizer has not moved to dismiss pursuant to Rule 12(b)(6), and therefore does not join in Points II and III. The arguments in Point II are asserted solely on behalf of the Director and Former Director Defendants. The arguments in Point III are asserted by all of the Individual Defendants.

specificity of pleading the futility of demand, 'the adequacy of those efforts is to be determined by state [substantive] law'") (citation omitted).

As noted above, Pfizer is incorporated under Delaware law. (Compl. ¶ 23.) The Complaint must be dismissed under governing Delaware law because Plaintiffs neither made demand nor pled particularized facts demonstrating that demand is excused as futile.

## A. The Demand Requirement Serves Important Corporate Governance Purposes And Requires The Pleading Of Particularized Facts Beyond Those Ordinarily Required To State A Claim

Unlike an action a plaintiff brings on his or her own behalf to enforce a claim he or she personally possesses, a shareholder derivative claim is brought "'to enforce a <u>corporate</u> cause of action.'" <u>Kamen</u>, 500 U.S. at 95 (citation omitted; emphasis in original). Derivative claims thus belong not to the shareholder bringing the action, but to the corporation. <u>See</u> <u>White</u>, 783 A.2d at 546-47; <u>Levine</u>, 591 A.2d at 200.

Because of this unique and fundamental aspect of shareholder derivative actions, a shareholder must demand that the corporation's directors cause the corporation to pursue the claim before obtaining standing to commence the action. This demand requirement reflects the universally recognized "'basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders.'" <u>Kamen</u>, 500 U.S. at 101 (citation omitted). As the Delaware Supreme Court explained in <u>White</u>, the pre-suit demand is "designed to implement the principle that the cause of action belongs to the corporation" and the board that must decide whether to pursue the claim. 783 A.2d at 546-47.[15]

---

[15] The demand requirement also constitutes "a 'form of alternate dispute resolution,' that requires the stockholder to exhaust 'his intracorporate remedies'" rather than seek "immediate recourse to litigation." <u>Rales</u>, 634 A.2d at 935 (quoting <u>Aronson v. Lewis</u>, 473 A.2d 805, 811-12 (Del. 1984), <u>overruled on other grounds by</u> <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000)); <u>see also</u> <u>Aronson</u>, 473 A.2d at 912. The demand requirement also "deter[s] costly, baseless suits by creating a screening mechanism to eliminate claims where there is only a suspicion expressed solely in conclusory terms . . . ." <u>Grimes v. Donald</u>, 673 A.2d 1207, 1217 (Del. 1996), <u>overruled</u>
<em>(cont'd)</em>

As a result, and as the Delaware Supreme Court described in <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000):

> [T]here is a very large – though not insurmountable – burden on stockholders who believe they should pursue the remedy of a derivative suit instead of selling their stock or seeking to reform or oust these directors from office.
>
> Delaware has pleading rules and an extensive judicial gloss on those rules that must be met in order for a stockholder to pursue the derivative remedy. Sound policy supports these rules. . . .

<u>Id.</u> at 267. "Generalities, artistically ambiguous, all-encompassing conclusory allegations are not enough. What is required are pleadings that are specific and, if conclusory, supported by sufficient factual allegations that corroborate the conclusion and support the proposition that demand is futile." <u>Richardson v. Graves</u>, 1983 WL 21109, at *2 (Del. Ch. Mar. 7, 1983).

**B.     Plaintiffs Have Not Pleaded The Particularized Facts Required By Delaware Law To Excuse Their Failure To Make A Demand On Pfizer's Board**

Plaintiffs concede that they did not make a pre-litigation demand prior to commencing this action, contending instead that demand is excused as "futile." (Compl. ¶ 174.)

Delaware courts have set forth two tests for determining demand futility: the "<u>Aronson</u>" test and the "<u>Rales</u>" test. In cases where board decisions are at issue, whether demand is excused is governed by the <u>Aronson</u> test, pursuant to which "<u>particularized facts</u>" must be alleged that "raise a reasonable doubt as to (i) director disinterest or independence or (ii) whether the directors exercised proper business judgment in approving the challenged transaction." <u>Grobow</u>, 539 A.2d at 186 (emphasis added). In cases "where directors are sued derivatively because they have failed to do something (such as a failure to oversee subordinates)," a different test – the <u>Rales</u> test – applies, because no business judgment has been made, and thus the second prong of

_____

*(cont'd from previous page)*

on other grounds by <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000). For all these reasons, a motion to dismiss for failure to make demand "is not intended to test the legal sufficiency of the plaintiff's substantive claim. Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." <u>Levine v. Smith</u>, 1989 WL 150784, at *5 (Del. Ch. Nov. 27, 1989), <u>aff'd</u>, 591 A.2d 194 (Del. 1991).

the Aronson test is inapplicable.  Rales, 634 A.2d at 934 n.9; see also Wood v. Baum, 953 A.2d 136, 140 (Del. 2008) (the Rales test "applies where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties").  Under both the Aronson and the Rales tests, any disqualifying interest or lack of independence must afflict at least half of the corporation's directors (when there are an even number of directors).  See Grimes, 673 A.2d at 1216; Rales, 634 A.2d at 930, 936-37.

Here, while Plaintiffs assert in conclusory fashion that the Board must have "affirmatively adopted, implemented and condoned" Pfizer's allegedly improper marketing practices (Compl. ¶ 174), the Complaint is devoid of particularized facts suggesting that the Pfizer Board actually made such a decision.  Since Plaintiffs do not and cannot challenge any specific decision by Pfizer's Board, but rather, allege that Pfizer's directors failed to oversee subordinates, Rales applies.  See, e.g., Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995) (applying Rales standard, notwithstanding the plaintiff's conclusory allegations of malfeasance, because "plaintiff does not challenge any specific board action that approved or ratified these alleged wrongdoings").[16]  As explained below, the Complaint fails to satisfy the Rales test.

## C.    Demand Is Not Excused With Respect To Plaintiffs' Claims

In order to excuse demand under Rales, Plaintiffs must allege with particularity facts that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  634 A.2d at 934; see also Weill, 2005 WL 2298224, at *3.  Interestedness, for purpose

---

[16]    See also Mitzner v. Hastings, 2005 WL 88966, at **1, 4 (N.D. Cal. Jan. 14, 2005) (applying Rales where the complaint alleged that directors "caused the Company's shares to trade at artificially inflated levels by issuing false and misleading statements" because "no specific board action is challenged"); In re Morgan Stanley Deriv. Litig., 542 F. Supp. 2d 317, 322 (S.D.N.Y. Mar. 27, 2008) (applying Rales where there were no "particularized allegations" as to when any board member had knowledge of the alleged wrongdoing, and no allegation that the board "actively or purposefully made a decision to omit the information" from a proxy statement).

of demand futility, means financial interest on the part of each director. See <u>Grobow</u>, 539 A.2d at 188. The Complaint does not satisfy this exacting standard.

