UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SHAREHOLDER DERIVATIVE
LITIGATION

No. 09 Civ. 7822 (JSR)

ECF Case

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED,
AMENDED AND VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

DLA PIPER LLP (US)
Loren H. Brown
1251 Avenue of the Americas
New York, New York  10020-1104
Telephone:  (212) 335-4846

Attorneys for Nominal Defendant
Pfizer Inc.

CADWALADER, WICKERSHAM & TAFT LLP
Dennis J. Block
Gregory A. Markel
Jason M. Halper
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000

Attorneys for Defendants Dennis A. Ausiello, Michael
S. Brown, M. Anthony Burns, Robert N. Burt, W. Don
Cornwell, William H. Gray III, Constance J. Horner,
James M. Kilts, Jeffrey B. Kindler, George A. Lorch,
Suzanne Nora Johnson, Dana G. Mead, Stephen W.
Sanger, William C. Steere, Jr., William R. Howell,
Stanley O. Ikenberry, Henry A. McKinnell, Ruth J.
Simmons, Frank A. D'Amelio, Joseph M. Feczko,
Doulas M. Lankler, Ian Read and Allen P. Waxman.

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.      THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS DEMONSTRATING THAT DEMAND IS EXCUSED ................................................. 3

    A.      The Rales Test, Not The Aronson Test, Applies Here ........................................... 3

    B.      The Conclusory Allegations In The Complaint Do Not Plead That The Director Defendants Face A Substantial Likelihood Of Liability.......................... 4

        1.      The Complaint Concedes The Existence Of Extensive Monitoring Systems And Controls ................................................................................. 5

        2.      The Complaint Does Not Plead Particularized Facts Demonstrating That The Director Defendants Consciously Ignored "Red Flags" Of Wrongdoing ............................................................................................. 6

II.     THE DUE CARE CLAIMS AGAINST PFIZER'S PRESENT AND FORMER DIRECTORS SHOULD BE DISMISSED................................................................... 11

III.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) .................... 12

    A.      The Complaint Does Not State A Section 14(a) Claim ....................................... 12

        1.      Plaintiffs Have Failed To Plead That The Proxy Statements Caused Any Loss To The Corporation ................................................................. 13

        2.      The Complaint Does Not Allege That The 2009 Proxy Statement Omitted Any Material Information ........................................................ 13

        3.      Plaintiffs Have Failed To Plead A Misstatement Or Omission With The Particularity Required By Rule 9(b) ................................................ 15

    B.      The Complaint Does Not State A Claim For Breach Of The Duty Of Loyalty Or Good Faith By The Executive Defendants .................................................... 16

    C.      The Complaint Does Not State A Claim For Breach Of The Duty Of Disclosure Against Any Of The Defendants....................................................... 17

    D.      The Complaint Does Not State A Claim For Unjust Enrichment ........................ 17

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES:

Cede & Co. v. Technicolor, Inc.,
   634 A.2d 345 (Del. 1993), modified,
   636 A.2d 956 (Del. 1994) ................................................................................. 16

Desimone v. Barrows,
   924 A.2d 908 (Del. Ch. 2007) ...................................................................... 9-10

Fink v. Weill,
   2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) .................................................. 13

GE Co. v. Cathcart,
   980 F.2d 927 (3d Cir. 1992) .............................................................................. 13

Grobow v. Perot,
   539 A.2d 180 (Del. 1988), overruled on other grounds by
   Brehm v. Eisner, 746 A.2d 244 (Del. 2000) ...................................................... 3

Guttman v. Huang,
   823 A.2d 492 (Del. Ch. 2003) ........................................................................... 11

In re Abbott Labs. Deriv. S'holders Litig.,
   325 F.3d 795 (7th Cir. 2001) ............................................................................... 8

In re Affiliated Computer Servs. Deriv. Litig.,
   540 F. Supp. 2d 695 (N.D. Tex. 2007) .............................................................. 13

In re American Exp. Co. S'holder Litig.,
   840 F. Supp. 260 (S.D.N.Y. 1993), aff'd,
   39 F.3d 395 (2d Cir. 1994) ................................................................................ 15

In re Caremark Int'l Inc. Deriv. Litig.,
   698 A.2d 959 (Del. Ch. 1996) ........................................................................ 5, 6

In re Citigroup, Inc. Sec. Litig.,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004) ............................................................... 15

In re Countrywide Fin. Corp. Deriv. Litig.,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) .............................................................. 7

In re Dow Chem. Co. Deriv. Litig.,
   2010 WL 66769 (Del. Ch. Jan. 11, 2010) ........................................................... 3

**PAGE(S)**

In re E.F. Hutton Banking Pracs. Litig.,
    634 F. Supp. 265 (S.D.N.Y. 1986) ...................................................................... 10

In re Elan Corp. Sec. Litig.,
    2004 WL 1305845 (S.D.N.Y. May 18, 2004)........................................................ 13

In re Finisar Corp. Deriv. Litig.,
    2009 WL 3072882 (N.D. Cal. Sept. 22, 2009)...................................................... 10

In re Intel Corp. Deriv. Litig.,
    621 F. Supp. 2d 165 (D. Del. 2009) ..................................................................... 10

In re Marriott Hotel Props. II Ltd. P'ship Unitholders Litig.,
    2000 WL 128875 (Del. Ch. Jan. 24, 2000).......................................................... 11

King v. Baldino,
    648 F. Supp. 2d 609 (D. Del. 2009) ..................................................................... 10

Loudon v. Archer-Daniels-Midland Co.,
    700 A.2d 135 (Del. 1997) ..................................................................................... 17

