UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR)<br><br>ECF CASE |

## NOTICE OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE LITIGATION SETTLEMENT

TO:     All Counsel of Record

**PLEASE TAKE NOTICE** that, upon the Stipulation and Agreement of Settlement dated December 2, 2010 ("Stipulation"), attached hereto as Exhibit 1, and the accompanying Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Derivative Litigation Settlement and the Affidavit of Jeffrey N. Gordon in Support of Plaintiffs' Motion for Preliminary Approval of Derivative Action Settlement, Plaintiffs in the above-captioned shareholder derivative litigation (the "Litigation"), will move this Court before the Honorable Jed S. Rakoff on December 6, 2010 at 4:00 p.m. at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007, for entry of an Order that will, among other things: (i) preliminarily approve the proposed Settlement of this Litigation (the "Settlement") on the terms set forth in the Stipulation; (ii) approve the proposed form and manner of providing notice of the Settlement; and (iii) schedule a final approval hearing to determine whether the proposed Settlement should be finally approved and to consider Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses incurred in connection with the prosecution of this Litigation.

For the reasons set forth in Plaintiffs' Memorandum of Law, the Affidavit of Jeffrey N. Gordon, and the Stipulation, Plaintiffs respectfully request that the Court find that the proposed Settlement merits preliminary approval.  A proposed Order Preliminarily Approving Settlement and Setting Settlement Hearing granting the relief requested herein is attached to Exhibit 1 hereto as Exhibit C.

DATED:        December 2, 2010

> **BERNSTEIN LITOWITZ BERGER**
> **& GROSSMANN LLP**
>
> By:  /s/ Mark Lebovitch
>       Mark Lebovitch, Esq.
>       David Wales, Esq.
>       Beata Farber, Esq.
>       Jeroen van Kwawegen, Esq.
>       Jonathan D. Uslaner, Esq.
>       Kristin Ann Meister, Esq.
>       1285 Avenue of the Americas
>       New York, New York 10019
>       Tel:  212-554-1400
>       Fax:  212-554-1444
>
> *Court-Appointed Lead Derivative Counsel*
> *and Counsel for Co-Lead Plaintiff Louisiana*
> *Sheriffs' Pension and Relief Fund*
>
> **KIRBY McINERNEY LLP**
> David E. Kovel, Esq.
> Edward M. Varga, Esq.
> Surya Palaniappan, Esq.
> 825 Third Avenue
> New York, New York 10022
> Tel:  212-371-6600
> Fax:  212-751-2540
>
> *Counsel for Co-Lead Plaintiff Skandia Life*
> *Insurance Company Ltd.*

**KLAUSNER & KAUFMAN, P.A.**
Robert D. Klausner, Esq.
10059 N.W. 1st Court
Plantation, FL  33324
Tel:  (954) 916-1202

*Counsel for Co-Lead Plaintiff Louisiana*
*Sheriffs' Pension and Relief Fund*

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser, Esq.
Brett D. Stecker, Esq.
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Tel:  610-225-2677

*Counsel for Additional Plaintiff Henrietta*
*Klein*

**POMERANTZ HAUDEK GROSSMAN**
   **& GROSS LLP**
Jason S. Cowart, Esq.
Marie L. Oliver, Esq.
100 Park Avenue, 26th Floor
New York, NY  10017
Tel:  (212) 661-1100

**BARRACK RODOS & BACINE**
Daniel E. Bacine, Esq.
Julie B. Palley, Esq.
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, PA 19103
Tel:  (215) 963-0600

*Counsel for Additional Plaintiff Port*
*Authority of Allegheny County Retirement*
*and Disability Allowance Plan for*
*Employees represented by Local 85 of*
*Amalgamated Transit Union*

# 497588

3

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR)  ECF CASE |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated December 2, 2010 (the "Stipulation") is entered into between and among: (1) Louisiana Sheriffs' Pension and Relief Fund and Skandia Life Insurance Company Ltd., the Court-appointed Lead Plaintiffs in the above-captioned shareholder derivative litigation (the "Litigation" or the "Derivative Litigation"), on behalf of themselves and Additional Named Plaintiffs (as defined herein); (2) the Director Defendants (as defined herein); (3) the Executive Defendants (as defined herein); and (4) nominal defendant Pfizer Inc., including its predecessors, successors, subsidiaries, affiliates, divisions and assigns ("Pfizer" or the "Company"), subject to the approval of the Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure.

WHEREAS:

A.    All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in paragraph 1 herein;

B.    In September 2009, Pfizer entered into an agreement with the U.S. Department of Justice ("DOJ") regarding an investigation into Pfizer's promotional practices for certain drugs, including allegations of unlawful promotion of Bextra, Zyvox, Geodon, and Lyrica, and allegations related to certain payments to healthcare providers involving these and nine other drugs;

C.    As part of the settlement, Pfizer agreed to pay a criminal fine, and a Pfizer

- 1 -

subsidiary, Pharmacia & Upjohn Company, Inc., agreed to plead guilty to one count of violating the U.S. Food, Drug, and Cosmetic Act related to off-label promotion of Bextra.  Pfizer also expressly denied all civil allegations of unlawful conduct, and only acknowledged certain activities relating to the promotion of Zyvox;

D.      Between September 10 and October 7, 2009, nine derivative action complaints on behalf of Pfizer were filed in the United States District Court for the Southern District of New York alleging that the Individual Defendants breached their fiduciary duties (the "Fiduciary Duty Claims"), and alleging related violations of Section 14(a) of the Securities Exchange Act (the "Proxy Claims");

E.      On November 4, 2009, the Court consolidated the actions (collectively, the "Derivative Litigation") and appointed Amalgamated Bank as "Lead Plaintiff" and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as "Lead Counsel" in the Derivative Litigation;

F.      On November 18, 2009, Lead Plaintiff filed a Consolidated, Amended and Verified Shareholder Derivative Complaint (the "Amended Complaint") in which it asserted derivative claims on behalf of Pfizer for, among other things, violations of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 of the Securities Exchange Act, breach of fiduciary duty and unjust enrichment by the Individual Defendants by allegedly causing and permitting the Company to engage in the illegal marketing and promotion of pharmaceuticals manufactured by Pfizer and its subsidiaries, and in particular, by allegedly (i) failing to prevent the illegal marketing and off-label promotion of Bextra, Geodon, Lyrica and Zyvox, among other drugs, (ii) deciding not to stop and prevent illegal kickbacks to healthcare professionals for prescribing Aricept, Celebrex, Lipitor, Norvasc, Relpax, Viagra, Zithromax, Zoloft, Zyrtec, among other drugs, and (iii) approving or consciously disregarding Pfizer's marketing of drugs

through the illegal promotion of off-label uses and dosages and through illegal kickbacks;

G.     On December 16, 2009, the Individual Defendants moved to dismiss the Amended Complaint;

H.     Plaintiffs filed their opposition to the motion on January 8, 2010 and the Individual Defendants filed reply papers on January 22, 2010;

I.     On February 5, 2010, the Court heard oral argument on the Individual Defendants' motion to dismiss; and, on March 17, 2010, the Court issued an Order dismissing the claims arising under Section 14(a) of the Securities Exchange Act, and the unjust enrichment claim, but denying the motion with respect to the breach of fiduciary duty claims;

J.     In order to ensure the Court's diversity jurisdiction to hear the Derivative Litigation, on March 24, 2010, Lead Counsel submitted a Proposed Order to substitute Lead Plaintiff Amalgamated Bank, a New York citizen, with plaintiffs Louisiana Sheriffs Pension Relief Fund and Skandia Life Insurance Co., neither of which is a New York citizen;

K.     On April 5, 2010, the Court appointed Louisiana Sheriffs Pension Relief Fund and Skandia Life Insurance Co. as "Lead Plaintiffs" and BLB&G as "Lead Counsel";

L.     On April 17, 2010, Amalgamated Bank formally withdrew from the Derivative Litigation;

M.     Lead Counsel served initial document requests on March 31, 2010; and the Parties exchanged Initial Disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure on April 29, 2010;

N.     Between April 2010 and the end of May 2010, the parties engaged in extensive "meet and confer" teleconferences and in-person meetings regarding the proper scope of discovery in this action, including the scope of redactions based on responsiveness and the scope

of electronic discovery;

O.      On June 2 and June 11, 2010, the Court heard oral argument and conducted an evidentiary hearing regarding various discovery disputes, issuing an oral ruling at the conclusion of the hearings;

P.      On June 22, 2010, the Court entered a stipulated discovery Order requiring that responsive materials (as defined in the Order) must be produced, subject to claims of attorney-client or other privileges or work-product protection, which the Parties could contest before the Court;

Q.      From May 2010 through November 2010, the Defendants produced approximately 12 million pages of document production, and various third parties produced approximately 40,000 additional pages of documents production;

R.      On July 13, 2010, the Court issued its formal Opinion and Order explaining the reasoning for the Court's March 17, 2010 Order dismissing the claims arising under Section 14(a) of the Securities Exchange Act and the claim for unjust enrichment but denying the Individual Defendants' motion to dismiss with respect to the breach of fiduciary duty claims. The Order resulted in the dismissal of Henry A. McKinnell, William Howell, Stanley Ikenberry, Ruth Simmons, and Stephen Sanger from the case.  In addition, the Court conditionally granted the motion to dismiss of defendant Allen P. Waxman for failure to effect service;

S.      Following the Court's July 13, 2010 Order, and after the Parties conferred, Plaintiffs and Henry A. McKinnell entered into an agreement by which Mr. McKinnell agreed to remain a defendant in the case.  On August 16, 2010, Plaintiffs entered into a tolling agreement with Mr. Waxman, which was filed with the Court on August 18, 2010;

T.      Between July 16 and August 30, 2010, the Parties served on each other

interrogatories; and, in addition, Plaintiffs served requests for admission;

U.    From May 2010 through October 2010, Plaintiffs took 27 fact depositions, including the depositions of each of the Individual Defendants, Mr. Howell, Mr. Waxman, two witnesses who were proffered pursuant to Fed. R. Civ. P. 30(b)(6), five current and former employees of Pfizer, and a senior engagement partner of Pfizer's outside auditor KPMG;

V.    Between August 23 and October 1, 2010, Defendants served objections and responses to Plaintiffs' interrogatories; and, as a result of numerous "meet and confer" sessions, Defendants served supplemental interrogatory responses, a narrative description concerning meetings between representatives of Pfizer and the federal government and concerning Pfizer's compensation policies to supplement answers of witnesses who were proffered pursuant to Fed. R. Civ. P. 30(b)(6);

W.    Between August 25 and October 1, 2010, Plaintiffs served objections and responses to Defendants' interrogatories;

X.    Between August 24 and October 1, 2010, Defendants took the deposition of each of the four Plaintiffs;

Y.    Plaintiffs served three expert reports in support of their claims;

Z.    The Individual Defendants served four expert reports in opposition to Plaintiffs' claims; and, in addition, Plaintiffs took the depositions of each of Defendants' four experts;

AA.    On October 20, 2010, Plaintiffs informed Defendants' counsel that it was withdrawing all claims against Frank D'Amelio;

