# EXHIBIT E

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE UNITEDHEALTH GROUP INCORPORATED SHAREHOLDER DERIVATIVE LITIGATION | Master File No. 06-1216 JMR/FLN |

## AFFIDAVIT OF KARL L. CAMBRONNE
## IN SUPPORT OF PRELIMINARY APPROVAL

STATE OF MINNESOTA      )
                       ) ss

COUNTY OF HENNEPIN    )

1.      I am Lead Counsel for Lead Plaintiffs in the above-captioned derivative litigation.

2.      Attached hereto as Exhibit A is Plaintiffs' proposed Order preliminarily approving the settlement, directing notice of the settlement to shareholders of UnitedHealth Group Incorporated ("UnitedHealth") and establishing a briefing schedule.

3.      Attached hereto as Exhibit A-1 is the proposed form of notice to be sent to current shareholders of UnitedHealth.  As of this date, there remains a dispute between various parties about the precise content of the Notice.

4.      Attached hereto as Exhibit B is a summary of the monetary relief obtained for UnitedHealth as a result of the joint efforts of Plaintiffs and the SLC.

5.      Attached hereto as Exhibit C is a summary of the actions taken and corporate governance reforms adopted by UnitedHealth as a result of this litigation.

Dated this 14th day of November, 2008 in Minneapolis, Minnesota.

/s/  Karl L. Cambronne
Karl L. Cambronne

Subscribed and sworn to before
me this 14th day of November, 2008

/s/  Dawn J. Proulx
Notary Public

# EXHIBIT A

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE UNITEDHEALTH GROUP INCORPORATED SHAREHOLDER DERIVATIVE LITIGATION | Master File No. 06-cv-1216 JMR/FLN |

| | |
|---|---|
| **STATE OF MINNESOTA**<br>**COUNTY OF HENNEPIN** | **DISTRICT COURT**<br>**FOURTH JUDICIAL DISTRICT** |
| IN RE UNITEDHEALTH GROUP INCORPORATED DERIVATIVE LITIGATION | Case Type: Other<br>Court File No. 27 CV 06-8085<br>Honorable George F. McGunnigle |

### [PROPOSED] PRELIMINARY APPROVAL ORDER

The parties to the above-captioned actions (the "Actions"), having applied for an Order determining certain matters in connection with the proposed settlement of the Actions;

NOW, upon consent of the parties, after review and consideration of the submissions of the parties, and after due deliberation,

IT IS HEREBY ORDERED this ___ day of _____, 2008, that:

1.      The settlement of this litigation on the terms outlined in the proposed Notice to shareholders attached hereto as Exhibit A is preliminarily approved.  The United States District Court for the District of Minnesota and the District Court of the State of Minnesota, Hennepin County, Fourth Judicial District Court (the "Courts") shall hold a joint hearing (the "Final Settlement Approval Hearing") on _____, 2009, at

_____ ____.m. at the United States Courthouse, 300 S. 4th Street, Courtroom ____,

Minneapolis, Minnesota, 55415, to:

      a.    Determine whether the Courts should finally approve the settlement

and direct consummation of the settlement in accordance with its terms;

      b.    Determine whether to enter judgment dismissing the Actions with

prejudice;

      c.    Determine whether the Courts should grant the applications of

plaintiffs' counsel for awards of attorneys' fees and reimbursement of litigation expenses

if the settlement and dismissal is approved; and

      d.    Consider such other matters as may properly come before the

Courts.

    2.    The Courts reserve the right to adjourn the Final Settlement Approval

Hearing or any part thereof, including the consideration of the Plaintiffs' applications for

attorneys' fees and expenses, without further notice of any kind other than oral

announcement at the Final Settlement Approval Hearing or any adjournment thereof.

    3.    The Courts reserve the right to approve or reject the settlement at or after the

Final Settlement Approval Hearing without further notice.

    4.    The Courts approve, in form and content, the Notice of Proposed Settlement

and Dismissal of Derivative Lawsuits, Joint Settlement Hearing and Right to Appear (the

"Notice") and find that the giving of notice as specified herein meets the requirements, as

applicable, of Rule 23.1(c) of the Federal Rules of Civil Procedure and Rule 23.09 of the

Minnesota Rules of Civil Procedure for the District Courts, and due process, is the best

notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to receive notice.  At least fourteen (14) business days prior to the Final Settlement Approval Hearing, UnitedHealth Group Incorporated ("UnitedHealth") shall file an appropriate affidavit attesting to compliance with the notice provisions of this Order.

5.      UnitedHealth shall, within fourteen (14) business days of the date hereof, cause a notice of the Settlement Hearing in substantially the form attached hereto to be mailed by First Class U.S. Mail, postage pre-paid, to all record holders of UnitedHealth common stock as of the date hereof, at their last known address appearing in the stock transfer records maintained by or on behalf of UnitedHealth.  All record holders who are not also the beneficial owners of the shares of UnitedHealth common stock held by them of record are requested to forward the Notice to the beneficial owners of those shares. UnitedHealth shall use reasonable efforts to give notice to such beneficial owners by (i) making additional copies of the Notice available to any record holder who, prior to the Final Settlement Approval Hearing, requests additional copies of the Notice for distribution to beneficial owners, or (ii) mailing additional copies of the Notice to beneficial owners identified by and as requested by record holders.

