# Exhibit I

*In re Pfizer Inc. Shareholder Derivative Litigation*
*Case No. 09-CV-7822 (JSR)*

### SCHEDULE OF PLAINTIFFS' COUNSEL'S LODESTAR
### AND EXPENSES APPLIED FOR

| TAB | FIRM | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|---|
| I.1. | Bernstein Litowitz Berger & Grossmann LLP | 27,166.15 | $11,508,105.00 | $1,322,103.12 |
| I.2. | Barrack Rodos & Bacine | 1,144.00 | 510,697.50 | 39,098.62 |
| I.3. | Kirby McInerney LLP | 5,614.50 | 2,155,252.50 | 157,219.19 |
| I.4. | Klausner & Kaufman, P.A. | 92.70 | 60,255.00 | 3,313.13 |
| I.5. | Pomerantz Haudek Grossman & Gross, LLP | 1,829.55 | 879,980.00 | 37,849.65 |
| I.6. | The Weiser Law Firm, P.C. | 2,873.75 | 1,102,412.50 | 57,066.98 |
| | | | | |
| | **TOTAL:** | **38,720.65** | **$16,216,702.50** | **$1,616,650.69** |

#515249

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR)<br><br>ECF CASE |

### DECLARATION OF MARK LEBOVITCH IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

MARK LEBOVITCH, declares as follows:

1.       I am a member of the law firm of Bernstein Litowitz Berger & Grossmann LLP.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the "Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.

2.       My firm, as Lead Counsel in the Action, supervised and was involved in all aspects of the litigation as described in the Joint Declaration of Mark Lebovitch and David Wales in Support of Plaintiffs' Motion for Final Approval of Derivative Litigation Settlement.

3.       The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this Action, and the lodestar calculation based on my firm's current billing rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.  Time expended in preparing this

application for fees and reimbursement of expenses has not been included in this request.

4.     The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

5.     The total number of hours expended on this Action by my firm from its inception through and including January 31, 2011 is 27,166.15. The total lodestar for my firm for that period is $11,508,105.00, consisting of $10,641,800.00 for attorneys' time and $866,305.00 for professional support staff time.

6.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.     As detailed in Exhibit 2, my firm has incurred a total of $1,322,103.12 in unreimbursed expenses in connection with the prosecution of this Action from its inception through and including February 6, 2011.

8.     The expenses incurred in this Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

9.     With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this Action.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on February 7, 2011.

**MARK LEBOVITCH**

# Exhibit 1

**EXHIBIT 1**

*In re Pfizer Inc. Shareholder Derivative Litigation*
**Case No. 09-CV-7822 (JSR)**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**TIME REPORT**

**Inception through January 31, 2011**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Max Berger | 177.25 | $895.00 | $   158,638.75 |
| Beata Farber | 1,398.00 | 600.00 | 838,800.00 |
| Mark Lebovitch | 1,244.25 | 625.00 | 777,656.25 |
| Gerald Silk | 219.00 | 750.00 | 164,250.00 |
| David Wales | 1,095.90 | 700.00 | 767,130.00 |
| | | | |
| **Of Counsel** | | | |
| Samuel Lieberman | 72.00 | 550.00 | 39,600.00 |
| | | | |
| **Senior Counsel** | | | |
| Rochelle Hansen | 66.75 | 650.00 | 43,387.50 |
| | | | |
| **Associates** | | | |
| Michael Blatchley | 380.50 | 390.00 | 148,395.00 |
| Justinian Doreste | 12.00 | 340.00 | 4,080.00 |
| Noam Mandel | 916.00 | 465.00 | 425,940.00 |
| Kristin Meister | 886.75 | 450.00 | 399,037.50 |
| John Mills | 72.50 | 490.00 | 35,525.00 |
| Jonathan Uslaner | 1,168.75 | 425.00 | 496,718.75 |
| Brett Van Benthysen | 14.50 | 350.00 | 5,075.00 |
| Jeroen Van Kwawegen | 2,106.75 | 450.00 | 948,037.50 |
| | | | |
| **Staff Attorneys** | | | |
| Matthew Berman | 1,398.00 | 390.00 | 545,220.00 |
| David Duncan | 33.50 | 390.00 | 13,065.00 |
| Evan Ambrose | 67.50 | 395.00 | 26,662.50 |
| David C. Carlet | 499.75 | 395.00 | 197,401.25 |
| Chris Clarkin | 920.50 | 375.00 | 345,187.50 |
| Lori Freudenberger | 18.00 | 395.00 | 7,110.00 |
| Christine Gladchuk | 900.25 | 340.00 | 306,085.00 |
| Mary Hansel | 60.00 | 395.00 | 23,700.00 |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Mark van der Harst | 10.00 | 375.00 | 3,750.00 |
| Catherine Van Kampen | 620.50 | 395.00 | 245,097.50 |
| Thomas Keevins | 1,198.50 | 395.00 | 473,407.50 |
| Donatella Keohane | 41.75 | 395.00 | 16,491.25 |
| Arthur Lee | 1,338.00 | 375.00 | 501,750.00 |
| Laura Lefkowitz | 1,014.50 | 395.00 | 400,727.50 |
| Andrew McGoey | 31.50 | 395.00 | 12,442.50 |
| Matt Mulligan | 1,106.25 | 375.00 | 414,843.75 |
| Spencer Oster | 3.00 | 375.00 | 1,125.00 |
| Simmi Prasad | 655.25 | 395.00 | 258,823.75 |
| Shalu Rastogi | 933.00 | 395.00 | 368,535.00 |
| Daniel Renehan | 555.75 | 395.00 | 219,521.25 |
| Danielle Restieaux | 979.75 | 395.00 | 387,001.25 |
| Robert Stinson | 8.00 | 395.00 | 3,160.00 |
| Jens Tobiasson | 400.75 | 375.00 | 150,281.25 |
| Andrew Tolan | 7.00 | 395.00 | 2,765.00 |
| Jordan Wolff | 1,241.00 | 375.00 | 465,375.00 |
|  |  |  |  |
| **Litigation Support** |  |  |  |
| Jesse Baidoe | 115.00 | 220.00 | 25,300.00 |
| Sheron P. Brathwaite | 261.75 | 250.00 | 65,437.50 |
| Fred Reyes | 79.00 | 240.00 | 18,960.00 |
|  |  |  |  |
| **Financial Analysts** |  |  |  |
| Adam Weinschel | 20.25 | 350.00 | 7,087.50 |
| Amanda Beth Hollis | 8.00 | 275.00 | 2,200.00 |
| Rochelle Moses | 33.50 | 275.00 | 9,212.50 |
| Sharon Safran | 1.50 | 275.00 | 412.50 |
| Ryan S. Ting | 26.00 | 220.00 | 5,720.00 |
| Clayton Ramsey | 7.00 | 225.00 | 1,575.00 |
|  |  |  |  |
| **Investigators** |  |  |  |
| Amy Bitkower | 110.75 | 425.00 | 47,068.75 |
| Joelle (Sfeir) Landino | 65.25 | 250.00 | 16,312.50 |
|  |  |  |  |
| **Communications** |  |  |  |
| Alexander Coxe | 4.00 | 230.00 | 920.00 |
| Dalia El-Newehy | 6.00 | 190.00 | 1,140.00 |
| Sonam Sagar | 2.00 | 190.00 | 380.00 |
|  |  |  |  |
| **Paralegals** |  |  |  |
| Yvette Badillo | 2.25 | 275.00 | 618.75 |
| Kenneth Cardwell | 363.75 | 275.00 | 100,031.25 |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Maureen Duncan | 1,568.50 | 275.00 | 431,337.50 |
| Larry Silvestro | 21.50 | 275.00 | 5,912.50 |
| Gary Weston | 11.00 | 275.00 | 3,025.00 |
| Eric Andrieux | 546.25 | 210.00 | 114,712.50 |
| Virginia Gonzales | 17.25 | 250.00 | 4,312.50 |
| Michael Hartling | 3.00 | 210.00 | 630.00 |
| Ruben Montilla | 15.50 | 210.00 | 3,255.00 |
| | | | |
| **Document Clerk** | | | |
| Michael Andres | 4.25 | 175.00 | 743.75 |
| | | | |
| | | | |
| **TOTALS** | **27,166.15** | | **$11,508,105.00** |

# Exhibit 2

EXHIBIT 2

*In re Pfizer Inc. Shareholder Derivative Litigation*
**Case No. 09-CV-7822 (JSR)**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**EXPENSE REPORT**
**Inception through February 6, 2011**

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | 909.40 |
| Service of Process | 1,447.20 |
| On-Line Legal Research | 196,054.97 |
| On-Line Factual Research | 10,612.69 |
| Telephone | 137.03 |
| Postage & Express Mail | 3,252.17 |
| Hand Delivery Charges | 1,359.40 |
| Local Transportation | 25,854.51 |
| Internal Copying | 131,655.50 |
| Outside Copying | 23,950.68 |
| Out of Town Travel | 47,211.82 |
| Working Meals | 18,561.99 |
| Court Reporting & Transcripts | 2,287.69 |
| Special Publications | 250.00 |
| Staff Overtime | 6,581.98 |
| Temporary Litigation Support | 37,456.67 |
| Experts | 124,359.00 |
| Contributions to Plaintiffs' Litigation Fund | 420,000.00 |
| **SUBTOTAL:** | **$1,051,942.70** |
| | |
| **Outstanding Invoices:** | |
| Experts | 249,126.00 |
| Court Reporting & Transcripts | 34,605.56 |
| Outside Copying | 19,079.97 |
| | |
| **TOTAL:** | **$1,354,754.23** |
| | |
| Less Adjustment for Repayment from Litigation Fund | **($32,651.11)** |
| | |
| **TOTAL EXPENSES:** | **$1,322,103.12** |

#515210

# Exhibit 3

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## ATTORNEYS AT LAW

### NEW YORK • CALIFORNIA • LOUISIANA

## FIRM RESUME

Visit our web site at www.blbglaw.com for the most up-to-date information on the firm, its lawyers and practice groups.

Bernstein Litowitz Berger & Grossmann LLP, a firm of over 50 attorneys in offices located in New York, California and Louisiana, prosecutes class and private actions, nationwide, on behalf of individual and institutional clients. The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; intellectual property; alternative dispute resolution; distressed debt and bankruptcy; civil rights and employment discrimination; consumer class actions and antitrust. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes the New York State Common Retirement Fund, the California Public Employees Retirement System (CalPERS), and the Ontario Teachers' Pension Plan, the largest public pension funds in North America, collectively managing over $300 billion in assets; the Los Angeles County Employees' Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the State of Wisconsin Investment Board; the Retirement Systems of Alabama; the Connecticut Retirement Plans and Trust Funds; the City of Detroit Pension Systems; the Houston Firefighters' and Municipal Employees' Pension Funds; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history and has obtained over $20 billion on behalf of investors. Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained four of the ten largest securities recoveries in history.

As Co-Lead Counsel for the Class representing Lead Plaintiff the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc., we obtained unprecedented settlements totaling more than $6 billion from the investment bank defendants who underwrote WorldCom bonds, the second largest securities recovery in history. Additionally, the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals—20% of their collective net worth. Also, after four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements were reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

The firm was also Co-Lead Counsel in *In re Cendant Corporation Securities Litigation*, which settled for more than $3 billion in cash. This settlement, the largest sums ever recovered from a public company and a public accounting firm, includes some of the most significant corporate governance changes ever achieved through securities class action litigation. The firm represented Lead Plaintiffs CalPERS, the New York State Common Retirement Fund, and the New York City Pension Funds on behalf of all purchasers of Cendant securities during the class period. The firm also recovered over $1.3 billion for investors in Nortel Networks, and recent settlements in *In re McKesson HBOC Inc. Securities Litigation* total over $1 billion in monies recovered for investors. Additionally, the firm was lead counsel in the celebrated *In re Washington Public Power Supply System Litigation*, which, after seven years of litigation and three months of jury trial, resulted in what was then the largest securities fraud recovery ever – over $750 million.

A leader in representing institutional shareholders in litigation arising from the widespread stock options backdating scandals of recent years, the firm recovered nearly $920 million in ill-gotten compensation directly from former officers and directors in the *UnitedHealth Group, Inc. Shareholder Derivative Litigation.* The largest derivative recovery in history, the settlement is notable for holding individual wrongdoers accountable for their role in illegally backdating stock options, as well as for the company's agreement to far-reaching reforms to curb future executive compensation abuses. (Court approval of the recovery is pending.)

The firm's prosecution of Arthur Andersen LLP, for Andersen's role in the 1999 collapse of the Baptist Foundation of Arizona ("BFA"), received intense national and international media attention. As lead trial counsel for the defrauded BFA investors, the firm obtained a cash settlement of $217 million from Andersen in May 2002, after six days of what was scheduled to be a three month trial. The case was covered in great detail by *The Wall Street Journal, The New York Times, The Washington Post,* "60 Minutes II," National Public Radio, and the BBC, as well as various other international news outlets.

The firm is also a recognized leader in representing the interests of shareholders in M&A litigation arising from transactions that are structured to unfairly benefit the company's management or directors at the shareholder's expense. For example, in the high-profile *Caremark Takeover Litigation,* the firm obtained a landmark ruling from the Delaware Court of Chancery ordering Caremark's board to disclose previously withheld information, enjoin a shareholder vote on CVS' merger offer, and grant statutory appraisal rights to Caremark shareholders. CVS was ultimately forced to raise its offer by $7.50 per share, equal to more than $3 billion in additional consideration to Caremark shareholders.

Equally important, Bernstein Litowitz Berger & Grossmann LLP has successfully advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.

The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc.,* which similarly resulted in a recovery of $176 million, the largest settlement ever in a race discrimination case. The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and served as a model for public companies going forward.

On behalf of twelve public pension funds, including the New York State Common Retirement Fund, CalPERS, LACERA, and other institutional investors, the firm successfully prosecuted *McCall v. Scott,* a derivative suit filed against the directors and officers of Columbia/HCA Healthcare Corporation, the subject of the largest health care fraud investigation in history. This settlement included a landmark corporate governance plan which went well beyond all recently enacted regulatory reforms, greatly enhancing the corporate governance structure in place at HCA.

The firm also represents intellectual property holders who are victims of infringement in litigation against some of the largest companies in the world. Our areas of specialty practice include patents, copyrights, trademarks, trade dress, and trade-secret litigation, and our attorneys are recognized by industry observers for their excellence.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements. In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class' losses – an extraordinary result in consumer class cases.

Our firm is dedicated to litigating with the highest level of professional competence, striving to secure the maximum possible recovery for our clients in the most efficient and professionally responsible manner. In those cases where we have served as either lead counsel or as a member of plaintiffs' executive committee, the firm has recovered billions of dollars for our clients.

# THE FIRM'S PRACTICE AREAS

## Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has tried and settled many high profile securities fraud class actions and continues to play a leading role in major securities litigation pending in federal and state courts. Moreover, since passage of the Private Securities Litigation Reform Act of 1995, which sought to encourage institutional investors to become more pro-active in securities fraud class action litigation, the firm has become the nation's leader in representing institutional investors in securities fraud and derivative litigation. The firm has the distinction of having prosecuted many of the most complex and high-profile cases in securities law history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients.

The firm also pursues direct actions in securities fraud cases when appropriate. By selectively opting-out of certain securities class actions we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enables it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

## Corporate Governance and Shareholders' Rights

The corporate governance and shareholders' rights practice group prosecutes derivative actions, claims for breach of fiduciary duty and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. The group has also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation. As a result of the firm's high profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders.

The firm is actively involved in litigating numerous cases in this area of law, an area that has become increasingly important in light of efforts by various market participants to buy companies from their public shareholders "on the cheap."

## Employment Discrimination and Civil Rights

The employment discrimination and civil rights practice group prosecutes class and multi-plaintiff actions, and other high impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination, and civil rights laws. The practice group represents diverse clients on a wide range of issues including Title VII actions, race, gender, sexual orientation and age discrimination suits, sexual harassment and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.

Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial limitations, and offers the potential for effecting the greatest positive change for the greatest number of people affected by discriminatory practice in the workplace.

## Intellectual Property

BLB&G's Intellectual Property Litigation practice group is dedicated to protecting the creativity and innovation of individuals and firms. Patent cases exemplify the type of complex, high-stakes litigation in which we specialize. Our areas of concentration include patent, trademark, false advertising, copyright, and trade-secret litigation. We have successfully prosecuted these actions against infringers in both federal and state courts across the country, in foreign courts and before administrative bodies. The firm is currently prosecuting patent cases on behalf of inventors in a variety of industries including electronics, liquid crystal display ("LCD") panels, and computer technology.