### 1.    The Director Defendants Would Be Disinterested In A Demand

#### a.    The Complaint Does Not Allege Particularized Facts Demonstrating That The Director Defendants Confront A "Substantial Likelihood" Of Liability With Respect To Plaintiffs' Failure Of Oversight Claims

The Complaint is insufficient to excuse demand under <u>Rales</u> because it lacks particularized facts that could establish that at least half of the Director Defendants are interested or lack independence. To establish that directors are interested in challenged conduct, a shareholder "must plead particularized facts demonstrating either a [material] financial interest or entrenchment." <u>Grobow</u>, 539 A.2d at 188.[17] Here, Plaintiffs allege that the Director Defendants are interested because they confront a "substantial likelihood" of personal liability in connection with Pfizer's alleged misconduct. (Compl. ¶¶ 178-82.) Under Delaware law, a "mere threat" of personal liability does not render a director interested. See <u>Aronson</u>, 473 A.2d at 815. Rather, "[d]irectors who are sued for failure to oversee subordinates have a disabling interest when 'the potential for liability is not "a mere threat" but instead may rise to "a substantial likelihood."'" <u>In re Baxter Int'l, Inc. S'holders Litig.</u>, 654 A.2d 1268, 1269 (Del. Ch. 1995) (citation omitted).

Plaintiffs confront an extremely difficult burden to plead a "substantial likelihood" of liability in connection with oversight claims. Such claims are governed by the standard set forth in <u>Caremark</u>, where the Delaware Court of Chancery stated:

> Generally where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation . . . <u>only a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists –</u>

---

[17]  To establish a lack of independence, a shareholder must plead that the directors are dominated or otherwise controlled by or beholden to an individual or entity interested in the conduct or transaction at issue. See <u>Grobow</u>, 539 A.2d at 189; <u>Aronson</u>, 473 A.2d at 815-16.

> will establish the lack of good faith that is a necessary condition to liability. Such a test of liability – lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight – is quite high.

In re Caremark, 698 A.2d at 971 (emphasis added). This standard reflects the principle that "the duty to act in good faith to be informed cannot be thought to require directors to possess detailed information about all aspects of the operation of the enterprise. Such a requirement would simpl[y] be inconsistent with the scale and scope of efficient organization size in this technological age." Id.; see also AmSouth, 911 A.2d at 368 (same).

Caremark establishes "a standard for liability for failures of oversight that requires a showing that the directors breached their duty of loyalty by failing to attend to their duties in good faith. Put otherwise, the decision premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs." Guttman v. Huang, 823 A.2d 492, 506 (Del. Ch. 2003). Thus, in order to plead an oversight claim, a complaint must contain "well-pleaded facts to suggest a reasonable inference that a majority of the directors consciously disregarded their duties over an extended period of time." David B. Shaev Profit Sharing Acct. v. Armstrong, No. Civ. A. 1449-N, 2006 WL 391931, at *1 (Del. Ch. Feb. 13), aff'd, 911 A.2d 802 (Del. 2006).

The stringent pleading standard established in Caremark was adopted by the Delaware Supreme Court in AmSouth. In that case, plaintiffs brought derivative claims asserting that AmSouth's directors breached fiduciary duties by failing to prevent AmSouth from violating various anti-money laundering regulations, which resulted in AmSouth paying $40 million in fines and $10 million in civil penalties. The complaint alleged that demand was excused under Rales because a majority of the AmSouth board "face[d] a substantial likelihood of liability" for failing to prevent this conduct. 911 A.2d at 367.

In rejecting that argument, the Delaware Supreme Court first observed that "[c]ritical to this demand excused argument is the fact that the directors' potential personal liability depends upon whether or not their conduct can be exculpated by the section 102(b)(7) provision

contained in the AmSouth certificate of incorporation.  Such a provision can exculpate directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty."  Id.  Because AmSouth shareholders (like Pfizer's shareholders here) had adopted such a provision, the directors (like the Director Defendants here) could only be rendered "interested" due to the likelihood of liability if the complaint pled a failure to act in good faith or in breach of the duty of loyalty.  Id.

The AmSouth opinion held that in order to plead such a Caremark claim – and likewise to excuse demand based upon director interest due to a "substantial likelihood of liability" in connection with such a claim – a complaint must plead that:

> (a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.  In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.  Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith.

Id. at 370 (emphasis added; original emphasis omitted); see also In re Pfizer Inc. Deriv. Sec. Litig., 307 Fed. Appx. 590, 594 (2d Cir. 2009) (Summary Order) (demand futility "requires both a showing of knowledge and that the knowledge created an affirmative duty to act, which the directors consciously ignored").

King v. Baldino, 648 F. Supp. 2d 609 (D. Del. 2009), is instructive.  In that case, the plaintiff brought a derivative action on behalf of the pharmaceutical company Cephalon against the company's board of directors.  The complaint alleged that the company's directors breached their fiduciary duties by failing to prevent Cephalon employees from engaging in illegal off-label promotion of several drugs, which resulted in Cephalon paying a $425 million settlement with the government.  Id. at 610-11.  The court, applying AmSouth, held that plaintiff failed to plead particularized facts demonstrating that Cephalon's directors faced a "substantial likelihood of personal liability" for breach of the duty of oversight.  The court stated that "the complaint

specifically pleads the existence of Cephalon's oversight mechanism in noting that [three directors] serve on the Board's Audit Committee and that the responsibilities of that committee include 'ensuring compliance with . . . applicable laws and regulations.'" Id. at 622. Accordingly, "the complaint fails to demonstrate an utter failure to implement any reporting or information system or controls." Id. at 623. The court further held that "the plaintiff fails to plead particularized facts demonstrating that the Board was aware of the actions of the 'principal wrongdoers' and consciously failed to act in light of that knowledge." Id. at 626.

Likewise, in Guttman, the shareholder plaintiffs sought to hold the company's board responsible for alleged lack of oversight of company accounting systems, which resulted in the issuance of false financial statements that were later corrected through a restatement. 823 A.2d at 505-06. In dismissing the complaint for failure to adequately plead that demand was excused, the court held that the complaint was:

> empty of the kind of fact pleading that is critical to a Caremark claim, such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation.