Louisiana Mun. Police Empls. Ret. Sys. v. Blankfein,
    2009 WL 1422868 (S.D.N.Y. May 19, 2009)........................................................ 8

Louisiana Mun. Police Empls.' Ret. Sys. v. Fertitta,
    2009 WL 2263406 (Del. Ch. July 28, 2009).......................................................... 3

Louisiana Mun. Police Empls. Ret. Sys. v. Pandit,
    2009 WL 2902587 (S.D.N.Y. Sept. 10, 2009)................................................. 8, 10

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993)................................................................................. 16

Mitzner v. Hastings,
    2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ............................................................ 4

Rales v. Blasband,
    634 A.2d 927 (Del. 1993) ................................................................................... 3, 4

Richardson v. Graves,
    1983 WL 21109 (Del. Ch. Mar. 7, 1983)........................................................... 4-5

Seminaris v. Landa,
    662 A.2d 1350 (Del. Ch. 1995) .............................................................................. 4

Stone ex rel. AmSouth Bancorp. v. Ritter,
    911 A.2d 362 (Del. 2006) ...........................................................................passim

**PAGE(S)**

Wood v. Baum,
    953 A.2d 136 (Del. 2008) .................................................................................. 7

**STATUTES & OTHER AUTHORITIES:**

17 C.F.R. § 229.401(f)(3)(ii) ........................................................................................ 15

Del. Code Ann. tit. 8, § 327 (2006) .......................................................................... 17

Dep't of Justice Press Release, available at
    http://www.justice.gov/opa/pr/2004/May/04_civ_322.htm ................................... 15

Pfizer 2004 Corporate Integrity Agreement, available at
    http://web.archive.org/web/20080407194049/oig.hhs.gov/fraud/cia/agreements/
    pfizer_5_11_2004.pdf ........................................................................................ 15

David Armstrong & Rachel Zimmerman,
    Pfizer to Settle Medicaid-Fraud Case: Drug Maker Agrees to Pay About $430 Million
    in Fines Over Neurontin Marketing, Wall St. J., May 13, 2004, available at
    http://online.wsj.com/article/SB108440099145209983.html?mod=googlewsj .................... 15

The Director Defendants, Former Director Defendants, Executive Defendants and nominal defendant Pfizer Inc. respectfully submit this memorandum of law in further support of their motion to dismiss the Complaint, and in reply to Plaintiffs' answering brief ("Plaintiffs' Brief" or "Pl. Br.").[1]

## PRELIMINARY STATEMENT

Defendants' Opening Brief ("Defs. Op. Br.") explained that the Complaint should be dismissed for three separate and independent reasons:

First, Plaintiffs lack standing to maintain a shareholder derivative suit on behalf of Pfizer because they failed to comply with the pre-litigation demand requirement under Delaware law.[2] As explained in Defendants' Opening Brief, the demand requirement reflects the fundamental tenet of corporate governance that corporate decisions – including the decision whether to institute litigation on behalf of the corporation – are made by directors selected by shareholders, and not by minority shareholders such as the Plaintiffs here.  A demand upon the Director Defendants – twelve of whom indisputably are outside, non-management, non-employee directors – is not excused under the governing Rales test because the Complaint contains no particularized facts establishing that a majority of the Director Defendants are interested or lack independence such that they would have been disabled from fairly considering a demand.  In response, Plaintiffs argue that the Complaint adequately pleads that demand is excused as futile because "Defendants consciously allowed Pfizer to engage in illegal activity" which "is not a protected business judgment," thereby excusing demand under a different test, the Aronson test. Pl. Br. at 16.  This argument, however, plainly applies the incorrect standard for evaluating Plaintiffs' claim of demand futility.  Since Plaintiffs do not and cannot challenge any specific

---

[1]  Capitalized terms used herein have the meanings set forth in Defendants' Opening Brief.

[2]  Delaware law applies here because Pfizer is incorporated in Delaware.  See Pl. Br. at 2.

1

decision by Pfizer's Board, but rather are suing the Defendants for failing to prevent alleged corporate wrongdoing, the <u>Rales</u> test applies, because the business judgment rule prong of <u>Aronson</u> upon which Plaintiffs rely is irrelevant. Plaintiffs' reliance on an incorrect demand futility analysis is hardly surprising because the Complaint clearly does not satisfy the governing <u>Rales</u> standard. <u>See</u> Point I.

 <u>Second</u>, the due care claims against Pfizer's current and former directors are barred by Article Seventh, Paragraph 14 of Pfizer's Certificate of Incorporation, which eliminates (with certain exceptions not applicable here) the liability of Pfizer's directors to Pfizer or its shareholders for monetary damages for breaches of fiduciary duty. <u>See</u> Defs. Op. Br. at 34-36. Plaintiffs assert that this charter provision is not applicable because the Complaint pleads that Pfizer's directors breached the duty of good faith by allowing Pfizer to engage in "repeated and pervasive violations of criminal laws." Pl. Br. at 38. But no facts are pled to support such a claim. Rather, the allegations in the Complaint plead that the Defendants should have but did not prevent alleged off-label promotion, which at most implicates the Defendants' duty of care, not the duty of good faith, which requires that directors refrain from, among other things, acting with a purpose other than that of advancing the best interests of the corporation. <u>See</u> <u>Stone ex rel.</u> <u>AmSouth Bancorp. v. Ritter</u>, 911 A.2d 362, 369 (Del. 2006) ("<u>AmSouth</u>"); Point II.