BB.    On October 22, 2010, the Individual Defendants served a motion for summary judgment;

CC.    On November 12, 2010, Plaintiffs served their opposition to summary judgment.

The parties agreed that Defendants would have until the close of business on November 15, 2010 to redact confidential information pursuant to the Protective Order that had been entered by the Court; and Defendants would then file Plaintiffs' redacted opposition papers with the Court;

DD.   On November 15, 2010, before Lead Plaintiffs' opposition to the summary judgment motion was filed with the Court and following extensive arms'-length negotiations, the Settling Parties entered into a Settlement Term Sheet setting forth the principal terms of the proposed Settlement;

EE.   Based upon their investigation and discovery as set forth above, Lead Plaintiffs and Lead Counsel are mindful of the inherent problems of proof of, and possible defenses to, the allegations asserted in this Litigation.  Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Pfizer, and in its best interests, and have agreed to settle the claims raised in this Litigation pursuant to the terms and provisions of this Stipulation, after considering (i) the substantial benefits that Pfizer will receive from resolution of this Litigation on the terms set forth herein; (ii) the uncertainty that a trial on the merits could result in a judgment providing Pfizer the same or substantially the same benefits; (iii) the attendant risks and uncertainty of continued litigation; and (iv) the desirability of permitting the Settlement to be consummated without delay as provided by the terms of this Stipulation;

FF.   The Defendants expressly have denied and continue to deny all allegations of any wrongdoing or liability against them whatsoever arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in this Litigation.  The Defendants also have denied and continue to deny, *inter alia*, the allegations that they breached their fiduciary duties in connection with the alleged off-label promotion of certain Pfizer

pharmaceuticals, or that the Lead Plaintiffs or Pfizer shareholders have suffered any damages or were harmed by any conduct alleged in this Litigation or that could have been alleged therein. Defendants do not in any way acknowledge any fault or liability. This Stipulation and all related documents are not, and shall not in any event be construed or deemed to be evidence of fault or liability or wrongdoing or damage whatsoever, or any infirmity in Defendants' defenses. Nonetheless, the Defendants have concluded that further conduct of this Litigation would be protracted, time-consuming, expensive and distracting, including without limitation, to Pfizer Inc. and its management, and that it is desirable that this Litigation be fully and finally settled. The Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially complex cases like this Litigation. The Defendants have, therefore, determined that it is desirable and beneficial that this Litigation be settled in a manner and upon the terms and conditions set forth in this Stipulation.

NOW THEREFORE, it is STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel, subject to approval of the Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties from the Settlement, that all Released Plaintiff Claims as against the Released Defendant Parties, and all Released Defendant Claims against the Released Plaintiff Parties, shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## **DEFINITIONS**

1.   As used in this Stipulation, the following terms shall have the following meanings:

(a)    "Additional Named Plaintiffs" means:  Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union and Ms. Henrietta Klein.

(b)    "Court" means the United States District Court for the Southern District of New York.

(c)    "Defendants" means the Individual Defendants and nominal defendant Pfizer.

(d)    "Defendants' Counsel" means the law firm of DLA Piper LLP (U.S.) on behalf of nominal defendant Pfizer; the law firm of Cadwalader, Wickersham & Taft LLP on behalf of the Director Defendants; and the law firm of Davis Polk & Wardwell LLP on behalf of the Executive Defendants.

(e)    "Director Defendants" means Dennis A. Ausiello, Michael S. Brown, M. Anthony Burns, Robert N. Burt, W. Don Cornwell, William H. Gray III, Constance J. Horner, James M. Kilts, Jeffrey B. Kindler, George A. Lorch, Dana G. Mead, Suzanne Nora Johnson, William C. Steere, Jr, and Henry A. McKinnell.

(f)    "Effective Date" means the first date by which all of the conditions and events specified in paragraph 13 of this Stipulation have been met and have occurred.

(g)    "Executive Defendants" means Joseph M. Feczko, Douglas M. Lankler, Ian Read, Frank D'Amelio, and Allen P. Waxman.

(h)    "Final," with respect to the Judgment, means the later of:  (i) if there is an appeal from the Judgment, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the Judgment following

review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding on certiorari to review the Judgment; or (iii) the expiration of the time for the filing or noticing of any appeal from the Court's Judgment, which is thirty (30) calendar days after the Judgment is entered on the Court's docket (or, if the date for taking an appeal or seeking review of the Judgment shall be extended beyond this time by order of the Court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought); or (iv) if the Court enters a judgment substantially different from the form of Judgment set forth in Exhibit D hereto (an "Alternative Judgment") and the Settlement is not terminated, the date that such Alternative Judgment becomes final as defined in parts (i) to (iii) above and no longer subject to appeal or review.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to any award of attorneys' fees or expenses, shall not in any way delay or affect the time set forth above for the Judgment or Alternate Judgment to become Final, or otherwise preclude the Judgment or Alternate Judgment from becoming Final.

   (i)  "Individual Defendants" means the Director Defendants and the Executive Defendants.

   (j)  "Insurers" means Illinois National Insurance Company; Twin City Fire Insurance Company; Zurich American Insurance Company; and Corporate Officers & Directors Assurance, Ltd. ("CODA") which are paying $75 million into escrow pursuant to the terms set forth herein.

   (k)  "Judgment" means the proposed judgment to be entered approving the Settlement, substantially in the form attached hereto as Exhibit D.

(l)     "Lead Counsel" means the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G").

(m)     "Lead Plaintiffs" means Louisiana Sheriffs' Pension and Relief Fund and Skandia Life Insurance Company Ltd.

(n)     "Notice" means (i) the notice of the proposed Settlement, substantially in the form attached hereto as Exhibit C-1, to be filed by Pfizer as an exhibit to a Form 8-K with the United States Securities and Exchange Commission and posted on Pfizer's corporate website and Lead Counsel's firm website and (ii) the summary notice of the proposed Settlement, substantially in the form attached hereto as Exhibit C-2, which Pfizer shall cause to be published once each in the national edition of *The Wall Street Journal* and *USA Today* and over the *Business Wire* in accordance with the provisions of the Preliminary Approval Order, or such other form and/or manner of notice of the proposed Settlement as the Court may order.

(o)     "Other Actions" means the following actions:  *Bricklayers Local 8 & Plasterers Local 233 Pension Fund v. Dennis Ausiello, et al.*, C.A. No. 5631-VCl (Delaware Court of Chancery); *Nora Vides v. Dennis A. Ausiello, et al.*, C.A. No. 5690-VCN (Delaware Court of Chancery); *Nora Vides v. Pfizer, Inc.*, C.A. No. 5134-VCN (Delaware Court of Chancery); *Donald Golden v. Dennis A. Ausiello, et al.*, Case No. 650616/2009 (Supreme Court of the State of New York, County of New York) (consolidated with *Peter Cowen v. Dennis A. Ausiello, et al.*, Case No. 650617/2009 (Supreme Court of the State of New York, County of New York)); *James Groen v. Pfizer Inc.*, C.A. No. 4351-VCN (Delaware Court of Chancery); and *James Groen v. Pfizer, Inc.*, C.A. No. 4924-VCN (Delaware Court of Chancery).

(p)     "Plaintiffs" means Lead Plaintiffs and the Additional Named Plaintiffs.

(q)     "Plaintiffs' Counsel" means Lead Counsel and all other legal counsel who, at the direction and under the supervision of Lead Counsel, represent Plaintiffs in this Litigation.

(r)     "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit C, to be entered by the Court, *inter alia*, preliminarily approving the Settlement, scheduling the Settlement Hearing, and directing notice of the Settlement.

(s)     "Released Defendant Claims" mean any and all claims, demands, rights, actions, potential actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, agreements, costs, expenses, debts, interest, penalties, sanctions, fees, attorneys' fees, judgments, decrees, matters, issues, and controversies of any kind, nature or description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, disclosed or un-disclosed, apparent or un-apparent, including known claims and Unknown Claims (as defined below), which were or could have been alleged or asserted in this Litigation by any of the Released Defendant Parties against any of the Released Plaintiff Parties, directly or indirectly relating to or arising out of the institution, prosecution or settlement of the Litigation.  Released Defendant Claims do not include any claims relating to the enforcement of this Settlement.

(t)     "Released Defendant Parties" means Pfizer, any current or former officer or director of Pfizer (including the Individual Defendants), and their respective estates, heirs, beneficiaries, administrators, successors, assigns, agents and counsel.

(u)     "Released Plaintiff Claims" means any and all claims, demands, rights, actions, potential actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, agreements, costs, expenses, debts, interest, penalties, sanctions, fees, attorneys'

fees, judgments, decrees, matters, issues, and controversies of any kind, nature or description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, disclosed or un-disclosed, apparent or un-apparent, including known claims and Unknown Claims (as defined below), which were or could have been alleged or asserted in this Litigation by Plaintiffs or any other Pfizer shareholder derivatively on behalf of Pfizer or by Pfizer directly against any Released Defendant Party, directly or indirectly relating to or arising out of any of the allegations, facts, events, transactions, acts, occurrences, conduct, practices, or any other matters, or any series thereof, alleged or asserted in the Litigation, including, without limitation, any matters directly or indirectly relating to any of the allegations concerning off-label marketing and promotion, unlawful kick-backs, or the subjects of the governmental investigations concerning and leading to the Corporate Integrity Agreement dated October 24, 2002, the Corporate Integrity Agreement dated May 11, 2004, the Deferred Prosecution Agreement dated April 2, 2007, the Corporate Integrity Agreement dated August 31, 2009, and/or the Bextra Related Information filed on September 2, 2009 in the action *United States v. Pharmacia & Upjohn Co., Inc.*, 09-cr-10258. Released Plaintiff Claims do not include any claims relating to the enforcement of this Settlement.

      (v)    "Released Plaintiff Parties" means Plaintiffs and all other Pfizer shareholders, any current or former officer or director of any of the Plaintiffs or any other Pfizer shareholder, and their respective estates, heirs, beneficiaries, administrators, successors, assigns, agents and counsel.

      (w)    "Settlement" means the settlement contemplated by this Stipulation.

- 12 -

(x)    "Settlement Hearing" means the hearing to be held by the Court to determine whether the proposed Settlement is fair, reasonable and adequate and should be approved.

(y)    "Settling Parties" means Plaintiffs, the Individual Defendants, and nominal defendant Pfizer.

(z)    "Unknown Claims" means any and all Released Plaintiff Claims that Pfizer, Plaintiffs or any other Pfizer shareholder does not know or suspect to exist in his, her or its favor at the time of the release of the Released Defendant Parties, and any Released Defendant Claims that any Defendant of any other Released Defendant Party does not know or suspect to exist in his, her or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all Released Plaintiff Claims and Released Defendant Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs, Pfizer and each of the Individual Defendants shall expressly waive, and each other Pfizer shareholder and each other Released Defendant Party shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs, Pfizer and each of the Individual Defendants acknowledge, and each other Pfizer shareholder and each other Released Defendant Party by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released

Plaintiff Claims and Released Defendant Claims was separately bargained for and was a key element of the Settlement.