6.      Counsel for the Defendants and Plaintiffs shall forthwith establish a website as stated in the Notice and shall cause all material pleadings and orders in these cases to be posted thereon to allow web access to said pleadings and orders by all shareholders.

7.      Federal and State Plaintiffs' counsel shall respond promptly to all calls directed to the toll free numbers given in the Notice.

3

8.      Any shareholder of UnitedHealth may object to the settlement, the judgment to be entered in the Actions, and/or plaintiffs' application for attorneys' fees and reimbursement of litigation expenses, or otherwise request to be heard, in person or by counsel, concerning any matter properly before the Courts at the Final Settlement Approval Hearing; provided, however, that no person or entity (other than counsel for the parties in the Actions and the SLC) shall be heard and no papers, briefs, pleadings or other documents submitted by any person or entity shall be considered by the Courts unless the procedure outlined in the Notice is followed.

9.      Plaintiffs' counsel shall, within fourteen (14) days of the Final Settlement Approval Hearing established above, submit their applications for fees and expenses to the respective Courts.

10.      All parties who desire to submit further briefing to the Courts shall do so at least fourteen (14) days before the Final Settlement Approval Hearing.

11.      In the event that: (i) the Courts decline, in any material respect (except for a disallowance or modification of the fees and/or expenses sought by Plaintiff's counsel), to enter the Order and Final Judgment; (ii) the Courts disapprove the settlement,  or (iii) the Courts approve the proposed settlement but such approval is reversed or substantially modified on appeal (except reversal or modification related only to the issue of plaintiffs' counsel's application for an award of attorneys' fees and/or the reimbursement of expenses) and appellate reversal or modification becomes final by a lapse of time or otherwise; then, in any of such events, the proposed settlement (including any amendments thereof), and any actions taken or to be taken with respect to the proposed settlement and the Order and Final

Judgment to be entered shall be of no further force or effect and shall be null and void, and shall be without prejudice to any of the parties hereto, who shall be restored in all respects to their prior respective positions, except that the Company shall not be entitled to reimbursement of sums expended pursuant to paragraphs 5 and 6 hereof.  For purposes of this provision, a disallowance or modification by the Courts of the fees and/or expenses sought by plaintiffs' counsel shall not be deemed an amendment, modification or disapproval of the settlement or the Order and Final Judgment.

Dated: _____, 2008          _____
                                      James M. Rosenbaum
                                      Judge of United States District Court


Dated: _____, 2008          _____
                                      George F. McGunnigle
                                      Judge of Hennepin County District Court

# EXHIBIT A-1

**EXHIBIT A-1**

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE UNITEDHEALTH GROUP INCORPORATED SHAREHOLDER DERIVATIVE LITIGATION | Master File No. 06-cv-1216 JMR/FLN |

| | |
|---|---|
| **STATE OF MINNESOTA** **COUNTY OF HENNEPIN** | **DISTRICT COURT** **FOURTH JUDICIAL DISTRICT** |

| | |
|---|---|
| IN RE UNITEDHEALTH GROUP INCORPORATED DERIVATIVE LITIGATION | Case Type: Other Court File No. 27 CV 06-8085 Honorable George F. McGunnigle |

[PRINTED NOTICE WILL HAVE SPACE FOR SIDE-TO-SIDE CAPTIONS]

### NOTICE OF PROPOSED SETTLEMENT OF DERIVATIVE LAWSUITS, JOINT SETTLEMENT HEARING AND RIGHT TO APPEAR

**TO:   ALL CURRENT RECORD AND BENEFICIAL OWNERS OF UNITEDHEALTH GROUP INCORPORATED COMMON STOCK**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

## I.    WHY ARE YOU RECEIVING THIS NOTICE?

The purpose of this Notice is to inform you of the proposed settlement (the "Settlements") and dismissal of two consolidated derivative lawsuits brought by shareholders on behalf of UnitedHealth Group, Incorporated ("UnitedHealth" or the "Company"). One lawsuit (the "Federal Lawsuit"), entitled *In re UnitedHealth Group Incorporated Shareholder Derivative Litigation,* Master File No. 06-cv-1216 JMR/FLN, is pending in the United States District Court for the District of Minnesota (the "Federal Court"). Another lawsuit (the "State Lawsuit"), entitled *In re UnitedHealth Group Incorporated Derivative Litigation,* Court File No. 27 CV 06-8085, is pending in the District Court of the State of Minnesota, Hennepin County, Fourth Judicial District (the "State Court"). The Federal Court and the State Court (together, the "Courts") have granted preliminary approval of the proposed settlement of the Federal Lawsuit and the State Lawsuit (together, the "Lawsuits") and ordered that this Notice be sent to UnitedHealth shareholders. The Lawsuits were brought by shareholders of UnitedHealth suing derivatively for the benefit of UnitedHealth to remedy alleged damages incurred by UnitedHealth as a result of alleged stock option "backdating" and other improper awards of stock options to certain UnitedHealth officers and directors.