## General Commercial Litigation and Alternative Dispute Resolution

The General Commercial Litigation practice group provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees and other business entities. We have faced down powerful and well-funded law firms and defendants — and consistently prevailed.

However, not every dispute is best resolved through the courts. In such cases, BLB&G Alternative Dispute practitioners offer clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process. BLB&G has extensive experience — and a marked record of successes — in ADR practice. For example, in the wake of the credit crisis, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation. Our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad representing clients before all the major arbitration tribunals, including the American Arbitration Association (AAA), FINRA, JAMS, International Chamber of Commerce (ICC) and the London Court of International Arbitration.

## Distressed Debt and Bankruptcy Creditor Negotiation

BLB&G Distressed Debt and Bankruptcy Creditor Negotiation group has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third party litigation brought by bankruptcy trustees and creditor's committees against auditors, appraisers, lawyers, officers and directors, and others defendant who may have contributed to a clients' losses. As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy. Our record in this practice area is characterized by extensive trial experience in addition to completion of successful settlements.

## Consumer Advocacy

The consumer advocacy practice group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud, and consumer protection issues. The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages. The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators. The consumer practice advocacy group has recovered hundreds of millions of dollars for millions of consumers throughout the country. Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer. For example, in actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class. The group achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases. Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers.

# THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional competence and diligence of the firm and its members. A few examples are set forth below.

Judge Denise Cote (United States District Court for the Southern District of New York) has noted, several times on the record, the quality of BLB&G's representation of the Class in *In re WorldCom, Inc. Securities Litigation*. Judge Cote on December 16, 2003:

> "I have the utmost confidence in plaintiffs' counsel . . . they have been doing a superb job. . . . The Class is extraordinarily well represented in this litigation."

In granting final approval of the $2.575 billion settlement obtained from the Citigroup Defendants, Judge Cote again praised BLB&G's efforts:

> "The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy....The quality of the representation given by Lead Counsel...has been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative.... Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

*   *   *

In February 2005, at the conclusion of trial of *In re Clarent Corporation Securities Litigation*, The Honorable Charles R. Breyer of the United States District Court for the Northern District of California praised the efforts of counsel: "It was the best tried case I've witnessed in my years on the bench....[A]n extraordinarily civilized way of presenting the issues to you [the jury]....We've all been treated to great civility and the highest professional ethics in the presentation of the case.... The evidence was carefully presented to you....They got dry subject matter and made it interesting... [brought] the material alive... good trial lawyers can do that.... I've had fascinating criminal trials that were far less interesting than this case. [I]t's a great thing to be able to see another aspect of life... It keeps you young...vibrant... [and] involved in things... These trial lawyers are some of the best I've ever seen."

*   *   *

"I do want to make a comment again about the excellent efforts...[these] firms put into this case and achieved. Earlier this year, I wrote a decision in *Revlon* where I actually replaced plaintiff's counsel because they hadn't seemed to do the work, or do a good job...In doing so, what I said and what I meant was that I think class and derivative litigation is important; that I am not at all critical of class and derivative litigation, and that I think it has significant benefits in terms of what it achieves for stockholders, or it can. It doesn't have to act as a general tax for the sale of indulgences for deals. This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system. So, if you had book ends, you would put the *Revlon* situation on one book end and you'd put this case on the other book end. You'd hold up the one as an example of what not to do, and you hold up this case as an example of what to do."

Vice Chancellor J. Travis Laster, Delaware Court of Chancery praising the firm's work in the *Landry's Restaurants, Inc. Shareholder Litigation* on October 6, 2010

*   *   *

In granting the Court's approval of the resolution and prosecution of *McCall v. Scott*, a shareholder derivative lawsuit against certain former senior executives of HCA Healthcare (formerly Columbia/HCA), Senior Judge Thomas A. Higgins (United States District Court, Middle District of Tennessee) said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan. . . . Counsel's

5

excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

\*   \*   \*

Judge Walls (District of New Jersey), in approving the $3.2 billion *Cendant* settlement, said that the recovery from all defendants, which represents a 37% recovery to the Class, "far exceeds recovery rates of any case cited by the parties." The Court also held that the $335 million separate recovery from E&Y is "large" when "[v]iewed in light of recoveries against accounting firms for securities damages." In granting Lead Counsel's fee request, the Court determined that "there is no other catalyst for the present settlement than the work of Lead Counsel. . . . This Court, and no other judicial officer, has maintained direct supervision over the parties from the outset of litigation to the present time. In addition to necessary motion practice, the parties regularly met with and reported to the Court every five or six weeks during this period about the status of negotiations between them. . . . [T]he Court has no reason to attribute a portion of the Cendant settlement to others' efforts; Lead Counsel were the only relevant material factors for the settlement they directly negotiated." The Court found that "[t]he quality of result, measured by the size of settlement, is very high. . . . The Cendant settlement amount alone is over three times larger than the next largest recovery achieved to date in a class action case for violations of the securities laws, and approximately ten times greater than any recovery in a class action case involving fraudulent financial statements. . . The E&Y settlement is the largest amount ever paid by an accounting firm in a securities class action." The Court went on to observe that "the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel were high in this action. Lead Counsel are experienced securities litigators who ably prosecuted the action." The Court concluded that this Action resulted in "excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class."

\*   \*   \*

After approving the settlement in *Alexander v. Pennzoil Company*, the Honorable Vanessa D. Gilmore of the United States District Court for the Southern District of Texas ended the settlement hearing by praising our firm for the quality of the settlement and our commitment to effectuating change in the workplace.  "... the lawyers for the plaintiffs ... did a tremendous, tremendous job. ... not only in the monetary result obtained, but the substantial and very innovative programmatic relief that the plaintiffs have obtained in this case ... treating people fairly and with respect can only inure to the benefit of everybody concerned.  I think all these lawyers did an outstanding job trying to make sure that that's the kind of thing that this case left behind."

\*   \*   \*

On February 23, 2001, the United States District Court for the Northern District of California granted final approval of the $259 million cash settlement in *In re 3Com Securities Litigation*, the largest settlement of a securities class action in the Ninth Circuit since the Private Securities Litigation Reform Act was passed in 1995, and the fourth largest recovery ever obtained in a securities class action.   The district court, in an Order entered on March 9, 2001, specifically commented on the quality of counsel's efforts and the settlement, holding that "counsel's representation [of the class] was excellent, and ... the results they achieved were substantial and extraordinary."  The Court described our firm as "among the most experienced and well qualified in this country in [securities fraud] litigation."

\*   \*   \*

United States District Judge Todd J. Campbell of the Middle District of Tennessee heard arguments on Plaintiffs' Motion for Preliminary Injunction in *Cason v. Nissan Motor Acceptance Corporation Litigation*, the highly publicized discriminatory lending class action, on September 5, 2001. He exhibited his own brand of candor in commenting on the excellent work of counsel in this matter: "In fact, the lawyering in this case... is as good as I've seen in any case. So y'all are to be commended for that."

\*   \*   \*

In approving the $30 million settlement in the *Assisted Living Concepts, Inc. Securities Litigation*, the Honorable Ann L. Aiken of the Federal District Court in Oregon, praised the recovery and the work of counsel. She stated that, "...without a doubt...this is a...tremendous result as a result of very fine work...by the...attorneys in this case."

\*   \*   \*

The Honorable Judge Edward A. Infante of the United States District Court for the Northern District of California expressed high praise for the settlement and the expertise of plaintiffs' counsel when he approved the final settlement in the *Wright v. MCI Communications Corporation* consumer class action. "The settlement. . . . is a very favorable settlement to the class. . . . to get an 85% result was extraordinary, and plaintiffs' counsel should be complimented for it on this record. . . . The recommendations of experienced counsel weigh heavily on the court. The lawyers before me are specialists in class action litigation. They're well known to me, particularly Mr. Berger, and I have confidence that if Mr. Berger and the other plaintiffs' counsel think this is a good, well-negotiated settlement, I find it is." The case was settled for $14.5 million.

\*   \*   \*

At the *In re Computron Software, Inc. Securities Litigation* settlement hearing, Judge Alfred J. Lechner, Jr. of the United States District Court for the District of New Jersey approved the final settlement and commended Bernstein Litowitz Berger & Grossmann's efforts on behalf of the Class. "I think the job that was done here was simply outstanding. I think all of you just did a superlative job and I'm appreciat[ive] not only for myself, but the court system and the plaintiffs themselves. The class should be very, very pleased with the way this turned out, how expeditiously it's been moved."

\*   \*   \*

The *In re Louisiana-Pacific Corporation Securities Litigation*, filed in the United States District Court, District of Oregon, was a securities class action alleging fraud and misrepresentations in connection with the sale of defective building materials. Our firm, together with co-lead counsel, negotiated a settlement of $65.1 million, the largest securities fraud settlement in Oregon history, which was approved by Judge Robert Jones on February 12, 1997. The Court there recognized that ". . . the work that is involved in this case could only be accomplished through the unique talents of plaintiffs' lawyers . . . which involved a talent that is not just simply available in the mainstream of litigators."

\*   \*   \*

Judge Kimba M. Wood of the United States District Court for the Southern District of New York, who presided over the six-week securities fraud class action jury trial in *In re ICN/Viratek Securities Litigation*, also recently praised our firm for the quality of the representation afforded to the class and the skill and expertise demonstrated throughout the litigation and trial especially. The Court commented that ". . . plaintiffs' counsel did a superb job here on behalf of the class. . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task. . . The trial work was beautifully done and I believe very efficiently done. . ."

\*   \*   \*

Similarly, the Court in the *In re Prudential-Bache Energy Income Partnership Securities Litigation*, United States District Court, Eastern District of Louisiana, recognized Bernstein Litowitz Berger & Grossmann LLP's ". . . professional standing among its peers." In this case, which was settled for $120 million, our firm served as Chair of the Plaintiffs' Executive Committee.

\*   \*   \*

In the landmark securities fraud case, *In re Washington Public Power Supply System Litigation* (United States District Court, District of Arizona), the district court called the quality of representation "exceptional," noting that "[t]his was a case of overwhelmingly unique proportions. . . a rare and exceptional case involving extraordinary services on behalf of Class plaintiffs." The Court also observed that "[a] number of attorneys dedicated significant

portions of their professional careers to this litigation, . . . champion[ing] the cause of Class members in the face of commanding and vastly outnumbering opposition. . . [and] in the face of uncertain victory. . . . [T]hey succeeded admirably."

\*   \*   \*

Likewise, in *In re Electro-Catheter Securities Litigation*, where our firm served as co-lead counsel, Judge Nicholas Politan of the United States District Court for New Jersey said, "Counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation...always well prepared, well spoken, and knew their stuff and they were a credit to their profession.  They are the top of the line."

\*   \*   \*

In our ongoing prosecution of the *In re Bennett Funding Group Securities Litigation*, the largest "Ponzi scheme" fraud in history, partial settlements totaling over $140 million have been negotiated for the class.  While the action continues to be prosecuted against other defendants, the United States District Court for the Southern District of New York has already found our firm to have been "extremely competent" and of "great skill" in representing the class.

\*   \*   \*

Judge Sarokin of the United States District Court for the District of New Jersey, after approving the $30 million settlement in *In re First Fidelity Bancorporation Securities Litigation*, a case in which were lead counsel, praised the ". . . outstanding competence and performance" of the plaintiffs' counsel and expressed "admiration" for our work in the case.

# RECENT ACTIONS & SIGNIFICANT RECOVERIES

Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history.  Some examples from our practice groups include:

## Securities Class Actions

***In re WorldCom, Inc. Securities Litigation*** -- (United States District Court for the Southern District of New York) The largest securities fraud class action in history. The court appointed BLB&G client the **New York State Common Retirement Fund** as Lead Plaintiff and the firm as Lead Counsel for the class in this securities fraud action arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc. The complaints in this litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. As a result, investors suffered tens of billions of dollars in losses.  The Complaint further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom (most notably, Jack Grubman, Salomon's star telecommunications analyst), and by WorldCom's former CEO and CFO, Bernard J. Ebbers and Scott Sullivan, respectively. On November 5, 2004, the Court granted final approval of the $2.575 billion cash settlement to settle all claims against the Citigroup defendants.  In mid-March 2005, on the eve of trial, the 13 remaining "underwriter defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them, bringing the total over $6 billion.   Additionally, by March 21, 2005, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them.  An unprecedented first for outside directors, $24.75 million of that amount  came out of the pockets of the individuals— 20% of their collective net worth.  The case generated headlines across the country—and across the globe.  In the words of  Lynn Turner, a former SEC chief accountant, the settlement sent a message to directors "that their own personal wealth is at risk if they're not diligent in their jobs." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million.  In July 2005, settlements were reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

***In re Cendant Corporation Securities Litigation*** -- (United States District Court, District of New Jersey) Securities class action filed against Cendant Corporation, its officers and directors and Ernst & Young, its auditors.  Cendant settled the action for $2.8 billion and Ernst & Young settled for $335 million.  The settlements are the third largest in history in a securities fraud action.  Plaintiffs alleged that the company disseminated materially false and misleading financial statements concerning CUC's revenues, earnings and expenses for its 1997 fiscal year.  As a result of company-wide accounting irregularities, Cendant restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein.  A major component of the settlement was Cendant's agreement to adopt some of the most extensive corporate governance changes in history. The firm represented Lead Plaintiffs **CalPERS** - the **California Public Employees Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.

***Baptist Foundation of Arizona v. Arthur Andersen, LLP*** -- (Superior Court of the State of Arizona in and for the County of Maricopa) Firm client, the **Baptist Foundation of Arizona Liquidation Trust** ("BFA") filed a lawsuit charging its former auditors, the "Big Five" accounting firm of Arthur Andersen LLP, with negligence in conducting its annual audits of BFA's financial statements for a 15-year period beginning in 1984, and culminating in BFA's bankruptcy in late 1999. Investors lost hundreds of millions of dollars as a result of BFA's demise. The lawsuit alleges that Andersen ignored evidence of corruption and mismanagement by BFA's former senior management team and failed to investigate suspicious transactions related to the mismanagement. These oversights of accounting work, which were improper under generally accepted accounting principles, allowed BFA's undisclosed losses to escalate to hundreds of millions of dollars, and ultimately resulted in its demise.  On May 6, 2002, after one week of trial, Andersen agreed to pay $217 million to settle the litigation.

9

***In re Nortel Networks Corporation Securities Litigation*** -- ("Nortel II") (United States District Court for the Southern District of New York)  Securities fraud class action on behalf of persons and entities who purchased or acquired the common stock of Nortel Networks Corporation.  The action charged Nortel, and certain of its officers and directors, with violations of the Securities Exchange Act of 1934, alleging that the defendants knowingly or, at a minimum, recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period.  BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class, and BLB&G was appointed Lead Counsel for the Class by the court in July 2004.  On February 8, 2006, BLB&G and Lead Plaintiffs announced that they and another plaintiff had reached an historic agreement in principle with Nortel to settle litigation pending against the Company for approximately $2.4 billion in cash and Nortel common stock (all figures in US dollars). The Nortel II portion of the settlement totaled approximately $1.2 billion.  Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.3 billion.

***In re McKesson HBOC, Inc. Securities Litigation*** -- (United States District Court, Northern District of California) Securities fraud litigation filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities.  On April 28, 1999, the Company issued the first of several press releases which announced that, due to its improper recognition of revenue from contingent software sales, it would have to restate its previously reported financial results.  Immediately thereafter, McKesson HBOC common stock lost $9 billion in market value.  On July 14, 1999, the Company announced that it was restating $327.8 million of revenue improperly recognized in the HBOC segment of its business during the fiscal years ending March 31, 1997, 1998 and 1999.  The complaint alleged that, during the Class Period, Defendants issued materially false and misleading statements to the investing public concerning HBOC's and McKesson HBOC's financial results, which had the effect of artificially inflating the prices of HBOC's and the Company's securities.  On September 28, 2005, the court granted preliminary approval of a $960 million settlement which BLB&G and its client, Lead Plaintiff the **New York State Common Retirement Fund**, obtained from the company.  On December 19, 2006, defendant Arthur Andersen agreed to pay $72.5 million in cash to settle all claims asserted against it.  On the eve of trial in September 2007 against remaining defendant Bear Stearns & Co. Inc., Bear Stearns, McKesson and Lead Plaintiff entered into a three-way settlement agreement that resolved the remaining claim against Bear Stearns for a payment to the class of $10 million, bringing the total recovery to more than $1.04 billion for the Class.