Id. at 507 (emphasis added). The court noted that "the complaint [did] not plead a single fact suggesting specific red – or even yellow – flags were waved at the outside directors." Id. Significantly, Delaware courts have emphasized that "red flags" "'are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer.'" Wood, 953 A.2d at 143 (citation omitted).

In this case, the Complaint contains no allegations, particularized or otherwise, that could satisfy either method of pleading a Caremark claim. Rather, as in Baldino and Guttman, Plaintiffs have not pled a "substantial likelihood" of personal liability on their Caremark claim in light of the extensive monitoring and reporting systems in place at Pfizer, and the absence of "red flags" of systemic misconduct.

21

### i.    The Complaint Concedes That The Board Implemented Monitoring Systems And Controls

The Complaint does not allege "an utter failure to attempt" to put monitoring systems in place. Instead, as described above, see pgs. 10-13, supra, the Complaint describes the rigorous monitoring functions implemented by Pfizer's Board, both before and after Pfizer entered into the CIA in 2004. The Complaint pleads, for example, that the Board maintains several standing committees to monitor aspects of Pfizer's business, including an Audit Committee, which is responsible for oversight of and reporting to the Board regarding the Company's compliance with law (Compl. ¶¶ 72-73), and the Corporate Governance Committee, which is responsible for reviewing the performance of senior executives, monitoring issues related to corporate social responsibility, and reporting to the Board regarding those issues (id. ¶ 74). The Complaint also concedes that Pfizer maintained a disclosure program "to enable employees to report violations of the federal health care law and FDA regulations" (id. ¶ 114), employed a Compliance Officer who makes "periodic (at least semi-annual) reports regarding compliance matters directly to the Board," distributed a written Code of Conduct to all employees (id. at 116), and required that all officers certify they were in compliance with that Code (id.).[18]

As explained above, pursuant to the CIA, Pfizer implemented extensive monitoring and reporting systems specifically directed at its promotional and marketing activities. The Complaint thus pleads that Pfizer had monitoring and compliance systems in place, and Delaware law does not allow shareholders to second guess the directors' business judgment about the type of controls needed. See In re Caremark, 698 A.2d at 970 ("Obviously the level of

---

[18]    Pursuant to the 2004 CIA, Pfizer implemented the following additional compliance policies and procedures: (i) the Compliance Officer regularly reports to the Board or a designated committee thereof regarding compliance matters; (ii) Pfizer maintains extensive training programs for its sales force, including regarding off-label promotion; (iii) Pfizer retains an Independent Review Organization to assist the Company in assessing and evaluating its compliance systems; and (iv) Pfizer maintains a Compliance Committee to oversee monitoring of internal and external audits and investigations. See pgs. 12-13, supra.

detail that is appropriate for [a corporate reporting and] information system is a question of business judgment" not subject to second guessing by shareholder plaintiffs).

### ii. The Complaint Does Not Plead That The Board Consciously Ignored Red Flags

Plaintiffs have not alleged particularized facts demonstrating that at least half of the Director Defendants knowingly failed to monitor information generated by Pfizer's systems and controls or otherwise consciously ignored "red flags" of wrongdoing. While Plaintiffs point to certain Pfizer promotional practices, allegations of such conduct by a corporation, in and of themselves, are not sufficient to demonstrate a substantial likelihood of liability on the part of directors. Indeed, courts repeatedly have refused to excuse demand in the absence of particularized allegations demonstrating that directors ignored "red flags" of such corporate misconduct. See King, 648 F. Supp. 2d at 625-26; In re E.F. Hutton Banking Pracs. Litig., 634 F. Supp. 265, 271-72 (S.D.N.Y. 1986) (allegation that the company pled guilty to 2,000 incidents of mail and wire fraud did not excuse demand, where plaintiffs "failed to allege a sufficient involvement on the part of a majority of Hutton's board to overcome 'the strong policy and practical advantages of favoring exhaustion of intracorporate remedies'") (citation omitted); Graham v. Allis-Chalmers Mfg. Co., 188 A.2d 125, 127 (Del. 1963) (directors may not be held liable for failure to prevent employee wrongdoing unless they ignore "obvious danger signs of employee wrongdoing"); Halpert Enters., Inc. v. Harrison, 362 F. Supp. 2d 426, 432-33 (S.D.N.Y. 2005) (demand not excused on oversight claims because the complaint "offered no specific allegations suggesting that the directors knew of the nature of JPM Chase's dealings with Enron").

While Plaintiffs assert that the Board "consciously ignored" (i) notices from the FDA to Pfizer regarding alleged violations of the Food, Drug and Cosmetic Act (the "FDCA"), and (ii) internal complaints of improper marketing practices from former Pfizer employees who subsequently commenced *qui tam* actions against the Company, the Complaint is devoid of

allegations indicating when and how these alleged "red flags" were brought to the Board's attention, and how the Board responded.  Pursuant to the CIA, Pfizer's Chief Compliance Officer was required to make periodic reports regarding compliance matters to Pfizer's Board or a committee thereof.  There is no allegation regarding what relevant information, if any, concerning supposed off-label promotional practices was brought to the Board's attention, nor is there any allegation concerning the Board's response to any information so conveyed.  The absence of such an allegation is fatal to Plaintiffs' attempt to overcome the demand requirement.  See Louisiana Mun. Police Empls. Ret. Sys. v. Pandit, 2009 WL 2902587, at *8 (S.D.N.Y. Sept. 10, 2009) ("Pandit") (demand not excused because "even if Plaintiff had adequately alleged 'red flags,' Plaintiff has failed to proffer specific factual allegations regarding the individual directors' conduct in response to these alleged 'red flags'"); In re Intel Corp. Deriv. Litig., 621 F. Supp. 2d 165, 174 (D. Del. 2009) (demand not excused where plaintiff "fail[ed] to identify what the Directors actually knew about the 'red flags' and how they responded to them").

Plaintiffs' allegations regarding the existence of certain *qui tam* actions do not constitute a "red flag" on the additional ground that the complaints filed in these actions were filed under seal as required by 31 U.S.C. § 3730(b), and remained under seal until late August 2009.  See, e.g., Halper Decl., Ex. H (Order, dated August 31, 2009, in the action captioned United States ex rel. Blair Collins v. Pfizer Inc.).  In addition, the mere existence of litigation does not create a substantial likelihood of personal liability sufficient to excuse demand:

> [i]f the simple existence of a class action complaint and investigation by the SEC gave rise to the type of extreme indifference and failure to act that Abbott says creates enough of a likelihood of board member liability to justify a finding of demand futility, any board of any company with multiple operating units would constantly face liability. By the plaintiffs' own measure, CEC is a large corporation controlling more than 51 schools. The claims about misconduct in the Amended Complaint simply fail to establish a systematic lack of board oversight. To allow these claims to give rise to demand futility would significantly diminish the protections of the demand requirement for all large corporations, which likely have several lawsuits and employee claims pending at any given time.