 <u>Third</u>, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The allegations in the Complaint do not adequately plead claims for violation of Section 14(a) of the Exchange Act, breach of fiduciary duty or unjust enrichment. <u>See</u> Point III.[3]

---

[3] In addition, Lead Plaintiff does not have standing to pursue the claims asserted in the Complaint because it does not own any Pfizer shares. <u>See</u> Defs. Op. Br. at 40 and page 17, <u>infra</u>.

**ARGUMENT**

I.    **THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS DEMONSTRATING THAT DEMAND IS EXCUSED**

    A.    **The Rales Test, Not The Aronson Test, Applies Here**

As explained in Defendants' Opening Brief (at 16-17), Delaware courts have announced two tests for determining whether the "extraordinary conditions" required to excuse demand are present in any particular case: the Aronson test and the Rales test.  See Rales v. Blasband, 634 A.2d 927, 933 (Del. 1993).  Plaintiffs recognize that the Aronson test applies only where board decisions are at issue, but nonetheless contend that Aronson governs here because the Director Defendants "consciously caused and allowed Pfizer to engage in illegal activity."  Pl. Br. at 16. According to Plaintiffs, demand is excused under Aronson because director approval of illegal activity cannot be a proper exercise of business judgment.  Id. at 16-18.[4]

As Plaintiffs concede, however, Aronson only governs where affirmative board decisions are at issue.  See Rales, 634 A.2d at 933 ("[t]he essential predicate for the Aronson test is the fact that a **decision** of the board of directors is being challenged in the derivative suit") (emphasis in original).  For example, courts apply Aronson in derivative actions challenging mergers or other transactions which require board approval.  See In re Dow Chem. Co. Deriv. Litig., 2010 WL 66769, at *6 (Del. Ch. Jan. 11, 2010) ("Aronson standard clearly applies to plaintiffs' claims arising from the board's approval of the R & H merger"); Louisiana Mun. Police Empls.' Ret. Sys. v. Fertitta, 2009 WL 2263406, at *9 (Del. Ch. July 28, 2009) (applying Aronson to board's decision to terminate merger).

---

[4]  See Grobow v. Perot, 539 A.2d 180, 186 (Del. 1996) (demand excused under Aronson only where "particularized facts" raise a reasonable doubt as to "(i) director disinterest or independence or (ii) whether the directors exercised proper business judgment in approving the challenged transaction"), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

While Plaintiffs repeatedly assert in their Brief that the Director Defendants made a "conscious decision" to authorize Pfizer to engage in off-label promotional practices, the Complaint is devoid of any particularized facts supporting such a claim. For example, the Complaint does not and cannot allege when such a hypothetical decision was made, how the directors voted on such a non-existent decision, or what information was presented to the Board in connection with making that "decision." In fact, Plaintiffs have not and cannot identify a specific decision by Pfizer's Board of Directors to authorize the alleged off-label promotional practices at issue in the Complaint, because no such decision was ever made. Rather, Pfizer's directors are sued here derivatively because they allegedly failed to do something, i.e., prevent Pfizer from engaging in alleged off-label promotion and/or illegal marketing of certain drugs. Thus, the Rales test, not the Aronson test, applies. See, e.g., Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995) (Rales applied, notwithstanding conclusory allegations of malfeasance, because "plaintiff does not challenge any specific board action that approved or ratified these alleged wrongdoings"); Mitzner v. Hastings, 2005 WL 88966, at **1, 4 (N.D. Cal. Jan. 14, 2005) (Rales applied because "no specific board action is challenged").

### B. The Conclusory Allegations In The Complaint Do Not Plead That The Director Defendants Face A Substantial Likelihood Of Liability

In assessing whether demand is excused under Rales, the Court "must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d at 934 (emphasis added). Plaintiffs must allege particularized facts calling into question the disinterestedness and independence of at least half (seven out of fourteen) of the Director Defendants. "What is required are pleadings that are specific and, if conclusory, supported by sufficient factual

4

allegations that corroborate the conclusion and support the proposition that demand is futile." Richardson v. Graves, 1983 WL 21109, at *2 (Del. Ch. June 17, 1983). Plaintiffs assert that the Director Defendants would be interested in a demand because they face a "substantial likelihood" of personal liability in connection with failing to prevent Pfizer's alleged off-label promotional activities. In order to plead the requisite "substantial likelihood" of personal liability, Plaintiffs must satisfy the standard set forth in In re Caremark International Inc. Derivative Litigation, 698 A.2d 959 (Del. Ch. 1996), which was adopted by the Delaware Supreme Court in AmSouth, by pleading that: "(a) the directors utterly failed to implement any reporting or information systems or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations." 911 A.2d at 370 (emphasis omitted). The Complaint does not satisfy either method of pleading a claim for failure of oversight, "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In re Caremark, 698 A.2d at 967.

### 1.    The Complaint Concedes The Existence Of Extensive Monitoring Systems And Controls

The Complaint does not plead "an utter failure" to put monitoring systems in place. Rather, the Complaint concedes the existence of rigorous monitoring systems and controls. The Complaint pleads, for example, that the Board maintains several standing committees to monitor aspects of Pfizer's business, including an Audit Committee (Compl. ¶¶ 72-73) and a Corporate Governance Committee (id. ¶ 74). The Complaint also concedes that Pfizer maintained a disclosure program "to enable employees to report violations of the federal health care law" (id. ¶ 114), employed a Compliance Officer who makes "periodic (at least semi-annual) reports regarding compliance matters directly to the Board," and required that all officers certify they

were in compliance with Pfizer's Code of Conduct (id. ¶¶ 115-16).[5]  Plaintiffs' concession that

Pfizer had extensive monitoring systems in place is fatal to their claims, because Delaware law

does not allow shareholders to second guess the directors' business judgment about the type of

controls needed.  See In re Caremark, 698 A.2d at 970.  Thus, Plaintiffs have failed to plead a

breach of the duty of oversight under the first prong of AmSouth.