## SETTLEMENT TERMS

2.     As consideration for the Settlement, Defendants agree to create and effectuate the following corporate governance measures:

(a)     <u>Creation of Regulatory Committee.</u>  Pfizer shall establish and operate a Regulatory and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") consistent with the terms of the "Corporate Governance Regarding Pfizer Compliance" set forth in appended Exhibit A.  No later than twenty (20) calendar days before the date of the Settlement Hearing, Pfizer shall inform Lead Counsel of the identity of the five (5) individuals who will be members of the Regulatory Committee. Pfizer shall establish the Regulatory Committee no later than sixty (60) calendar days after the date of entry of the Court's Judgment granting final approval to the Settlement, regardless of whether any appeal of the approval of the Settlement has been filed.

(b)     <u>Funding of Regulatory Committee.</u>

(i)     No later than thirty (30) calendar days after the date of entry of the Court's Judgment granting final approval to the Settlement, and regardless of whether any appeal of the approval of the Settlement has been filed, the Insurers shall pay a total of $75 million into an escrow account under the control of Pfizer.  Within five (5) business days of the date of deposit of the $75 million, Pfizer shall cause any attorneys' fees and expenses awarded by the Court to Plaintiffs' Counsel to be paid from the $75 million deposited in escrow.  The balance of the $75 million fund, after the payment of Court-awarded attorneys' fees and expenses, shall be subject to the exclusive control of

the Regulatory Committee for funding the activities of the Regulatory Committee for its initial five (5) year term (the "Regulatory Committee Fund"). If the Regulatory Committee Fund is exhausted during the five (5) year term, funding as requested by the Regulatory Committee shall be provided by Pfizer. Should there be a balance in the Regulatory Committee Fund at the end of the initial five (5) year term, such balance shall revert to the Insurers.

        (ii)    It is understood that the payment into escrow by CODA pursuant to the terms of subparagraph (i) is subject to an arbitration with Pfizer. Should CODA prevail, Pfizer may have to pay Coda the amount of the arbitration award up to $20 million.

        3.    <u>Implementation of Recent Compliance Enhancements.</u> Pfizer and the Individual Defendants agree and acknowledge that Pfizer has taken into account the existence and prosecution of this Litigation in making certain enhancements to its compliance programs during the pendency of this Litigation. A description of enhancements to Pfizer's compliance programs implemented, at least in part as a result of this Litigation are identified in Exhibit B attached hereto.

<u>**RELEASE OF CLAIMS**</u>

        4.    Pursuant to the Judgment, upon the Effective Date, Pfizer, Plaintiffs, and each and every Pfizer shareholder, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall be deemed by operation of law to have fully, finally and forever released, waived, discharged and dismissed each and every Released Plaintiff Claim against the Released Defendant Parties, and shall forever be enjoined from prosecuting any or all Released Plaintiff Claims against any and all Released Defendant Parties.

5.     Pursuant to the Judgment, upon the Effective Date, each of the Defendants and the other Released Defendant Parties, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall be deemed by operation of law to have fully, finally and forever released, waived, discharged and dismissed each and every of the Released Defendant Claims against the Released Plaintiff Parties, and shall forever be enjoined from prosecuting any or all of the Released Defendant Claims against any and all Released Plaintiff Parties.

## COVENANT NOT TO SUE

6.     Each of the Settling Parties further covenants and agrees not to institute, nor cause to be instituted, nor aid (except as required by law) any legal proceeding of any nature whatsoever relating to claims that it has released pursuant to paragraphs 4 – 5 above.

## PROCEDURE FOR APPROVAL

7.     Promptly after this Stipulation has been fully executed and no later than December 2, 2010, the Settling Parties shall submit this Stipulation together with its exhibits to the Court and shall apply for entry of a Preliminary Approval Order, substantially in the form attached hereto as Exhibit C.

8.     Pfizer shall be responsible for: (a) providing Notice in accordance with the Preliminary Approval Order, including providing such Notice to counsel in the Other Actions; and (b) paying any and all costs associated therewith, in accordance with the Preliminary Approval Order, whether or not the Settlement becomes effective.  In no event shall any such Notice costs be paid from the Regulatory Committee Fund, nor shall Plaintiffs, their counsel or agents be responsible for any such Notice costs.  At least seven (7) calendar days before the

Settlement Hearing, Pfizer's Counsel shall file with the Court an appropriate proof of compliance with the Notice procedures set forth in the Preliminary Approval Order.

9.      If the Settlement contemplated by this Stipulation is approved by the Court, the Settling Parties shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit D.

## ATTORNEYS' FEES AND EXPENSES

10.     Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel and reimbursement of expenses incurred in connection with the prosecution of this Litigation, which fees and expenses shall be paid out of the $75 million deposited into escrow by the Insurers pursuant to paragraph 2.(b)(i) above.   No Defendant, nor any other Released Defendant Party, shall take any position with respect to Lead Counsel's application for or the award of attorneys' fees and/or litigation expenses.  Such matters are not the subject of any agreement between Defendants and Lead Plaintiffs other than what is set forth in this Stipulation.

11.     Consistent with paragraph 2.(b)(i) above, any attorneys' fees and litigation expenses awarded by the Court shall be paid to Lead Counsel within five (5) business days of the date of deposit of the $75 million into escrow by the Insurers, notwithstanding the existence of any timely filed objections to the award, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or litigation expenses is reduced or reversed.

12.     Lead Counsel shall be responsible for allocating the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in its sole discretion, believes reflects the

contributions of such counsel to the prosecution and settlement of this Litigation.  Lead Plaintiffs and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or litigation expenses.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

13.    The Settlement shall become effective on the Effective Date, which shall be the date when all of the following shall have occurred:

(a)    entry of the Preliminary Approval Order, which shall be in all material respects substantially in the form set forth in Exhibit C attached hereto;

(b)    approval by the Court of the Settlement, as prescribed by Rule 23.1 of the Federal Rules of Civil Procedure;

(c)    a Judgment, which shall be in all material respects substantially in the form set forth in Exhibit D attached hereto, has been entered by the Court and has become Final or, in the event that the Court enters an Alternative Judgment and none of the Settling Parties elects to terminate this Settlement, the date that such Alternative Judgment becomes Final; and

(d)    this Litigation is dismissed with prejudice as to all of the Defendants.

14.    The Individual Defendants and Lead Plaintiffs shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice"), through counsel, to all other Settling Parties hereto within thirty (30) calendar days of:   (a) the Court's final refusal to enter the Preliminary Approval Order substantially in the form attached hereto as Exhibit C, in a manner that is materially detrimental to any Party; (b) the Court's final refusal to approve this Stipulation substantially in the form submitted, in a manner that is materially detrimental to any Party; (c) the Court's final refusal to enter the Judgment substantially in the form attached hereto as Exhibit D, in a manner that is

materially detrimental to any Party; (d) the date upon which the Judgment substantially in the form attached hereto as Exhibit D is modified or reversed, in a manner that is materially detrimental to any Party by the United States Court of Appeals or the Supreme Court of the United States; or (e) in the event that the Court enters an Alternative Judgment and none of the Settling Parties hereto elects to terminate this Settlement, the date upon which such Alternative Judgment is modified or reversed in a manner that is materially detrimental to any Party by the Court of Appeals or the Supreme Court of the United States.

15.     Except as otherwise provided herein, in the event the Settlement is terminated or the Effective Date cannot occur for any reason, then:  the Settlement shall be without prejudice, and none of its terms, shall be effective or enforceable except as specifically provided herein; the Settling Parties shall be deemed to have reverted to their respective positions in this Litigation immediately prior to the execution of the Settlement Term Sheet on November 15, 2010; and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered.  In such event, the fact and terms of the Settlement Term Sheet, this Stipulation, and any aspect of the negotiations leading to this Stipulation, shall not be admissible in this Litigation and shall not be used by Plaintiffs against the Defendants or by the Defendants against Plaintiffs in any court filings, depositions, at trial or otherwise, and any judgments or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated *nunc pro tunc*, and any funds disbursed in payment of attorneys' fees and/or litigation expenses shall be returned to the Insurers.

## NO ADMISSION OF WRONGDOING

16.     This Stipulation, whether or not approved by the Court, and any negotiations, proceedings or agreements relating to it shall not be offered or received against any of the

Settling Parties as evidence of or construed as or deemed to be evidence of (a) any liability, negligence, fault, or wrongdoing of any of the Settling Parties, (b) a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation, (c) a presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged in the Litigation or the validity of any of the claims or the deficiency of any defense that was or could have been asserted in the Litigation, (d) a presumption, concession, or admission by Plaintiffs of any infirmity in the claims asserted, or (e) an admission or concession that the consideration to be given hereunder represents the consideration which could be or would have been recovered at trial.

17.     Nothing herein, however, shall prevent any of the Settling Parties from using this Stipulation, or any document or instrument delivered hereunder (a) to effect or obtain Court approval of this Stipulation, (b) to enforce the terms of this Stipulation, or (c) for purposes of defending, on the grounds of res judicata, collateral estoppel, release, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, any of the Released Plaintiff Claims and any Released Defendant Claims released pursuant to this Stipulation.

## MISCELLANEOUS PROVISIONS

18.     Nothing herein shall expand the liabilities of any Pfizer directors or officers beyond any liabilities otherwise imposed by law.

19.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

20.     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs against all Released Defendant Parties with respect to all Released Plaintiff Claims.  Accordingly, Plaintiffs and their respective counsel and the Defendants and their respective counsel agree not to assert in any forum or to any media representative (whether or not for attribution) that this Litigation was brought by Plaintiffs or defended by the Defendants in bad faith or without a reasonable basis.  The Settling Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of this Litigation.  The Settling Parties agree that the terms of this Settlement were negotiated at arm's-length and in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

21.     This Stipulation may not be modified or amended, nor may any of its provisions be waived except by a writing signed by all signatories hereto or their successors-in-interest.

22.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

23.     The consummation of this Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of enforcing the terms of this Stipulation and entering orders providing for awards of attorneys' fees and litigation expenses to Plaintiffs' Counsel.

24.     The waiver by any Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

25.     This Stipulation and its exhibits constitute the entire agreement among the Settling Parties concerning this Settlement, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

26.     This Stipulation may be executed in one or more original and/or faxed counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the signatories of this Stipulation shall exchange among themselves original signed counterparts.

27.     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

28.     The construction, interpretation, validity and enforcement of this Stipulation, other than as set forth in the next sentence, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to conflicts of laws or choice of law rules, except to the extent that federal law requires that federal law govern.  For the avoidance of doubt, the determination of whether any Pfizer directors or officers, in connection with the implementation and effectuation of the provisions set forth in Exhibits A and B to this Stipulation, have satisfied their fiduciary duties to the Company and its shareholders shall be governed by the internal law of Delaware without regard to conflict of laws, or choice of law rules, except to the extent that federal law requires that federal law govern.