**Please note that, since these are derivative actions brought by shareholders for the benefit of UnitedHealth, the Settlements provide benefits directly to UnitedHealth, not to shareholders. There are no payments to shareholders and there is no claim form to fill out.**

## II.   BACKGROUND: WHAT ARE THESE LAWSUITS ABOUT?

**THE FOLLOWING SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE PARTIES' CLAIMS OR DEFENSES.**

Beginning on March 29, 2006, eleven derivative lawsuits were filed in the Federal Court and three derivative lawsuits were filed in the State Court by UnitedHealth shareholders asserting claims against certain of the Company's officers and directors arising from alleged stock option "backdating" and other alleged improper awards of stock options to certain UnitedHealth officers and directors.

On July 7, 2006, the Federal Court consolidated the eleven related lawsuits filed in the Federal Court into the single, consolidated Federal Lawsuit. Lead Plaintiffs Public Employees' Retirement System of Ohio, State Teachers' Retirement System of Ohio, St. Paul Teachers' Retirement Fund Association, Public Employees' Retirement System of Mississippi, Jacksonville Police & Fire Pension Fund, Louisiana Municipal Police Employees' Retirement System, Louisiana Sheriffs' Pension & Relief Fund, Fire & Police Pension Association of Colorado, Connecticut Retirement Plans and Trust Funds, and Jan Brandin then filed an Amended and Consolidated Verified Derivative Complaint on September 21, 2006, and that is the operative complaint in the Federal Lawsuit.

On July 20, 2006, the State Court consolidated the two related lawsuits filed in State Court into the single, consolidated State Lawsuit. Plaintiffs Natalie Gordon, Fred Greenberg and Evelyn Greenberg (collectively with the Lead Plaintiffs in the Federal Lawsuit, the "Plaintiffs") then filed a Consolidated Derivative Complaint on August 14, 2006, and that is the operative complaint in the State Lawsuit.

The defendants named in the Lawsuits are the members of the UnitedHealth Board of Directors at the time the Lawsuits were commenced (William W. McGuire, Stephen J. Hemsley, William C. Ballard, Jr., Richard T. Burke, James A. Johnson, Thomas H. Kean, Douglas W. Leatherdale, Mary O. Mundinger, Robert L. Ryan, Donna E. Shalala, William G. Spears and Gail R. Wilensky) and certain current and former officers of the Company who are not members of the Board of Directors (Travers H. Wills, David P. Koppe, Thomas P. McDonough, David J. Lubben, Jeannine M. Rivet, R. Channing Wheeler, Arnold H. Kaplan and Robert J. Sheehy) (collectively, the "Defendants").

The Lawsuits allege that, since at least 1996, UnitedHealth's Board of Directors permitted or otherwise engaged in a fraudulent scheme to grant stock options with strike prices based on the dates with the lowest closing share price of the year or at other relative low points or troughs throughout the relevant time period. UnitedHealth's Board of Directors also allegedly delegated to UnitedHealth's former Chairman and Chief Executive Officer, William W. McGuire ("McGuire"), the ability to unilaterally set the grant dates for his own UnitedHealth

stock option grants and option grants to the other corporate officers, in violation of the stated terms of the Company's stock option plans. McGuire allegedly backdated option grants to dates on which the stock price was at an especially low point during the quarter or fiscal year, providing the recipients with in-the-money options carrying an immediate "paper profit." The Lawsuits alleged that, among other things, such conduct constituted a breach of the fiduciary duties owed to the Company by its officers and directors under Minnesota law and also (as alleged in the Federal Lawsuit only) violated certain provisions of the federal securities laws. Defendants deny these allegations.

On June 26, 2006, UnitedHealth's Board of Directors appointed a Special Litigation Committee (the "SLC") pursuant to Section 302A.241 of the Minnesota Statutes, to investigate the claims raised in the Lawsuits and to analyze the legal rights or remedies of the Company and determine whether those rights or remedies should be pursued. The Board of Directors appointed former Minnesota Supreme Court Chief Justice Kathleen Blatz and former Minnesota Supreme Court Justice Edward Stringer as the two members of the SLC.