***HealthSouth Corporation Bondholder Litigation*** -- (United States District Court for the Northern District of Alabama {Southern Division}) On March 19, 2003, the investment community was stunned by the charges filed by the Securities and Exchange Commission against Birmingham, Alabama based HealthSouth Corporation and its former Chairman and Chief Executive Officer, Richard M. Scrushy, alleging a "massive accounting fraud." Stephen M. Cutler, the SEC's Director of Enforcement, said "HealthSouth's fraud represents an appalling betrayal of investors." According to the SEC, HealthSouth overstated its earnings by at least $1.4 billion since 1999 at the direction of Mr. Scrushy. Subsequent revelations have disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the last five years. A number of executives at HealthSouth, including its most senior accounting officers -- including every chief financial officer in HealthSouth's history -- have pleaded guilty to criminal fraud charges. In the wake of these disclosures, numerous securities class action lawsuits have been filed against HealthSouth and certain individual defendants. On June 24, 2003, the Honorable Karon O. Bowdre of the District Court appointed the **Retirement Systems of Alabama** to serve as Lead Plaintiff on behalf of a class of all purchasers of HealthSouth bonds who suffered a loss as a result of the fraud. Judge Bowdre appointed BLB&G to serve as Co-Lead Counsel for the bondholder class.  On February 22, 2006, the RSA and BLB&G announced that it and several other institutional plaintiffs leading investor lawsuits arising from the scandal had reached a class action settlement with HealthSouth, certain of the company's former directors and officers, and certain of the company's insurance carriers. The total consideration in that settlement is approximately $445 million for shareholders and bondholders. On April 23, 2010, RSA and BLB&G announced that it had reached separate class action settlements with UBS AG, UBS Warburg LLC, Benjamin D. Lorello, William C. McGahan and Howard Capek (collectively, UBS) and with Ernst & Young LLP (E&Y). The total consideration to be paid in the UBS settlement is $100 million in cash and E&Y has agreed to pay $33.5 million in cash. Bond purchasers will also receive approximately 5% of the recovery achieved in Alabama state court in a separate action brought on behalf of HealthSouth against UBS and Richard Scrushy. The total settlement for injured HealthSouth bond purchasers will be in excess of $230 million, which should recoup over a third of bond purchaser damages.

***Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.*** -- (United States District Court for the Southern District of Ohio {Eastern Division}) Securities fraud class action filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** against the Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers. The Class includes all purchasers of Freddie Mac common stock during the period July 15, 1999 through June 6, 2003. The Complaint alleges that Freddie Mac and certain current or former officers of the Company issued false and misleading statements in connection with Company's previously reported financial results. Specifically, the complaint alleges that the defendants misrepresented the Company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the Company's earnings and to hide earnings volatility. On November 21, 2003, Freddie Mac restated its previously reported earnings in connection with these improprieties, ultimately restating more than $5.0 billion in earnings. In October 2005, with document review nearly complete, Lead Plaintiffs began deposition discovery. On April 25, 2006, the parties reported to the Court that they had reached an agreement in principle to settle the case for $410 million.  On October 26, 2006, the Court granted final approval of the settlement.

***In re Washington Public Power Supply System Litigation*** -- (United States District Court, District of Arizona) Commenced in 1983, the firm was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class. The action involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million – then the largest securities fraud settlement ever achieved.

***In re Lucent Technologies, Inc. Securities Litigation*** -- (United States District Court for the District of New Jersey) A securities fraud class action filed on behalf of purchasers of the common stock of Lucent Technologies, Inc. from October 26, 1999 through December 20, 2000. In the action, BLB&G served as Co-Lead Counsel for the shareholders and Lead Plaintiffs, the **Parnassus Fund** and **Teamsters Locals 175 & 505 D&P Pension Trust**, and also represented the **Anchorage Police and Fire Retirement System** and the **Louisiana School Employees' Retirement System**. Lead Plaintiffs' complaint charged Lucent with making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. On September 23, 2003, the Court granted preliminary approval of the agreement to settle this litigation, a package valued at approximately $600 million composed of cash, stock and warrants.  The appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court has reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

***In re Williams Securities Litigation*** -- (United States District Court for the Northern District of Oklahoma) Securities fraud class action filed on behalf of a class of all persons or entities that purchased or otherwise acquired certain securities of The Williams Companies.   The action alleged securities claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933.  After a massive discovery and intensive litigation effort, which included taking more than 150 depositions and reviewing in excess of 18 million pages of documents, BLB&G and its clients, the Arkansas Teacher Retirement System and the Ontario Teachers' Pension Plan Board, announced an agreement to settle the litigation against all defendants for $311 million in cash on June 13, 2006.  The recovery is among the largest recoveries ever in a securities class action in which the corporate defendant did not restate its financial results.

***In re DaimlerChrysler Securities Litigation*** --  (United States District Court for the District of Delaware) A securities class action filed against defendants DaimlerChrysler AG, Daimler-Benz AG and two of DaimlerChrysler's top executives, charging that Defendants acted in bad faith and misrepresented the nature of the 1998 merger between Daimler-Benz AG and the Chrysler Corporation. According to plaintiffs, defendants framed the transaction as a "merger of equals," rather than an acquisition, in order to avoid paying an "acquisition premium." Plaintiffs' Complaint alleges that Defendants made this representation to Chrysler shareholders in the August 6, 1998 Registration Statement, Prospectus, and Proxy, leading 97% of Chrysler shareholders to approve the merger. BLB&G is court-appointed Co-Lead Counsel for Co-Lead Plaintiffs the **Chicago Municipal Employees Annuity and Benefit Fund** and the **Chicago Policemen's Annuity and Benefit Fund**. BLB&G and the Chicago funds filed the action on behalf of investors who exchanged their Chrysler Corporation shares for DaimlerChrysler

shares in connection with the November 1998 merger, and on behalf of investors who purchased DaimlerChrysler shares in the open market from November 13, 1998 through November 17, 2000. On August 22, 2003, BLB&G, as Co-Lead Counsel for Plaintiffs, obtained an agreement in principle to settle the action for $300 million.

***In re The Mills Corporation Securities Litigation*** -- (United States District Court, Eastern District of Virginia) On July 27, 2007, BLB&G and **Mississippi Public Employees' Retirement System** ("Mississippi") filed a Consolidated Complaint against The Mills Corporation ("Mills" or the "Company"), a former real estate investment trust, certain of its current and former senior officers and directors, its independent auditor, Ernst & Young LLP, and its primary joint venture partner, the KanAm Group.  This action alleged that, during the Class Period, Mills issued financial statements that materially overstated the Company's actual financial results and engaged in accounting improprieties that enabled it to report results that met or exceeded the market's expectations and resulted in the announcement of a restatement.  Mills conducted an internal investigation into its accounting practices, which resulted in the retirement, resignation and termination of 17 Company officers and concluded, among other things, that: (a) there had been a series of accounting violations that were used to "meet external and internal financial expectations;" (b) there were a set of accounting errors that were not "reasonable and reached in good faith" and showed "possible misconduct;" and (c) the Company "did not have in place fully adequate accounting information systems, personnel, formal policies and procedures, supervision, and internal controls."  On December 24, 2009, the Court granted final approval of settlements with the Mills Defendants ($165 million), Mills' auditor Ernst & Young ($29.75 million), and the Kan Am Defendants ($8 million), bringing total recoveries obtained for the class to $202.75 million plus interest. This settlement represents the largest recovery ever achieved in a securities class action in Virginia, and the second largest ever achieved in the Fourth Circuit Court of Appeals.

## Corporate Governance and Shareholders' Rights

***UnitedHealth Group, Inc. Shareholder Derivative Litigation*** – (United States District Court, District of Minnesota) Shareholder derivative action filed on behalf of Plaintiffs the St. Paul Teachers' Retirement Fund Association, the Public Employees' Retirement System of Mississippi, the Jacksonville Police & Fire Pension Fund, the Louisiana Sheriffs' Pension & Relief Fund, the Louisiana Municipal Police Employees' Retirement System and Fire & Police Pension Association of Colorado ("Public Pension Funds").  The action was brought in the name and for the benefit of UnitedHealth Group, Inc. ("UnitedHealth" or the "Corporation") against certain current and former executive officers and members of the Board of Directors of UnitedHealth.  It alleges that defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered nearly $920 million in ill-gotten compensation directly from the former officer defendants—the largest derivative recovery in history.  The settlement is notable for holding these individual wrongdoers accountable for their role in illegally backdating stock options, as well as for the fact that the company agreed to far-reaching reforms to curb future executive compensation abuses.  As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]….[T]he recovery sets a standard  of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings."

***Caremark Merger Litigation*** – (Delaware Court of Chancery - New Castle County)  Shareholder class action against the directors of Caremark RX, Inc. ("Caremark") for violations of their fiduciary duties arising from their approval and continued endorsement of a proposed merger with CVS Corporation ("CVS") and their refusal to consider fairly an alternative transaction proposed by Express Scripts, Inc. ("Express Scripts").  On December 21, 2006, BLB&G commenced this action on behalf of the **Louisiana Municipal Police Employees' Retirement System** and other Caremark shareholders in order to force the Caremark directors to comply with their fiduciary duties and otherwise obtain the best value for shareholders.  In a landmark decision issued on February 23, 2007, the Delaware Court of Chancery ordered the defendants to disclose additional material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders.  The Court also heavily criticized the conduct of the Caremark board of directors and, although declining to enjoin the shareholder vote on procedural grounds, noted that subsequent proceedings will retain the power to make shareholders whole through the availability of money damages.  The lawsuit forced CVS to increase the consideration offered to Caremark shareholders by a total of $7.50 per share in cash (over $3 billion in total), caused Caremark to issue a series of additional material disclosures, and twice postponed the shareholder vote to allow shareholders sufficient time to consider the new information. On March 16, 2007, Caremark shareholders voted to approve the revised offer by CVS.

***In re ACS Shareholder Litigation (Xerox)*** -- (Delaware Court of Chancery)  Shareholder class action  filed on behalf of the **New Orleans Employees' Retirement System** ("NOERS") and similarly situated shareholders of Affiliated Computer Service, Inc. ("ACS" or the "Company"), against members of the Board of Directors of ACS ("the Board"), Xerox Corporation ("Xerox"), and Boulder Acquisition Corp. ("Boulder"), a wholly owned subsidiary of Xerox.  The action alleged that the members of the ACS Board breached their fiduciary duties by approving a merger with Xerox which would allow Darwin Deason, ACS's founder and Chairman and largest stockholder, to extract hundreds of millions of dollars of value that rightfully belongs to ACS's public shareholders for himself. Per the agreement, Deason's consideration amounted to over a 50% premium when compared to the consideration paid to ACS's public stockholders. The ACS Board further breached its fiduciary duties by agreeing to certain deal protections in the merger agreement, including an approximately 3.5% termination fee and a no-solicitation provision. These deal protections, along with the voting agreement that Deason signed with Xerox (which required him under certain circumstances to pledge half of his voting interest in ACS to Xerox) essentially locked-up the transaction between ACS and Xerox. Plaintiffs, therefore, sought a preliminary injunction to enjoin the deal.  After intense discovery and litigation, the parties also agreed to a trial in May 2010 to resolve all outstanding claims. On May 19, 2010, Plaintiffs reached a global settlement with defendants for $69 million. In exchange for the release of all claims, Deason agreed to pay the settlement class $12.8 million while ACS agreed to pay the remaining $56.1 million. The Court granted final approval to the settlement on August 24, 2010.

***In re Dollar General Corporation Shareholder Litigation*** -- (Sixth Circuit Court for Davidson County, Tennessee; Twentieth Judicial District, Nashville)  Class action filed against Dollar General Corporation ("Dollar General" or the "Company") for breaches of fiduciary duty related to its proposed acquisition by the private equity firm Kohlberg Kravis Roberts & Co. ("KKR"), and against KKR for aiding and abetting those breaches.  A Nashville, Tennessee corporation that operates retail stores selling discounted household goods, in early March 2007, Dollar General announced that its board of directors had approved the acquisition of the Company by KKR.  On March 13, 2007, BLB&G filed a class action complaint alleging that the "going private" offer was approved as a result of breaches of fiduciary duty by the board and that the price offered by KKR did not reflect the fair value of Dollar General's publicly-held shares.   The Court appointed BLB&G Co-Lead Counsel and **City of Miami General Employees' & Sanitation Employees' Retirement Trust** as Co-Lead Plaintiff.  On the eve of the summary judgment hearing, KKR agreed to pay a $40 million settlement in favor of the shareholders, with a potential for $17 million more for the Class.

***Landry's Restaurants, Inc. Shareholder Litigation*** -- (Delaware Court of Chancery) A derivative and shareholder class action arising from the conduct of Landry's Restaurants, Inc.'s ("Landry's" or "the Company") chairman, CEO and largest shareholder, Tilman J. Fertitta ("Fertitta").  Fertitta and Landry's board of directors (the "Board") breached their fiduciary duties by stripping Landry's public shareholders of their controlling interest in the Company for no premium and severely devalued Landry's remaining public shares. In June 2008 Fertitta agreed to pay $21 per share to Landry's public shareholders to acquire the approximately 61% of the Company's shares that he did not already own (the "Buyout"). Fertitta planned to finance the Buyout by obtaining funds from a number of lending banks. In September 2008 before the Buyout closed, Hurricane Ike struck Texas and damaged certain of the Company's restaurants and properties. Fertitta used this natural disaster, and the general state of the national economy, to leverage renegotiation of the Buyout.  By threatening the Board that the lending banks might invoke the material adverse effect clause of the Buyout's debt commitment letter – even though no such right existed – Fertitta drastically reduced his purchase price to $13.50 a share in an amended agreement announced on October 18, 2008 (the "Amended Transaction"). In the wake of this announcement, Landry's share price plummeted, and Fertitta took advantage of Landry's depressed stock price by accumulating shares on the open market.  Despite the Board's recognition of Fertitta's stock accumulation outside the terms of the Amended Transaction, it did nothing to protect the interests of Landry's minority shareholders.  By December 2, 2008, Fertitta owned more than 50% of the Company, and sought to escape his obligations under the amended agreement. Roughly one month later, Fertitta and the lending banks used a routine request of the Company to cause the Board to terminate the Amended Transaction, thereby allowing Fertitta to avoid paying a termination fee. On February 5, 2009, BLB&G filed a lawsuit in the on behalf of Plaintiff **Louisiana Municipal Police Employees' Retirement System** and other public shareholders, and derivatively on behalf of Landry's, against Fertitta and the Board seeking to enforce the Buyout and various other reliefs.  On November 3, 2009, Landry's announced that its Board approved a new deal with Fertitta, whereby Fertitta would acquire the approximately 45% of Landry's outstanding stock that he does not already own for $14.75 per share in cash (the "Proposed Transaction"). On November 12, 2009, the Court granted Plaintiff's motion to supplement its original complaint to add additional claims involving breaches of fiduciary duty by Fertitta and the Landry's Board related to the Proposed Transaction.

13

After over a year of intensive litigation in which the Court denied defendants' motion to dismiss on all grounds, settlements were reached resolving all claims asserted against Defendants, which included the creation of a settlement fund composed of $14.5 million in cash.   With respect to the conduct surrounding the 2009 Proposed Transaction, the settlement terms included significant corporate governance reforms, and an increase in consideration to shareholders of the purchase price valued at $65 million.

***In re Yahoo! Inc., Takeover Litigation*** -- (Delaware Court of Chancery)  Shareholder class action filed on behalf of the Police & Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (collectively "Plaintiffs") (the "Detroit Funds"), and all other similarly situated public shareholders (the "Class") of Yahoo! Inc. ("Yahoo" or the "Company").   The action alleged that the Board of Directors at Yahoo breached their fiduciary duties by refusing to respond in good faith to Microsoft Corporation's ("Microsoft") non-coercive offer to acquire Yahoo for $31 per share - a 62% premium above the $19.18 closing price of Yahoo common stock on January 31, 2008. The initial complaint filed on February 21, 2008 alleged that Yahoo pursued an "anyone but Microsoft" approach, seeking improper defensive options to thwart Microsoft at the expense of Yahoo's shareholders, including transactions with Google, AOL, and News Corp. The Complaint also alleged the Yahoo Board adopted improper change-in-control employee severance plans designed to impose tremendous costs and risks for an acquirer by rewarding employees with rich benefits if they quit and claimed a constructive termination in the wake of merger.  Following consolidation of related cases and appointment of BLB&G as co-lead counsel by Chancellor Chandler on March 5, 2008, plaintiffs requested expedited proceedings and immediately commenced discovery, including document reviews and depositions of certain third parties and defendants. In December 2008, the parties reached a settlement of the action which provided significant benefits to Yahoo's shareholders including substantial revisions to the two challenged Change-in-Control Employee Severance Plans that the Yahoo board of directors adopted in immediate response to Microsoft's offer back in February of 2008. These revisions included changes to the first trigger of the severance plans by modifying what constitutes a "change of control" as well as changes to the second trigger by narrowing what amounts to "good reason for termination" or when an employee at Yahoo could leave on his own accord and claim severance benefits. Finally, the settlement provided for modifications to reduce the expense of the plan.  The Court approved the settlement on March 6, 2009.