<u>McSparran ex rel. Career Educ. Corp. v. Larson</u>, 2007 WL 684123, at *5 (N.D. Ill. Feb. 28, 2007).

Finally, Plaintiffs assert that Pfizer's settlement of the three government investigations discussed above, all of which involved conduct by Pharmacia or Warner-Lambert (prior to Pfizer's acquisition of those companies), constituted "red flags" that should have alerted the Board of systemic misconduct. (Compl. ¶ 151). Plaintiffs fail to explain how Pfizer's settlement of government investigations regarding alleged improper marketing <u>which did not relate to misconduct at Pfizer</u>, but rather related to promotional practices at Pharmacia and/or Warner-Lambert before they were acquired by Pfizer, could have constituted a "red flag" of wrongdoing years later within Pfizer.

Here, at most, the Complaint pleads that certain Pfizer employees engaged in improper marketing practices, not that the Director Defendants knowingly failed to discharge their fiduciary obligations. The Delaware Supreme Court emphasized this distinction in <u>AmSouth</u>:

> [W]ith the benefit of hindsight, the plaintiffs' complaint seeks to equate a bad outcome with bad faith. The lacuna in the plaintiffs' argument is a failure to recognize that the <u>directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both</u>.

911 A.2d at 373 (emphasis added). Thus, the allegations in the Complaint fall far short of excusing demand.

### b. Mere Membership On Certain Board Committees Does Not Establish A Substantial Likelihood Of Liability

Plaintiffs also assert in conclusory fashion that the Director Defendants who served on the Board's Audit and Corporate Governance Committees "must have" known about Pfizer's alleged off-label promotional practices solely based on their membership on such committees. (Compl. ¶¶ 189-93). For example, Plaintiffs allege that the members of the Board's Audit Committee "must have" known of these improper marketing activities because the Audit

Committee's charter gave responsibility to the members of that committee for oversight of Pfizer's compliance with laws, regulations and internal procedures. (Id. ¶ 189.)

The Delaware Supreme Court previously rejected this same argument as "contrary to well-settled Delaware law." Wood, 953 A.2d at 142-43 (rejecting as insufficient the mere assertion that the audit committee "should have been aware" of these problems, and dismissing the suit because "the plaintiff failed to allege with particularity any facts from which it can be inferred that particular directors knew or should have been on notice of alleged accounting improprieties"); see also Pandit, 2009 WL 2902587, at *10 (applying Delaware law and holding that plaintiff's allegations of board committee membership, and a "lengthy recitation of the duties and responsibilities enumerated in those committees' charters" did not plead that directors faced a substantial likelihood of personal liability for failure of oversight); Louisiana Mun. Police Empls. Ret. Sys. v. Blankfein, 2009 WL 1422868, at *7 (S.D.N.Y. May 19, 2009) (allegation that directors served on various board committees, and a "lengthy recitation of various Board committee governance principles" did not establish demand futility); Playford v. Lowder, 635 F. Supp. 2d 1303, 1309-10 (M.D. Ala. 2009) (argument that certain board members faced a substantial likelihood of liability because they served on certain board committees, "through which they knew or should have known that certain public statements were false or misleading," has been "routinely rejected by Delaware courts").

      **c.**      **The Complaint Does Not Allege Particularized Facts Demonstrating That The Director Defendants Confront A "Substantial Likelihood" Of Liability With Respect To Plaintiffs' Section 14(a) Claim**

Plaintiffs also assert that "all of the Director Defendants bear a substantial likelihood of liability arising from their violation of the federal securities laws in connection with their issuance of" allegedly false and misleading Proxy Statements in 2007, 2008 and 2009 (collectively, the "Proxy Statements"). (Compl. ¶ 195.) Plaintiffs assert that these "materially inaccurate and incomplete" Proxy Statements were used to obtain shareholder approval for two

types of action: (i) the election of directors to serve on Pfizer's Board, and (ii) the enactment of an Amended and Restated Pfizer Inc. 2004 Stock Plan (the "Restated Stock Plan"), which allegedly "authorized a $425,000,000 increase in the stock available for grants to executives, outside directors . . . and other Pfizer employees." (Id. ¶ 159). As discussed below, the allegations in the Complaint are insufficient to state a claim under Section 14(a). Thus, Plaintiffs have failed to adequately plead that the Director Defendants face a "substantial likelihood" of personal liability in connection with such a claim.

Section 14(a) is intended to prevent management from obtaining shareholder authorizations by way of deceptive or misleading proxy solicitations. See Kelley v. Rambus, Inc., 2008 WL 5170598, at *3 (N.D. Cal. Dec. 9, 2008). Such claims are governed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which provides that the complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B); see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 213 (S.D.N.Y. 2004) (pleading requirements imposed by the PSLRA apply to complaints alleging violations of Section 14(a)). In cases where the plaintiff alleges that defendants failed to disclose material information in a proxy statement, such an omission "'will violate [Section 14(a) and Rule 14a-9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading.'" In re Marsh & McLennan Cos. Sec. Litig., 536 F. Supp. 2d 313, 321 (S.D.N.Y. 2007) (quoting Resnik v. Swartz, 303 F.3d 147, 151 (2d. Cir. 2002)).

To adequately state a claim under section 14(a), a plaintiff must plead particularized facts demonstrating that: 1) the defendant made a material misrepresentation or omission in a proxy statement; 2) the defendant was at least negligent in making the misrepresentation or

27

omission; and 3) the misrepresentation or omission was an "essential link" in the accomplishment of a transaction proposed in the proxy solicitation. See Kelley, 2008 WL 5170598, at **3, 6; In re Elan Corp. Sec. Litig., 2004 WL 1305845, at *16 (S.D.N.Y. May 18, 2004). In addition, while "[t]here is no requirement in the Second Circuit that plaintiffs allege fraud in order to state a cause of action pursuant to Section 14(a) . . . [w]hen plaintiffs assert Section 14(a) claims grounded in allegedly fraudulent conduct, they are subject to heightened pleading requirements" of alleging the fraud with particularity, "even if they disclaim reliance on a fraud theory." In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) (citations omitted); see also In re Marsh & McLennan, 536 F. Supp. 2d at 320 (Section 14(a) claims which "sound in fraud" are governed by Rule 9(b)).