### 2.    The Complaint Does Not Plead Particularized Facts Demonstrating That The Director Defendants Consciously Ignored "Red Flags" Of Wrongdoing

In their Brief, Plaintiffs assert that the Complaint adequately pleads that "Defendants had

actual notice of repeated 'red flags' about ongoing, widespread illegal practices at Pfizer,"

including (i) three prior settlements of government investigations regarding allegedly improper

marketing practices; (ii) alleged reports of improper marketing practices from former employees

who later commenced *qui tam* actions against the Company; and (iii) warning notices from the

FDA.  Pl. Br. at 11-12.  First, Plaintiffs assert in their Brief that the Directors who served on the

Board's Audit and Corporate Governance Committees necessarily had notice of such "red flags"

and are interested for purposes of demand futility because they allegedly "undertook special

oversight responsibilities . . . pursuant to the charter of the Board Committees on which they

chose to serve."  Id. at 22.  Plaintiffs similarly assert that the 2004 CIA and the rigorous

monitoring systems implemented by Pfizer "ensured that the Board was regularly informed of

continuing violations throughout the Company of the FDCA and the Federal anti-kickback

statute with respect to Pfizer's most important drugs."  Id. at 16.

In effect, Plaintiffs are advancing the tired argument that directors must have known

about alleged corporate wrongdoing solely by virtue of their board and/or committee

---

[5]  Defendants' Opening Brief describes numerous other compliance policies and procedures implemented by Pfizer under the 2004 CIA.  See Defs. Op. Br. at 12-13.

membership.  Indeed, the Complaint and Plaintiffs' Brief repeatedly refer to an undifferentiated

group of twenty-three (23) Individual Defendants who supposedly ignored alleged "red flags" of

wrongdoing without ever articulating the knowledge possessed by any Individual Defendant, and

without even differentiating between knowledge supposedly possessed by Pfizer's management

as opposed to that allegedly possessed by outside, non-management directors who constituted the

vast majority of the Board.  While Plaintiffs assert that the Director Defendants (as an

undifferentiated group) ignored alleged "red flags" of misconduct, they do not even attempt to

plead when such "red flags" were presented to each Director.  For example, Mr. Sanger did not

join the Pfizer Board until February 2009, years after many of the purported "red flags" allegedly

should have come to the Board's attention.  See Halper Decl., Ex. B (Pfizer 2009 Proxy

Statement) at 25.  Despite his recent appointment to the Pfizer Board, Plaintiffs assert that Mr.

Sanger had "actual notice of repeated 'red flags'" "throughout the Relevant Period."  Pl. Br. at

11 (emphasis added).  Such conclusory allegations (which have no basis in fact) demonstrate the

absence of particularized facts indicating that the Director Defendants received notice of

purported "red flags."[6]  Moreover, the Delaware Supreme Court has soundly rejected as

"contrary to well-settled Delaware law" such attempts to plead director knowledge of alleged

"red flags" based solely on board or committee membership.  Wood v. Baum, 953 A.2d 136,

142-43 (Del. 2008); Defs. Op. Br. at 26.[7]  Likewise, courts in this District have held that merely

---

[6]  Plaintiffs also ignore the fact that Mr. D'Amelio did not join Pfizer until September 2007, and
do not allege any facts implicating Mr. D'Amelio in alleged wrongdoing after that date.

[7]  Plaintiffs cite In re Countrywide Financial Corp. Derivative Litigation, 554 F. Supp. 2d 1044,
1082 (C.D. Cal. 2008), where the court denied a Rule 23.1 motion to dismiss on the ground that
the directors who served on board committees responsible for overseeing the company's lending
practices challenged in the complaint (who constituted a majority of the board), faced a
substantial likelihood of liability solely by virtue of their committee membership.  Such a finding
that committee members "must have" known about alleged wrongdoing solely by virtue of their
committee membership cannot be reconciled with the Delaware Supreme Court's subsequent

alleging that directors serve on certain board committees, together with a "lengthy recitation of the duties and responsibilities enumerated in those committees' charters," are insufficient to plead that directors face a substantial likelihood of liability. <u>Louisiana Mun. Police Empls. Ret. Sys. v. Pandit</u>, 2009 WL 2902587, at *10 (S.D.N.Y. Sept. 10, 2009); <u>see</u> <u>also</u> <u>Louisiana Mun. Police Empls. Ret. Sys. v. Blankfein</u>, 2009 WL 1422868, at *7 (S.D.N.Y. May 19, 2009) (same). That is exactly the pleading technique used by Plaintiffs here, and it plainly does not excuse demand under Delaware law.

In fact, Plaintiffs' argument seeks to turn the <u>Caremark</u> standard on its head. That standard requires Plaintiffs to plead particularized facts demonstrating either the absence of internal controls or that board members consciously ignored "red flags" of wrongdoing. <u>AmSouth</u>, 911 A.2d at 370. If the Court were to accept Plaintiffs' theory, however, <u>Caremark</u> would effectively be eviscerated because any time a plaintiff failed to satisfy the first prong of <u>Caremark</u> (<u>i.e.</u>, because the corporation had monitoring systems in place), demand necessarily would be excused under the second prong of <u>Caremark</u> (because, under Plaintiffs' theory, alleged "red flags" would always be deemed to have been presented to the Board by virtue of the corporation's reporting systems). That is not Delaware law, which requires the pleading of particularized facts demonstrating that "red flags" of corporate wrongdoing were presented to the board, <u>and</u> the board consciously ignored such "red flags." <u>See</u> <u>id.</u>[8]

---

decision in <u>Wood</u> or the numerous other decisions construing Delaware law that have rejected this same allegation as insufficient to excuse demand.