29.     This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length

negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

30.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

31.     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order, the Stipulation and this Settlement, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

32.     If any Settling Party is required to give notice to any other Settling Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile transmission with confirmation of receipt.  Notice shall be provided as follows:

If to Lead Plaintiffs:

Bernstein Litowitz Berger & Grossmann LLP
Attn:  Mark Lebovitch, Esq.
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444

If to the Director Defendants:

Cadwalader, Wickersham & Taft LLP
Attn:  Dennis J. Block, Esq.
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile:  (212) 504-6666

If to the Executive Defendants:

Davis Polk & Wardwell LLP
Attn:  James P. Rouhandeh, Esq.

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

If to Pfizer:

DLA Piper LLP (U.S.)
Attn: John Dougherty, Esq.
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone: (410) 580-4140
Facsimile: (410) 580-3140


IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed by their duly authorized counsel.

DATED:      New York, New York
            December 2, 2010

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**


By: *Mark Lebovitch /jrb*

    Max W. Berger
    Mark Lebovitch
    David Wales
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Court-Appointed Lead Counsel for Plaintiffs*

**CADWALADER, WICKERSHAM
& TAFT LLP**


By: _____
    Dennis J. Block
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Counsel for Director Defendants*

- 24 -

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

If to Pfizer:

DLA Piper LLP (U.S.)
Attn: John Dougherty, Esq.
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone: (410) 580-4140
Facsimile: (410) 580-3140

IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed by their duly authorized counsel.

DATED:      New York, New York
            December 2, 2010

BERNSTEIN LITOWITZ BERGER &
   GROSSMANN LLP

By: _____
    Max W. Berger
    Mark Lebovitch
    David Wales
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Court-Appointed Lead Counsel for Plaintiffs*

CADWALADER, WICKERSHAM
   & TAFT LLP

By: _____
    Dennis J. Block
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Counsel for Director Defendants*

- 24 -

DAVIS POLK & WARDWELL LLP

By: _____
        Robert B. Fiske, Jr.
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800

*Counsel for Executive Defendants*


DLA PIPER LLP (US)


By: _____
        John Dougherty
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone: (410) 580-4140
Facsimile:  (410) 580-3140

*Counsel for Nominal Defendant Pfizer Inc.*

#499105.2

- 25 -

*Counsel for Director Defendants*

**DAVIS POLK & WARDWELL LLP**

By: _____
      Robert B. Fiske, Jr.
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Counsel for Executive Defendants*

**DLA PIPER LLP (US)**

By: _____
      John C. Dougherty
      John R. Wellschlager
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone: (410) 580-4140
Facsimile: (410) 580-3140

*Counsel for Nominal Defendant Pfizer Inc.*

#499105.1

- 25 -

# Exhibit A

## EXHIBIT A

### Corporate Governance Regarding Pfizer Compliance

**I.**     **Establishment of the Regulatory Committee to be operative for, at a minimum, five (5) years from implementation, to be continued thereafter at the discretion of the full Board.**

The Regulatory Committee shall consist of at least five (5) members who will exercise oversight responsibility on significant healthcare related regulatory and compliance issues, based on criteria to be developed by the Regulatory Committee designed to identify matters falling within its scope.  The charter of such a committee will include:

     a.     the scope of the committee's oversight responsibility;

     b.     the means by which such oversight may be accomplished;

     c.     the committee's internal and external reporting obligations; and

     d.     the composition of the committee.

Below is a Term Sheet for such a charter.  However, the Regulatory Committee can take all other actions they deem proper and consistent with the charter of the Regulatory Committee.

Charter for Pfizer Board Committee on Regulatory and Compliance:

**A.**     **Scope of responsibility:**

In general, the Regulatory Committee will have oversight responsibility with respect to:

     (a)     <u>Pfizer's substantive regulatory and /or compliance obligations</u>:

          1.     compliance with Medicare/Medicaid regulations in the US;

          2.     compliance with US and ex-US drug marketing rules, including restrictions on "off-label" and other marketing activities, including:

               ▪     unapproved uses;

               ▪     providing fair balance;

               ▪     making appropriate safety claims; and

               ▪     making appropriate superiority or efficacy claims;

1

3.      compliance with US constraints (Foreign Corrupt Practices Act) on non-US "marketing activity";

4.      drug manufacturing quality control;

5.      clinical studies quality control; and

6.      required reporting to the FDA of drug safety.

(b)    <u>Pfizer's review and evaluation of external complaints alleging significant concerns in Pfizer's regulatory and/or compliance behavior based on criteria to be developed by the Regulatory Committee:</u>

1.      Review, on an annual basis, a report from the Chief Compliance Officer or the product attorney of those products that are assigned "high" risk following a RAMP analysis, as well as any new marketed products internally developed and launched, and the steps being taken to mitigate the promotional – and off-label usage – related risks for those products. The presentation must include an analysis of the marketing of the drugs in compliance with the FDA approved label;

2.      Review data on drug usages – can use the same data Pfizer is currently using for market research and compensation purposes. If the data on drug usage indicates either that the usage is above a significant threshold amount that might not be for indications on the label, or there is a trend indicating increased significant usage that might not be for indications on the label, then the Regulatory Committee will require an analysis and explanation for this from management; and the Regulatory Committee will evaluate the implications for Pfizer's compliance with regulatory and legal requirements;

3.      Review all FDA warning letters and the responses to such letters, as well as report[s] on the steps taken to implement the responses and an evaluation if it raises a drug marketing issue;

4.      Review Qui Tam lawsuits unsealed by the government and/or made known to Pfizer, and receive an analysis of the factual allegations of the claims, a review of any potential legal exposure they present for the Company, and whether it reflects a regulatory or compliance problem;

5.      Government investigation — receive details and factual reports on the investigation, the conduct at issue, and whether it reflects a regulatory or compliance issue at the Company;

6.      Receive an annual report from the Chief Compliance Officer or Product attorneys for any three (3) drugs with more than $500 million annual sales, explaining compliance with RAMP for each drug;

7.      Compliance Group shall provide, at least annually, a report of significant compliance investigations;

8.      Internal Audit shall provide, at least annually, a cumulative report on internal audit health care compliance audits undertaken that year. This report will include an analysis of healthcare compliance risks associated with each audit with an unsatisfactory rating;

9.      The Executive Compliance Committee will provide a report, at least annually, on the key compliance issues facing the company and the steps taken to address them;

10.     Retaliation – receive a report, at least annually, on retaliation claims, lawsuits alleging retaliation, settlements of retaliation claims, reports to compliance and/or the ombudsman of alleged retaliation; and

11.     The overriding purpose of this process and, specifically, items 1-10 above, is to evaluate, at a high level, whether with respect to the above mentioned regulatory, legal or compliance issues, a pattern of problems exists with respect to the:

- Oversight of the mechanism for collection, aggregation and assessment of such complaints, whether from federal or state officials, Pfizer employees, or members of the public, by appropriate Pfizer compliance personnel; and

- Receiving reports from Pfizer senior legal and other compliance officers regarding serious complaints and internal audits.

(c)     Pfizer's internal messaging to employees regarding the company's commitment to behavior and practices that comply with law; as well as its efforts to promote a compliant culture.

(d)     Compliance and Supervision of Acquired Companies:

As Pfizer acquires other companies, it is the goal of Pfizer to act expeditiously to adopt appropriate healthcare related compliance and regulatory policies for each acquired company. For each acquired company, the Compliance and Legal Departments will report to the Regulatory Committee on the following:

3

1.      Any compliance, regulatory or criminal problems or investigations, qui tam actions, or pending FDA warning letters of which the Company becomes aware that are significant in the view of the Compliance or Legal Departments, and the status of each;

2.      A specific timetable for:

- training compliance, regulatory and legal personnel at the acquired company of the policies, procedures and reporting requirements of Pfizer;

- training employees at the acquired company of the policies, procedures and reporting requirements of Pfizer; and

- having the Compliance, Regulatory and Legal Departments merged or otherwise included in the respective departments at Pfizer.

3.      Regular reports on the status and compliance with the timetables and training set forth in paragraph 2. above.

(e)      <u>Application of Pfizer Policies and Procedures to Acquired Companies</u>:

The Regulatory Committee will mandate that all Pfizer policies and procedures, including those related to compliance, regulatory and legal, that in the view of the Compliance or Legal Departments warrant application to the acquired company, are implemented within nine (9) months after each company is acquired. The Regulatory Committee may waive the nine (9) month requirement and give three (3) months extensions based on a presentation from management with a showing of demonstrated need to do so.

**B.     Authority:**

(a)      The Regulatory Committee can in its discretion require management to conduct audits on compliance, regulatory and/or legal concerns;

(b)      The Regulatory Committee can in its discretion direct whether it should be the direct recipient of the results of such an audit;

(c)      The Regulatory Committee shall commission an external review by counsel or other professionals of Pfizer's policies for significant healthcare related compliance, regulatory and/or legal issues at least bi-annually;

(d)      The Regulatory Committee can in its discretion commission surveys of doctors who use Pfizer products or commission the creation of registries of the use of such products to determine the extent to which Pfizer products are used for off-label use. The results may be used, among other

purposes, to make appropriate adjustment in compensation programs or marketing programs;

(e)     The Regulatory Committee will receive reports of the results of such a study or survey, which are also provided to management as part of the RAMP analysis;

(f)     The Regulatory Committee can in its discretion retain outside counsel with appropriate expertise, and that counsel shall not be counsel to the company or senior management, and, at its discretion, can retain experts and consultants in the discharge of its responsibilities; and

(g)     The Regulatory Committee may request and meet privately with any member of the Pfizer senior management team or any other Pfizer employee.

**C.     Reporting Responsibilities:**

(a)     The Regulatory Committee shall meet at least quarterly and provide a full report to the Board at least annually; and

(b)     The Regulatory Committee shall prepare a yearly overview of its activities generally for inclusion in Pfizer's Annual Report (or Proxy Statement). The report shall be signed by the Regulatory Committee chairperson and all Regulatory Committee members.

**D.     Composition Of The Regulatory Committee:**

(a)     The Regulatory Committee shall be comprised of at least a majority of independent directors, and may include senior Pfizer employees ex-officio, and others;

(b)     The independent directors on the Regulatory Committee may meet in executive session;

(c)     The Chair of the Regulatory Committee shall be an independent director elected since January 1, 2007, who has relevant experience in law, corporate compliance, regulatory or governmental affairs, academia or service on the Board of a healthcare institution or highly regulated company;

(d)     The Regulatory Committee's membership shall include a person with significant background in healthcare; and

(e)     The Regulatory Committee's membership should include at least one member of the Audit Committee at the discretion of the Board, but the majority of the Regulatory Committee should not be members of the Audit Committee. If a member of the Audit Committee is not a member of the

Regulatory Committee, then the Chair persons of the two committees must meet at least twice each year to update each other on the work and issues of their respective committees.