## III.    HOW WERE THE SETTLEMENTS REACHED?

In June 2007, the parties agreed to mediate the Lawsuits, with the assistance of former United States District Court Judge Layn R. Phillips, an experienced and independent mediator. The SLC agreed to participate in the mediation along with other parties. Numerous mediation sessions were held. On December 5, 2007, as a direct result of the mediation, the SLC, Plaintiffs, and certain Defendants agreed to settle the Lawsuits on the terms described below. On December 6, 2007, the SLC issued its report (the "SLC Report"), which determined, among other things, that settlements with Defendants McGuire, David J. Lubben ("Lubben"), William G. Spears ("Spears") and other remediation that occurred in parallel with the mediated settlements were in the best interests of the Company. Counsel for Plaintiffs participated in the negotiations leading to the mediated settlements and other remediation and have approved them.

## IV.    WHAT ARE THE TERMS OF THE SETTLEMENTS?

Among other things, the Settlements provide that in consideration for the full settlement and dismissal with prejudice of the Lawsuits and the releases described herein, Defendants McGuire, Lubben, and Spears, and additional UnitedHealth executives, have agreed to the following:  **NOTE that the values stated below were as of December 6, 2007 and that these values fluctuate with the price of UnitedHealth common stock.**

### McGuire's Settlement Contributions

Following the initiation of the Lawsuits, McGuire agreed in 2006 to the re-pricing of certain UnitedHealth stock options. The value to the Company of these option re-pricings was approximately $181.0 million to $198.8 million. Additionally, pursuant to the mediated settlement of the Lawsuits, McGuire has also agreed to (i) surrender to the Company all right, title and interest in stock options on 9,223,360 shares of Company stock; (ii) surrender to the Company any and all rights he has under the Company's Supplemental Executive Retirement Plan; (iii) surrender to the Company his rights to $8.1 million of the funds in his Executive Savings Plan Account; and (iv) relinquish any claim for post-employment benefits, such as the

use of Company airplanes, office, secretarial and administrative support and Company-paid life and health insurance. When added to the value of the re-priced options in 2006, the total value of rights relinquished by McGuire was approximately $602.3 million to $618.5 million as of December 6, 2007.

### Lubben's Settlement Contributions

Following the initiation of the Lawsuits, Lubben agreed in 2006 to the repricing of certain options. The economic value relinquished by Lubben from the repricing of these options is approximately $2.6 million to $3.6 million. Additionally, pursuant to the mediated settlement of the Lawsuits, Lubben has agreed, among other things, to (i) repay to the Company $20.55 million of the compensation he realized in 2007 from the exercise of options; (ii) relinquish rights to severance benefits in the amount of $1.95 million; and (iii) surrender to the Company all right, title and interest in stock options on 273,000 shares of Company stock. The total economic value relinquished by Lubben under the Lubben Agreement is between approximately $25.4 million to $28.0 million. When added to the value of the re-priced options in 2006, the total value of rights relinquished by Lubben is approximately $29.0 million to $30.7 million as of December 6, 2007.

### Spears's Settlement Contribution

Mr. Spears agreed to participate in binding arbitration to determine the fair value of the claims against him. This arbitration resulted in an award valued at $7.25 million.

### Additional Remediation

As a result of the Lawsuits, thirteen other UnitedHealth executives (including named defendants Hemsley, Sheehy and Rivet) agreed to voluntary UnitedHealth stock option repricings and other remediation with a value ranging between $254.9 million and $272.2 million.

### Corporate Governance Reforms

Following the initiation of the Lawsuits and at the urging of Plaintiffs, the Board of Directors and management of the Company began to institute a series of corporate governance reforms aimed at strengthening the Company's stock option policies and practices, as well as other compensation and corporate governance policies and practices. During the course of the mediation, Plaintiffs provided the Company with a series of additional corporate governance proposals, which they urged the Company and its Board of Directors to adopt. UnitedHealth agreed to implement many of the proposed changes.

## VI.   WHAT IS THE TOTAL MONETARY VALUE OF THE SETTLEMENTS AND OTHER REMEDIATION?

According to the values in the SLC Report, the total monetary value of the actions taken by McGuire, Lubben, other UnitedHealth executives, and Spears, all of which resulted from the Lawsuits, is approximately $895 million to $930 million as of December 6, 2007. **Because the Settlements involve the cancellation, relinquishment and repricing of UnitedHealth stock**

**options, the value of the Settlements change as the value of UnitedHealth common stock changes.**

As of December ____, 2008, because of fluctuations in the price of UnitedHealth stock, the value of the Settlements and the remediation ranged between _____ and _____.

## VII.   WHAT CLAIMS WILL THE SETTLEMENTS AND DISMISSAL RELEASE?

If the Courts approve the Settlements, Plaintiffs will dismiss the Lawsuits, and UnitedHealth shall release any and all claims that have been asserted derivatively on behalf of UnitedHealth in the Lawsuits.

## VIII.   WHAT ARE THE REASONS FOR THE SETTLEMENTS AND DISMISSAL?

Plaintiffs, through their counsel and acting with the SLC and its counsel, have conducted an extensive investigation of the claims asserted in the Lawsuits. Based upon their investigation, and their legal and factual analysis of the claims and defenses and the law applicable thereto, the need to act in the best interests of UnitedHealth and the substantial benefits conferred upon UnitedHealth by the Settlement, Plaintiffs and Plaintiffs' counsel believe that the Settlement is in the best interests of UnitedHealth and its shareholders and should be approved.