***Ceridian Shareholder Litigation*** -- (Delaware Chancery Court, New Castle County)  Shareholder litigation filed in 2007 against the Ceridian Corporation ("Ceridian" or "the Company"), its directors, and Ceridian's proposed merger partners on behalf of BLB&G client, **Minneapolis Firefighter's Relief Association** ("Minneapolis Firefighters"), and other similarly situated shareholders, alleging that the proposed transaction arose from the board of directors' breaches of their fiduciary duty to maximize shareholder value and instead was driven primarily as a means to enrich Ceridian's management at the expense of shareholders.  Ceridian is comprised primarily of two divisions: Human Resources Solutions and Comdata.  The Company's biggest shareholder pursued a proxy fight to replace the current board of directors. In response to these efforts, the Company disclosed an exploration of strategic alternatives and later announced that it had agreed to be acquired by Thomas H. Lee Partners, LP ("THL") and Fidelity National Financial, Inc. ("Fidelity"), and had entered into a definitive merger agreement in a deal that values Ceridian at $5.3 billion, or $36 per share.   In addition, Ceridian's directors were accused of manipulating shareholder elections by embedding into the merger agreement a contractual provision that allowed THL and Fidelity an option to abandon the deal if a majority of the current board is replaced. This "Election Walkaway" provision would have punished shareholders for exercising the shareholder franchise and thereby coerce the vote. The defendants were also accused of employing additional unlawful lockup provisions, including "Don't Ask Don't Waive" standstill agreements, an improper "no-shop/no-talk" provision, and a $165 million termination fee as part of the merger agreement in order to deter and preclude the successful emergence of alternatives to the deal with THL and Fidelity.  Further, in the shadow of the ongoing proxy fight, Ceridian refused to hold its annual meeting for over 13 months. Pursuant to Section 211 of the Delaware General Corporation Law, BLB&G and Minneapolis Firefighters successfully filed a petition to require that the Company hold its annual meeting promptly which resulted in an order compelling the annual meeting to take place.  BLB&G and Minneapolis also obtained a partial settlement in the fiduciary duty litigation. Pursuant to the settlement terms, the "Election Walkaway" provision in the merger agreement and the "Don't Ask Don't Waive" standstills were eliminated, letters were sent by the Ceridian board to standstill parties advising them of their right to make a superior offer, and the "no-shop/no-talk" provision in the merger agreement was amended to significantly expand the scope of competing transactions that can be considered by the Ceridian board.  On February 25, 2008, the court approved the final settlement of the action.

***McCall v. Scott* --** (United States District Court, Middle District of Tennessee). A derivative action filed on behalf of Columbia/HCA Healthcare Corporation -- now "HCA" -- against certain former senior executives of HCA and current and former members of the Board of Directors seeking to hold them responsible for directing or enabling HCA to commit the largest healthcare fraud in history, resulting in hundreds of millions of dollars of loss to HCA. The firm represented the **New York State Common Retirement Fund** as Lead Plaintiff, as well as the **California Public Employees' Retirement System ("CalPERS")**, the **New York City Pension Funds**, the **New York State Teachers' Retirement System** and the **Los Angeles County Employees' Retirement Association ("LACERA")** in this action. Although the district court initially dismissed the action, the United States Court of Appeals for the Sixth Circuit reversed that dismissal and upheld the complaint in substantial part, and remanded the case back to the district court. On February 4, 2003, the Common Retirement Fund, announced that the parties had agreed in principle to settle the action, subject to approval of the district court. As part of the settlement, HCA was to adopt a corporate governance plan that goes well beyond the requirements both of the Sarbanes-Oxley Act and of the rules that the New York Stock Exchange has proposed to the SEC, and also enhances the corporate governance structure presently in place at HCA. HCA also will receive $14 million. Under the sweeping governance plan, the HCA Board of Directors is to be substantially independent, and would have increased power and responsibility to oversee fair and accurate financial reporting. In granting final approval of the settlement on June 3, 2003, the Honorable Senior Judge Thomas A. Higgins of the District Court said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan."

***Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins, et al.* --** (Delaware Chancery Court) The Official Committee of Unsecured Creditors (the "Committee") of Integrated Health Services ("HIS"), filed a complaint against the current and former officers and directors of IHS, a health care provider which declared bankruptcy in January 2000. The Committee, on behalf of the Debtors Bankruptcy Estates, sought damages for breaches of fiduciary duties and waste of corporate assets in proposing, negotiating, approving and/or ratifying excessive and unconscionable compensation arrangements for Robert N. Elkins, the Company's former Chairman and Chief Executive Officer, and for other executive officers of the Company. BLB&G is a special litigation counsel to the committee in this action. The Delaware Chancery Court sustained most of Plaintiff's fiduciary duty claims against the defendants, finding that the complaint sufficiently pleaded that the defendants "consciously and intentionally disregarded their responsibilities." The Court also observed that Delaware law sets a very high bar for proving violation of fiduciary duties in the context of executive compensation. Resulting in a multi-million dollar settlement, the Integrated Health Services litigation was one of the few executive compensation cases successfully litigated in Delaware.

## Employment Discrimination and Civil Rights

***Roberts v. Texaco, Inc.* --** (United States District Court for the Southern District of New York) Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the Company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. Two years of intensive investigation on the part of the lawyers of Bernstein Litowitz Berger & Grossmann LLP, including retaining the services of high level expert statistical analysts, revealed that African-Americans were significantly under-represented in high level management jobs and Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the Company. Settled for over $170 million. Texaco also agreed to a Task Force to monitor its diversity programs for five years. The settlement has been described as the most significant race discrimination settlement in history.

***ECOA - GMAC/NMAC/Ford/Toyota/Chrysler - Consumer Finance Discrimination Litigation*** (multiple jurisdictions) -- The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and DaimlerChrysler Financial cause African-American and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the defendants.

- NMAC: In March 2003, the United States District Court for the Middle District of Tennessee granted final approval of the settlement of the class action pending against Nissan Motor Acceptance Corporation ("NMAC"). Under the terms of the settlement, NMAC agreed to offer pre-approved loans to hundreds of

thousands of current and potential African-American and Hispanic NMAC customers, and limit how much it raises the interest charged to car buyers above the Company's minimum acceptable rate. The company will also contribute $1 million to America Saves, to develop a car financing literacy program targeted toward minority consumers. The settlement also provides for the payment of $5,000 to $20,000 to the 10 people named in the class-action lawsuit.

- GMAC: In March 2004, the United States District Court for the Middle District of Tennessee granted final approval of a settlement of the litigation against General Motors Acceptance Corporation ("GMAC"), in which GMAC agreed to take the historic step of imposing a 2.5% markup cap on loans with terms up to sixty months, and a cap of 2% on extended term loans. GMAC also agreed to institute a substantial credit pre-approval program designed to provide special financing rates to minority car buyers with special rate financing. The pre-approval program followed the example laid down in the successful program that NMAC implemented. The GMAC program extended to African-American and Hispanic customers throughout the United States and will offer no less than 1.25 million qualified applicants "no markup" loans over a period of five years. In addition, GMAC further agreed to (i) change its financing contract forms to disclose that the customer's annual percentage interest rate may be negotiable and that the dealer may retain a portion of the finance charge paid by the customer to GMAC, and (ii) to contribute $1.6 million toward programs aimed at educating and assisting consumers.

- DaimlerChrysler: In October 2005, the United States District Court for the District of New Jersey granted final approval of the settlement of BLB&G's case against DaimlerChrysler. Under the Settlement Agreement, DaimlerChrysler agreed to implement substantial changes to the Company's practices, including limiting the maximum amount of mark-up dealers may charge customers to between 1.25% and 2.5% depending upon the length of the customer's loan. In addition, the Company agreed to (i) include disclosures on its contract forms that the consumer can negotiate the interest rate with the dealer and that DaimlerChrysler may share the finance charges with the dealer, (ii) send out 875,000 pre-approved credit offers of no-mark-up loans to African-American and Hispanic consumers over the next several years, and (iii) contribute $1.8 million to provide consumer education and assistance programs on credit financing.

- Ford Motor Credit: In June 2006, the United States District Court for the Southern District of New York granted final approval of the settlement in this class action lawsuit. Under the terms of the settlement, Ford Credit agreed to make contract disclosures in the forms it creates and distributes to dealerships informing consumers that the customer's Annual Percentage Rate ("APR") may be negotiated and that sellers may assign their contracts and retain their right to receive a portion of the finance charge. Ford Credit also agreed to: (i) maintain or lower its present maximum differential between the customer APR and Ford Credit's "Buy Rate"; (ii) to contribute $2 million toward certain consumer education and assistance programs; and (iii) to fund a Diversity Marketing Initiative offering 2,000,000 pre-approved firm offers of credit to African-American and Hispanic Class Members during the next three years.

- Toyota Motor Credit: In November 2006, the United States District Court for the Central District of California granted final approval of the settlement of BLB&G's case against Toyota. Under the Settlement Agreement, Toyota agreed to limit the amount of mark-up on certain automobiles for the next three years with a cap of 2.50% on loans for terms of sixty (60) months or less; 2.00% on loans for terms of sixty-one (61) to seventy-one (71) months; and 1.75% on loans for terms of seventy-two (72) months or more. In addition, Toyota agreed to: (i) disclose to consumers that loan rates are negotiable and can be negotiated with the dealer; (ii) fund consumer education and assistance programs directed to African-American and Hispanic communities which will help consumers with respect to credit financing; (iii) offer 850,000 pre-approved, no mark-up offers of credit to African-Americans and Hispanics over the next five years; and offer a certificate of credit or cash to eligible class members.

***Alexander v. Pennzoil Company*** -- (United States District Court, Southern District of Texas) A class action on behalf of all salaried African-American employees at Pennzoil alleging race discrimination in the Company's promotion, compensation and other job related practices. The action settled for $6.75 million.

16

*Butcher v. Gerber Products Company* -- (United States District Court, Southern District of New York) Class action asserting violations of the Age Discrimination in Employment Act arising out of the mass discharging of approximately 460 Gerber sales people, the vast majority of whom were long-term Gerber employees aged 40 and older. Settlement terms are confidential.

## Consumer Class Actions

*DoubleClick* -- (United States District Court, Southern District of New York)  Internet Privacy.  A class action on behalf of Internet users who have had personal information surreptitiously intercepted and sent to a major Internet advertising agency.  In the settlement agreement reached in this action, DoubleClick committed to a series of industry-leading privacy protections for online consumers while continuing to offer its full range of products and services.  This is likely the largest class action there has ever been - virtually every, if not every, Internet user in the United States.

*General Motors Corporation* -- (Superior Court of New Jersey Law Division, Bergen County)  A class action consisting of all persons who currently own or lease a 1988 to 1993 Buick Regal, Oldsmobile Cutlass Supreme, Pontiac Grand Prix or Chevrolet Lumina or who previously owned or leased such a car for defective rear disc brake caliper pins which tended to corrode, creating both a safety hazard and premature wearing of the front and rear disc brakes, causing extensive economic damage.  Settled for $19.5 million.

*Wright v. MCI Communications Corporation* -- (United States District Court, District of California)  Consumer fraud class action on behalf of individuals who were improperly charged for calls made through MCI's Automated Operator Services.  Class members in this class action received a return of more than 85% of their losses.  Settled for $14.5 million.

*Empire Blue Cross* -- (United States District Court, Southern District of New York)  Overcharging health care subscribers.  BLB&G was lead counsel in a recently approved $5.6 million settlement that represented 100% of the class' damages and offered all the overcharged subscribers 100 cents on the dollar repayment.

*DeLima v. Exxon* -- (Superior Court of Hudson County, New Jersey)  A class action complaint alleging false and deceptive advertising designed to convince consumers who did not need high-test gasoline to use it in their cars.  A New Jersey class was certified by the court and upheld by the appellate court.  Under terms of the settlement, the class received one million $3 discounts on Exxon 93 Supreme Gasoline upon the purchase of at least 8 gallons of the gasoline.

## Toxic/Mass Torts

*Fen/Phen Litigation ("Diet Drug" Litigation)* -- (Class action lawsuits filed in 10 jurisdictions including New York, New Jersey, Vermont, Pennsylvania, Florida, Kentucky, Indiana, Arizona, Oregon and Arkansas)  The firm played a prominent role in the nationwide "diet drug" or "fen-phen" litigation against American Home Products for the Company's sale and marketing of Redux and Pondimin. The suits alleged that a number of pharmaceutical companies produced these drugs which, when used in combination, can lead to life-threatening pulmonary hypertension and heart valve thickening. The complaint alleged that these manufacturers knew of or should have known of the serious health risks created by the drugs, should have warned users of these risks, knew that the fen/phen combination was not approved by the FDA, had not been adequately studied, and yet was being routinely prescribed by physicians.  This litigation led to one of the largest class action settlements in history, the multi-billion dollar Nationwide Class Action Settlement with American Home Products approved by the United States District Court for the Eastern District of Pennsylvania. In this litigation, BLB&G was involved in lawsuits filed in the 10 jurisdictions and was designated Class Counsel in the Consolidated New York and New Jersey state court litigations. Additionally, the firm was Co-Liaison Counsel in the New York litigations and served as the State Court Certified Class Counsel for the New York Certified Class to the Nationwide Settlement.

## CLIENTS AND FEES

Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants. A considerable number of clients have been referred to the firm by former adversaries. We have always maintained a high level of independence and discretion in the cases we decide to prosecute. As a result, the level of personal satisfaction and commitment to our work is high.

As stated, our client roster includes many large and well known financial and lending institutions and pension funds, as well as privately held corporate entities which are attracted to our firm because of our reputation, particular expertise and fee structure.

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation. Wherever appropriate, even with our corporate clients, we will encourage a retention where our fee is at least partially contingent on the outcome of the litigation. This way, it is not the number of hours worked that will determine our fee but, rather, the result achieved for our client.

# IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and *pro bono* activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

**The Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship**, Columbia Law School. BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The Bernstein Litowitz Berger & Grossmann Fellows will be able to leave law school free of any law school debt if they make a long term commitment to public interest law.

**Firm sponsorship of *inMotion***, New York, NY. BLB&G is a sponsor of inMotion, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers, typically associates at law firms or in-house counsel, who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time and energies to help women who need divorces from abusive spouses, or representation on legal issues such as child support, custody and visitation. To read more about inMotion and the remarkable services it provides, visit the organization's website at www.inmotiononline.org.

**The Paul M. Bernstein Memorial Scholarship**, Columbia Law School. Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm of Bernstein Litowitz Berger & Grossmann LLP, and the family and friends of Paul M. Bernstein. Established in 1990, the scholarship is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to fellow students and the community.

**Firm sponsorship of City Year New York**, New York, NY. BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

**Max W. Berger Pre-Law Program at Baruch College.** In order to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession, the Max W. Berger Pre-Law Program was established at Baruch College. Providing workshops, seminars, counseling and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, as well as placing them in appropriate internships and other pre-law working environments.

**New York Says Thank You Foundation.** Founded in response to the outpouring of love shown to New York City by volunteers from all over the country in the wake of the 9/11 attacks, The New York Says Thank You Foundation sends   volunteers from New York City to help rebuild communities around the country affected by disasters. BLB&G is a corporate sponsor of NYSTY and its goals are a heartfelt reflection of the firm's focus on community and activism.

## THE MEMBERS OF THE FIRM

**MAX W. BERGER** supervises the firm's litigation practice and prosecutes class and individual actions on behalf of the firm's clients.

Together, with other partners at the firm, he has litigated many of the firm's most high profile and significant cases, including five of the largest securities fraud recoveries in history—the $6.15 billion settlement of *In re WorldCom, Inc. Securities Litigation,* the $3.3 billion settlement of *In re Cendant Corporation Securities Litigation*, the $1.3 billion recovery in *In re Nortel Networks Corporation Securities Litigation*, the $1.04 billion settlement of *In re McKesson HBOC, Inc. Securities Litigation*, and the over $600 million investor recovery in *In re Lucent Technologies, Inc. Securities Litigation*.