Here, Plaintiffs' claims plainly "sound in fraud," and are therefore governed by the stringent pleading standards imposed by Rule 9(b) of the Federal Rules of Civil Procedure. See, e.g., Compl. ¶ 1 (characterizing the misconduct alleged in the Complaint as "fraudulent and criminal promotion of at least 13 different regulated drugs") (emphasis added). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Regardless of whether Plaintiffs' claims are judged by the pleading standard imposed by Rule 9(b), the Complaint fails to plead with the detail required by the PSLRA to state a claim under Section 14(a).

### i.   Plaintiffs' Claims Regarding The 2007 And 2008 Proxies Are Moot

Section 14(a) claims alleging misrepresentations in connection with obtaining shareholder approval for the election of directors are rendered moot and must be dismissed where the term of office for those directors has expired. See GE Co. v. Cathcart, 980 F.2d 927, 934 (3d Cir. 1992) (dismissing shareholders' action under Section 14(a) of the Exchange Act because the directors' terms had expired, rendering the action moot); In re Westinghouse Sec. Litig., 832 F. Supp. 989, 1000 (W.D. Pa. 1993) (same); Weill, 2005 WL 2298224, at *5 (same).

Here, the Complaint asserts that the Director Defendants violated Section 14(a) in connection with soliciting proxies for the election of directors in 2007 and 2008. (Compl. ¶159.) The one-year term of office for the individuals who were elected to the Pfizer Board in 2007 and 2008 has since expired. Thus Plaintiffs' Section 14(a) claims related to the 2007 and 2008 Proxy Statements are moot, and must be dismissed.

> **ii.    The Complaint Does Not Allege That The Director Defendants Failed To Disclose Any Information They Were Required To Disclose In The 2009 Proxy**

An alleged omission "'will violate [Section 14(a) and Rule 14a-9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading.'" In re Marsh & McLennan, 536 F. Supp. 2d at 321 (quoting Resnik, 303 F.3d at 151).

Here, the Complaint does not and cannot allege that the Director Defendants omitted any material information from the 2009 Proxy Statement that SEC regulations required it to disclose. In fact, Pfizer's 2006 and 2007 Financial Reports, which were attached to and incorporated by reference into the 2007 and 2008 Proxy Statements, respectively, disclosed that the U.S. Department of Justice was investigating Pfizer's promotion of certain drugs. See Halper Decl., Ex. I (2007 Proxy Statement), 2006 Financial Report at 73; Ex. J (2008 Proxy Statement), 2007 Financial Report at 76-77.[19] In addition, Pfizer's 2008 Financial Report, which was attached to and incorporated by reference in Pfizer 2009 Proxy Statement, disclosed that Pfizer had recorded a charge of $2.3 billion in connection with "enter[ing] into an agreement in principle with the U.S. Department of Justice to resolve the previously reported investigation regarding allegations

---

[19]    See In re SeaChange Int'l, Inc., 2004 WL 240317, at *8 (D. Mass. Feb. 6, 2004) (company adequately disclosed the nature of material litigation even though the proxy solicitation "merely described the litigation in very broad terms," because the company "was not obligated to predict the outcome or estimate the impact of the . . . litigation"); Freer v. Mayer, 796 F. Supp. 89, 92 n.6 (S.D.N.Y. 1992) (rejecting plaintiff's claim that the proxy failed to disclose material information regarding ongoing litigation because the omitted information was "not significant to a reasonable investor in deciding how to vote").

of past off-label promotional practices concerning Bextra, as well as certain other open investigations." See Halper Decl., Ex. B (2009 Proxy Statement), 2008 Financial Report at 56.[20] Thus, prior to voting to approve both the election of the Director Defendants to their current terms and the Restated Stock Plan in connection with the 2009 Proxy Statement, Plaintiffs were unquestionably aware that Pfizer had agreed to settle these investigations for $2.3 billion.

Moreover, the Director Defendants were not required to accuse themselves of mismanagement or other wrongdoing. See Harrison v. Rubenstein, 2007 WL 582955, at *13 (S.D.N.Y. Feb. 26, 2007) (federal securities laws do not require corporation "'to direct conclusory accusations at itself or to characterize its behavior in a pejorative manner in its public disclosures'") (citation omitted); In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("federal securities laws do not require a company to accuse itself of wrongdoing"). "Section 14(a) does not require that . . . uncharged, unadjudicated charges of mismanagement be disclosed." In re American Exp. Co. S'holder Litig., 840 F. Supp. 260, 269 (S.D.N.Y. 1993), aff'd, 39 F.3d 395 (2d Cir. 1994); see also In re Marsh & McLennan, 536 F. Supp. at 322; In re Browning-Ferris Indus., Inc. S'holder Litig., 830 F. Supp. 361, 370 (S.D. Tex. 1993), aff'd sub nom. Cohen v. Ruckelshaus, 20 F.3d 465 (5th Cir. 1994).[21]  Accordingly, Plaintiffs cannot now claim that the Director Defendants failed to disclose any information they were required by law to disclose.

The Complaint also fails to plead how the alleged nondisclosure of the Company's past off-label promotional practices renders any factual statement contained in the 2009 Proxy

---

[20]  The Complaint concedes these Financial Reports "formed part of the Proxy Statements and were a critical element of the solicitation embodied in the Proxy Statements." (Compl. ¶ 158.)

[21]  Significantly, none of the Director Defendants, nor any of Pfizer's 81,000 employees, was ever charged with any misconduct in connection with the Department of Justice investigation that was resolved in 2009.  Previously, several employees were charged with destroying documents.  These charges were based on information voluntarily provided by Pfizer to applicable government agencies.

Statement regarding either the directors standing for election or the Restated Stock Plan false or misleading. See Resnik, 303 F.3d at 151-54 (dismissing section 14(a) claim because the SEC did not require disclosure of the omitted information and the plaintiff was unable to credibly identify any statement in the proxy solicitation that was rendered false or misleading because of the nondisclosure); In re Marsh & McLennan., 536 F. Supp. 2d at 323 (dismissing Section 14(a) claim where plaintiff "d[id] not identify any particular statements regarding the nominee directors that are made false or misleading by the identified omissions").