[8] Plaintiffs' reliance on <u>In re Abbott Laboratories Derivative Shareholders Litigation</u>, 325 F.3d 795 (7th Cir. 2001), is misplaced. There, the court held that "[w]here there is a corporate governance structure in place, we must then <u>assume</u> the corporate governance procedures were followed and that the board knew of the problems and decided no action was required." <u>Id.</u> at 806 (emphasis added). Regardless of whether this decision accurately reflected Delaware law when it was issued nearly ten years ago, it certainly is not an accurate statement of Delaware law following the Delaware Supreme Court's decisions in <u>AmSouth</u> and <u>Wood</u>. Under <u>AmSouth</u> and

Second, Plaintiffs contend in their Brief that Pfizer's settlement of government investigations regarding Lipitor (in 2002), Neurontin (in 2004) and Genotropin (in 2007) constituted "red flags" of improper conduct regarding off-label promotion.  But Plaintiffs do not dispute the fact that these settlements involved improper marketing practices by Warner-Lambert Company or Pharmacia <u>before</u> those companies were acquired by Pfizer.  <u>See</u> Defs. Op. Br. at 8-10, 25.  Significantly, Plaintiffs do not argue that these investigations implicated Pfizer or its officers, directors, or employees in any way.  As a result, Plaintiffs also do not and cannot explain how Pfizer's settlement of these government investigations, which did not relate to misconduct at Pfizer, but rather related to promotional practices at Warner-Lambert and Pharmacia before they were acquired by Pfizer, could possibly have alerted the Director Defendants to unrelated wrongdoing within Pfizer years later.  <u>Id.</u> at 25.

Third, Plaintiffs speculate that <u>Pfizer</u> received reports of illegal marketing from certain former employees who later commenced *qui tam* actions against the Company.  Pl. Br. at 11.  The Complaint, however, is devoid of any factual allegation indicating that these reports were ever conveyed to the Board or any Committee thereof, describing the Board's response (if the information was conveyed), or suggesting that the Board or any Committee thereof was aware of or implicated in the termination of these individuals' employment with Pfizer.  Likewise, the Complaint contains no allegations indicating when and how alleged FDA warning notices were brought to the Board's attention, and how the Board responded.[9]  As Plaintiffs concede, pursuant

---

<u>Wood</u>, it is improper for courts to "assume" a board's knowledge of corporate misconduct. Rather, as explained above, the plaintiff must plead particularized facts demonstrating that a majority of directors "consciously" failed to respond to "red flags" of wrongdoing.

[9]  While Plaintiffs assert (Pl. Br. at 11) that certain FDA warning letters were sent to Pfizer's Chief Executive Officer, Delaware law is clear that one board member's knowledge may <u>not</u> be attributed to other board members solely by virtue of their shared board service.  <u>See</u> <u>Desimone v. Barrows</u>, 924 A.2d 908, 943 (Del. Ch. 2007) ("Delaware law does not permit the wholesale

to the 2004 Corporate Integrity Agreement (the "2004 CIA"), Pfizer's Chief Compliance Officer was required to make periodic reports regarding compliance matters to Pfizer's Board or a committee thereof. However, there is no allegation in the Complaint regarding what relevant information, if any, concerning supposed off-label promotional practices was brought to the Board's attention, nor is there any allegation concerning the Board's response to any information so conveyed. The absence of such allegations is fatal to Plaintiffs' attempt to overcome the demand requirement. See Pandit, 2009 WL 2902587, at *8 (demand not excused because "Plaintiff has failed to proffer specific factual allegations regarding the individual directors' conduct in response to these alleged 'red flags'"); In re Intel Corp. Deriv. Litig., 621 F. Supp. 2d 165, 174 (D. Del. 2009) (demand not excused where plaintiff "fail[ed] to identify what the Directors actually knew about the 'red flags' and how they responded to them").[10]

Plaintiffs' theory boils down to an argument that corporate wrongdoing occurred, and that the Director Defendants necessarily would have prevented it had they been doing their jobs.[11] Thus, Plaintiffs repeatedly (no less than six separate references in their Brief) point to the

---

imputation of one director's knowledge to every other for demand excusal purposes. Rather, a derivative complaint must plead facts **specific to each director**") (emphasis in original); In re Finisar Corp. Deriv. Litig., 2009 WL 3072882, at *13 (N.D. Cal. Sept. 22, 2009) (same).

[10]   Plaintiffs' assert that none of the cases cited in Defendants' brief involved allegations of: (i) company-wide illegal conduct; (ii) payment of substantial fines regarding prior similar conduct; and (iii) government dictated oversight mechanisms. That is simply wrong. See King v. Baldino, 648 F. Supp. 2d 609, 614, 625-26 (D. Del. 2009) (allegations that board permitted off-label promotion to occur over a six year period, which resulted in the company: (i) paying a $425 million fine; (ii) pleading guilty to a violation of the Federal Food, Drug and Cosmetic Act; and (iii) entering into a corporate integrity agreement with the government, were insufficient to excuse demand where plaintiff failed to plead "particularized facts demonstrating that the Board was aware of the actions of the alleged 'principal wrongdoers'"); In re E.F. Hutton Banking Pracs. Litig., 634 F. Supp. 265, 271-72 (S.D.N.Y. 1986) (allegation that the company pled guilty to 2,000 incidents of mail and wire fraud did not excuse demand, where plaintiffs "failed to allege a sufficient involvement on the part of a majority of Hutton's board") (citation omitted).