## II.    Responsibilities As Between The Audit Committee And Regulatory Committee -- Pfizer's internal compliance organization:

As the Audit Committee has certain compliance functions and obligations under the Corporate Integrity Agreement, the allocation of responsibilities between the Audit Committee and Regulatory Committee will need to be delineated and then implemented in an orderly manner.   Both internal and external auditors will continue to report consistent with current practices to the Audit Committee, except solely to the extent that either is required to report to the Regulatory Committee by the provisions and procedures set forth herein.

a.    The Regulatory Committee shall evaluate and report to the Board on the adequacy of compliance staffing of functional units;

b.    The Regulatory Committee shall review reporting chains for compliance personnel that seek to provide a protected channel against retaliation that is provided to the Audit Committee;

c.    The Regulatory Committee shall review the means to provide protection against retaliation of compliance or other personnel in the human healthcare sales units;

d.    Management shall report to the Audit Committee and Regulatory Committee if there is any significant disciplinary action against any compliance personnel or internal audit personnel, including the nature of the conduct that lead to the disciplinary action, the disciplinary action and the reason for it, and an analysis of whether the underlying conduct reflects any compliance or regulatory problems or issues;

e.    As between the Audit Committee or Regulatory Committee, whichever is charged in the future with certification responsibilities under the 2009 Corporate Integrity Agreement, will report at least annually to the full Board on (i) the state of the compliance functions, (ii) compliance problems or issues it has learned about, (iii) a detailed summary of nature and scope of compliance investigations, to assist the Regulatory Committee in identifying any patterns of compliance, or regulatory issues at the Company; (iv) any significant disciplinary actions against any compliance or internal audit personnel; and (v) any other issues that may reflect any systemic or widespread problems in compliance or regulatory matters exposing the Company to substantial compliance risk; and

f.    In advance of the report set forth above in subsection (e), the Audit Committee and Regulatory Committee, either through their Chairs or

otherwise, shall confer on any matters of mutual interest in light of their respective responsibilities.

### III.    Ombudsman:

An Ombudsman Program, managed by or under the direction of the Chief Compliance Officer, providing an additional channel for employees to address work-related concerns, including conduct inconsistent with Pfizer's policies, practices, values and standards. The Program will be available to all employees and is designed as a "safe haven" where concerns can be addressed in confidence and without fear of reprisal. All conversations with the Ombudsman are kept confidential unless they raise issues of potential harm to an individual or the Company. The Ombudsman will be a neutral party and listen to and review concerns as an advocate for the Company's values and standards. Although the program shall provide confidentiality procedures, the Ombudsman will be subject to laws applicable to corporate disclosure requirements and will provide to the Company all information related to its disclosure obligations, including any information requested by the Chief Compliance Officer with respect to issues that may require disclosure or that represent any employee misconduct. The Ombudsman has a stand-alone office that will report to the Compliance Group and has the right to report directly to the Regulatory Committee.

### IV.    The Regulatory Committee in consultation with the Compensation Committee will discuss with management the following:

a.    An evaluation of whether compensation practices, including sales incentives, for sales and marketing personnel may not be aligned with compliance incentives;

b.    An evaluation of whether compensation practices for speakers and advisory board members may not be aligned with compliance incentives; and

c.    Any compensation practices evaluation prepared as a result of subsections (a) or (b) above can either be first reported to the Regulatory Committee, or to the Compensation Committee, which will then report the results to the Regulatory Committee.

### V.    Compensation Claw-Back:

If there is a (i) government criminal charge or civil complaint indicating a significant compliance or regulatory problem that results in a criminal conviction or a civil settlement with the Department of Justice, (ii) qui tam action in which the government intervenes, or (iii) such other government or regulatory action that, in the judgment of the Board, has caused significant regulatory, financial or reputation damage to the Company, then the Regulatory Committee must consider recommending to the Compensation Committee taking actions consistent with those provisions described below with respect to compensation:

7

a.  The Regulatory Committee will make a written recommendation to the Compensation Committee concerning the extent, if any, that the incentive based compensation of any executive, senior manager, compliance personnel and/or attorney involved in the conduct described above or with direct supervision over an employee that engaged in the conduct described above should be reduced or extinguished.

b.  The incentive-based compensation of any executive, senior manager, compliance personnel and/or attorney will not be impacted if they were not involved in the misconduct or engaged in the direct or indirect supervision of the employee involved in the misconduct.

c.  If, prior to any regulatory or government investigation of the conduct, any person engaged in the supervision of the employee involved in the misconduct discovers and discloses the misconduct, takes steps to have the matter investigated, remedied and reports the conduct to the appropriate legal, compliance and if required Board committees, then the Regulatory Committee can in its discretion recommend to the Compensation Committee that no reduction of compensation is required for anyone not involved in the misconduct consistent with the intent of U.S.S.G. 8C2.5(g)(1).

d.  Nothing in this section is designed to limit or restrict the Company or the Board from taking any disciplinary action they deem appropriate.

## VI.   Rotation of Regulatory Committee Assignments:

To the extent in its discretion the Board continues the Regulatory Committee for a period longer than five (5) years, the Board shall consider whether a formal rotation policy for membership on the Regulatory Committee is appropriate.

## VII.   Funding for the Regulatory Committee:

All funding for the Regulatory Committee, and its related activities as set forth above, shall first come from the fund established through the settlement of *In re Pfizer Inc. Shareholder Derivative Litigation*, and, if such funds are exhausted during the five year term, funding, as requested by the Regulatory Committee, shall be provided by the Company.

## VIII.   Liability of Company Directors or Officers:

Nothing herein shall expand the liabilities of any Company directors or officers beyond any liabilities otherwise imposed by law.

## IX.   The Regulatory Committee's Term:

Prior to the end of the Regulatory Committee's term, the Board, after receiving the written recommendation of the Committee, will determine whether to

extend the Regulatory Committee's term.  The decision of the Board shall be reported to the shareholders in the Company's Annual Report or Proxy Statement.

# 496694

# Exhibit B

# EXHIBIT B

A. Formation and operation of the Promotional Quality Assurance group, a state-of-the-art promotional compliance monitoring function

B. Enhancement and re-launch of RAMP, an industry-leading risk assessment and mitigation planning software and process

C. Assessment and update of several promotional practices and policies to address compliance risks (e.g., incentive compensation, speaker program policies, etc.)

D. Development and implementation of In-Context Training, a cutting edge product-specific promotional message compliance training approach

E. Execution of multiple product and business process "deep dive" assessments for both Pfizer and legacy-Wyeth operations

F. Development and launch of the Compliance Diagnostic approach, a risk-based control environment assessment tied to the Company's Enterprise Risk Management approach, with a particularized focus on product promotion

G. Rollout of culture-focused initiatives and communications, including the "It's Mine" campaign

H. Development and launch of new compliance reporting communications, including the "Reporting Compliance Concerns" brochure and wallet card, and an online issue reporting system

I. Establishment of a tiered compliance committee structure at the business unit and divisional levels

J. Establishment of Executive Compliance Committee (chaired by CEO)

K. Creation and staffing of embedded compliance counsel positions for all business units

L. Execution of leadership compliance workshops

M. Separation of Compliance and Legal Divisions

N. Formation of position of Deputy Compliance Officer, Corrective Action

O. Integration of compliance-related controls into Pfizer's Tablet PC detailing system. Controls address medical information requests, sampling, and promotional messaging

P. Annual review and risk assessment by Compensation Committee of incentive and commission plans for Pfizer executive compensation program and policies, and employee programs and policies.

Q.  Comprehensive Enterprise Risk Management program, which is part of the Company's strategic planning process and is operated under sponsorship of the General Counsel and Chief Financial Officer, subject to oversight by the Board Audit Committee.

# Exhibit C

**EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR) <br><br> ECF CASE |

## [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND SETTING SETTLEMENT HEARING

WHEREAS, Lead Plaintiffs and defendants Dennis A. Ausiello, Michael S. Brown, M. Anthony Burns, Robert N. Burt, W. Don Cornwell, William H. Gray III, Constance J. Horner, James M. Kilts, Jeffrey B. Kindler, George A. Lorch, Dana G. Mead, Suzanne Nora Johnson, William C. Steere, Jr., Henry A. McKinnell, Joseph M. Feczko, Douglas M. Lankler, Ian Read, Frank D'Amelio, and Allen P. Waxman (the "Individual Defendants"), and nominal defendant Pfizer Inc. ("Pfizer," and together with the Individual Defendants, the "Defendants") have entered into a Stipulation and Agreement of Settlement dated December 2, 2010 (the "Stipulation") which sets forth the terms and conditions for the proposed settlement (the "Settlement") of the above-captioned shareholder derivative litigation (the "Litigation"), subject to review and approval by this Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure; and

WHEREAS, Lead Plaintiffs and Defendants have moved for an Order preliminarily approving the Settlement in accordance with the terms of the Stipulation and providing for notice of the Settlement; and

WHEREAS, the Court having read and considered the Stipulation and the exhibits thereto, including the proposed (i) Notice of Pendency and Proposed Settlement of Shareholder

Derivative Litigation (the "Notice"); (ii) Summary Notice of Pendency and Proposed Settlement of Shareholder Derivative Litigation (the "Summary Notice"); and (iii) Judgment, and finding that substantial and sufficient grounds exist for entering this Order:

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. This Order incorporates by reference the definitions in the Stipulation and, unless otherwise herein defined, all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

2. The Court preliminarily approves the Settlement on the terms set forth in the Stipulation, subject to further consideration at a hearing to be held before this Court on _____, 2011, at _:__ _.m., at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007 (the "Settlement Hearing"), to, among other things: (a) determine whether the proposed Settlement, on the terms and conditions provided for in the Stipulation, should be approved by the Court; (b) determine whether the Released Plaintiff Claims against the Defendants and the other Released Defendant Parties should be dismissed with prejudice as set forth in the Stipulation; (c) determine whether Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses should be approved; and (d) to rule on such other matters as the Court may deem appropriate.

3. The Court expressly reserves the right to adjourn the Settlement Hearing, or any adjournment thereof, without any further notice to Pfizer shareholders other than an announcement at the Settlement Hearing, or any adjournment thereof.

4. The Court reserves the right to approve the Settlement with or without modification and with or without further notice of any kind. The Court further reserves the right

2

to enter its Judgment approving the Settlement and dismissing the Released Plaintiff Claims against the Released Defendant Parties with prejudice regardless of whether it has awarded attorneys' fees and litigation expenses.

5.      The Court approves the form, content and requirements of the Notice and the Summary Notice and finds that the filing, posting and publication of these notices, substantially in the manner and form set forth in this Order, meets the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process, and constitutes due and sufficient notice of all matters relating to the Settlement.

6.      Within five (5) business days of the date of entry of this Preliminary Approval Order, Pfizer shall (i) file a copy of the Notice, substantially in the form attached hereto as Exhibit 1, as an exhibit to a Form 8-K with the United States Securities and Exchange Commission; and (ii) post a copy of the Notice on Pfizer's corporate website, along with a copy of the Stipulation, which documents shall remain posted on Pfizer's corporate website through the Effective Date of the Settlement.  Lead Counsel shall post a copy of the Notice, along with a copy of the Stipulation, on its firm website.

7.      Within three (3) business days of the date of filing of the Notice in accordance with the provisions of paragraph 6 above, Pfizer shall cause the Summary Notice, substantially in the form attached hereto as Exhibit 2, to be published once each in the national edition of *The Wall Street Journal* and *USA Today* and over the *Business Wire*.