The Defendants have denied and continue to deny all allegations of wrongdoing in the Lawsuits. The Settlements are not and shall not be construed or be deemed to be evidence of any admission or a concession on the part of Defendants of any fault or liability or damages whatsoever.

## IX.   WHEN WILL THE FINAL SETTLEMENT APPROVAL HEARING TAKE PLACE?

The Courts have scheduled a hearing (the "Final Settlement Approval Hearing"), to be held jointly by the Courts on _____, 2009, at _____ ____.m. at the United States Courthouse, 300 S. 4th Street, Courtroom ____, Minneapolis, Minnesota, 55415.

The Courts have reserved the right to adjourn the Final Settlement Approval Hearing or any part thereof, without further notice of any kind other than oral announcement at the hearing or any adjournment thereof.

## X.   WHAT WILL HAPPEN AT THE FINAL SETTLEMENT APPROVAL HEARING?

At the Final Settlement Approval Hearing, Plaintiffs will ask the Court to:

- Approve the Settlement and direct consummation of the Settlement in accordance with their terms;

- Enter judgment dismissing the Lawsuits with prejudice and extinguish and release all released claims;

- If the Courts approve the Settlements, grant the applications of Plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses; and

- Consider any other matters as may properly come before the Courts and reserve jurisdiction over implementation of the Settlement until each and every act agreed to be performed by the parties shall have been performed.

The Courts have also reserved the right to approve or reject the Settlement, to enter the Orders and Final Judgments, and to order the payment of attorneys' fees and expenses without further notice of any kind.

## XI.     DO YOU HAVE A RIGHT TO APPEAR AND COMMENT?

Any shareholder of the Company who objects to:  (1) the Settlements; (2) the dismissal of the Lawsuits; (3) the proposed Orders and Final Judgments to be entered with respect to the dismissal of the Lawsuits; and/or (4) Plaintiffs' counsel's application for an award of attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person or by their attorney at the Final Settlement Approval Hearing.  If you wish to do so, however, you must take certain actions.

To object or otherwise be heard in connection with the Federal Lawsuit, you must, not later than twenty-one (21) days prior to the Settlement Hearing, send a letter to UNH Federal Derivative Litigation, 3700 Campbell Mithun Tower, 222 South Ninth Street, Minneapolis, Minnesota 55402.

To object or otherwise be heard in connection with the State Lawsuit, you must, not later than ten (10) business days prior to the Settlement Hearing, send a letter to UNH State Derivative Litigation, 333 South Seventh Street, Suite 1140, Minneapolis, Minnesota 55402-2422.

Your letter must contain:

(1) a written notice of your intention to appear, which identifies your name, address, and telephone number, and, if represented by an attorney in connection with your objection, the name, address, and telephone number of your attorney;

(2) the number of shares of UnitedHealth common stock you own and a written statement that you certify that you are a shareholder of UnitedHealth or otherwise provide proof of your ownership of UnitedHealth common stock;

(3) a detailed written statement of your specific objections to the Settlement, Plaintiffs' counsel's application for attorneys' fees and expenses, or any other matter before the Court;

(4) the bases for your objection or the reasons you desire to appear and be heard;

(5) all documents or other materials you desire the Courts to consider; and

(6) a representation as to whether you, or your attorney, intends to appear at the hearing.

Your letter will be filed with the Federal Court and/or the State Court, as appropriate, and be shared with counsel for all parties.

Any UnitedHealth shareholder who does not seek to object to, or otherwise comment on, the Settlements, the dismissal of the Lawsuits, the proposed Orders and Final Judgments to be entered with respect to the dismissal of the Lawsuits, and/or Plaintiffs' counsel's application for an award of attorneys' fees and expenses need not take any action.

Unless the Courts otherwise direct, no person or entity will be entitled to object to the Settlements, the dismissal of the Lawsuits, the proposed Orders and Final Judgments to be entered with respect to the dismissal of the Lawsuits and/or Plaintiffs' counsel's application for an award of attorneys' fees and expenses, or otherwise to be heard, except by serving and filing written objections as prescribed above.

Any person or entity who fails to object or otherwise request to be heard in the manner prescribed above will be deemed to have waived the right to object or otherwise request to be heard (including the right to appeal) and will be barred forever from raising such objection or request to be heard in this or any other action or proceeding.