Mr. Berger's role in the WorldCom case received extensive media attention and has been the subject of feature articles in major publications including *BusinessWeek* and *The American Lawyer*. For his outstanding efforts on behalf of the WorldCom Class, *The National Law Journal* profiled Mr. Berger (one of only eleven attorneys selected nationwide) in its special June 2005 "Winning Attorneys" section. Additionally, Mr. Berger was featured in the July 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

Mr. Berger is widely recognized for his professional excellence and achievements. For the past five consecutive years, he has received the top attorney ranking in plaintiff securities litigation by the *Chambers* and *Partners' Guide to America's Leading Lawyers for Business*. In the 2010 edition of *Benchmark: The Definitive Guide to America's Leading Litigation Firms & Attorneys* (published by Legal Media Group—*Institutional Investor* and *Euromoney*), Mr. Berger was singled out as one of New York's "local litigation stars." Additionally, since their various inceptions, he has been named a "litigation star" by the *Legal 500 USA Guide*, one of "10 Legal Superstars" by *Securities Law360*, and is consistently named as one of the "500 Leading Lawyers in America" and "100 Securities Litigators You Need to Know" by *Lawdragon* magazine. Further, *The Best Lawyers in America* guide has named Mr. Berger a leading lawyer in his field.

Mr. Berger also serves the academic community in numerous capacities as a member of the Dean's Council to Columbia Law School, and as a member of the Board of Trustees of Baruch College. In May 2006, he was presented with the Distinguished Alumnus Award for his contributions to Baruch College. In June 2009, he was elected to the Board of Trustees of The Supreme Court Historical Society, a prestigious non-profit organization committed to preserving the history of the Supreme Court of the United States. Mr. Berger is an Advisor to the American Law Institute, Restatement Third of Torts, and he currently serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. Additionally, Mr. Berger has taught Profession of Law, an ethics course at Columbia.

Mr. Berger is a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America (now known as the American Association for Justice) and lectures for numerous professional organizations. In 1997, Mr. Berger was honored for his outstanding contribution to the public interest by Trial Lawyers for Public Justice, where he was a "Trial Lawyer of the Year" Finalist for his work in Roberts, et al. v. Texaco, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Among numerous charitable and volunteer works, Mr. Berger is an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his long-time service and work in the community. He and his wife, Dale, have also established the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and the Max W. Berger Pre-Law Program at Baruch College.

EDUCATION: Baruch College-City University of New York, B.B.A., Accounting, 1968; President of the student body and recipient of numerous awards.  Columbia Law School, J.D., 1971, Editor of the *Columbia Survey of Human Rights Law*.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Court of Appeals, Second Circuit; U.S. District Court, District of Arizona; U.S. Supreme Court.

****

**GERALD H. SILK**'s practice focuses on representing institutional investors on matters involving federal and state securities laws, accountants' liability, and the fiduciary duties of corporate officials, as well as general commercial and corporate litigation. He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context. Additionally, Mr. Silk is one of the partners who oversee the firm's new matter department, in which he, along with a group of financial analysts and investigators, counsels institutional clients on potential legal claims. He was the subject of "Picking Winning Securities Cases," a feature article in the June 2005 issue of Bloomberg Markets magazine, which detailed his work for the firm in this capacity. *Lawdragon* magazine has named him one of the "100 Securities Litigators You Need to Know," one of the "500 Leading Lawyers in America," and one of America's top 500 "rising stars" in the legal profession. Mr. Silk has also been selected for inclusion among *New York Super Lawyers* every year since 2006.

Mr. Silk is currently advising institutional investors worldwide on their rights with respect to claims involving transactions in residential mortgage-backed securities (RMBS) and collateralized debt obligations (CDOs). He is also representing Cambridge Place Investment Management Inc. on claims under Massachusetts state law against numerous investment banks arising from the purchase of billions of dollars of RMBS (see Gretchen Morgenson, "Mortgage Investors Turn to State Courts for Relief," *The New York Times*, July 11, 2010).

Mr. Silk is also representing public pension funds who participated in a securities lending program administered and managed by Northern Trust Company and sustained losses as a result of Northern Trust's alleged breaches of fiduciary duty. In addition, he is actively involved in the firm's prosecution of highly successful M&A litigation, representing shareholders in widely publicized lawsuits, including the litigation arising from the proposed acquisition of Caremark Rx, Inc. by CVS Corporation—which led to an increase of approximately $3.5 billion in the consideration offered to shareholders.

Mr. Silk was one of the principal attorneys responsible for prosecuting the *In re Independent Energy Holdings Securities Litigation*. A case against the officers and directors of Independent Energy as well as several investment banking firms which underwrote a $200 million secondary offering of ADRs by the U.K.-based Independent Energy, the litigation was resolved for $48 million. Mr. Silk has also prosecuted and successfully resolved several other securities class actions, which resulted in substantial cash recoveries for investors, including *In re Sykes Enterprises, Inc. Securities Litigation* in the Middle District of Florida, and *In re OM Group, Inc. Securities Litigation* in the Northern District of Ohio. He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion.

A graduate of the Wharton School of Business, University of Pennsylvania and Brooklyn Law School, in 1995-96, Mr. Silk served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York.

Mr. Silk lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including "The Compensation Game," *Lawdragon*, Fall 2006; "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?", 75 *St. John's Law Review* 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation", 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers", *New York Business Law Journal*, Vol. 1, No. 1 (Fall 1997).

He is a frequent commentator for the business media on television and in print. Among other outlets, he has appeared on NBC's *Today*, and CNBC's *Power Lunch*, *Morning Call*, and *Squawkbox* programs, as well as being featured in *The New York Times, Financial Times, Bloomberg, The National Law Journal*, and the *New York Law Journal*.

EDUCATION: Wharton School of the University of Pennsylvania, B.S., Economics, 1991. Brooklyn Law School, J.D., *cum laude,* 1995.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**** 

**MARK LEBOVITCH** is primarily responsible for the firm's corporate governance litigation practice, focusing on derivative suits and transactional litigation. He has served as one of the lead counsel in many of the most significant corporate governance actions in the past five years. Most recently, he prosecuted the *Pfizer Derivative Litigation*, which resulted in a historic $75 million payment, which will be placed in trust for the exclusive use of a new Healthcare Law Regulatory Committee created as part of the settlement and which requires the creation of an unprecedented compliance oversight standard for all highly regulated public companies. Mr. Lebovitch was a co-lead counsel in a challenge to Xerox's acquisition of ACS, which settled on the eve of trial for a $69 million cash payment to ACS shareholders. He prosecuted a case of first impression challenge to the legal validity of "Proxy Puts" - contractual provisions that are common in corporate debt agreements and that allegedly undermine shareholders' fundamental voting rights. In addition, he prosecuted self-interested actions by the CEO of Landry's Restaurants, Inc., resulting in a settlement requiring a nearly 60% increase in the proposed takeover price, as well as a $14.5 million cash fund for Landry's shareholders who sold their shares when the CEO's alleged misconduct became public. Mr. Lebovitch is currently serving as a co-lead counsel prosecuting challenges to a management buyout of J. Crew, a private equity buyout of Novell, and derivative suits alleging bad faith conduct by the boards of Johnson & Johnson, BP, plc, and Massey Corporation.

Previously, Mr. Lebovitch represented public pension systems seeking to vindicate shareholder voting rights allegedly infringed by Yahoo!, Inc.'s employee severance plan and by unique merger agreement and standstill provisions used in the private equity buyout of Ceridian Corporation. He obtained up to $57 million for shareholders over a year after the closing of the buyout of Dollar General Stores. He has also helped obtain for shareholders higher prices and meaningful corporate governance improvements in suits arising from, among other things, the hostile takeover battles over Caremark Rx, Inc., CBOT Holdings, Inc., Longs Drug Stores, Inc., and Anheuser-Busch Companies, Inc., while challenging the Emulex board's allegedly bad faith rejection of a premium takeover offer by Broadcom Corporation, the restructuring transactions of DirecTV, and the inclusion in the Atmel Corporation poison pill of vaguely defined derivative securities. Mr. Lebovitch also prosecutes securities litigations, and in that capacity was the lead litigation attorney *in In re Merrill Lynch Bondholders Litigation*, which settled for $150 million.

Mr. Lebovitch is a co-chair of the ABA Business Law Committee's Subcommittee on Delaware Law, and is member of the Board of Advisors for the Institute for Law and Economics. He is an author and frequent speaker at industry events and continuing legal education programs on a wide range of corporate governance and securities related issues. Mr. Lebovitch is presently publishing an article entitled "Making Order Out of Chaos: A Proposal To Improve Organization and Coordination in Multi-Jurisdictional Merger-Related Litigation." His prior publications include "'Novel Issues' or a Return to Core Principles? Analyzing the Common Link Between the Delaware Chancery Court's Recent Rulings in Option Backdating and Transactional Cases" (*NYU Journal of Law & Business*, Volume 4, Number 2); "Calling a Duck a Duck: Determining the Validity of Deal Protection Provisions in Merger of Equals Transactions" (*2001 Columbia Business Law Review* 1) and "Practical Refinement" (*The Daily Deal*, January 2002), each of which discussed evolving developments in the law of directors' fiduciary duties.

Mr. Lebovitch clerked for Vice Chancellor Stephen P. Lamb on the Court of Chancery of the State of Delaware, and was a litigation associate at Skadden, Arps, Slate, Meagher & Flom in New York, where he represented clients in a variety of corporate governance, commercial and federal securities matters.

EDUCATION: Binghamton University – State University of New York, B.A., *cum laude*, 1996. New York University School of Law, J.D., *cum laude*, 1999.

BAR ADMISSIONS: New York; U. S. District Courts for the Southern and Eastern Districts of New York.

****

**BEATA GOCYK-FARBER** is involved in all areas of the firm's litigation practice, with particular emphasis on securities fraud actions, complex commercial litigation, and trial practice. She was a senior member of the litigation and trial teams of some of the most noteworthy securities class actions in history, including *In re WorldCom, Inc. Securities Litigation*, resulting in a recovery for investors of over $6.15 billion, *In re HealthSouth Securities Litigation*, resulting in a recovery to investors of over $575 million, and *In re Williams Securities Litigation*, which

resulted in $311 million in recoveries for the plaintiffs shortly before trial. Ms. Gocyk-Farber also has extensive experience in prosecuting derivative cases and was a senior member of the team prosecuting the individuals involved in the options backdating scandal at UnitedHealth Group, Inc. which resulted in a historic recovery and far reaching corporate governance reforms.

In addition to her litigation practice, Ms. Gocyk-Farber is in charge of the firm's European institutional investor relations and is counsel to many of the firm's European-based clients in connection with direct and class actions. She is a frequent speaker at investor conferences throughout the world and an author of numerous articles relating to institutional investor rights and responsibilities, corporate governance and fiduciary duties.

Prior to joining BLB&G in 2001, Ms. Gocyk-Farber was associated with Cleary Gottlieb Steen & Hamilton in New York, where she represented large financial institutions and sovereign governments in securities and merger and acquisitions transactions.

Ms. Gocyk-Farber is a member of the International Law Section of the American Bar Association, New York State Bar Association and International Corporate Governance Network.

EDUCATION:  Benjamin N. Cardozo School of Law - Yeshiva University, J.D., *summa cum laude*, 1997; Cardozo Law Review; the Order of the Coif; Balkin Scholar; West Publishing Award for Academic Excellence

BAR ADMISSIONS:  New York, U.S. District Court for the Southern District of New York.

****

**DAVID L. WALES,** an experienced trial and appellate attorney, prosecutes class and private actions in both federal and state courts, specializing in complex commercial and securities litigation, as well as arbitrations.

He has taken more than 15 cases to trial, including obtaining a jury verdict for more than $11 million in a derivative action against the general partner of a hedge fund, and a multi-million dollar class action settlement with an accounting firm reached during trial.

Mr. Wales has extensive experience litigating residential mortgage backed ("RMBS") securities cases and securities lending cases. He is currently lead or co-lead counsel in the following cases:

- *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.*, a class action on behalf of investors in RMBS;

- *Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc.*, a private action on behalf of institutional investors in RMBS; and

- *In re Northern Trust Investments, NA., Securities Lending* case, a class action on behalf of government funds that suffered losses in Northern Trusts' securities lending program.

As lead trial counsel in numerous securities class actions and derivative actions, he has recovered hundreds of millions of dollars on behalf of institutional investor clients. Some of his significant recoveries include:

- *In re Pfizer Inc. Shareholder Derivative Action*, a $75 million settlement and substantial corporate governance changes in a derivative action (granted preliminary approval).

- *In re Cablevision Systems Corp. Derivative Litigation*, a $34.4 million settlement in a back dated stock option action.

- *In re Sepracor Corp. Securities Litigation*, a $52.5 million recovery in a securities fraud class action.

- *In re Luxottica Group SpA Securities Litigation*, an $18.25 million recovery in a Williams Act case.

- *In re Marque Partners LP Derivative Action*, an $11 million jury verdict in a derivative action.

- *In re Jennifer Convertibles Securities Litigation*, a $9.55 million recovery, part of the recovery obtained in the middle of trial.

- *In re Curative Health Services Securities Litigation*, a $10.5 million recovery in a securities fraud action.

His representative clients have included a variety of public pension funds, Taft-Hartley pension funds, hedge funds, private investment funds, and public corporations.

As a former Assistant United States Attorney for the Southern District of New York, Mr. Wales specialized in investigating and prosecuting fraud and white collar criminal cases.

A member of the Federal Bar Council and the Federal Courts Committee of the New York County Lawyers Association, he is rated AV, the highest rating possible from Martindale-Hubbell®, the country's foremost legal directory.

EDUCATION:  State University of New York at Albany, B.A., *magna cum laude*, 1984.  Georgetown University Law Center, J.D., *cum laude*, 1987; Notes and Comments Editor for the *Journal of Law and Technology*.

BAR ADMISSIONS:  New York; District of Columbia; U.S. Courts of Appeals for the Second and Fourth Circuits; U.S. District Courts for the Eastern, Southern and Western Districts of New York; U.S. District Court, Eastern District of Michigan; U.S. District Court, District of Columbia; U.S. District Court, Northern District of Illinois and Trial Bar.

### SENIOR COUNSEL

**ROCHELLE FEDER HANSEN** has handled a number of high profile securities fraud cases at the firm, including *In re StorageTek Securities Litigation*, *In re First Republic Securities Litigation*, and *In re RJR Nabisco Litigation*. Ms. Hansen has also acted as Antitrust Program Coordinator for Columbia Law School's Continuing Legal Education Trial Practice Program for Lawyers.

EDUCATION:  Brooklyn College of the City University of New York, B.A., 1966; M.S., 1976.  Benjamin N. Cardozo School of Law, J.D., *magna cum laude,* 1979; Member, *Cardozo Law Review*.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. Court of Appeals, Fifth Circuit.

## ASSOCIATES

**MICHAEL D. BLATCHLEY**'s practice focuses on securities fraud litigation.  He is currently a member of the firm's new matter department in which he, along with a team of attorneys, financial analysts, forensic accountants, and investigators, counsels the firm's clients on their legal claims.

While attending Brooklyn Law School, Mr. Blatchley held a judicial internship position for the Honorable David G. Trager, United States District Judge for the Eastern District of New York.  In addition, he worked as an intern at The Legal Aid Society's Harlem Community Law Office, as well as at Brooklyn Law School's Second Look and Workers' Rights Clinics, and provided legal assistance to victims of Hurricane Katrina in New Orleans, Louisiana.

EDUCATION:  University of Wisconsin, B.A., 2000. Brooklyn Law School, J.D., *cum laude,* 2007; Edward V. Sparer Public Interest Law Fellowship, William Payson Richardson Memorial Prize, Richard Elliott Blyn Memorial Prize, Editor for the *Brooklyn Law Review,* Moot Court Honor Society.

BAR ADMISSION: New York, New Jersey; U.S. District Courts for the Southern District of New York and the District of New Jersey.

****

**JUSTINIAN DORESTE** prosecutes securities fraud, corporate governance and shareholder rights litigation for the firm's institutional investor clients.

Prior to joining the firm, Mr. Doreste was a summer associate at Goodwin Proctor in Boston, where he investigated enforceability of specific performance clauses in M&A transactions. Mr. Doreste was also a summer associate at BLB&G's New York office.

Mr. Doreste is currently a member of the teams prosecuting In re Citigroup, Inc. Bond Action Litigation and In re Satyam Computer Services, Ltd. Securities Litigation.