### iii. Plaintiffs' Conclusory Allegations That Alleged Omissions In The Proxy Statements Indirectly Led To Mismanagement Do Not State A Section 14(a) Claim

A complaint alleging a violation of Section 14(a) must plead that the proxy statement was an "essential link" in the accomplishment of a loss-causing transaction. See Kelley, 2008 WL 5170598, at **3, 6; In re Elan, 2004 WL 1305845, at *16. Plaintiffs assert that the alleged misstatements in the 2009 Proxy Statement were an "essential link" in obtaining shareholder approval for the election of the Director Defendants, which allowed Pfizer's alleged off-label promotional practices to continue. (Compl. ¶ 199.) However, courts consistently have rejected such vague allegations that "'omissions in proxy materials, by permitting directors to win re-election, indirectly led to financial loss through mismanagement'" as insufficient to plead the "essential link" element of Section 14(a). In re Affiliated Computer Servs. Deriv. Litig., 540 F. Supp. 2d 695, 704 (N.D. Tex. 2007) (quoting GE, 980 F.2d at 933); Weill, 2005 WL 2298224, at *5 ("Plaintiff's section 14(a) claim fails because the wrongs flowing from the allegedly false and misleading disclosure are improper governance and injury resulting from the undisclosed transactions, rather than from any particular action taken by shareholders on the basis of proxy statements").

  **iv. The Complaint Fails To Plead Fraud With The**
    **Particularity Required By Rule 9(b) And The PSLRA**

As noted above, where a Section 14(a) claim "sounds in fraud," Rule 9(b) requires the plaintiff to plead the circumstances surrounding the alleged fraud "with particularity." See In re Marsh & McLennan, 536 F. Supp. 2d at 320. Particularity, in the context of Rule 9(b), means pleading "'the who, what, where, when and how: the first paragraph of any newspaper story.'" Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc., 2004 WL 51224, at *3 (S.D.N.Y. Jan. 9, 2004) (citation omitted). Thus, in order to comply Rule 9(b), the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

To satisfy Rule 9(b) with respect to misrepresentations regarding a company's financial condition, the complaint must identify the specific statements alleged to be misleading and the precise impact of those misstatements on the reported financial statements. "'[A] general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation [to satisfy Rule 9(b)].'" Gross v. Summa Four, Inc., 93 F.3d 987, 996 (1st Cir. 1996) (quoting Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 362 n.5 (1st Cir. 1994)) (emphasis added); In re Parmalat Sec. Litig., 479 F. Supp. 2d 332, 340 (S.D.N.Y. 2007) (general allegations that defendants "did not disclose their true financial condition to Bank of America" insufficient under Rule 9(b)).

Here, while Plaintiffs generally allege that the Director Defendants made misrepresentations or omissions regarding "the financial and operating metrics disclosed in the Proxy Statements," the Complaint is devoid of allegations: (i) identifying the specific statements alleged to be misleading; and (ii) explaining the precise impact of these alleged misrepresentations on Pfizer's financial statements. Thus, Plaintiffs have failed to plead their Section 14(a) claim with the particularity required by Rule 9(b).

### d.    The Director Defendants Are Rendered Disinterested By Pfizer's Certificate Of Incorporation

As discussed below, Pfizer's shareholders, acting pursuant to Delaware law, have adopted a provision in Pfizer's Certificate of Incorporation that exempts Pfizer's directors from personal liability for monetary damages in cases such as this one that are based on allegations of negligence or gross negligence.  See Halper Decl., Ex. C (Restated Certificate of Incorporation of Pfizer Inc.), Article Seventh, Paragraph 14.  This provision is dispositive of the disinterest of Pfizer's directors because Plaintiffs contend that the Director Defendants are interested on the ground that they purportedly face a "substantial likelihood of liability" in connection with the misconduct alleged in the Complaint.  (Compl. ¶¶ 178-82.)

Under Delaware law, "[w]hen the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption."  In re Baxter, 654 A.2d at 1270; see also Wood, 953 A.2d at 141 ("Where directors are contractually or otherwise exculpated from liability . . . 'then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim . . . based on particularized facts'") (citation omitted; emphasis in original); In re Pfizer, 307 Fed. Appx. at 593 (same).  As explained in Point II, the alleged wrongdoing here does not "fall[] outside the exemption" created by Pfizer's charter, and Pfizer's Directors accordingly are "not disable[d] . . . from considering a demand fairly."  In re Baxter, 654 A.2d at 1270.

### e.    Conclusory Allegations Of The Directors' Purported Motive To Avoid A Suit That Would Reveal Additional Wrongdoing Do Not Render Them Interested

Plaintiffs assert that the Director Defendants "are likewise conflicted from and unable to pursue the Company's claims against the Executive Defendants" because "[a]ny effort to directly prosecute such claims against the Executive Defendants for their direct roles in the off-label marketing and other marketing improprieties carried out in Pfizer's name would necessarily

expose the Board's own culpability for the very same conduct." (Compl. ¶ 185.) Such allegations have been repeatedly rejected as "a slightly altered version of the discredited refrain – 'you can't expect directors to sue themselves.'" Seminaris, 662 A.2d at 1355 (citation omitted); see also Kernaghan v. Franklin, 2008 WL 4450268, at *7 (S.D.N.Y. Sept. 29, 2008) (same); In re Pozen S'holders Litig., 2005 WL 3035783, at *11 (N.C. Super. Ct. Nov. 10, 2005) (demand not excused under Delaware law by allegation that directors would not authorize suit because it "would open the directors up to future civil litigation for securities laws violations and would harm them in the class actions currently pending in federal district court").

## POINT II

### THE DUE CARE CLAIMS AGAINST PFIZER'S PRESENT AND FORMER DIRECTORS SHOULD BE DISMISSED PURSUANT TO PFIZER'S CHARTER

The claims in the Complaint for breach of fiduciary duty (including the duty of disclosure) also are subject to dismissal as to the Director and Former Director Defendants on a second ground – the adoption by Pfizer's shareholders, acting pursuant to Section 102(b)(7) of the Delaware General Corporation Law, of a provision in Pfizer's Certificate of Incorporation eliminating the possibility of director personal liability in cases such as this one.

Section 102(b)(7), enacted in 1986, permits shareholders to adopt Certificate of Incorporation provisions "eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director," with the exception of liability (i) for breach of the director's "duty of loyalty to the corporation or its stockholders," (ii) for "acts or omissions not in good faith," or that "involve intentional misconduct or a knowing violation of law," (iii) under Del. Gen. Corp. Law § 174, which prohibits unlawful payments of dividends and unlawful stock purchases and redemptions, and (iv) for "any transaction from which the director derived an improper personal benefit." Del. Code Ann. tit. 8, § 102(b)(7); see also Emerald Partners v. Berlin, 787 A.2d 85, 90 (Del. 2001) ("[f]ollowing the enactment of Section 102(b)(7), the shareholders of many Delaware

corporations approved charter amendments containing these exculpatory amendments with full knowledge of their import").