[11]   Plaintiffs contend that Defendants are seeking to impose an "impossibly high pleading standard, effectively demanding dismissal unless shareholders can offer a criminal conviction of

fine Pfizer paid in connection with the 2009 settlement with the Department of Justice. But no matter how many times they repeat it, Plaintiffs' argument has been rejected as insufficient to plead a "substantial likelihood" of liability under Delaware law:

> [w]ith the benefit of hindsight, the plaintiffs' complaint seeks to equate a bad outcome with bad faith. The lacuna in the plaintiffs' argument is a failure to recognize that the directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both. . . .[12]

AmSouth, 911 A.2d at 373.

## II.   THE DUE CARE CLAIMS AGAINST PFIZER'S PRESENT AND FORMER DIRECTORS SHOULD BE DISMISSED

Plaintiffs' due care claims against Pfizer's current and former directors should be dismissed because Pfizer's shareholders, acting pursuant to Section 102(b)(7) of the Delaware General Corporation Law, voted to adopt a provision in Pfizer's charter eliminating the possibility of personal director monetary liability in cases such as this one. See Defs. Op. Br. at 34-36. In their Brief, Plaintiffs assert that the exculpatory provision in Pfizer's charter does not bar their claims because they have adequately pled a breach of the duty of good faith, one of the exceptions to application of a Section 102(b)(7) provision. See Pl. Br. at 38-39. No such claim,

---

each defendant director." Pl. Br. at 3. This argument ignores the fact that Defendants are doing nothing more than applying settled Delaware law as articulated in AmSouth, which requires the pleading of particularized facts demonstrating that directors consciously ignored "red flags" of wrongdoing. Plaintiffs' complaint about this pleading standard rings particularly hollow because they did not avail themselves of the tools available to obtain information prior to filing their Complaint. See Guttman v. Huang, 823 A.2d 492, 504 (Del. Ch. 2003) ("[Plaintiffs] have thus ignored the repeated admonitions of the Delaware Supreme Court and this court for derivative plaintiffs to proceed deliberately and to use the books and records device to gather the materials necessary to prepare a solid complaint").

[12]   Plaintiffs do not appear to argue in their Brief that their Section 14(a) claim creates a "substantial likelihood" of liability on the part of the Director Defendants sufficient to excuse demand. See In re Marriott Hotel Props. II Ltd. P'ship Unitholders Litig., 2000 WL 128875, at *14 (Del. Ch. Jan. 24, 2000) ("[p]laintiff apparently concedes the lack of merit in his argument, as he does not address this aspect of defendant's motion").

however, is adequately pled in the Complaint.  The Complaint does not and cannot assert any facts, particularized or otherwise, establishing that any Pfizer director "intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation" or engaged in any other conduct that would have breached the duty of good faith.  <u>AmSouth</u>, 911 A.2d at 369. While the Complaint speculates that Pfizer's current and former directors knew of and ignored alleged off-label promotion, no facts are pled to support such an assertion.  Accordingly, Plaintiffs' claims for breach of fiduciary duty and must be dismissed as a matter of law.

**III.**     **THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6)**

    **A.**     **The Complaint Does Not State A Section 14(a) Claim**

Plaintiffs' Section 14(a) claim "sounds in fraud," and is therefore governed by the rigorous pleading standard imposed by Fed. R. Civ. P. 9(b).  Defs. Op. Br. at 28.  In their Brief, Plaintiffs incredibly assert that "Defendants' 'sounds in fraud' argument rests on the Defendants' cherry-picking a single phrase from the Complaint describing Pfizer's underlying conduct vis-à-vis the government and patients as 'fraudulent and criminal.'"  Pl. Br. at 28.  Both Plaintiffs' Complaint and Brief, however, are riddled with conclusory allegations of "knowing," "conscious" and/or "deliberate" misstatements or omissions.  <u>See</u> Compl. ¶ 1 ("Pfizer Board[] <u>knowingly</u> caus[ed] and permitt[ed] the Company to engage in nearly a decade of systematic illegal marketing"); <u>id.</u> ¶ 8 ("Defendants' <u>knowing</u> involvement in or <u>conscious disregard</u> of reports and other information"); <u>id.</u> ¶ 174 (directors "<u>knowingly and consciously</u> presiding over the Company's systematic violations of the drug marketing laws).[13]

---

[13]  <u>See</u> <u>also</u> Pl. Br. at 3 ("The plain language and import of the Complaint is that a majority of the current Board was <u>fully aware</u> of Pfizer's extensive legal violations"); <u>id.</u> at 12.