8.      Any and all costs associated with providing notice of the Settlement shall be paid by Pfizer, whether or not the Settlement becomes effective, and in no event shall any such notice costs be paid from the Regulatory Committee Fund, nor shall Plaintiffs, their counsel or agents be responsible for any such notice costs.

9.      At least seven (7) calendar days before the Settlement Hearing, Pfizer's Counsel shall file with the Court an appropriate proof of compliance with the notice procedures set forth in this Preliminary Approval Order.

10.     Any person who owns shares of Pfizer common stock as of December 2, 2010 and continues to own such shares as of the date of the Settlement Hearing may appear at the Settlement Hearing to show cause why the proposed Settlement should not be approved; why a judgment should not be entered thereon; or why Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses should not be granted, *provided, however,* that no such person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the Judgment to be entered approving the same, or the attorneys' fees and reimbursement of litigation expenses requested, unless such person has filed with the Clerk of the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007, and served (by hand, first class mail, or express service) on Lead Counsel and Defendants' Counsel, at the addresses below, a written notice of objection that includes (i) the objector's name, address and telephone number, along with a representation as to whether the objector intends to appear at the Settlement Hearing; (ii) proof that the objector owned shares of Pfizer common stock as of December 2, 2010 and continues to hold such shares, (iii) a statement of the objections to any matters before the Court, the grounds therefore or the reasons for the objector's desiring to appear and be heard, as well as all documents or writings the objector desires the Court to consider; and (iv) if the objector has indicated that he, she or it intends to appear at the Settlement Hearing, the identities of any witnesses the objector may call to testify and any exhibits the objector intends to introduce into evidence at the Settlement Hearing.

**Lead Counsel:**

Mark Lebovitch, Esq.
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, New York 10019

**Counsel for the Executive Defendants:**

James P. Rouhandeh
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017

**Counsel for the Director Defendants:**

Dennis J. Block, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281

**Counsel for Pfizer:**

John Dougherty, Esq.
DLA Piper LLP (U.S.)
6225 Smith Avenue
Baltimore, Maryland 21209

Any such objection must be filed with the Court and received by the above-noted counsel no later than fourteen (14) calendar days before the Settlement Hearing.

11.     Any person or entity who fails to object in the manner prescribed above shall be deemed to have waived such objection and shall forever be foreclosed from making any objection in this Litigation, or any other action or proceeding, to the Settlement, the Judgment to be entered approving the Settlement, or the attorneys' fees and reimbursement of litigation expenses requested.

12.     Lead Counsel shall file and serve papers in support of final approval of the proposed Settlement no later than twenty-eight (28) calendar days prior to the Settlement Hearing; if reply papers are necessary, they are to be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.

13.     In the event the Settlement is terminated or the Effective Date does not occur for any reason, then:  the Settlement shall be null and void and without prejudice, and none of its terms, shall be effective or enforceable except as specifically provided in the Stipulation; the Settling Parties shall be deemed to have reverted to their respective positions in this Litigation

5

immediately prior to the execution of the Settlement Term Sheet on November 15, 2010; and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if the Stipulation and any related orders had not been entered.

14.    All discovery and other proceedings in this Litigation (except as may be necessary to carry out the terms and conditions of the proposed Settlement) are hereby stayed and suspended until further order of the Court.   Pending the final determination of whether the Settlement should be approved, Plaintiffs shall not institute, commence or prosecute any action that asserts any Released Plaintiff Claim against any of the Released Defendant Parties.

15.    The Court retains exclusive jurisdiction over the Litigation to consider all further matters arising out of or connected with the Settlement.

SO ORDERED:

Dated: New York, New York

_____, 201__

_____
HONORABLE JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

#497491

6

# Exhibit C-1

UNITED STATES DISTRICT COURT                    **EXHIBIT C-1**
SOUTHERN DISTRICT OF NEW YORK

---

IN  RE  PFIZER  INC.  SHAREHOLDER          No. 09-CV-7822 (JSR)
DERIVATIVE LITIGATION                               ECF CASE

---

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF
## <u>SHAREHOLDER DERIVATIVE LITIGATION</u>

**TO:   ALL PERSONS WHO OWN SHARES OF PFIZER INC. ("PFIZER" or the "COMPANY") COMMON STOCK AS OF DECEMBER 2, 2010 AND CONTINUE TO OWN SUCH SHARES.**

The purpose of this Notice is to inform you about: (i) the pendency of the above-captioned shareholder derivative lawsuit (the "Litigation"), which was brought by certain Pfizer shareholders on behalf of and for the benefit of Pfizer in the United States District Court for the Southern District of New York (the "Court"); (ii) a proposed settlement of the Litigation (the "Settlement"), subject to Court approval, as provided in a Stipulation and Agreement of Settlement (the "Stipulation") that was filed with the Court and is available for review as indicated at paragraph 28 below; (iii) the hearing that the Court will hold on _____, 2011 to determine whether to approve the Settlement and to consider Lead Counsel's application for an award of attorneys' fees and for reimbursement of litigation expenses incurred in the prosecution of the Litigation; and (iv) current shareholders' rights with respect to the proposed Settlement and Lead Counsel's application for attorneys' fees and reimbursement of expenses.[1]

## **PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**
## **YOUR RIGHTS WILL BE AFFECTED BY THIS LITIGATION.**

The Stipulation was entered into as of December 2, 2010, between and among: (1) the Court-appointed "Lead Plaintiffs," Louisiana Sheriffs' Pension and Relief Fund and Skandia Life Insurance Company Ltd.; (2) defendants Dennis A. Ausiello, Michael S. Brown, M. Anthony Burns, Robert N. Burt, W. Don Cornwell, William H. Gray III, Constance J. Horner, James M. Kilts, Jeffrey B. Kindler, George A. Lorch, Dana G. Mead, Suzanne Nora Johnson, William C. Steere, Jr, and Henry A. McKinnell ("Director Defendants"); (3) defendants Joseph M. Feczko, Douglas M. Lankler, Ian Read, Frank D'Amelio, and Allen P. Waxman ("Executive Defendants", and together with Director Defendants, "Individual Defendants"); and (4) nominal defendant Pfizer, subject to the approval of the Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure.

---

[1] All capitalized terms not otherwise defined in this Notice shall have the meaning provided in the Stipulation.

Because this Litigation was brought as a derivative action on behalf of and for the benefit of Pfizer, the benefits from the Settlement will go to Pfizer. Individual Pfizer shareholders will not receive any direct payment from the Settlement.

The following description of the Litigation and Settlement does not constitute findings of the Court. It is based on statements of the parties and should not be understood as an expression of any opinion of the Court as to the merits of any of the claims or defenses raised by any of the parties. The Court has not yet approved the Settlement.

## WHAT IS THE PURPOSE OF THIS NOTICE?

1.      The purpose of this Notice is to explain the Litigation, the terms of the proposed Settlement, and how the proposed Settlement affects Pfizer shareholders' legal rights.

2.      In a derivative action, one or more people and/or entities who are current shareholders of a corporation sue on behalf of and for the benefit of the corporation, seeking to enforce the corporation's legal rights.

3.      As described more fully below, current shareholders, have the right to object to the proposed Settlement and the application by Lead Counsel for an award of attorneys' fees and expenses. They have the right to appear and be heard at the Settlement Hearing, which will be held on _____, 2011, at _:__ _.m., before the Honorable Jed S. Rakoff, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007. At the Settlement Hearing, the Court will determine:

(i)      whether the Settlement should be approved;

(ii)     whether the Released Plaintiff Claims against Defendants and other Released Defendant Parties should be dismissed with prejudice as set forth in the Stipulation; and

(iii)    whether Lead Counsel's request for an award of attorneys' fees and reimbursement of litigation expenses should be approved by the Court.

## WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR?

4.      In September 2009, Pfizer entered into an agreement with the U.S. Department of Justice ("DOJ") regarding an investigation into Pfizer's promotional practices for certain drugs, including allegations of unlawful promotion of Bextra, Zyvox, Geodon, and Lyrica, and allegations related to payments to healthcare providers involving these and nine other drugs.

5.      As part of the settlement with the DOJ, Pfizer agreed to pay a criminal fine, and a Pfizer subsidiary, Pharmacia & Upjohn Company, Inc., agreed to plead guilty to one count of violating the U.S. Food, Drug, and Cosmetic Act related to off-label promotion of Bextra. Pfizer expressly denied all civil allegations of unlawful conduct, and only acknowledged certain

activities relating to the promotion of Zyvox. In total Pfizer paid $2.3 billion in criminal fines and forfeitures and civil settlement payments.

6.   Between September 10 and October 7, 2009, nine derivative action complaints were filed in the United States District Court for the Southern District of New York, alleging that, between including May 11, 2004 and September 2, 2009, the Individual Defendants breached their fiduciary duties ("Fiduciary Duty Claims") in connection with the marketing and promotion of Pfizer drugs, including Bextra, Geodon, Lyrica and Zyvox and in connection with alleged improper payments to healthcare professionals,, and alleging related violations of Section 14(a) of the Securities Exchange Act (the "Proxy Claims").

7.   On November 4, 2009, the Court consolidated these actions and appointed Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as "Lead Counsel" in the Litigation; on November 18, 2009, the plaintiffs filed a Consolidated, Amended and Verified Shareholder Derivative Complaint (the "Amended Complaint") and on December 16, 2009, the Individual Defendants moved to dismiss the Amended Complaint (the "Motion to Dismiss"). Following extensive briefing, on February 5, 2010, the Court heard oral argument on the Motion to Dismiss, and on March 17, 2010, the Court issued an Order dismissing the Proxy Claims while sustaining in material part the Fiduciary Duty Claims.

8.   The parties engaged in extensive discovery practice between March 31, 2010 and November 12, 2010, including discovery-related evidentiary hearings before the Court, the production by Defendants and various third parties of over 12 million pages of documents, the taking of over 30 fact depositions, the exchange of extensive interrogatories and requests for admission, the exchange of seven expert reports and the deposing of Defendants' four experts.

9.   On July 13, 2010, the Court issued a formal Opinion and Order supporting the Court's March 17, 2010 dismissal of the Proxy Claims and unjust enrichment claim. A copy of the Court's July 13, 2010 Order is available for review at www.blbglaw.com/pfizer.

10.   On October 22, 2010, the Individual Defendants served a motion for summary judgment seeking dismissal of all plaintiffs' claims. On November 12, 2010, Plaintiffs served their opposition papers. On November 15, 2010, the parties entered into a Settlement Term Sheet setting forth the principal terms of the proposed Settlement.

11.   The parties entered into the formal Stipulation on December 2, 2010 and on December __, 2010, the Court preliminarily approved the Settlement, directed that this Notice be attached as an exhibit to a Form 8-K filed with the United States Securities and Exchange Commission and be posted, along with a copy of the Stipulation, on Pfizer's corporate website and on Lead Counsel's firm website, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

12.   The Individual Defendants have denied and continue to deny each and all of the claims and contentions of wrongdoing alleged by Plaintiffs herein. The Individual Defendants have denied and continue to deny that they violated any duties to Pfizer in this Litigation and have asserted that they acted at all times in good faith and consistent with their fiduciary duties

3

to Pfizer and its shareholders.  Defendants have nonetheless concluded that it is desirable to settle this Litigation in the manner and upon the terms set forth in the Settlement.