## XII.   HOW WILL THE PLAINTIFFS' ATTORNEYS GET PAID?

If the Courts approve the Settlements, counsel for the plaintiffs in the Federal Lawsuit intend to ask the Federal Court for a reasonable award of attorneys' fees and expenses in an amount not to exceed $47 million, and counsel for plaintiffs in the State Lawsuit intend to ask the State Court for a reasonable award of attorneys' fees and expenses in an amount not to exceed $17 million (collectively, the "Fee Applications"). Defendants have reserved all rights to oppose the Fee Applications. Any fees and expenses awarded by the Courts to Plaintiffs' counsel in the Lawsuits will be paid by UnitedHealth from the Settlements' proceeds. Final resolution by the Courts of the Fee Applications shall not be a precondition to the dismissal of the Lawsuits, and the Fee Applications may be considered separately from the proposed Settlements and dismissal.

## XIII.   HOW DO YOU GET ADDITIONAL INFORMATION ABOUT THE SETTLEMENTS?

This Notice contains only a summary of the Lawsuits and the terms of the Settlements and is not all-inclusive. The references in this Notice to the pleadings in the Lawsuits and other papers and proceedings are only summaries and are not and do not purport to be complete or comprehensive. More details regarding the claims that have been asserted by the parties and the terms and conditions of the Settlements, including related Orders and proposed forms of Orders, are available at the website www._____.

Inquiries regarding the Federal Lawsuit may also be sent to UNH Federal Derivative Litigation, 3700 Campbell Mithun Tower, 222 South Ninth Street, Minneapolis, Minnesota 55402, or you may call 1-800-287-8119.

Inquiries regarding the State Lawsuit may also be sent to UNH State Derivative Litigation, 333 South Seventh Street, Suite 1140, Minneapolis, Minnesota 55402-2422, or you may call 1-877-247-4292.

**PLEASE DO NOT CALL THE COURT.**

## XIV.   NOTICE TO PERSONS OR ENTITIES HOLDING OWNERSHIP ON BEHALF OF OTHERS

Brokerage firms, banks and/or other persons or entities who hold shares of UnitedHealth common stock for the benefit of others are requested to immediately send this Notice to all of their respective beneficial owners.  If additional copies of the Notice are needed for forwarding to such beneficial owners, any requests for such additional copies or provision of a list of names and mailing addresses of beneficial owners may be made to:

[INSERT ADDRESS PER DEFTS]

Such brokerage firms, banks and/or other persons or entities requesting additional copies or providing a list of names and mailing addresses of beneficial owners will be reimbursed for documented reasonable out-of-pocket expenses incurred in providing such additional copies or providing a list of names and mailing addresses of beneficial owners.

Dated: _____, 2008

> BY ORDERS OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA AND THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT, STATE OF MINNESOTA, HENNEPIN COUNTY

A-1-8

# EXHIBIT B

### Summary of Remediation
### (Amounts In Millions)

| SETTLING DEFENDANTS | | Voluntary 2006 Black Scholes | Voluntary 2006 Intrinsic Value | 2007 Settlements | 2007 Settlements Black Scholes | 2007 Settlements Intrinsic Value | Total Remediation Black Scholes | Total Remediation Intrinsic Value |
|---|---|---|---|---|---|---|---|---|
| William McGuire | Option Repricing | $ 181.0 | $ 198.8 | Options Forfeited[1] | $ 321.9 | $ 320.3 | $ 502.9 | $ 519.1 |
|  |  |  |  | Employment Benefits Forfeited | 99.4 | 99.4 | 99.4 | 99.4 |
|  | Total | 181.0 | 198.8 | Total | 421.3 | 419.7 | 602.3 | 618.5 |
| David Lubben | Option Repricing | 2.7 | 3.6 | Cash | 20.55 | 20.55 | 23.3 | 24.2 |
|  |  |  |  | Options Forfeited[1] | 5.5 | 2.9 | 5.5 | 2.9 |
|  |  |  |  | Employment Benefits Forfeited | 1.95 | 1.95 | 1.95 | 1.95 |
|  | Total | 2.7 | 3.6 | Total | 28.0 | 25.4 | 30.7 | 29.0 |
| William Spears | -- | - | - | Options Forfeited | *(To Be Determined By Binding Arbitration)* | | TBD | TBD |
|  | Total Voluntary 2006 | 183.7 | 202.4 | Total 2007 Settlements | 449.3 | 445.1 | 633.0 | 647.5 |

| NON-SETTLING DEFENDANTS | | Voluntary 2006 | | Additional Remediation 2007 | | | | |
|---|---|---|---|---|---|---|---|---|
| Stephen Hemsley | Option Forfeited[2] | 100.0 | 97.7 |  |  |  | 100.0 | 97.7 |
|  | Option Repricing | 77.5 | 91.4 | Option Repricing | 50.0 [3] | 50.0 | 127.5 | 141.4 |
|  | Total | 177.5 | 189.1 | Total | 50.0 | 50.0 | 227.5 | 239.1 |
| 12 Other Executives[4] | Option Repricing | 27.4 | 36.1 | -- | - | - | 27.4 | 36.1 |
|  | Total Voluntary 2006 | 204.9 | 225.2 | Total Additional Remediation 2007 | 50.0 | 50.0 | 254.9 | 275.2 |
|  | TOTAL 2006 REMEDIATION | $ 388.6 | $ 427.6 | TOTAL 2007 REMEDIATION | $ 499.3 | $ 495.1 | $ 887.9 | $ 922.7 |

[1] Stock options were valued based on the closing stock price on 12/4/2007 of $54.33.