EDUCATION:  Brandeis University, B.A., *magna cum laude*, 2006.  Harvard Law School, J.D., *cum laude*, 2010; Dean's Scholar in Communications and Internet Law; *Unbound: Harvard Journal of the Legal Left*, Co-Editor-Chief (2008-2009); Harvard Student Animal Legal Defense Fund, President, 2009-2010.

BAR ADMISSION: New York.

****

**NOAM MANDEL** prosecutes securities fraud, corporate governance and shareholder rights litigation for the firm's institutional investor clients.  He has been a member of the litigation teams on several of the firm's recent high profile cases including *In re Nortel Networks Corporation Securities Litigation*, which resulted in a recovery worth in excess of $1.3 billion in cash and stock, as well as the securities class action against the Federal Home Loan Mortgage Corporation ("Freddie Mac"), in which a $410 million settlement was obtained for defrauded investors. More recently, he was a member of the team that prosecuted the *Caremark Merger Litigation*, a shareholder class action contesting the terms of a proposed merger between Caremark Rx, Inc. and CVS Corporation on behalf of Caremark's shareholders.  The litigation resulted in over $3 billion in additional consideration being offered to Caremark shareholders by CVS.

Prior to joining BLB&G, Mr. Mandel was a litigation associate at Simpson Thacher & Bartlett LLP, where his practice focused on securities, shareholder and ERISA fiduciary matters.  While in law school, Mr. Mandel participated in an exchange program with the University of Leiden, the Netherlands, where he concentrated his studies on international and comparative law.

EDUCATION: Georgetown University, B.S.F.S., 1998.  Boston University School of Law, J.D., *cum laude,* 2002; Editor for the *Boston University Law Review;* recipient of awards in civil procedure, evidence, and international law.

BAR ADMISSIONS:  New York; United States District Court, Southern District of New York.

****

**KRISTIN A. MEISTER** has extensive experience in commercial and class action litigation. She has argued motions in both state and federal court and her areas of expertise include white collar criminal investigations, federal antitrust multi-district litigation, banking litigation, and federal and state criminal matters. Prior to joining the firm, she was a Litigation and Trial Practice Group associate at Alston & Bird LLP.

Before attending law school, Ms. Meister was an Honors Scholar in the Department of Justice, Antitrust Division. While in law school, Ms. Meister was an Honors Legal Intern in the Department of Defense at The Pentagon and clerked at an international human rights NGO in London. She was also elected Student Senator for the Law School Student Senate during each of her three years in law school.

EDUCATION: Kenyon College, B.A., *magna cum laude*, 2000; Political Science and English; Elmer Graham Scholar Full Scholarship Award Recipient; Student Council Vice-President; Editor in Chief of *The Kenyon Observer.*  University of Michigan Law School, J.D., 2004; Associate/Contributing Editor of *Michigan Telecommunications and Technology Law Review*; Elected Law School Student Senator.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York.

****

**JOHN J. MILLS'** practice concentrates on Class Action Settlements and Settlement Administration. Mr. Mills also has experience representing large financial institutions in corporate finance transactions.

EDUCATION: Duke University, B.A., 1997. Brooklyn Law School, J.D., *cum laude,* 2000; Member of *The Brooklyn Journal of International Law;* Carswell Merit Scholar recipient.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

****

**JONATHAN D. USLANER** prosecutes securities class action and shareholder derivative litigation on behalf of the firm's institutional investor clients. Prior to joining BLB&G, he was a senior litigation associate at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, where he successfully prosecuted and defended claims from the discovery stage through trial.  As a volunteer prosecutor for the City of Inglewood, California, Mr. Uslaner gained additional significant trial experience. He also served as a judicial extern for Justice Steven Wayne Smith of the Supreme Court of Texas.

EDUCATION: Duke University, B.A., *magna cum laude*, 2001,William J. Griffith Award for Leadership; Chairperson, Duke University Undergraduate Publications Board; The University of Texas School of Law, J.D., 2005; University of Texas Presidential Academic Merit Fellowship; Articles Editor, *Texas Journal of Business Law.*

BAR ADMISSIONS: California; New York; U.S. District Court, Central and Northern Districts of California; U.S. District Court, Southern District of New York.

****

**BRETT VAN BENTHYSEN** prosecutes securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients.

Prior to joining the firm, Mr. Van Benthysen interned at the New Jersey Office of the Attorney General, Securities Fraud Prosecution Section, as well as at the Seton Hall Center for Social Justice, assisting Essex County homeowners who were defrauded by a predatory lending scheme.

EDUCATION:  The College of New Jersey, B.A., *magna cum laude*, 2004.  New York University, M.S., Global Affairs, 2006.  Seton Hall University School of Law, J.D., *cum laude*, 2009; Civil Litigation Clinic Practitioner Award.

BAR ADMISSIONS: New Jersey; New York.

****

**JEROEN VAN KWAWEGEN** has litigated a wide array of securities class actions, derivative actions, and breach of fiduciary duty actions in the context of mergers and acquisitions. Most recently, Mr. van Kwawegen was a member of the teams that prosecuted: (i) a derivative action in the U.S. District Court for the Southern District of New York against senior management and the board of directors of Pfizer, Inc., alleging that defendants consciously disregarded numerous "red flags" of systemic unlawful marketing practices; (ii) a securities fraud class action in the U.S. District Court for the Northern District of Illinois against Huron Consulting Group, Inc. and its former senior management, alleging that defendants committed accounting fraud by recording employment expenses as goodwill; and (iii) a breach of fiduciary duty action in Delaware Chancery Court against the largest shareholder and Chairman/CEO of Landry's Restaurants, Inc. in connection with a proposed going-private transaction.
Prior to joining BLB&G, Mr. van Kwawegen was a litigation associate in the New York office of Latham and Watkins LLP specializing in insurance coverage disputes on behalf of insureds and white collar defense (including internal investigations). Before pursuing his Juris Doctor degree at Columbia Law School, Mr. van Kwawegen worked as a Dutch lawyer at Schut & Grosheide in the Netherlands where his practice focused on commercial and business disputes, including international arbitration.

Mr. van Kwawegen's numerous *pro bono* activities include constitutional challenges to federal and state Internet censorship statutes and post-conviction relief proceedings on behalf of a person sentenced to death.

EDUCATION: University of Amsterdam School of Law, 1998, LLM.  Columbia University Law School, 2003, J.D.; Harlan Fiske Stone Scholar.

BAR ADMISSIONS: New York, U.S. Courts of Appeals for the Second and Third Circuits; U.S. District Courts for the Southern and Eastern Districts of New York.

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE PFIZER INC. SHAREHOLDER
DERIVATIVE LITIGATION

No. 09-CV-7822 (JSR)

ECF CASE

---

### DECLARATION OF DANIEL E. BACINE IN
### SUPPORT OF JOINT PETITION FOR ATTORNEYS'
### FEES AND REIMBURSEMENT OF EXPENSES
### FILED ON BEHALF OF BARRACK, RODOS & BACINE

I, Daniel E. Bacine, declare as follows:

1.       I am a partner in the law firm of Barrack, Rodos & Bacine.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.

2.       My firm acted as one of plaintiffs' counsel in the case.  During the course of the litigation, my firm was involved in most aspects of the litigation.  Among other things, my firm participated in researching and drafting of pleadings, motions and responses to motions, and in fact and expert discovery.  Throughout the litigation, attorneys in my firm participated in numerous conference calls and correspondence (including e-mails) as well as periodic in-person meetings.

3.       The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was

involved in this Action, and the lodestar calculation based on my firm's current billing rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.  Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the regular rates charged for their services in similar litigation such as this one.

4.     The total number of hours expended on this Action by my firm from its inception through and including January 21, 2011 is **1,144.00**.  The total lodestar for my firm for that period is **$510,697.50**, consisting of $454,635.00 for attorneys' time and $56,062.50 for professional support staff time.

5.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

6.     As detailed in Exhibit 2, my firm has incurred a total of **$39,098.62** in unreimbursed expenses in connection with the prosecution of this Action from its inception through and including December 31, 2010.

7.     The expenses incurred in this Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other

2

source materials and are an accurate record of the expenses incurred.

8.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief

biography of my firm and the attorneys in my firm who were principally involved in this Action.


I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed

on this _1st_ day of February, 2011.

_____
DANIEL E. BACINE

3

# Exhibit 1

In re Pfizer Inc. Shareholder Derivative Litigation
Case No. 09-CV-7822 (JSR)
Barrack, Rodos & Bacine
Time Report
Inception through January 21, 2011

|  | Total Hours | Hourly Rates | Lodestar |
|---|---|---|---|
| **Attorneys:** |  |  |  |
| Daniel E. Bacine | 122.50 | $700.00 | $85,750.00 |
| Alexander Arnold Gershon | 136.75 | $675.00 | $92,306.25 |
| Jeffrey W. Golan | 10.00 | $650.00 | $6,500.00 |
| Robert A. Hoffman | 4.25 | $650.00 | $2,762.50 |
| Leslie B. Molder | 1.00 | $650.00 | $650.00 |
| Mark R. Rosen | 14.75 | $650.00 | $9,587.50 |
| Jeffrey B. Gittleman | 6.25 | $575.00 | $3,593.75 |
| William J. Ban | 210.25 | $550.00 | $115,637.50 |
| Regina M. Calcaterra | 14.50 | $550.00 | $7,975.00 |
| Chad A. Carder | 10.50 | $440.00 | $4,620.00 |
| Gloria K. Melwani | 93.50 | $395.00 | $36,932.50 |
| Julie B. Palley | 276.00 | $320.00 | $88,320.00 |
| **Total for Attorneys:** | **900.25** |  | **$454,635.00** |
|  |  |  |  |
| **Paralegals:** |  |  |  |
| Gregory A. Cashel | 68.50 | $230.00 | $15,755.00 |
| Nina L. McGarvey | 111.50 | $230.00 | $25,645.00 |
| Joseph J. Morrison | 63.75 | $230.00 | $14,662.50 |
| **Total for Paralegals:** | **243.75** |  | **$56,062.50** |
|  |  |  |  |
| **Grand Totals:** | **1,144.00** |  | **$510,697.50** |

# Exhibit 2

**In re Pfizer Inc. Shareholder Derivative Litigation**
**Case No. 09-CV-7822 (JSR)**
**Barrack, Rodos & Bacine**

| Description | | Amount |
|---|---|---|
| Computer & Other Research Fee(s) | $ | 5,527.76 |
| Contributions to Plaintiffs' Escrow Fund | $ | 30,000.00 |
| Courier & Overnight Delivery Services | $ | 87.03 |
| Court & Filing Fee(s) | $ | 700.00 |
| Postage | $ | 41.77 |
| Reproduction | $ | 308.00 |
| Telephone | $ | 446.02 |
| Travel Expenses (including hotels, meals & transportation) | $ | 1,988.04 |
| **TOTAL:** | **$** | **39,098.62** |

Exhibit "2"

# Exhibit 3

## BIOGRAPHY OF BARRACK, RODOS & BACINE

*Barrack, Rodos & Bacine* is extensively involved in complex class action litigation, including securities, antitrust and RICO matters, representing both plaintiffs and defendants.  The Firm has significant leadership positions in complex litigation, having been appointed by courts as lead counsel in numerous class actions throughout the United States, including those brought pursuant to the provisions of the Private Securities Litigation Reform Act.

Among the many securities law, derivative and fiduciary duty cases where the Firm has been appointed lead counsel are the following:

*In re American International Group Inc. 2008 Securities Litigation*, Master File No. 08-CV-4772-LTS, before the Honorable Laura Taylor Swain in the Southern District of New York;

*In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288 (DLC), before the Honorable Denise L. Cote in the Southern District of New York;

*In re Cendant Corporation Litigation*, Master File No. 98-1664 (WHW), before the Honorable William H. Walls in the District of New Jersey;

*In re Apollo Group, Inc. Securities Litigation*, Master File No. CV 04-2147-PHX-JAT, before the Honorable James A. Teilborg in the District of Arizona;

*In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633 (LBS)(AJP)(DFE), before the Honorable Jed S. Rakoff in the Southern District of New York;

*In re McKesson HBOC, Inc. Securities Litigation*, No. C-99-20743-RMW, before the Honorable Ronald M. Whyte in the Northern District of California;

*Waldrep v. ValueClick, Inc., et al.*, Case No. 07-05411 DDP (AJWx), before the Honorable Dean D. Pregerson in the Central District of California;

*In re The Mills Corporation Securities Litigation*, Civil Action No. 1:06-77 (GBL), before the Honorable Liam O'Grady in the Eastern District of Virginia;

Exhibit 3

*In re R & G Financial Corp. Securities Litigation*, No. 05 cv 4186, before the Honorable John E. Sprizzo in the Southern District of New York;

*In re Bridgestone Securities Litigation*, Master File No. 3:01-0017, before the Honorable Robert L. Echols in the Middle District of Tennessee;

*In re Daimler Chrysler Securities Litigation*, No. 00-0993, before the Honorable Joseph J. Farnan, Jr. in the District of Delaware;

*In re Schering-Plough Securities Litigation*, Master File No. 01-CV-0829 (KSH/RJH), before the Honorable Katherine Hayden in the District of New Jersey;

*In re Chiron Shareholder Deal Litigation*, Case No. RG 05-230567, before the Honorable Robert B. Freedman in the California Superior Court for Alameda County;

*In re AOL Time Warner Shareholder Derivative Litigation*, Master File No. 02-CV-6302 (SWK), before the Honorable Shirley Wohl Kram in the Southern District of New York;

*In re Apple Computer, Inc., Derivative Litigation*, Lead Case No. 1:06CV066692, before the Honorable Joseph H. Huber in the Superior Court of the State of California, County of Santa Clara;

*In re Computer Sciences Corporation Derivative Litigation*, Lead Case No.: 06-CV-5288 MRP (Ex), before the Honorable Mariana R. Pfaelzer in the Central District of California;

*Dennis Rice v. Lafarge North America, Inc., et al.*, Civil No. 268974-V, before the Honorable Michael D. Mason in the Circuit Court for Montgomery County, Maryland;

*In re Monster Worldwide, Inc.*, Master Docket No. 1:06-cv-04622, before the Honorable Naomi Reice Buchwald in the Southern District of New York;

*In re Quest Software, Inc. Derivative Litigation*, Lead Case No. 06-cv-751 Doc(Rnbx), before the Honorable David O. Carter in the Central District Of California, Southern Division;

*In re Verisign, Inc. Derivative Litigation*, Master File No.: C-06-4165-PJH, before the Honorable Phyllis J. Hamilton in the Northern District of California;

*In re Sunbeam Securities Litigation*, No. 98-8258-CIV-MIDDLEBROOKS, before the Honorable Donald M. Middlebrooks in the Southern District of Florida;

*In re Applied Micro Circuits Corp. Securities Litigation*, No. 01-CV-0649-K (AJB), before the Honorable Judith N. Keep in the Southern District of California;

*Jason Stanley, et al. v. Safeskin Corporation, et al.*, Lead Case No.: 99cv0454-BTM (LSP), before the Honorable Barry Ted Moskowitz in the Southern District of California;

*In re Hi/Fn, Inc. Securities Litigation*, Master File No. C-99-4531-SI , before the Honorable Susan Illston in the Northern District of California;

*In re Theragenics Corp. Securities Litigation*, No. 1:99-CV-0141 (TWT), before the Honorable Thomas W. Thrash in the Northern District of Georgia, Atlanta Division;

*Bell, et al. v. Fore Systems, Inc., et al.*, Civil Action No. 97-1265, before the Honorable Robert J. Cindrich in the Western District of Pennsylvania;

*In re Envoy Corp. Securities Litigation*, Civil Action No. 3-98-00760, before the Honorable John T. Nixon in the Middle District of Tennessee, Nashville Division;

*In re Paradyne Networks, Inc. Securities Litigation*, Case No. 8:00-CV-2057-T-17E, before the Honorable Elizabeth A. Kovachevich in the Middle District of Florida, Tampa Division;

*In re Ford Motor Co. Securities Litigation*, No. 00-74233, before the Honorable Avern Cohn in the Eastern District of Michigan, Southern Division;

*Smith v. Harmonic, Inc., et al.*, No. C-00-2287 PJH, before the Honorable Phyllis J. Hamilton in the Northern District of California;

*Smith, et al. v. Electronics For Imaging, Inc., et al.*, No. C-97-4739-CAL, before the Honorable Charles A. Legge in the Northern District of California; and

*Allan Zishka, et al. vs. American Pad & Paper Company, et al.*, Civil Action No. 3:98-CV-0660-D, before the Honorable Sidney A. Fitzwater in the Northern District of Texas, Dallas Division.