In 1987, Pfizer's shareholders voted to provide Pfizer's directors with the full protection allowed by Section 102(b)(7), by amending Article Seventh, Paragraph 14 of Pfizer's charter, which now provides:

> [t]he liability of the Corporation's Directors to the Corporation or its shareholders shall be eliminated to the fullest extent permitted by the Delaware General Corporation Law as amended from time to time.  No amendment to or repeal of this paragraph (14) of Article Seventh shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

See Halper Declaration, Ex. C (Pfizer Restated Certificate of Incorporation), at 33-34.

Delaware courts repeatedly have held that where a certificate of incorporation contains a provision eliminating director liability for alleged breaches of fiduciary duty pursuant to Section 102(b)(7), a complaint alleging a breach of fiduciary duty that does not implicate any of the four exceptions in Section 102(b)(7) must be dismissed as a matter of law.  See, e.g., Malpiede v. Townson, 780 A.2d 1075, 1092-93 (Del. 2001) (affirming dismissal of plaintiffs' due care claim pursuant to Section 102(b)(7)); McPadden v. Sidhu, 964 A.2d 1262, 1274-75 (Del. Ch. 2008) (granting motion to dismiss where alleged misconduct only breached the duty of care and "this violation is exculpated by the Section 102(b)(7) provision in the Company's charter"); Laties v. Wise, 2005 WL 3501709, at *2 (Del. Ch. Dec. 14, 2005) (dismissing complaint pursuant to Section 102(b)(7) charter provision where the complaint did not assert bad faith, intentional misconduct, or knowing violation of law).

Here, the allegations in the Complaint at most implicate the duty of care, not the duty of loyalty (which requires that directors refrain from engaging in self-dealing transactions and receiving personal benefits that are not received by other shareholders) or the duty of good faith (which requires that that directors refrain from, among other things, acting with a purpose other than that of advancing the best interests of the corporation, and prohibits directors from failing to

act in the face of a known duty to act).  See Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361-62 (Del. 1993), modified, 636 A.2d 956 (Del. 1994); AmSouth, 911 A.2d at 369.  For example, the Complaint does not plead that the Director Defendants or Former Director Defendants engaged in insider trading, or otherwise acted to advance their own interests, to the detriment of Pfizer or its shareholders.  Because the Complaint plainly does not plead a breach of the duty of loyalty or good faith, the claims against the Director Defendants and Former Director Defendants for breach of fiduciary duty (including the duty of disclosure) must be dismissed as a matter of law pursuant to Article Seventh, Paragraph 14 of Pfizer's Certificate of Incorporation.  See Malpiede, 780 A.2d at 1094-95 (dismissing complaint under Section 102(b)(7) where the plaintiff failed to "allege well-pleaded facts" which stated a "loyalty violation or other violation falling within the exceptions to the Section 102(b)(7) exculpation provision"); Zirn v. VLI Corp., 681 A.2d 1050, 1062 (Del. 1996) (directors were shielded from liability for breach of the duty of disclosure by Section 102(b)(7) charter provision where there was no allegation of bad faith).

## POINT III

### THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Rule 12(b)(6) provides that a complaint must be dismissed where it fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Following the United States Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a plaintiff does not adequately plead a claim for relief by merely alleging a "conceivable" basis for that claim.  Twombly, 550 U.S. at 570.  Rather, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss pursuant to Rule 12(b)(6).  Id.  When deciding such a motion to dismiss, the Court must accept as true all well-pled allegations in the Complaint.  See Funke v. Life Fin. Corp., 237 F. Supp. 2d 458, 465 (S.D.N.Y. 2002).  However, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim

incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001). Furthermore, the Court need not assume the truth of legal conclusions or unsupported factual inferences. See Debussy LLC v. Deutsche Bank AG, 2006 WL 800956, at *2 (S.D.N.Y. Mar. 29, 2006), aff'd, 242 Fed. Appx. 735 (2d Cir. 2007) (Summary Order).

## A.    The Complaint Does Not State A Claim For Breach Of The Duty Of Oversight Against The Director Defendants

As explained above, see Point I.C.1(a), supra, in order to plead a claim under Delaware law for breach of fiduciary duty based on an alleged failure of oversight, a plaintiff must allege that "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system of controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." AmSouth, 911 A.2d at 370 (emphasis in original). Since Plaintiffs concede (and Pfizer's proxy statements make clear) that Pfizer had extensive reporting systems and controls, and fail to plead that the Director Defendants received "red flags" requiring their attention and consciously ignored such warnings, Plaintiffs have failed to state a claim for breach of the duty of oversight – "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In re Caremark, 698 A.2d at 967.

## B.    The Complaint Does Not State A Claim For Breach Of The Duty Of Loyalty Or Good Faith By The Executive Defendants

As explained above, see Point II, supra, the duty of loyalty requires that directors and officers refrain from engaging in self-dealing transactions and receiving personal benefits not received by other shareholders. See Cede, 634 A.2d at 361-62. The duty of good faith in turn requires that that directors and officers refrain from, among other things, acting with a purpose other than that of advancing the best interests of the corporation, and prohibits directors and officers from failing to act in the face of a known duty to act. AmSouth, 911 A.2d at 369.

37

Here, the Complaint vaguely pleads that the Executive Defendants breached the duties of good faith and loyalty by "encouraging the widespread illegal marketing and promotion of off-label uses and dosages of Pfizer drugs, as well as the payment of illegal kickbacks to healthcare professionals to induce the prescription of Pfizer's drugs, and retaliation against employees who reported such illegal practices to management." (Compl. ¶ 217). These allegations plainly do not plead that the Executive Defendants engaged in self-dealing, or received any personal benefits in connection with Pfizer's alleged off-label promotional practices. Thus, the Complaint fails to plead a breach of the duty of loyalty.

The Complaint is similarly devoid of any allegation that that Executive Defendants acted with a purpose other than advancing the best interests of the Company. There are no <u>facts</u> demonstrating that the Executive Defendants were aware of, let alone encouraged or condoned, the misconduct alleged in the Complaint. Instead, as with the Director Defendants, the Complaint presumes that the Executive Defendants "must have known" about Pfizer's alleged off-label promotional practices, based entirely on their positions within the Company. <u>See</u>, <u>e.g.</u>, Compl. ¶ 78 ("due to their positions at the Company, Pfizer's chief medical officer, defendant Feczko, and Pfizer's president of pharmaceutical operations, defendant Read, must have known about the use of free samples to influence the prescribing behavior of doctors"), ¶ 79 (same). Such allegations are plainly insufficient to plead that the Executive Defendants failed to act in the face of a known duty and thus do not state a claim for breach of the duty of good faith.