1.    **Plaintiffs Have Failed To Plead That The Proxy Statements Caused Any Loss To The Corporation**

To adequately plead a Section 14(a) claim, a complaint must allege that a misleading proxy was an "essential link" in – i.e., caused or resulted in – a transaction causing losses to the company. See In re Elan Corp. Sec. Litig., 2004 WL 1305845, at *16 (S.D.N.Y. May 18, 2004); Defs. Op. Br. at 31. Plaintiffs' posit an "essential link" by asserting that the alleged "material omissions from the Proxy Statements **directly** harmed the Company by keeping the Board's longstanding noncompliance with the law in place." Pl. Br. at 34 (emphasis in original). As a matter of law, however, there is no "essential link" between the transaction challenged by Plaintiffs (the election of the Director Defendants to the Pfizer Board) and the pecuniary injury for which damages are sought (damages caused by alleged off-label promotion, see Compl. ¶ 198). In fact, courts repeatedly have rejected the types of vague allegations offered by Plaintiffs here that "'omissions in proxy materials, by permitting directors to win re-election, indirectly led to financial loss through mismanagement'" as insufficient to plead the "essential link" element of Section 14(a). In re Affiliated Computer Servs. Deriv. Litig., 540 F. Supp. 2d 695, 704 (N.D. Tex. 2007) (quoting GE Co. v. Cathcart, 980 F.2d 927, 933 (3d Cir. 1992)); see also Fink v. Weill, 2005 WL 2298224, at *5 (S.D.N.Y. Sept. 19, 2005); Defs. Op. Br. at 31.[14]

2.    **The Complaint Does Not Allege That The 2009 Proxy Statement Omitted Any Material Information**

Defendants' Opening Brief explained (at 29-30) that the Complaint does not allege that the Director Defendants omitted any material information from the 2009 Proxy Statement that SEC regulations required them to disclose. Defs. Op. Br. at 29-30. In their Brief, Plaintiffs

---

[14]  Defendants' Opening Brief (at 28-29) demonstrated that Plaintiffs' claims related to the 2007 and 2008 Proxy Statements also are moot because the one-year term of office for the individuals elected to the Pfizer Board pursuant to the 2007 and 2008 Proxy Statements has already expired. Plaintiffs concede that any claim seeking removal of directors whose terms have expired is moot.

assert that the 2009 Proxy Statement was materially misleading because it failed to disclose: (i) "[t]he extent to which the financial and operational results incorporated into the Proxy Statement were dependent on off-label prescriptions; (ii) "[t]he existence of the CIAs and the nature of the Board's direct oversight responsibilities thereunder"; and (iii) "[t]he facts and circumstances of the Board's waiver or other failure to carry out the requirements of the Code of Conduct." Pl. Br. at 29. None of these allegations is sufficient to plead a Section 14(a) claim.

First, Pfizer's 2008 Financial Report, which was attached to and incorporated by reference into Pfizer's 2009 Proxy Statement, disclosed that Pfizer had recorded a charge of $2.3 billion in connection with "enter[ing] into an agreement in principle with the U.S. Department of Justice to resolve the previously reported investigation regarding allegations of past off-label promotional practices concerning Bextra, as well as certain other open investigations." See Halper Decl., Ex. B (Pfizer 2009 Proxy Statement), 2008 Financial Report at 56.[15] Thus, prior to voting to approve both the election of the Director Defendants to their current terms and the Restated Stock Plan in connection with the 2009 Proxy Statement, Plaintiffs were unquestionably aware that Pfizer's past financial results had been influenced by sales for off-label use. While Plaintiffs characterize Pfizer's disclosure as "partial" and "incomplete" (Pl. Br. at 32), they have failed to identify any material information that was omitted.[16]

Second, while Plaintiffs argue that the Director Defendants were required to disclose the existence and terms of the 2004 CIA in the 2009 Proxy Statement pursuant to Regulation S-K, 17 C.F.R. § 229.401(f)(3)(ii), that argument is flatly contradicted by the plain language of the

---

[15] Plaintiffs concede these Reports "formed part of the Proxy Statements." (Compl. ¶ 158.)

[16] While Plaintiffs assert in a footnote that "full disclosure of past criminal activities . . . was plainly required under 17 C.F.R. § 240.14a-101," none of the Director Defendants (nor any of the other Defendants) was ever indicted (or even accused) of criminal wrongdoing in connection with the government investigation that resulted in Pfizer's 2009 settlement with the government.

14

regulation itself.  That provision requires disclosure only when a "person" nominated for election

to a board of directors "was the subject of any order, judgment, or decree . . . of any court of

competent jurisdiction, permanently or temporarily enjoining him from, or otherwise limiting . . .

[that person from] [e]ngaging in any type of business practice."   17 C.F.R. § 229.401(f)(3)(ii).

The 2004 CIA did not enjoin any of the Director Defendants from doing anything.  Rather, the

2004 CIA was an agreement between Pfizer and the government which required Pfizer, not any

individual Director Defendant, to institute certain corporate governance reforms.[17]

Third, the omission from the Proxy Statements of the Board's alleged failure to follow

Pfizer's Code of Conduct plainly is not actionable under Section 14(a) because this is nothing

more than a claim of failure to disclose alleged mismanagement.  See In re American Exp. Co.

S'holder Litig., 840 F. Supp. 260, 269 (S.D.N.Y. 1993) (Section 14(a) does not require

disclosure of "uncharged, unadjudicated charges of mismanagement"), aff'd, 39 F.3d 395 (2d

Cir. 1994); In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) (same).