---

## WHAT ARE THE TERMS OF THE SETTLEMENT?

---

13.    As consideration for the Settlement, Defendants agree to create and effectuate the following corporate governance measures:

Creation of Regulatory Committee.    Pfizer shall establish and operate for a term of at least five (5) years from the date of implementation, a Regulatory and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") consistent with the terms of the "Corporate Governance Regarding Pfizer Compliance" set forth in Exhibit A attached to this Notice.

Funding of Regulatory Committee.  No later than thirty (30) calendar days after the date of entry of the Court's Judgment granting final approval to the Settlement, the Individual Defendants' Insurers shall pay a total of $75 million into an escrow account under the control of Pfizer.[2]   If the Settlement is approved, that amount less any attorneys' fees and litigation expenses awarded by the Court shall be subject to the exclusive control of the Regulatory Committee for funding its activities for its initial five (5) year term (the "Regulatory Committee Fund").  If the Regulatory Committee Fund is exhausted during the initial five (5) year term, funding as requested by the Regulatory Committee shall be provided by Pfizer.  Should there be a balance in the Regulatory Committee Fund at the end of the initial five (5) year term, such balance shall revert to the Insurers.

Implementation of Recent Compliance Enhancements.  Pfizer and the Individual Defendants agree and acknowledge that Pfizer has taken into account the existence and prosecution of this Litigation in making certain enhancements to its compliance programs during the pendency of this Litigation.  A description of enhancements to Pfizer's compliance programs implemented, at least in part as a result of this Litigation are identified in Exhibit B attached to this Notice.

---

## WHAT ARE THE LEAD PLAINTIFFS' REASONS FOR THE SETTLEMENT?

---

14.    Lead Plaintiffs and Lead Counsel believe that the claims asserted against the Defendants have merit.  Lead Plaintiffs and Lead Counsel recognize, however, the expense and length of continued proceedings necessary to pursue their claims against the Defendants through trial and appeals.  Lead Plaintiffs and Lead Counsel have taken into account the possibility that the claims asserted in the Amended Complaint might have been dismissed in response to the

---

[2] The payment into escrow by one of the Insurers is subject to an arbitration with Pfizer.  Should the Insurer prevail in arbitration, Pfizer may have to pay that Insurer the amount of the arbitration award up to $20 million.

Individual Defendants' motion for summary judgment, and have considered issues that would have been decided by a jury in the event of a trial of the Litigation.

15.     In light of the significant corporate governance measures created by the Settlement, Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, adequate, and in the best interests of Pfizer.  The Settlement provides substantial immediate benefits to Pfizer without the risk that continued litigation could result in obtaining similar or lesser relief for Pfizer after continued extensive and expensive litigation, including trial and the appeals that were likely to follow.  In particular, the creation of the Regulatory Committee is expected to create a significant improvement in the Pfizer Board's handling of drug marketing matters, significantly limiting the risk of any future legal violations and resulting fines.  It is uncertain, that any final judgment after trial would result in an award of relief comparable to the Regulatory Committee.

16.     The Individual Defendants have denied the claims asserted against them and disclaim any liability or damages or having engaged in any wrongdoing or violation of law of any kind whatsoever.  Accordingly, the Settlement may not be construed as an admission of the Individual Defendants' wrongdoing, nor construed or deemed to be evidence of or an admission or concession on the part of any Individual Defendant with respect to the merits of any claim, nor of any infirmity in the defenses that the Individual Defendants have, or could have, asserted in this Litigation.  Likewise, the Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Plaintiff of any infirmity in the claims that Plaintiffs have, or could have, asserted.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

17.     If there were no Settlement and Lead Plaintiffs failed to establish any essential legal or factual element of their claims, Pfizer would not receive any of the benefits of the Settlement created to prevent the reoccurrence of the wrongdoing alleged in the Litigation.

## WHAT CLAIMS WILL THE SETTLEMENT RELEASE?

18.     If the Settlement is approved, the Court will enter a judgment (the "Judgment").  Pursuant to the Judgment, the following releases will occur upon the Effective Date of the Settlement.

**Release of Claims by Plaintiffs and Pfizer**: Upon the Effective Date, Pfizer, Plaintiffs, and each and every Pfizer shareholder, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall be deemed by operation of law to have fully, finally and forever released, waived, discharged and dismissed each and every Released Plaintiff Claim against the Released Defendant Parties, and shall forever be

5

enjoined from prosecuting any or all Released Plaintiff Claims against any and all Released Defendant Parties.

"Released Plaintiff Claims" means any and all claims, demands, rights, actions, potential actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, agreements, costs, expenses, debts, interest, penalties, sanctions, fees, attorneys' fees, judgments, decrees, matters, issues, and controversies of any kind, nature or description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, disclosed or un-disclosed, apparent or un-apparent, including known claims and Unknown Claims (as defined below), which were or could have been alleged or asserted in this Litigation by Plaintiffs or any other Pfizer shareholder derivatively on behalf of Pfizer or by Pfizer directly against any Released Defendant Party, directly or indirectly relating to or arising out of any of the allegations, facts, events, transactions, acts, occurrences, conduct, practices, or any other matters, or any series thereof, alleged or asserted in the Litigation, including, without limitation, any matters directly or indirectly relating to any of the allegations concerning off-label marketing and promotion, unlawful kick-backs, or the subjects of the governmental investigations concerning and leading to the Corporate Integrity Agreement dated October 24, 2002, the Corporate Integrity Agreement dated May 11, 2004, the Deferred Prosecution Agreement dated April 2, 2007, the Corporate Integrity Agreement dated August 31, 2009, and/or the Bextra Related Information filed on September 2, 2009 in the action *United States v. Pharmacia & Upjohn Co., Inc.*, 09-cr-10258. Released Plaintiff Claims do not include any claims relating to the enforcement of this Settlement.

"Released Defendant Parties" means Pfizer, any current or former officer or director of Pfizer (including the Individual Defendants), and their respective estates, heirs, beneficiaries, administrators, successors, assigns, agents and counsel.

**Release of Claims by Defendants:** Upon the Effective date, each of the Defendants and the other Released Defendant Parties (as defined above), on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall be deemed by operation of law to have fully, finally and forever released, waived, discharged and dismissed each and every of the Released Defendant Claims against the Released Plaintiff Parties, and shall forever be enjoined from prosecuting any or all of the Released Defendant Claims against any and all Released Plaintiff Parties.

"Released Defendant Claims" mean any and all claims, demands, rights, actions, potential actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, agreements, costs, expenses, debts, interest, penalties, sanctions, fees, attorneys' fees, judgments, decrees, matters, issues, and controversies of any kind, nature or description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, disclosed or un-disclosed, apparent or un-apparent, including known claims and Unknown Claims (as defined below), which were or could have been alleged or asserted in this Litigation by any of the Released Defendant Parties against any of the Released Plaintiff Parties, directly or indirectly relating to or

6

arising out of the institution, prosecution or settlement of the Litigation. Released Defendant Claims do not include any claims relating to the enforcement of this Settlement.

"Released Plaintiff Parties" means Plaintiffs and all other Pfizer shareholders, any current or former officer or director of any of the Plaintiffs or any other Pfizer shareholder, and their respective estates, heirs, beneficiaries, administrators, successors, assigns, agents and counsel.

"Unknown Claims" means any and all Released Plaintiff Claims that Pfizer, Plaintiffs or any other Pfizer shareholder does not know or suspect to exist in his, her or its favor at the time of the release of the Released Defendant Parties, and any Released Defendant Claims that any Defendant of any other Released Defendant Party does not know or suspect to exist in his, her or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Released Plaintiff Claims and Released Defendant Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs, Pfizer and each of the Individual Defendants shall expressly waive, and each other Pfizer shareholder and each other Released Defendant Party shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs, Pfizer and each of the Individual Defendants acknowledge, and each other Pfizer shareholder and each other Released Defendant Party by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiff Claims and Released Defendant Claims was separately bargained for and was a key element of the Settlement.

19.     If the Settlement is approved and the Effective Date occurs, since Pfizer will have released the Released Plaintiff Claims described above that it could have asserted against any of the other Released Defendant Parties, no Pfizer shareholder will be able to bring another action asserting those claims against those persons on behalf of the Company.

## HOW WILL THE ATTORNEYS BE PAID?

20.     Plaintiffs' Counsel have not received any payment for their services in pursuing the claims against Defendants in the Litigation, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses. Lead Counsel intends to apply to the Court for an award of attorneys' fees to Plaintiffs' Counsel from the $75 million paid into escrow by the Insurers in the amount of $22 million. Lead Counsel also intends to apply for the reimbursement of expenses incurred in connection with the prosecution of the Litigation to be paid from the $75 million fund in an amount not to exceed $1.9 million. The Court will determine the amount of the award.

> **WHEN AND WHERE WILL THE COURT RULE ON APPROVAL OF THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING?  MAY I SPEAK AT THE HEARING?**

**21.     If you owned Pfizer common stock as of December 2, 2010 and continue to own such stock through _____, 2011, the date of the Settlement Hearing ("Current Shareholder"), you may, if you wish to do so, comment to the Court on the proposed Settlement and/or the application for an award of attorneys' fees and reimbursement of litigation expenses.  Current Shareholders who do not wish to object in person to the proposed Settlement and/or the application for attorneys' fees and expenses, do not need to attend the Settlement Hearing.  You can object to the Settlement and/or the application for attorneys' fees and reimbursement of expenses without attending.**

22.     The Settlement Hearing will be held on _____, 2011, at _:__ _.m., before the Honorable Jed S. Rakoff, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007.  The Court reserves the right to approve the Settlement or the application for attorneys' fees and expenses at or after the Settlement Hearing without further notice to Current Shareholders.

23.     Any Current Shareholder may object to the Settlement or Lead Counsel's request for an award of attorneys' fees and expenses.  Objections or oppositions must be in writing and must be filed together with proof that you owned shares of Pfizer common stock as of December 2, 2010 and continue to own such shares, with the Clerk's Office at the address set forth below on or before _____, 2011.  You must also serve the papers on Lead Counsel and Defendants' Counsel at the addresses set forth below so that the papers are *received* on or before _____, 2011.

| **Clerk's Office** | **Lead Counsel** |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP |
| Clerk of the Court | Mark Lebovitch, Esq. |
| 500 Pearl Street | 1285 Avenue of the Americas |
| New York, New York 10007 | New York, NY 10019 |

| **Counsel for the Director Defendants** | **Counsel for the Executive Defendants** |
|---|---|
| CADWALADER, WICKERSHAM & TAFT LLP | DAVIS POLK & WARDWELL LLP |
| Dennis J. Block, Esq. | James P. Rouhandeh, Esq. |
| One World Financial Center | 450 Lexington Avenue |
| New York, New York 10281 | New York, New York 10017 |

**Counsel for Pfizer**

DLA PIPER LLP (U.S.)
John Dougherty, Esq.
6225 Smith Avenue
Baltimore, Maryland 21209

24.     Current Shareholders may file a written objection without having to appear at the Settlement Hearing.  A Current Shareholder may not appear at the Settlement Hearing to present his, her or its objection, however, unless he, she or it first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

25.     A Current Shareholder who or which wishes to be heard orally at the hearing in opposition to the approval of the Settlement or Lead Counsel's request for an award of attorneys' fees and expenses, and has filed and served a timely written objection as described above, also must notify the above counsel on or before _____, 2011 concerning his, her or its intention to appear.  Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.