[2] Stock options were valued based on the closing stock price on the date of the option repricing agreement, 11/7/2006, of $49.54.

[3] Represents the intrinsic value. Included as Black Scholes Value for comparative purpose.

[4] Two non-settling defendants and 10 non-defendant executives (excluding Hemsley, McGuire and Lubben).



EXHIBIT B

## CORPORATE GOVERNANCE CHANGES
## EXHIBIT C

Lead Plaintiff (on behalf of itself and the Class Members) and UnitedHealth (the "Company") have agreed that no later than thirty (30) days after the Judgment is entered by the Court, UnitedHealth will implement the following corporate governance changes set forth below.  All capitalized terms used herein have the same meanings set forth in the Stipulation.

**1.      Lead Independent Director Position.**

      **A.**      The Company shall amend its bylaws to provide that if the Chairman of the Board of Directors does not qualify as independent, an independent lead director will be elected annually by a majority vote of the independent members of the Board.

      **B.**      The duties of the lead director will include, but not be limited to, the following:

            **(i)**      working with the Chairman of the Board on the scheduling of Board meetings and the preparation of agendas and materials for Board meetings;

            **(ii)**      coordinating the preparation of agendas and materials for executive sessions of the Board's independent or non management directors;

            **(iii)**      scheduling and leading the executive sessions of the Board's independent or non management directors;

(iv)     defining the scope, quality, quantity, and timeliness of the flow of information between Company management and the Board that is necessary to effectively and responsibly perform their duties;

(v)     leading the board process for the hiring, firing, and evaluating the Company's CEO and working with the chair of the Compensation Committee on the process for compensating and evaluating the CEO;

(vi)     recommending outside advisors and consultants, as necessary, who report directly to the Board on board-related issues;

(vii)     serving as an ex officio member of each committee and working with the Board committee chairs on the performance of their designated roles and responsibilities;

(viii)     interviewing, along with the chair of the nominating committee all board candidates and making director candidate recommendations to the nominating committee;

(ix)     assisting the Board and the Company in assuring compliance with and implementation of the Company's Principles of Governance;

(x)     serving as principal liaison between the independent directors and the CEO on sensitive issues;

(xi)     coordinating the performance evaluations, working in conjunction with the committee chairs and the nominating committee, of the CEO, the Board, and the Board committees;

(xii)   working with the nominating and corporate governance committee on the membership of board committees; and

(xiii)   being available for communications with shareowners.

2.   **Shareowner Nominated Director.**

A.   The Board shall establish a procedure, the result of which shall be that at least one nominee for the position of director of the Company shall be a shareowner-nominated candidate.

B.   The procedure for identifying and nominating such director shall be as detailed below:

(i)   The Nominating and Corporate Governance Committee, with input from the Nominating Advisory Committee, will establish an objective set of criteria to be used in identifying the director candidate (a "skills matrix").

(ii)   Each individual or entity holding at least one percent of the Company's common stock and which has been a shareowner for at least one year (other than individuals who are current employees of the Company), will be jointly contacted by the designee of the Nominating and Corporate Governance Committee and the Lead Plaintiff's representative for the purpose of requesting that such shareowner(s) provide the name(s) of candidates for consideration by the Nominating and Corporate Governance Committee for appointment or election as an independent director to the Board.  Lead Plaintiff may also provide the name of a candidate.

(iii)   The designee of the Nominating and Corporate Governance Committee and the Lead Plaintiff's representative will conduct an appropriate review of

prospective candidates who express their consent to being considered and to serving as a

director and those candidates who both the designee of the Nominating and Corporate

Governance Committee and Lead Plaintiff's representative agree are qualified candidates

will be sent to the Nominating and Corporate Governance Committee for consideration

and review.

            **(iv)**    The Nominating and Corporate Governance Committee will conduct

an appropriate review of the candidates submitted. This review may include consideration

of the names against the Nominating and Corporate Governance Committee's established

skills matrix, a background check by the Company's outside advisory firm**,** completion of

a D&O questionnaire, and interviews by current board member and/or management, and

the views of the Shareowner Nominating Advisory Committee.  The Nominating and

Corporate Governance Committee will identify at least one qualified independent director

candidate from those submitted through this process and, in the exercise of its fiduciary

duties and its business judgment, recommend such qualified independent director

candidate to the Board for appointment or election to the Board.

        **C.**    The Company may suggest candidates to Lead Plaintiff's Representative

and such recommended candidate will be deemed to satisfy this obligation if he or she is

determined to be an acceptable candidate by Lead Plaintiff's Representative.