The firm has also been appointed lead counsel or to the leadership group in many antitrust law class action cases including:

*In re New Jersey Title Insurance Litigation*, Case No. 2:08-cv-01425-PGS-ES, before the Honorable Peter G. Sheridan in the District of New Jersey;

*In re Automotive Paint Refinishing Antitrust Litigation,* MDL No. 1426, before the Honorable R. Barclay Surrick in the Eastern District of Pennsylvania;

*In re Publication Paper Antitrust Litigation,* Docket No. 3:04 MD 1631 (SRU), before the Honorable Stefan R. Underhill in the District of Connecticut;

*In re Flat Glass Antitrust Litigation,* Master Docket Misc. No. 970550, MDL No. 1200, before the Honorable Donald E. Ziegler in the Western District of Pennsylvania;

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc., et al.,* No. CV-99-07796-GHK(Ctx), before the Honorable Florence Marie Cooper in the Central District of California, Western Division;

*Brookshire Brothers, Ltd., et al. v. Chiquita Brands International, Inc., et al.,* Lead Case No. 05-21962-Cooke/Brown, before the Honorable Marcia G. Cooke in the Southern District of Florida, Miami Division;

*In re Citric Acid Antitrust Litigation,* Master File No. 95-2963, before the Honorable Charles A. Legge in the Northern District of California;

*In re Graphite Electrodes Antitrust Litigation,* Master File No. 97-CV-4182 (CRW), before the Honorable Charles R. Weiner in the Eastern District of Pennsylvania;

*In re Sorbates Antitrust Litigation,* Master File No. C 98-4886 MCC, before the Honorable William H. Orrick, Jr. in the Northern District of California;

The Firm has extensive experience in trying to a jury nationwide class actions: *In re WorldCom, Inc. Securities Litigation,* Master File No. 02-Civ-3288 (DLC) (Southern District of New York) (2005 jury trial against accounting firm Arthur Andersen); *In re Apollo Group, Inc. Securities Litigation,* Master File No. CV-04-2147-PHX-JAT (District of Arizona) (jury verdict for the full amount per share requested, which in the aggregate could exceed $200 million); *Gutierrez v. Charles J. Givens Organization, et al.,* Case No. 667169 (Superior Court of California, County of San Diego) (jury verdict in excess of $14 million for plaintiff consumer class); *In re Control Data Corporation Securities Litigation,* 933 F.2d 616 (8th Cir. 1991); *Gould v. Marlon,* CV-86-968-LDG (D. Nev.) (jury verdict for plaintiff class); *Herskowitz v. Nutri/System, et al.,* 857 F.2d 179 (3rd

4

Cir. 1988); and *Betanzos v. Huntsinger*, CV-82-5383 RMT (C.D. Cal.) (jury verdict for plaintiff class).

>    ***Leonard Barrack***, senior partner in Barrack, Rodos & Bacine, is a graduate of Temple University Law School (J.D. 1968) where he was Editor in Chief of the Temple Law Reporter.  Mr. Barrack has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for more than 35 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of trustees.  He was admitted to the bar of the Supreme Court of Pennsylvania in 1969, and is also a member of the bars of the U.S. Supreme Court, the U.S. Court of Appeals for the Third Circuit, the U.S. District Court for the Eastern District of Pennsylvania, and other federal circuit courts.

>    Mr. Barrack was appointed co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, before the Honorable Denise L. Cote in the Southern District of New York.  As counsel in *WorldCom*, Mr. Barrack was responsible for guiding both the vigorously prosecuted litigation – including the four-week trial against Arthur Andersen – as well as negotiating the ground-breaking settlements totaling more than $6.13 billion with WorldCom's underwriters, its outside directors, and Arthur Andersen, in the midst of trial.  He was also co-lead counsel in *In re Cendant Corporation Litigation*, before the Honorable William H. Walls in the District of New Jersey, at $3.1 billion, the third largest securities class action settlement in history; *In re McKesson HBOC, Inc. Securities Litigation*, before the Honorable Ronald M. Whyte in the Northern District of California, which settled for $1.0425 billion; *In re Sunbeam Securities Litigation*, before the Honorable Donald M. Middlebrooks in the Southern District of Florida, among many others.

>    Mr. Barrack has had extensive trial and deposition experience in complex actions including the successful trial of derivative lawsuits under Section 14(a) of the Securities Exchange Act of 1934; *Gladwin v. Medfield*, CCH Fed. Sec. L. Rep. ¶95,012 (M.D. Fla. 1975), *aff'd*, 540 F.2d 1266 (5th Cir. 1976); *Rafal v. Geneen*, CCH Fed. Sec. L. Rep. ¶93,505 (E.D. Pa. 1972).  In addition, Mr. Barrack has lectured on class actions to

sections of the American and Pennsylvania Bar Association and is the author of
<u>Developments in Class Actions</u>, The Review of Securities Regulations, Volume 10, No. 1
(January 6, 1977); Securities Litigation, <u>Public Interest Practice and Fee Awards</u>,
Practicing Law Institute (March, 1980).

   ***Gerald J. Rodos***, partner in Barrack, Rodos & Bacine, is a graduate of
Boston University (B.A. 1967) and an honor graduate of the University of Michigan Law
School (J.D. Cum Laude 1970).  Mr. Rodos has been practicing in the area of securities
class and derivative actions, and corporate litigation generally, for more than 35 years,
during which time he has analyzed laws and provided advice on issues relevant to
pension fund boards of trustees.  He was admitted to the bar of the Supreme Court of
Pennsylvania in 1971, and is also a member of the bars of the Supreme Court of the
United States, the U.S. Court of Appeals for the Third Circuit, the U.S. District Court for
the Eastern District of Pennsylvania, and other federal circuit courts.

   Mr. Rodos has been appointed lead counsel, *inter alia*, in *Payne, et al. v.
MicroWarehouse, Inc., et al.*, before the Honorable Dominic J. Squatrito in the District of
Connecticut; *In re Sunbeam Securities Litigation*, pending before the Honorable Donald
M. Middlebrooks in the Southern District of Florida; *In re Regal Communications
Securities Litigation*, before the Honorable James T. Giles in the Eastern District of
Pennsylvania; *In re Midlantic Corp. Shareholders Securities Litigation*, before the Honorable
Dickinson R. Debevoise in the District of New Jersey; *In re Craftmatic Securities Litigation*,
before the Honorable Joseph L. McGlynn, Jr. in the Eastern District of Pennsylvania; *In
re New Jersey Title Insurance Litigation*, Case No. 2:08-cv-01425-PGS-ES, before the
Honorable Peter G. Sheridan in the District of New Jersey; *In re Automotive Refinishing
Paint Antitrust Litigation*, Case No. 2:01-cv-02830-RBS, before the Honorable R. Barclay
Surrick in the Eastern District of Pennsylvania; and *In re Publication Paper Antitrust
Litigation*, Docket No. 3:04 MD 1631 (SRU), before the Honorable Stefan R. Underhill in
the District of Connecticut, among many others.  Mr. Rodos also represented the lead
plaintiff in the *WorldCom* litigation.

Mr. Rodos is the co-author of <u>Standing To Sue Of Subsequent Purchasers For Antitrust Violations -- The Pass-On Issue Re-Evaluated</u>, 20 S.D.L. Rev. 107 (1975), and <u>Judicial Implication of Private Causes of Action; Reappraisal and Retrenchment</u>, 80 Dick. L. Rev. 167 (1976).

***Daniel E. Bacine***, partner in Barrack, Rodos & Bacine, is a graduate of Temple University (B.S. 1967) and of Villanova University School of Law (J.D. 1971), where he was an Associate Editor of the Law Review and a member of the Order of the Coif.  Mr. Bacine has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for more than 30 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of trustees.  He was admitted to the bar of the Supreme Court of Pennsylvania in 1971, and is also a member of the bars of the U.S. Court of Appeals for the Third Circuit and the U.S. District Court for the Eastern District of Pennsylvania.

Mr. Bacine is an experienced civil litigator in both the federal and state courts, having tried jury and non-jury securities and other commercial cases, including cases involving disputes between securities brokerage firms and their customers.  He has been lead or co-lead counsel in various class actions, including, *inter alia*, *In re American Travellers Corp. Securities Litigation*, in the Eastern District of Pennsylvania; *Kirschner v. CableTel Corp.*, in the Eastern District of Pennsylvania; *Lewis v. Goldsmith*, in the District of New Jersey; *Crandall v. Alderfer* (Old Guard Demutualization Litigation), in the Eastern District of Pennsylvania; and *Rieff v. Evans* (Allied Mutual Demutualization Litigation) in the District Court of Polk County, Iowa.

***William J. Ban***, partner in Barrack, Rodos & Bacine, is a graduate of Brooklyn Law School (J.D. 1982) and Lehman College of the City University of New York (A.B. 1977).  Over the past twenty-five years, Mr. Ban's practice of law has focused on securities, antitrust and consumer class action litigation on behalf of plaintiffs and he has participated as lead or co-lead counsel, on executive committees and in significant defined roles in scores of major class action litigations in federal and state courts

7

throughout the country, including, more recently, *In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288 (DLC), before the Honorable Denise L. Cote in the Southern District of New York, and *In re Automotive Refinishing Paint Antitrust Litigation*, MDL Docket No. 1426, before the Honorable R. Barclay Surrick in the Eastern District of Pennsylvania. Mr. Ban is admitted in New York and Pennsylvania and is a member of the New York City Bar Association and the New York State Bar Association.

*Regina M. Calcaterra*, partner in Barrack, Rodos & Bacine, is a graduate of Seton Hall University School of Law (J.D. 1996) and State University of New York at New Paltz (B.A. Political Science 1988). While at BR&B, Ms. Calcaterra served on the *WorldCom* litigation team, including the trial team that took Arthur Andersen, the only non-settling defendant to trial in the Spring of 2005. She came to the firm after serving as Deputy General Counsel of the New York City Employees' Retirement System (NYCERS), which is one of the largest public pension systems in the nation. Ms. Calcaterra has extensive experience in both law and government. She has also served as the Chief Lobbyist and Director of Intergovernmental Relations to the New York City Comptroller. In 1999, she was appointed to and served on New York Governor Pataki's Commission on Electronic Signatures and Records while serving as Technology Counsel at Prudential Securities. In addition, Ms. Calcaterra has served as an adjunct professor of public administration at the City University of New York's Baruch College. She represents BR&B at the National Association of Public Pension Attorneys; National Association of Pension Funds (UK); Council for Institutional Investors; International Corporate Governance Network and the Information Management Institute. She also lectures on securities-related matters to public pension fund counsel and trustees. Ms. Calcaterra was actively involved in the federal securities cases against R & G Financial Corp. Securities Litigation, McKesson and WorldCom.

*Chad A. Carder*, an associate in Barrack, Rodos & Bacine is an honors graduate of The Ohio State University (B.A. Political Science 1999), and College of William and Mary, Marshall-Wythe School of Law (J.D. 2002), where he was a Graduate

Research Fellow and served on the William and Mary Moot Court Board.  From 2002 to 2003, Mr. Carder served as the law clerk to the Honorable Michael J. Hogan of the New Jersey Superior Court.

Mr. Carder concentrates his practice on federal securities class action litigation, is experienced in representing both institutional investor plaintiffs and individual defendants, and has been a member of the teams that have litigated major securities class actions to their landmark conclusions.  Representative cases include:  *In re WorldCom, Inc. Securities Litigation*, Master File No. 02-Civ-3288 (DLC), before the Honorable Denise L. Cote in the Southern District of New York; *In re Schering-Plough Securities Litigation*, Master File No. 01-CV-0829 (KSH/RJH), before the Honorable Katherine Hayden in the District of New Jersey; *In re The Loewen Group Inc. Securities Litigation*, Case No. 2:98-cv-06740-TON, before the Honorable Thomas N. O'Neill, Jr., in the Eastern District of Pennsylvania; *Mould v. PainCare Holdings, Inc. et al.*, Case No. 6:06-cv-362-Orl-28DAB, before the Honorable John Antoon II in the Middle District of Florida; *Pennsylvania Public School Employees' Retirement System v. Qwest Communications International, Inc. et al.*, Civil Action No. 1:06-cv-01788-REB, before the Honorable Robert E. Blackburn in the District of Colorado; *In re Royal Ahold Securities & "ERISA" Litigation*, Case No. 1:03-MD-01539-CCB, before the Honorable Catherine C. Blake in the District of Maryland; *Eastwood Enterprises, LLC v. Farha, et al.*, Case No. 8:07-cv-1940-T-33EAJ, before the Honorable Virginia M. Hernandez Covington in the Middle District of Florida; *Waldrep v. ValueClick, Inc. et al.*, Case No. 2:07-cv-05411-DDP-AJW, before the Honorable Dean D. Pregerson in the Central District of California; *In re RAIT Financial Trust Securities Litigation*, Master File No. 2:07-cv-03148-LDD, before the Honorable Legrome D. Davis in the Eastern District of Pennsylvania; and *In re The Mills Corporation Securities Litigation*, Civil Action No. 1:06-cv-00077 (LO/TJR), before the Honorable Liam O'Grady in the Eastern District of Virginia.

Mr. Carder's complex civil litigation practice has also included the litigation of several antitrust class actions, corporate takeover class and derivative actions, shareholder derivative actions in various state and federal courts, including

those arising out of instances of improper stock option backdating, and policyholder actions against insurance companies.  Representative cases include: *Rieff v. Evans*, Civil Action No. CE 35780, before the Honorable Donna Paulsen in the District Court of Iowa, Polk County; *In re Automotive Refinishing Paint Antitrust Litigation*, Case No. 2:01-cv-02830-RBS, before the Honorable R. Barclay Surrick in the Eastern District of Pennsylvania; *In re Stone Energy Corporation Shareholder Derivative Litigation*, Civil Action No. 05-2166, before the Honorable Tucker L. Melancon in the Western District of Louisiana; *In re NVIDIA Corp. Derivative Litigation*, Case No. 4:06-cv-06110-SBA, before the Honorable Saundra Brown Armstrong in the Northern District of California; *In re Sovereign Bancorp. Inc. Shareholders Litigation*, Case No. 2587, before the Honorable Mark I. Bernstein in the Court of Common Pleas for Philadelphia County; *In re Flat Glass Antitrust Litigation (II)*, Civil Action No. 2:08-mc-00180-DWA, before the Honorable Donetta W. Ambrose in the Western District of Pennsylvania; and *In re New Jersey Title Insurance Litigation*, Case No. 2:08-cv-01425-PGS-ES, before the Honorable Peter G. Sheridan in the District of New Jersey.

Mr. Carder has published in his field.  He is the author of *Ruling on Admissibility of WorldCom Restatement Could Have Broad Implications*, Barrack Bulletin, Vol. 9 (Fall 2005).

***Alexander Arnold Gershon***, partner in Barrack, Rodos & Bacine, is a graduate of the Georgia Institute of Technology (B.S. 1962), Emory University School of Law (L.L.B. 1964) and New York University (L.L.M. 1964).  For more than 35 years, Mr. Gershon's practice has focused on representing plaintiffs in cases arising under the federal securities laws, state corporations laws, and similar kinds of matters in class actions, individual actions, and stockholders' derivative actions in the state and federal courts.

Mr. Gershon is an experienced civil litigator in federal and state courts and has contributed to the jurisprudence of class action settlements in cases such as *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981); has helped to establish important standards in shareholder derivative actions: *Seinfeld v.*

*Barrett*, 2006 WL 890909 (D. Del. 2006), and *Vides v. Amelio*, 265 F.Supp.2d 273 (S.D.N.Y. 2003) (exceptions to the demand requirement in stockholders' derivative actions); *Lewis v. Vogelstein*, 699 A.2d 327 (Del.Ch. 1997), and *Kaufman v. Beal*, 1983 WL 20295 (Del.Ch. 1983) (standards for executive compensation); and contributed to the establishment of the standards of required disclosure under the federal securities laws when corporate stockholders are solicited to approve executive bonus plans seeking tax benefits under the Internal Revenue Code in *Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003).

**Jeffrey B. Gittleman**, a partner in Barrack, Rodos & Bacine, is an honors graduate of Tulane University (B.A. Political Science 1993), and Temple University School of Law (J.D. 1996), where he served on the Moot Court Honors Society.  Mr. Gittleman has been named a Pennsylvania Rising Star by *Philadelphia Magazine* and *Pennsylvania Super Lawyers* in 2006, 2007 and 2008.  He is active in community affairs and currently serves on the Board of the Anti-Defamation League.