## C.    The Complaint Does Not State A Claim For Breach Of The Duty Of Disclosure Against Any Of The Defendants

Directors of Delaware corporations have a duty to disclose all material information within the board's control when the board seeks shareholder action. <u>See</u> <u>Skeen v. Jo-Ann Stores, Inc.</u>, 750 A.2d 1170, 1172 (Del. 2000); <u>Wayne Cty. Empls.' Ret. Sys. v. Corti</u>, 2009 WL 2219260, at *8 (Del. Ch. Jul. 24, 2009). In order to successfully plead a breach of this duty, a complaint must: (1) allege that material facts were missing from a proxy statement; (2) identify

what those missing facts were; (3) explain why those missing facts are relevant to the decision shareholders were asked to make; and (4) explain how the omission caused the shareholders' injury.  See Loudon v. Archer-Daniels-Midland Co., 700 A.2d 135, 141 (Del. 1997).  Under Delaware law, as under Section 14(a), "'[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" Arnold v. Society for Sav. Bancorp, Inc., 1993 WL 183698, at *4 (Del. Ch. May 29, 1993) (citation omitted); see also Skeen, 750 A.2d at 1172.  Directors "need not engage in 'self-flagellation' in [their] disclosures and draw legal conclusions implicating [themselves] in a potential breach of fiduciary duty." Brinckerhoff v. Texas E. Prod. Pipeline Co., LLC, 2008 WL 4991281, at *7 (Del. Ch. Nov. 25, 2008).  As explained above, see Point I.C.1(c), supra, the Complaint fails to plead that any material misstatement or omission in the Proxy Statements, and Plaintiffs' disclosure claim therefore should be dismissed as a matter of law.

## D.  The Complaint Does Not State A Claim For Unjust Enrichment

To adequately plead a claim for unjust enrichment under Delaware law, a complaint must allege: (i) "an enrichment"; (ii) "an impoverishment"; (iii) "a relation between the enrichment and the impoverishment"; (iv) "the absence of justification"; and (v) "the absence of a remedy at law." Total Care Physicians, P.A. v. O'Hara, 2002 WL 31667901, at *10 (Del. Super. Ct. Oct. 29, 2002); see also Highland Legacy Ltd. v. Singer, 2006 WL 741939, at *7 n.73 (Del. Ch. Mar. 17, 2006) (same).  Here, the Complaint does not allege that the Individual Defendants received any enrichment at all in connection with the alleged off-label promotion of Bextra or other drugs.  Rather, the only compensation allegedly received by the Individual Defendants relates to their services as officers or directors, and Delaware law does not regard ordinary officer or director compensation with suspicion. See Silverzweig v. Unocal Corp., 1989 WL 3231, at *2 (Del. Ch. Jan. 19, 1989) ("the receipt of directors' fees does not constitute a disqualifying interest for purposes of the demand requirement"), aff'd, 561 A.2d 993 (Del. 1989); Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins, 2004

WL 1949290, at *17 (Del Ch. Aug. 24, 2004) (board's decision on executive compensation is "entitled to great deference"). Thus, Plaintiffs' unjust enrichment claim should be dismissed.

**E.    The Complaint Does Not State A Claim Under Section 14(a)**

As explained above, since Plaintiffs' claims related to the 2007 and 2008 Proxy Statements are moot, the Complaint does not identify any false or misleading statements in the Proxy Statements, and Plaintiffs have failed to plead that the Proxy Statements were an "essential link" in the accomplishment of a loss-causing transaction, see Point I.C.1(c), supra, Plaintiffs' Section 14(a) against the Director Defendants and the Former Director Defendants should be dismissed as a matter of law.

POINT IV

LEAD PLAINTIFF DOES NOT HAVE STANDING TO<br>PURSUE THE CLAIMS ASSERTED IN THE COMPLAINT

Section 327 of the Delaware Corporation Law provides that:

> In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law.

Del. Code Ann. tit. 8, § 327.  In addition to the "contemporaneous ownership" requirement imposed by Section 327, Delaware courts have also imposed a "continuous ownership" requirement, pursuant to which the plaintiff must remain a shareholder of the corporation throughout the course of the litigation.  See In re Merrill Lynch & Co., Sec., Deriv. & ERISA Litig., 597 F. Supp. 2d 427, 429 (S.D.N.Y. 2009) (Rakoff, J.).  Here, the Complaint fails to plead that Lead Plaintiff Amalgamated satisfies either of these requirements.  Amalgamated has already conceded that the LongView Funds purchased certain Pfizer shares, and that Amalgamated merely serves as the "trustee" for those Funds.  See supra at 5.  Thus, Amalgamated does not satisfy the contemporaneous and continuous ownership requirements, and therefore lacks standing to pursue the derivative claims asserted in the Complaint.

## CONCLUSION

For all of the reasons set forth above, Defendants' motion to dismiss the Complaint and each and every claim stated in the Complaint should be granted.

Dated:    New York, New York
          December 16, 2009

DLA PIPER LLP (US)                    CADWALADER, WICKERSHAM
                                      & TAFT LLP


By: _____/s/ Loren H. Brown_____    By: _____/s/ Gregory A. Markel_____
Loren H. Brown                        Dennis J. Block
1251 Avenue of the Americas           Gregory A. Markel
New York, New York 10020-1104         Jason M. Halper
Telephone: (212) 335-4846             One World Financial Center
                                      New York, New York 10281
Attorneys for Nominal Defendant Pfizer Inc.    (212) 504-6000

                                      Attorneys for Defendants Dennis A. Ausiello,
                                      Michael S. Brown, M. Anthony Burns, Robert
                                      N. Burt, W. Don Cornwell, William H. Gray
                                      III, Constance J. Horner, James M. Kilts,
                                      Jeffrey B. Kindler, George A. Lorch, Suzanne
                                      Nora Johnson, Dana G. Mead, Stephen W.
                                      Sanger, William C. Steere, Jr., William R.
                                      Howell, Stanley O. Ikenberry, Henry A.
                                      McKinnell, Ruth J. Simmons, Frank A.
                                      D'Amelio, Joseph M. Feczko, Douglas M.
                                      Lankler, Ian Read and Allen P. Waxman.