### 3.  Plaintiffs Have Failed To Plead A Misstatement Or Omission With The Particularity Required By Rule 9(b)

Plaintiffs' Section 14(a) claim also is subject to dismissal because the Complaint fails to

plead, with the particularity required by Rule 9(b), that the Director Defendants made any

material misstatement or omission.  In order to comply with Rule 9(b), the complaint must: "(1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

---

[17]  Moreover, even if the 2004 CIA was required to be disclosed, it clearly was.  The existence of the 2004 CIA was publicly disclosed on the Department of Justice's website (see http://www.justice.gov/opa/pr/2004/May/04_civ_322.htm), and the 2004 CIA itself was posted to the website of the Office of Inspector General of the Department of Health and Human Services (see http://web.archive.org/web/20080407194049/oig.hhs.gov/fraud/cia/agreements/ pfizer_5_11_2004.pdf).  The existence of the 2004 CIA was also discussed in the media.  David Armstrong & Rachel Zimmerman, Pfizer to Settle Medicaid-Fraud Case: Drug Maker Agrees to Pay About $430 Million in Fines Over Neurontin Marketing, Wall St. J., May 13, 2004, available at http://online.wsj.com/article/SB108440099145209983.html?mod=googlewsj.

state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). As explained above and in Defendants' Opening Brief, the Complaint is devoid of particularized facts implicating any Director Defendant in off-label promotional practices. In fact, the Complaint repeatedly refers to the Defendants as an undifferentiated group of twenty-three (23) individuals, without even specifying the roles played or knowledge possessed by any one of them.

### B.    The Complaint Does Not State A Claim For Breach Of The Duty Of Loyalty Or Good Faith By The Executive Defendants

The duty of loyalty requires that directors and officers refrain from engaging in self-dealing transactions and receiving personal benefits not received by other shareholders. See Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361-62 (Del. 1993), modified, 636 A.2d 956 (Del. 1994). Here, the Complaint does not even suggest that the Executive Defendants (against whom the claim is asserted) engaged in self-dealing transactions or any other activity that would have breached the duty of loyalty. Moreover, as explained above, see Point II supra, the Complaint does not plead that any of the Defendants acted with a purpose other than that of advancing the best interests of the corporation, or engaged in any other conduct that breached the duty of good faith. In their Brief, Plaintiffs assert that the "Executive Defendants are identified as violating their fiduciary duties of good faith . . . including repeatedly by name." Pl. Br. at 36. However, the allegations in the Complaint merely conclude that the Executive Defendants' "must have known" of alleged improper marketing practices based solely on their positions at Pfizer. See, e.g., Compl. ¶ 85 ("Feczko must have known about Pfizer's practice of paying physicians to speak at meetings with other doctors about off-label uses of Pfizer drugs"); id. ¶ 86 (same). Such conclusory allegations of supposed knowledge of corporate wrongdoing – lacking any factual support for the suggestion that the Executive Defendants acted other than in the

corporation's best interests – plainly are insufficient to plead a breach of the duty of good faith.

### C.  The Complaint Does Not State A Claim For Breach Of The Duty Of Disclosure Against Any Of The Defendants

In order to plead a breach of the duty of disclosure, which only applies when directors seek shareholder action, a complaint must: (1) allege that material facts were missing from a disclosure; (2) identify the missing facts; (3) explain why those facts are relevant to the decision shareholders were asked to make; and (4) explain how the omission caused shareholders' injury. See Loudon v. Archer-Daniels-Midland Co., 700 A.2d 135, 141 (Del. 1997).  As explained above, see Point III.A., supra, Plaintiffs have not pled a material misstatement or omission in the Proxy Statements. Defs. Op. Br. at 38-39.  The Proxy Statements also did not solicit shareholder approval for a transaction that caused losses to Pfizer, requiring dismissal of this claim.[18]

### D.  The Complaint Does Not State A Claim For Unjust Enrichment

Plaintiffs assert that the Individual Defendants "wrongfully retained bonuses, benefits and other compensation at the expense of Pfizer and its shareholders." Pl. Br. at 38.  Plaintiffs, however, fail to cite a single decision holding an officer or director liable to the corporation or its shareholders on an unjust enrichment theory merely because the officer or director received such ordinary compensation.  To the contrary, the only compensation allegedly received by the Individual Defendants relates to the compensation they received for their services as officers or directors, and it is clear that Delaware law does not regard ordinary officer or director compensation with suspicion. See Defs. Op. Br. at 39.[19]

---

[18]  As explained above (see Point I.B., supra), the Complaint also fails to plead a claim for breach of the duty of oversight.

[19]  Delaware law imposes "contemporaneous" and "continuous" ownership requirements on shareholders seeking to maintain derivative actions.  See Del. Code Ann. tit. 8, § 327 (2006). Since Lead Plaintiff has conceded that it does not own any Pfizer shares, Lead Plaintiff does not have standing to assert the claims set forth in the Complaint.  Defs. Op. Br. at 40.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss the Complaint should be granted.

Dated:    New York, New York
          January 22, 2010

DLA PIPER LLP (US)                      CADWALADER, WICKERSHAM
                                          & TAFT LLP


By:    /s/ Loren H. Brown                By:    /s/ Gregory A. Markel
Loren H. Brown                          Dennis J. Block
1251 Avenue of the Americas             Gregory A. Markel
New York, New York  10020-1104          Jason M. Halper
Telephone:  (212) 335-4846              One World Financial Center
                                        New York, New York 10281
Attorneys for Nominal Defendant Pfizer Inc.    (212) 504-6000

                                        Attorneys for Defendants Dennis A. Ausiello,
                                        Michael S. Brown, M. Anthony Burns, Robert
                                        N. Burt, W. Don Cornwell, William H. Gray
                                        III, Constance J. Horner, James M. Kilts,
                                        Jeffrey B. Kindler, George A. Lorch, Suzanne
                                        Nora Johnson, Dana G. Mead, Stephen W.
                                        Sanger, William C. Steere, Jr., William R.
                                        Howell, Stanley O. Ikenberry, Henry A.
                                        McKinnell, Ruth J. Simmons, Frank A.
                                        D'Amelio, Joseph M. Feczko, Douglas M.
                                        Lankler, Ian Read and Allen P. Waxman.