26.     The Settlement Hearing may be adjourned by the Court without further written notice to Current Shareholders.  If you intend to attend the Settlement Hearing, you should confirm the date and time with Lead Counsel.

27.     **Unless the Court orders otherwise, any Current Shareholder who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement or Lead Counsel's request for an award of attorneys' fees and expenses.  Current Shareholders do not need to appear at the hearing or take any other action to indicate their approval.**

| CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? |
|---|

28.     This Notice contains only a summary of the terms of the proposed Settlement. More detailed information about the Litigation is available at www.blbglaw.com/pfizer, including, among other documents, the Amended Complaint and the Stipulation of Settlement. You or your attorney may examine the Court files for *In re Pfizer Inc. Shareholder Derivative Litigation*, No. 09-CV-7822 (JSR) during regular business hours at the SDNY Court.  Questions about the Settlement or about this Notice in general should be directed to:

Mark Lebovitch, Esq.
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(800) 380-8496

9

blbg@blbglaw.com

**Lead Counsel**

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE.**

Dated: _____, 201_

By Order of the Clerk of Court
United States District Court
for the Southern District of New York

# 499114

# Exhibit C-2

UNITED STATES DISTRICT COURT                    **EXHIBIT C-2**
SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SHAREHOLDER                No. 09-CV-7822 (JSR)
DERIVATIVE LITIGATION                        ECF CASE

## SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF SHAREHOLDER DERIVATIVE LITIGATION

**TO:   ALL PERSONS WHO OWN SHARES OF PFIZER INC. ("PFIZER") COMMON STOCK AS OF DECEMBER 1, 2010 AND CONTINUE TO OWN SUCH SHARES**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York (the "Court"), of (i) the pendency of the above-captioned shareholder derivative litigation (the "Litigation"), which was brought by certain Pfizer shareholders on behalf of and for the benefit of Pfizer; and (ii) a proposed settlement of the Litigation (the "Settlement"), subject to Court approval, by way of the adoption by Pfizer of certain corporate governance measures as provided in a Stipulation and Agreement of Settlement (the "Stipulation") that is filed with the Court and available for review as indicated below.  A hearing will be held on _____ 2011, at _:__ _.m., before the Honorable Jed S. Rakoff, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007 (the "Settlement Hearing") to, among other things, (i) determine whether the proposed Settlement should be approved; (ii) determine whether the Litigation should be dismissed with prejudice; and (iii) consider Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses.

**IF THE SETTLEMENT IS APPROVED, THE RIGHTS OF PFIZER SHAREHOLDERS TO PURSUE THE CLAIMS ASSERTED IN THE LITIGATION ON BEHALF OF PFIZER WHICH ARE BEING RELEASED PURSUANT TO THE SETTLEMENT WILL BE AFFECTED.**

**Please Note**:  Because this Litigation was brought as a derivative action, which means that it was brought on behalf of and for the benefit of the company, the benefits of the Settlement, which consist of the adoption by Pfizer of additional corporate governance measures and the creation of a Regulatory Committee to oversee and monitor the implementation and enforcement of certain of those measures, will go to Pfizer.  In a derivative action, individual shareholders do not receive any direct recovery from the settlement.

A more detailed Notice of Pendency and Proposed Settlement of Shareholder Derivative Litigation (the "Notice") that provides additional information concerning the Litigation, the terms of the proposed Settlement, and Pfizer shareholders' legal rights with respect to the proposed Settlement and the application for attorneys' fees and litigation expenses, along with

copies of the Stipulation and other documents filed in the Litigation, can be obtained from Lead Counsel's website, www.blbglaw.com/pfizer. The Notice has also been filed as an exhibit to the Form 8-K filed by Pfizer on _____, and it is posted on Pfizer's website www._____. You may also examine the Court files for the Litigation during regular business hours at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007.

If you owned shares of Pfizer common stock as of December 1, 2010 and continue to own such shares through _____, 2011 (the date of the Settlement Hearing), you may, if you wish to do so, comment to the Court on the proposed Settlement and/or the application for an award of attorneys' fees and reimbursement of litigation expenses. Any objections to the proposed Settlement and/or the application for attorneys' fees and expenses must be filed with the Court and delivered to Lead Counsel and Counsel for each of the Defendants such that they are received no later than _____, 2011, in accordance with the instructions set forth in the Notice.

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THE SETTLEMENT AND THIS NOTICE. All inquiries may be made to Lead Counsel:

Mark Lebovitch, Esq.
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(800) 380-8496
blbg@blbglaw.com

**Lead Counsel**

By Order of the Clerk of Court
United States District Court
for the Southern District of New York

#496566

2

# Exhibit D

**EXHIBIT D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PFIZER INC. SHAREHOLDER
DERIVATIVE LITIGATION

No. 09-CV-7822 (JSR)

ECF CASE

## **JUDGMENT**

This matter came for hearing on _____, 2011 (the "Settlement Hearing"), on the application of the Settling Parties to determine whether the terms and conditions of the Stipulation and Agreement of Settlement dated December 2, 2010 (the "Stipulation") providing for the settlement (the "Settlement") of all claims asserted by Lead Plaintiffs against defendants Dennis A. Ausiello, Michael S. Brown, M. Anthony Burns, Robert N. Burt, W. Don Cornwell, William H. Gray III, Constance J. Horner, James M. Kilts, Jeffrey B. Kindler, George A. Lorch, Dana G. Mead, Suzanne Nora Johnson, William C. Steere, Jr., Henry A. McKinnell, Joseph M. Feczko, Douglas M. Lankler, Ian Read, Frank D'Amelio, and Allen P. Waxman (the "Individual Defendants") and nominal defendant Pfizer Inc. ("Pfizer," and together with the Individual Defendants, the "Defendants") in the Consolidated, Amended and Verified Shareholder Derivative Complaint (the "Amended Complaint") now pending in this Court in the above-captioned shareholder derivative litigation (the "Litigation") should be approved; and whether judgment should be entered dismissing the Amended Complaint on the merits and with prejudice in favor of the Released Defendant Parties, and releasing the Released Plaintiff Claims as against all Released Defendant Parties.

The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that a notice of the Settlement Hearing substantially in the form

approved by the Court was filed as an exhibit to a Form 8-K with the United States Securities and Exchange Commission and posted, along with a copy of the Stipulation, on Pfizer's corporate website and Lead Counsel's firm website, and that a summary notice of the hearing substantially in the form approved by the Court was published in the national edition of *The Wall Street Journal* and *USA Today* and over the *Business Wire*.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      Unless otherwise defined herein, all defined terms shall have the meaning set forth in the Stipulation and the Preliminary Approval Order.

2.      This Court has jurisdiction to enter this Judgment.  The Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation.

3.      This Court hereby finds that notice of the Settlement was (i) provided pursuant to and in the form and manner directed by the Preliminary Approval Order, (ii) meets the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process, and (iii) constitutes due and sufficient notice to all persons and entities in interest of all matters relating to the Settlement.

4.      Pursuant to and in compliance with Rule 23.1 of the Federal Rules of Civil Procedure and due process, the Court hereby finds that the notice provided advised persons and entities in interest of the terms of the Settlement, of Lead Counsel's intent to apply for attorneys' fees and reimbursement of litigation expenses incurred in connection with the prosecution of the Litigation, and of their right to object thereto, and a full and fair opportunity was accorded to all persons and entities in interest to be heard with respect to the foregoing matters.

5.      Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement as set forth in the Stipulation, and finds that the Settlement is, in all

respects, fair, reasonable and adequate, and in the best interests of Pfizer. This Court further finds that the Settlement set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of the Settling Parties. Accordingly, the Settlement embodied in the Stipulation is hereby approved in all respects and shall be consummated in accordance with the terms and provisions of the Stipulation.

6.     The Amended Complaint is hereby dismissed with prejudice and without costs except for the payments expressly provided for in the Stipulation and the Preliminary Approval Order.

7.     Upon the Effective Date, Pfizer, Plaintiffs, and each and every Pfizer shareholder, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall be deemed by operation of law to have fully, finally and forever released, waived, discharged and dismissed each and every Released Plaintiff Claim against the Released Defendant Parties, and shall forever be enjoined from prosecuting any or all Released Plaintiff Claims against any and all Released Defendant Parties.

8.     Upon the Effective Date, each of the Defendants and the other Released Defendant Parties, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall be deemed by operation of law to have fully, finally and forever released, waived, discharged and dismissed each and every of the Released Defendant Claims against the Released Plaintiff Parties, and shall forever be enjoined from prosecuting any or all of the Released Defendant Claims against any and all Released Plaintiff Parties.

9.     The Stipulation and any negotiations, proceedings or agreements relating to it shall not be offered or received against any of the Settling Parties as evidence of or construed as or deemed to be evidence of (a) any liability, negligence, fault, or wrongdoing of any of the

Settling Parties, (b) a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the Settling Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation, (c) a presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged in the Litigation or the validity of any of the claims or the deficiency of any defense that was or could have been asserted in the Litigation, (d) a presumption, concession, or admission by Plaintiffs of any infirmity in the claims asserted, or (e) an admission or concession that the consideration to be given hereunder represents the consideration which could be or would have been recovered at trial.

10. This Court retains exclusive jurisdiction, without affecting in any way the finality of this Judgment, (a) over implementation and enforcement of the Settlement; (b) hearing and determining Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses; (c) enforcing and administering this Judgment; (d) enforcing and administering the Stipulation including any releases executed in connection therewith; and (e) other matters related or ancillary to the foregoing.

11. This Court finds that this Litigation has been properly maintained as a derivative action according to the provisions of Rule 23.1 of the Federal Rules of Civil Procedure, and the Court finds that throughout the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

12. A separate order shall be entered regarding Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses as allowed by the Court. Such

order shall not disturb or affect any of the terms of this Judgment.

13.     In the event the Settlement is terminated or the Effective Date cannot occur for any reason, then:  the Settlement shall be without prejudice, and none of its terms, shall be effective or enforceable except as specifically provided in the Stipulation; the Settling Parties shall be deemed to have reverted to their respective positions in this Litigation immediately prior to the execution of the Settlement Term Sheet on November 15, 2010; and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if the Stipulation and any related orders had not been entered.

14.     Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

15.     There is no just reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED:

Dated:     New York, New York

_____, 2011


_____
HONORABLE  JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

#494098