        **D.**    Once a candidate or candidates are recommended by the Nominating and

Corporate Governance Committee through this process, the Board shall, subject to its

fiduciary duties, nominate (on the Company's proxy card with a recommendation from

management for shareowner approval) at least one candidate identified in this process for

election to the Board or, if no shareowner meeting is scheduled in the next 90 days, the

Board shall appoint such candidate to the Board until such meeting is held and the

candidate can be nominated (on the Company's proxy card with a recommendation from

management for shareowner approval) for election by shareowners.

E.      The Company's obligations under this section shall be fulfilled once it has

nominated one candidate for election to the Board as a result of the process and such

director completes a full term.  If a director selected through this process does not serve a

full term on the Board, the process described above shall be repeated for the selection of

a replacement director.

3.      **Enhanced Independence Standards.**

A.      To qualify as an independent member of the Board, a director shall meet

the standards applicable to independent audit committee membership.

B.      The Standards for Director Independence shall also be modified to provide

as follows:

> "The director or an immediate family member (as defined below) is,
> or has been within the last five years, employed by the Company or
> has received during any twelve-month period within the last five
> years any direct compensation from the Company, other than
> director and committee fees and pension or other forms of deferred
> compensation for prior service (provided that such compensation is
> not in any way contingent on continued service)."

C.      The Company agrees to change its standard for material relationships

between a director and the Company in the context of contributions to tax exempt entities

where the director or an immediate family member is a current director, trustee or

executive officer (or has been in the last three years) to include the lesser of $1 million or 2% of the tax exempt organization's consolidated gross revenues.

**4.      Executive Compensation Policy.**

      **A.**      The independent chair or independent lead director shall continue to serve as an ex officio member of the Compensation Committee.

      **B.**      In determining cash incentive compensation awards, the Compensation Committee shall measure performance using no less than two performance metrics.

      **C.**      The Compensation Committee will request its independent compensation consultant to engage in a thorough review of the merits of linking a portion of incentive compensation to the performance of the Company's peer group.  The Compensation Committee will agree to consider the recommendation of its compensation consultant in good faith.

      **D.**      The Compensation Committee will ensure that all current and future compensation plans incorporate a clause that prohibits the repricing downward of stock options and similar awards absent shareowner approval.

      **E.**      All broad based equity awards shall be granted at the regularly scheduled quarterly Compensation Committee meeting held in connection with the Company's quarterly meeting of the Board of Directors, which Board meetings will be scheduled not less than 12 months in advance.  If the Compensation Committee determines to grant performance shares to §16 officers or other employees, the Compensation Committee may determine to amend its equity award policy to grant such equity awards at its regularly scheduled quarterly meeting held in the first quarter of the applicable year.

    **F.**    The Compensation Committee will expressly take into account the performance of the Company compared to its peers, as determined by the Compensation Committee, when determining whether to award or reduce the cash compensation to be paid to §16 officers under the Company's cash incentive programs.

**5.**    **Board Structure.**

    **A.**    The Company's Principles of Governance will provide that no member of the Board may sit on more than three additional public company boards (with the grandfathering provision for one of its current members) and that the CEO may sit on no more than one other such board.

    **B.**    Each standing committee of the Board is required to have a written charter, which requires that the committee meet no fewer than four times per year.

**6.**    **Shareowner Meetings.**

    **A.**    The Board agrees to adopt a policy that, absent extraordinary circumstances, each member of the Board will be required to attend each annual shareowner meeting in person.

    **B.**    The Board agrees that a reasonable amount of time at the annual shareowner meeting will be allocated for questions and comments from shareowners, in addition to time allocated for presentation of specific agenda items.

    **C.**    The Board agrees that the chairs of key committees should be prepared and permitted to answer questions from shareowners relevant to those committees' responsibilities.

**7.**    **Stock Retention Requirements.**

**A.**     The Board agrees to establish a stock retention policy for equity awards made after the date of the entry of the final order approving the settlement of these actions that requires all §16 officers retain 1/3 of the net shares (*i.e.* the shares remaining after providing for the payment of the exercise price (if applicable) and required taxes) resulting from the vesting or exercise of an equity award for a period of at least one year after such vesting or exercise.

**8.     Shareowner Nominating Advisory Committee.**

**A.**     The Company shall amend its Principles of Governance to establish the Nominating Advisory Committee (the "Advisory Committee") to provide certain advice to the Nominating Committee of the Board of Directors (the "Nominating Committee") on the appropriate characteristics and composition of the Board of Directors.  All actions of the Advisory Committee shall be advisory in nature only and are non-binding on the Nominating Committee or the Board of Directors.  The members of the Advisory Committee will not be considered members of management or members of the Board or any committee thereof.

**B.**     The Company shall agree to maintain the shareowner nominating advisory committee for a period of at least five years.

**C.**     The Chairman of the Board and the Chair of the Nominating and Corporate Governance Committee shall meet with the shareowner nominating advisory committee at least two times annually to discuss the composition of the Board and possible director candidates.