Mr. Gittleman concentrates his practice on complex litigation and specializes in antitrust and securities litigation.  Over the past decade, he has served in leadership roles in numerous antitrust cases, and has secured multi-million dollar recoveries against the manufacturers or producers of carbon fiber, automotive refinishing paint, graphite electrodes, flat glass, sodium gluconate, sorbates, polypropylene and nylon carpet, and metal building insulation.  Currently, Mr. Gittleman is active in the following antitrust cases, among others:  *In re Fasteners Antitrust Litigation*, MDL Docket No. 1912 (E.D. Pa.); *In re New Jersey Title Insurance Antitrust Litigation*, No. 08-1425(PGS) (D.N.J.); *In re Aftermarket Filters Antitrust Litigation*, No. 1:08-cv-4883 (N.D. Ill.); *In re Flat Glass (II) Antitrust Litigation*, No. 2:08-mc-00180 (W.D. Pa.); *In re Pressure Sensitive Labelstock Antitrust Litigation*, No. 3:03-mdl-01556 (M.D. Pa.); *In re Publication Paper Antitrust Litigation*, No. 3:04 MD 1631 (SRU) (D. Conn.); *In re Urethane Antitrust Litigation (Polyether Polyol Cases)*, No. 04-md-1616-JWL (D. Kan.); and *Standard Iron Works v.* Arecelormitta, No. 1:08-cv-05214 (N.D. Ill.)

In addition to representing plaintiffs in antitrust class actions, Mr. Gittleman also has an active securities litigation practice.  He is currently representing

the Florida State Board of Administration in *In re Schering-Plough Securities Litigation* and the Iowa Public Employees' Retirement System in *In re Mills Securities Litigation*. Previously, Mr. Gittleman served as the lead trial attorney in *Meikrantz v. Janney Montgomery Scott, et al.,* where he obtained a substantial award for his shareholder clients, and was part of the trial team that represented Iridian Technologies, Inc. and its common shareholder-elected directors in *Equity Asset Investment Trust, Inc. v. John Daugman, et al.*

     **Jeffrey W. Golan**, a partner in Barrack, Rodos & Bacine, joined the firm in 1990.  Mr. Golan graduated with honors from Harvard College in 1976 with a degree in Government.  After working as an aide to Senator Edward W. Brooke, he attended the joint degree program in law and foreign service at Georgetown University.  Mr. Golan graduated from the Georgetown University Law Center in 1980, where he also served as the Articles Editor for the school's international law review, and from the School of Foreign Service, with a Master's of Science Degree in Foreign Service.  In 1980, he received the Francis Deák Award from the American Society of International Law for the year's best student writing in an international law journal.  Mr. Golan served as a Law Clerk for the Honorable Edwin D. Steel, Jr., a United States District Court Judge in the District of Delaware, from 1980 to 1981, and thereafter joined a large firm in Philadelphia, where he concentrated on commercial litigation, including the representation of plaintiffs and defendants in federal securities and antitrust cases.

     Since joining BR&B, Mr. Golan has been BR&B's primary attorney in many major securities fraud cases throughout the country.  Of particular note, he served as BR&B's lead trial attorney in the WorldCom securities fraud class action—a prosecution that yielded a record-breaking recovery of more than $6.13 billion for defrauded investors—one of the most notable fraud cases ever to go to trial.  In April 2005, Mr. Golan led the BR&B team that took the only non-settling defendant, WorldCom's former auditor Arthur Andersen LLP, to trial.  Andersen agreed to settle in the fifth week of trial, shortly before closing arguments.

Mr. Golan also served as BR&B's primary attorney for the landmark *Cendant* case, in which the previously highest recovery ever achieved in a securities fraud class case was achieved ($3.18 billion), for the *DaimlerChrysler* case ($300 million obtained for the class), as well as in cases against Employee Solutions, Marion Merrell Dow, General Instrument and One Bancorp, among others. He is currently serving as the firm's lead attorney in the securities fraud class action involving Mills Corporation, where a $165 million settlement with the company and its former officers, directors and underwriters has been presented to the court for approval. In August 2003, Mr. Golan was the lead trial attorney for the firm in an action in the Delaware Chancery Court, *Equity Asset Investment Trust, et al. v. John G. Daugman, et al.*, in which the firm represented Iridian Technologies, Inc. (the world leader in iris recognition technologies) and its common shareholder-elected directors. The case was brought against the Company and the common directors in June 2003, prepared for trial within two months under the Chancery Court's "fast-track" procedures for Board contests, and went to trial by late August 2003.

Mr. Golan has also headed up the firm's representation of lead plaintiffs in a number of derivative actions stemming from the stock option backdating scandal, and served as the firm's lead attorney in several cases challenging proposed corporate transactions. Mr. Golan represented institutional and individual lead plaintiffs in a case that challenged the proposed buy-out of Lafarge N.A. by its majority shareholder, Lafarge S.A., which was settled when Lafarge S.A. agreed to increase the buy-out price from the $75.00 per share initially offered to $85.50 per share (a $388 million increase in the amount paid to Lafarge N.A.'s public shareholders) and when Lafarge N.A. agreed to make additional disclosures about the company and the proposed transaction. He was appointed as a co-lead counsel in consolidated shareholder cases challenging the majority shareholder buy-out of Nationwide Financial Services, Inc., where as part of a settlement the acquirer raised its offer price from $47.20 per share to $52.25 per share, and in shareholder cases challenging the proposed acquisitions of Wm. Wrigley Jr.

Company by Mars, Incorporated and of Commerce Bancorp by The Toronto-Dominion Bank.

For four of the last five years, Mr. Golan has been selected as a "Pennsylvania Super Lawyer" in the field of Securities Litigation. In June 2000, he was honored as the "Featured Litigator" in the on-line magazine published by Summation Legal Technologies, the legal software company. Mr. Golan has also served in numerous capacities for the Public Interest Law Center of Philadelphia, including as Vice-Chair of the Board, and on the staff of the Mayor's Task Force for the Employment of Minorities in the Philadelphia Police Force.

*Robert A. Hoffman*, a partner in Barrack, Rodos & Bacine, is a graduate of Rutgers University (B.A. 1980) (with high distinction) and Rutgers University School of Law - Camden (J.D. 1983). Mr. Hoffman clerked for the Honorable Charles R. Weiner, United States District Court for the Eastern District of Pennsylvania, during the years 1984-1985. Mr. Hoffman has been practicing in the area of securities class and derivative actions, and corporate litigation generally, for more than 20 years, during which time he has analyzed laws and provided advice on issues relevant to pension fund boards of trustees. He was admitted to the bars of the Supreme Court of Pennsylvania and Supreme Court of New Jersey in 1983, and is also a member of the bars of several federal circuit courts of appeal and district courts.

Mr. Hoffman has broad experience in prosecuting securities class actions in federal courts around the country. He is serving as lead counsel for the Florida State Board of Administration in *In re Schering-Plough Securities Litigation*, before the Honorable Katherine Hayden in the District of New Jersey, in which a proposed $165 million settlement is awaiting final court approval. He was one of the lead attorneys representing plaintiffs in *In re MicroWarehouse Securities Litigation*, (D. Conn.), which resulted in a $30 million recovery for the plaintiff class. He also has significant experience in the trial and appeal of securities class actions. *See, e.g. In re Control Data Corp. Securities Litigation*, 933 F.2d 616 (8th Cir. 1991).

14

*Gloria Kui Melwani*, former associate with BR&B, is a graduate of New York University (B.M. 2000) and a graduate of the Benjamin Cardozo School of Law (J.D. 2005). While at Cardozo, she was a Notes Editor of the *Cardozo Public Law, Policy & Ethics Journal*. Before joining Barrack, Rodos & Bacine's New York office, Ms. Melwani's practice focused on litigating stockholder derivative cases in state and federal courts.

*Leslie B. Molder*, partner in Barrack, Rodos & Bacine, is an honors graduate from the University of Michigan (A.B. *magna cum laude* 1980) as well as from the National Law Center at the George Washington University (J.D. *cum laude* 1983). Ms. Molder practices primarily in the area of complex civil litigation, including securities class actions, antitrust class actions and policyholder actions against insurance companies and has participated in the trials of a variety of commercial cases, including cases involving disputes between securities brokerage firms and their customers. Ms. Molder oversees the Firm's portfolio monitoring services for institutional clients. She is also the firm's settlement attorney, specializing in documenting and effectuating settlements of class actions and assisting clients throughout the settlement process.

*Julie B. Palley*, joined Barrack, Rodos & Bacine in 2008. Mrs. Palley graduated from the University of Pennsylvania *cum laude* in 2003 with a double major in Communications and Psychology with honors. She received her J.D. from Temple University School of Law in May of 2007. At Temple, Mrs. Palley was on the Dean's List and received an award for distinguished class performance. She was also a member of the Law School's budget committee, the Women's Law Caucus and the Jewish Law Students' Association. Before joining Barrack, Rodos & Bacine, Mrs. Palley was counsel at the Pennsylvania Securities Commission.

*Mark R. Rosen*, partner in Barrack, Rodos & Bacine, is an honors graduate of the University of Pennsylvania (A.B. *summa cum laude* with distinction in political science 1976), where he was elected to Phi Beta Kappa, and the Harvard Law School (J.D. *cum laude* 1979). Mr. Rosen, who served as a law clerk to Judge Stanley S. Brotman,

15

of the United States District Court for the District of New Jersey, has handled many trials and appeals as an experienced civil litigator representing plaintiffs and defendants in federal and state courts in, *inter alia*, constitutional, securities, antitrust, corporate takeover, environmental, consumer and other class and derivative litigation.

Mr. Rosen has successfully litigated high-profile cases which received nationwide recognition.  In *Strawn v. Canuso*, 140 N.J. 43, 657 A.2d 420 (1995), the New Jersey Supreme Court ruled in favor of his clients, a group of homeowners, in establishing that builders and real estate brokers must inform prospective buyers if the property for sale is near a landfill.  In *Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders*, 48 F.3d 701 (3d Cir. 1995), *on remand*, 931 F. Supp. 341 (D.N.J. 1996), *aff'd*, 112 F.3d 652 (3d Cir.), *cert. denied*, 522 U.S.  966 (1997), Mr. Rosen represented an out-of-state recycling facility where the court struck down the New Jersey system of waste "flow control," holding that it violated the constitutional protection for interstate commerce.

At BR&B, Mr. Rosen has handled a variety of matters, including antitrust, securities and corporate takeover class and derivative actions, as well as individual commercial actions.  Mr. Rosen was member of the successful team that litigated *In re WorldCom, Inc. Securities Litigation*, before the Honorable Denise L. Cote in the Southern District of New York, to its landmark conclusion, and is currently counsel to a group of defendants in a securities action arising from the recent upheaval in the financial markets.  He was one of the lead counsel for plaintiffs in *In re Automotive Refinishing Paint Antitrust Litigation*, before the Honorable R. Barclay Surrick in the Eastern District of Pennsylvania, which yielded $105 million in settlements, and *In re Publication Paper Antitrust Litigation*, before the Honorable Stefan R. Underhill in the District of Connecticut, among others.  He was one of the lead counsel for plaintiffs in the litigation over the acquisition of Chiron, which resulted in an increase of several hundred million dollars in the price paid to buy out its public shareholders, and recently served as lead counsel representing a major international bank in an injunction hearing successfully defending its acquisition of an American bank.

16

Mr. Rosen has argued or had principal responsibilities for appeals in a number of state, federal and appellate courts. Mr. Rosen has also been named a "Pennsylvania Super Lawyer" in the field of securities litigation. He is admitted to practice in California, the District of Columbia, New Jersey and Pennsylvania, and a number of federal trial and appellate courts.

*         *         *

In *In re Apollo Group Inc. Securities Litigation*, Master File No. CV-04-2147 PHX-JAT (District of Arizona), Barrack, Rodos & Bacine was lead counsel for the class that secured a jury verdict in January 2008 for the full amount per share requested, which in the aggregate could exceed $200 million. Judge Teilborg commented that trial counsel *"brought to this courtroom just extraordinary talent and preparation.... The technical preparation, the preparation for your examination and cross-examination of witnesses has been evident in every single instance. The preparation for evidentiary objections and responses to those objections have been thorough and foresighted. The arguments that have been made in every instance have been well-prepared and well-presented throughout the case. *** Likewise, for the professionalism and the civility that you -- and the integrity that you have all demonstrated and exuded throughout the handling of this case, it has just, I think, been very, very refreshing and rewarding to see that. *** [W]hat I have seen has just been truly exemplary."*

In *In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288 (DLC), Barrack, Rodos & Bacine was co-lead counsel for the Class and achieved settlements in excess of $6.13 billion. After a partial settlement with one group of defendants for in excess of $2.56 billion, the Court stated that *"the settlement amount ... is so large that it is of historic proportions."* The Court found that *"Lead Counsel has performed its work at every juncture with integrity and competence. It has worked as hard as a litigation of this importance demands, which for some of the attorneys, including the senior attorneys from Lead Counsel on whose shoulders the principal responsibility for this litigation rests, has meant an onerous work schedule for over two years."* The

17

Court further found that *"the quality of the representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative.  Its skill has matched that of able and well-funded defense counsel.  It has behaved professionally and has taken care not to burden the Court or other parties with needless disputes.  Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions.  It has cooperated with other counsel in ways that redound to the benefit of the class and those investors who have opted out of the class.  The submissions of Lead Counsel to the Court have been written with care and have repeatedly been of great assistance."* The Court also found that *"In sum, the quality of representation that Lead Counsel has provided to the class has been superb".*   In approving the final settlements totaling $3.5 billion, in an opinion and order dated September 20, 2005, the Court stated *"The impressive extent and superior quality of Lead Counsel's efforts as of May 2004 were described in detail in the Opinion approving the Citigroup Settlement. ...  At the conclusion of this litigation, more than ever, it remains true that 'the quality of representation that Lead Counsel has provided to the class has been superb.' ... At trial against Andersen, the quality of Lead Counsel's representation remained first-rate. .. The size of the recovery achieved for the class – which has been praised even by several objectors – could not have been achieved without the unwavering commitment of Lead Counsel to this litigation."*

   The Court also found that *"Despite the existence of these risks, Lead Counsel obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country;"* and *"If the Lead Plaintiff had been represented by less tenacious and competent counsel, it is by no means clear that it would have achieved the success it did here on behalf of the Class."* *"It is only the size of the Citigroup and Underwriters' Settlements that make this recovery so historic, and it is likely that less able plaintiffs' counsel would have achieved far less."*

In *In re Cendant Corporation Litigation*, No. 98-CV-1664 (WHW) (D.N.J. December 7, 1999), Barrack, Rodos & Bacine was co-lead counsel for the Class and achieved settlements with defendants in excess of **$3.18 billion**, more than three times larger than the next highest recovery ever achieved in a securities law class action suit by that time. The *Cendant* settlement included what was, at the time, the largest amount by far ever paid in a securities class action by an issuing company (which, nearly ten years later, remains the second largest ever paid) and what was, and remains, the largest amount ever paid in a securities class action by an auditor. The *Cendant* settlement further included extensive corporate governance reforms, and a contingency recovery of one-half the net recovery that Cendant and certain of its affiliated individuals may recover in on-going proceedings against CUC's former auditor. The *Cendant* Court stated that *"we have all been favored with counsel of the highest competence and integrity and fortunately savvy in the ways of the law and the market."* The Court found that the *"standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposed counsel were and are high in this action."* The Court further found that the result of lead counsel's efforts were *"excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class."*

In *In re Automotive Refinishing Paint Antitrust Litigation*, 2:10-md-01426-RBS (E.D. Pa.), Barrack, Rodos & Bacine, co-lead counsel for a Class of direct purchasers of automotive refinishing paint, achieved settlements with five defendants in excess of $100 million. After reaching a settlement with the last two defendants remaining in the litigation, the Court stated, *"I want to commend counsel on both sides of this litigation. I think that the representation on both sides of this litigation is as good as I've ever seen in my entire professional career. Counsel worked together in this case. They frankly made the job of this Court very easy and I commend all of you for what you've done in this litigation."*

In *Payne v. Micro Warehouse, Inc.*, No. 3:96CV1920(DJS) (D. Conn. Sept. 30, 1999), where Barrack, Rodos & Bacine was co-lead counsel for the shareholder class, the Court noted *"the exceptional results achieved by plaintiffs' counsel,"* who *"were required to develop and litigate this complex case solely through their own efforts,"* and concluded that *"the benefit conveyed to the class plaintiffs amply supports the conclusion that the plaintiffs' counsels' work was exceptional."*