# EXHIBIT I.2

# EXHIBIT I.2

# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR)  ECF CASE |

## DECLARATION OF DAVID KOVEL
## IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND
## REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF
## KIRBY MCINERNEY LLP

DAVID KOVEL, declares as follows:

1.      I am a partner of the law firm of Kirby McInerney LLP.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action ("the Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.

2.      My firm acted as one of plaintiffs' counsel in the Action and specifically as counsel for Lead Plaintiff Skandia Life Insurance Company Ltd ("Skandia").  In this capacity, my firm worked on a daily basis along with lead counsel to assist in the discovery process, handling various discovery disputes, researching legal issues, drafting portions of briefs as requested by BLB&G, and preparing and defending Skandia's deposition.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm and associated counsel who was involved in this Action, and the lodestar calculation based on my firm and associated counsel's current billing rates.  For personnel who are no longer employed by my

firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm and associated counsel, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4.      The hourly rates for the attorneys and professional support staff in my firm and for associated counsel included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and have been accepted in other securities or shareholder litigation.

5.      The total number of hours expended on this Action by my firm and associated counsel from its inception through and including January 21, 2011 is 5,614.5. The total lodestar for my firm and associated counsel for that period is $2,155,252.50, consisting of $2,029,825.00 for attorneys' time and $125,427.50 for professional support staff time.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      As detailed in Exhibit 2, my firm has incurred a total of $157,219.19 in unreimbursed expenses in connection with the prosecution of this Action from its inception through and including January 21, 2011.

8.      The expenses incurred in this Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

9.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief

biography of my firm and attorneys in my firm who were principally involved in this Action.

      I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on January 31, 2011.

                                    DAVID KOVEL

# Exhibit 1

# EXHIBIT 1

*In re Pfizer Inc. Shareholder Derivative Litigation*
Case No. 09-CV-7822 (JSR)

## KIRBY MCINERNEY LLP

## TIME REPORT

### Inception through January 21, 2011

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| David Kovel | 594.25 | 600 | $ 356,550.00 |
| Ira Press | 84.75 | 700 | 59,325.00 |
| Randall Berger | 24.25 | 700 | 16,975.00 |
| Roger Kirby | 4.00 | 900 | 3,600.00 |
| Andrew McNeela | 3.50 | 600 | 2,100.00 |
| **Associates** | | | |
| Joshua Masters | 1,206.00 | 400 | $ 482,400.00 |
| Alan Handler | 870.75 | 425 | 370,068.75 |
| Edward Varga | 570.50 | 375 | 213,937.50 |
| Kya Blackstone | 533.75 | 325 | 173,468.75 |
| Surya Pananiappan | 512.00 | 325 | 166,400.00 |
| Steven Jaspan | 401.00 | 325 | 130,325.00 |
| Beverly Tse Mirza | 0.50 | 475 | 237.50 |
| **Associated Counsel** | | | |
| Debora Sturman | 83.75 | 650 | $ 54,437.50 |
| **Professional Support Staff** | | | |
| Jessica Vosgerchian | 414.75 | 175 | $ 72,581.25 |
| Kyle Bean | 162.75 | 175 | 28,481.25 |
| Orie Braun | 39.00 | 295 | 11,505.00 |
| Sarah Flohr | 38.00 | 175 | 6,650.00 |
| Veronica Yu | 9.00 | 175 | 1,575.00 |
| Avril King | 21.75 | 65 | 1,413.75 |
| Stacey Edmonds | 18.00 | 65 | 1,170.00 |
| Ricardo Wright | 13.50 | 65 | 877.50 |
| Logan Morris | 2.50 | 175 | 437.50 |
| Rebecca Song | 2.00 | 175 | 350.00 |
| Francisco Loya | 1.00 | 175 | 175.00 |
| Rayan Miller | 2.00 | 65 | 130.00 |
| Andrew Miller | 0.75 | 65 | 48.75 |
| Donald Myers | 0.50 | 65 | 32.50 |
| **TOTAL LODESTAR** | **5,614.50** | | **$ 2,155,252.50** |

# Exhibit 2

# EXHIBIT 2

*In re Pfizer Inc. Shareholder Derivative Litigation*
Case No. 09-CV-7822 (JSR)

## KIRBY MCINERNEY

### EXPENSE REPORT

**Inception through January 21, 2011**

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | 350.00 |
| On-Line Legal and Factual Research | 32,929.67 |
| Document Management/Litigation Support | 535.56 |
| Telephones | 87.83 |
| Postage & Express Mail | 24.80 |
| Local Transportation | 2,347.78 |
| Outside Copying | 150.00 |
| Out of Town Travel | 12,118.63 |
| Working Meals | 3,674.92 |
| Contributions to Litigation Fund | 105,000.00 |
| | |
| | |
| | |
| **TOTAL EXPENSES:** | **157,219.19** |

# Exhibit 3



**At Kirby McInerney LLP,** we bring experience, intelligence, creativity and dedication to bear in defending our clients' interests against losses in cases of corporate malfeasance. Unfortunately, on the heels of the exposure of colossal corporate frauds – Enron, Worldcom and others – public and private investors, consumers, payors and employees today participate in an uncertain marketplace, and they need protection. We utilize cutting-edge strategies that bring high – and have even brought unprecedented – recoveries for our clients: governmental entities, Taft-Hartley funds, hedge funds, and other aggrieved institutions and individuals. We have achieved and are pursuing landmark results in the fields of securities fraud, corporate governance, consumer, antitrust, health care and ERISA litigation, representing our clients in class actions or, if appropriate, individual litigation.

We make our clients' interests our own, and are constantly looking for ways in which to help them manage the now amplified risks associated with their participation in the marketplace. As part of our focus on risk management, our *Institutional Monitoring Program* monitors our clients' investment history in order to ensure crucial, immediate awareness of possible fraud. When evidence of fraud surfaces, we partner with our clients to identify and execute a legal strategy that best defends their interests in light of their losses. Our *Institutional Monitoring Program* is cost and commitment free.

We offer our litigation services on a contingency basis, and are paid only if successful in recovering losses in the event of a fraud. This policy allows our clients to access legal rights and remedies that might otherwise be uneconomical. We carefully review the merits of all litigation proceedings, weighing our clients' losses against their chance for recovery, before moving forward with litigation.

We pride ourselves on our proven ability to protect our clients using the entire range of tools for recourse offered by the legal system, whether it be through settlement or, if needed, trial. Throughout the history of our firm we have recovered billions of dollars for our clients, and the average recoveries that we procure in each individual case are among the very best in the field:

> **In 2007, Institutional Shareholder Services, a top industry publication, lauded KM for procuring, on average, the third largest recoveries for shareholders of all plaintiffs' firms in the United States.**

**KIRBY McINERNEY LLP**

## Client & Adversary Recognition

*"The case has been in front of the Supreme Court of the United States once, and in front of the Ninth Circuit no fewer than three times. Throughout, [KM] has . . . brought a considerable degree of success . . . and thwarted attempts by other counsel who sought to settle . . . and destroy a potential billion dollars of class rights."*

**Plaintiff / client, Epstein v. MCA, Inc.**

*"[The KM firm] proved to be a highly able and articulate advocate. Single-handedly, [KM] was able to demonstrate not only that [KM's] client had a good case but that many of the suspicions and objections held by the Nigerian Government were ill-founded."*

**English adversary in The Nigerian Cement Scandal**

*"[KM] represented us diligently and successfully. Throughout [KM's] representation of our firm, [KM's] commitment and attention to client concerns were unimpeachable."*

**European institutional defendant /client involved in a multi-million dollar NASD arbitration**

*"Against long odds, [KM] was able to obtain a jury verdict against one of the larger, more prestigious New York law firms."*

**Plaintiff / client, Vladimir v. U.S. Banknote Corporation**

*"[KM] represented our investors with probity, skill, and diligence. There is too much money involved in these situations to leave selection of class counsel to strangers or even to other institutions whose interests may not coincide."*

**Plaintiff / institutional client, In re Cendant Corporation PRIDES Litigation**

**KIRBY McINERNEY LLP - 26**

## Notables

The firm has repeatedly demonstrated its ability in the field of class litigation and our success has been repeatedly recognized. For example:

- *In re Bisys Securities Litigation*, C.A. No. 04-CV-3840 (S.D.N.Y. 2007).  Co-lead counsel, $66 million settlement.

- *In re AT&T Corp. Securities Litigation*, C.A. No. 00-CV-8754 (S.D.N.Y. 2006).  Sole counsel, $150 million settlement.

> "Nonetheless, in this Court's experience, relatively few cases have involved as high level of risk, as extensive discovery, and, most importantly, as positive a final result for the class members as that obtained in this case."

- *In re Adelphia Communications, Inc. Securities Litigation*, No. 04 CV 05759 (S.D.N.Y. 2006). Co-lead counsel, $455 million settlement.

> "[T]hat the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."

- *Carnegie v. Household International Inc., et al.*, 98 C 2178 (EEB)(N.D.Ill. 2006).  Co-lead counsel, $39 million settlement:

> "Since counsel took over the representation of this case . . ., they have pursued this case, conducting discovery, hiring experts, preparing for trial, filing motions where necessary, opposing many motions, and representing the class with intelligence and hard work. They have obtained an excellent result for the class."

- *Argent Convertible Classic Arbitrage Fund, L.P. v. Amazon.com, Inc. et al.*, CV No. 01-0640L (W.D. Wash. Oct. 20, 2005).  Lead counsel for class of convertible euro-demoninated bond purchase.  $20 million settlement.

- *Muzinich & Co., Inc. et al. v. Raytheon Company et al.*, No. C-01-0284-S-BLW  (D. Idaho 2005).  Co lead counsel.  $39 million settlement.

KIRBY McINERNEY LLP - 27

- *Gordon v. Microsoft Corporation*, Civil No. 00-5994 (Minn. Dist. Ct., Henn. Co. 2004). Co-lead counsel; $175 million settlement following two months of trial.

- *In re Visa Check/MasterMoney Antitrust Litigation*, 96-CV-5238 (E.D.N.Y. 2003) $3 billion monetary settlement; injunctive relief.

- *In re Florida Microsoft Antitrust Litig.*, Case No. 99-27340 CA 11 (Fl. Cir. Ct. 11th Cir., Miami/Dade Co. 2003). Co-lead counsel. $200 million settlement of antitrust claims.

- *In re Churchill Securities, Inc.* (SIPA Proceeding), Case No. 99 B 5346A (Bankr. S.D.N.Y.    2003: Sole Counsel; recovered over $9 million for 500+ victims of pyramid scheme perpetrated by defunct brokerage firm.

- *In re Laidlaw Bondholder Securities Litigation*, 00 cv 2518-17 (D. S.C. 2002). Lead counsel; $42.8 million settlement.

- *Cromer Finance v. Berger et al.* (*In re Manhattan Fund Securities Litigation*), 00 cv 2284 (S.D.N.Y. 2002). Co-lead counsel; $32 million settlement.

- *In re Boeing Securities Litigation*, 97 cv 715 (W.D. Wash. 2001). $92.5 million settlement.

- *In re MCI Non-Subscriber Telephone Rates Litigation*, MDL No. 1275 (S.D. Ill. 2001). Chairman of steering committee; $88 million settlement.

- *In re General Instrument Corp. Securities Litigation*, 01 cv 1351 (E.D. Pa. 2001). Co- lead counsel; $48 million settlement.

- *In re Bergen Brunswig/Bergen Capital Trust Securities Litigation*, 99 cv 1305 and 99 cv 1462 (C.D. Cal. 2001). Co-lead counsel; $42 million settlement.

- *Steiner v. Aurora Foods*, 00 cv 602 (N.D. Cal. 2000). Co-lead counsel; $36 million settlement.

- *Gerber v. Computer Associates International, Inc.*, No. 91 C 3610 (E.D.N.Y. 2000). Multi-million dollar jury verdict in securities class action.

- *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000). Principal counsel of record in appeal that resulted in first ever appellate reversal of the dismissal of a securities fraud class action under the Securities Reform Act of 1995.

- *Bartold v. Glendale Federal Bank*, (2000) 81 Cal.App.4th 816. Ruling on behalf of hundreds of thousands of California homeowners establishing banks' duties regarding title reconveyance; substantial damages still to be calculated in this and related cases against other banks for failures to have discharged these duties.

- *In re Cendant Corporation PRIDES Litigation*, 51 F. Supp. 2d 537, 542 (D. N.J. 1999). Lead counsel, $340 million settlement. The court said:

  > "[R]esolution of this matter was greatly accelerated by the creative dynamism of counsel." * * * "We have seen the gifted execution of responsibilities by a lead counsel."

- *In re Waste Management, Inc. Securities Litigation*, No. 97C 7709 (N.D. Ill. 1999). Co-lead counsel, $220 million settlement.

  > "...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases... in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here... I would say this has been the best representation that I have seen."

- *In re Bennett Funding Group Securities Litigation*, No. 96 Civ. 2583 (1999). Co-lead counsel; $140 million in settlements to date ($125 million recovered from Generali U.S. Branch, insurer of Ponzi scheme instruments issued by Bennett Funding Group; $14 million settlement with Mahoney Cohen, Bennett's auditor). Case continuing against other defendants.

- *In re MedPartners Securities Litigation*, CV-98-06364 (Ala. June 1999). Co-lead counsel; $56 million settlement.

- *In re MTC Electronic Technologies Shareholder Litigation*, No. CV-93-0876 (E.D.N.Y. October 20, 1998). Co-lead counsel; settlement in excess of $70 million.

- *Skouras v. Creditanstalt International Advisers, Inc., et al.*, NASD Arb., No. 96-05847 (1998). Following an approximately one month hearing, successfully defeated multi-million dollar claim against major European institution.

- *In re Woolworth Corp. Securities Class Action Litigation*, 94 Civ. 2217 (RO) (S.D.N.Y. Sept. 29, 1997). Co-lead counsel; $20 million settlement.

KIRBY McINERNEY LLP - 29

- *In re Archer Daniels Midland Inc. Securities Litigation,* C.A. No. 95-2877 (C. D. Ill. April 11, 1997). Co-lead counsel; $30 million settlement.

- *Vladimir v. U.S. Banknote Corp.,* No. 94 Civ. 0255 (S.D.N.Y. 1997). Multi-million dollar jury verdict in § 10(b) action.

- *In re Archer Daniels Midland Inc. Securities Litigation,* C.A. No. 95-2877 (C. D. Ill. April 11, 1997). Co-lead counsel; $30 million settlement.

- *Vladimir v. U.S. Banknote Corp.,* No. 94 Civ. 0255 (S.D.N.Y. 1997). Multi-million dollar jury verdict in § 10(b) action.

- *Epstein et al. v. MCA, Inc., et al.,* No. 92-55675, 50 F.3d 644 (9th Cir. 1995) *rev'd and remanded on other grounds, Matsushita Electric Industrial Co., Ltd. et al. v. Epstein et al.,* No. 94-1809, 116 S. Ct. 873 (February 27, 1996). Sole counsel. Appeal resulted in landmark decision concerning liability of tender offeror under section 14(d)(7) of the Williams Act, SEC rule 14d-10 and preclusive effect of a release in a state court proceeding. In its decision granting partial summary judgment to plaintiffs, the court of appeals for the Ninth Circuit stated:

  > "The record shows that the performance of the Epstein plaintiffs and their counsel in pursuing this litigation has been exemplary."

- *In re Abbott Laboratories Shareholder Litigation,* No. 92-C-3869 MEA, Fed. Sec. L. Rep. P 98973 (N.D. Ill. 1995). Co-lead counsel; $32.5 million settlement:

  > "The record here amply demonstrates the superior quality of plaintiffs' counsel's preparation, work product, and general ability before the court."

- *In re Morrison Knudsen Securities Litigation,* No. CV 94-334-S-EJL (D. Id. 1995). Co-lead counsel; approximately $68 million settlement.

- *In re T2 Medical Inc. Securities Litigation,* No. 1:94-CV-744-RLV (N.D. Ga. 1995). Co-lead counsel; approximately $50 million settlement.

- *Gelb v. AT&T,* 90 Civ. 7212 (LMM) (S.D.N.Y. 1994). Landmark decision regarding filed rate doctrine leading to injunctive relief.

- *In re International Technology Corporation Securities Litigation,* CV 88-40-WPG, (C.D. Cal. 1993). Co-lead counsel; $13 million settlement.

KIRBY McINERNEY LLP - 30

- *Colaprico v. Sun Microsystems,* No. C-90-20710 (SW) (N.D. Cal. 1993). Co-lead counsel; $5 million settlement.

- *Steinfink v. Pitney Bowes, Inc.,* No. B90-340 (JAC) (D. Conn. 1993). Lead counsel; $4 million settlement.

- *In re Jackpot Securities Enterprises, Inc. Securities Litigation,* CV-S-89-05-LDG (RJJ) (D. Nev. 1993). Lead counsel; $3 million settlement.

- *In re Nordstrom Inc. Securities Litigation,* No. C90-295C (W.D. Wa. 1991). Co-lead counsel; $7.5 million settlement.

- *United Artists Litigation,* No. CA 980 (Sup. Ct., L.A., Cal.). Trial counsel; $35 million settlement.

- *In re A.L. Williams Corp. Shareholders Litigation,* Consolidated, C.A. No. 10881 (Delaware. Ch. 1990). Lead counsel; benefits in excess of $11 million.

- *In re Triangle Inds., Inc., Shareholders' Litigation,* C.A. No. 10466 (Delaware. Ch. 1990). Co-lead counsel; recovery in excess of $70 million.

- *Schneider v. Lazard Freres,* (N.Y. Sup. 1990). Co-lead counsel.  Landmark decision concerning liability of investment bankers in corporate buyouts; $55 million settlement.

- *Rothenberg v. A.L. Williams,* C.A. No. 10060 (Delaware. Ch. 1989). Sole counsel; benefits of at least $25 million to the class.

- *Kantor v. Zondervan Corporation,* C.A. No. 88 C5425 (W.D. Mich. S.D. 1989). Sole counsel; recovery of $3.75 million.

- *King v. Advanced Systems, Inc.,* C.A. No. 84 C10917 (N.D. Ill. E.D. 1988). Lead counsel; recovery of $3.9 million (representing 90% of damages).

- *Straetz v. Cordis,* 85-343 Civ. (SMA) (S.D. Fla. 1988). Lead counsel:

    > "I want to commend counsel and each one of you for the diligence with
    > which you've pursued the case and for the results that have been produced
    > on both sides.  I think that you have displayed the absolute optimum in
    > the method and manner by which you have represented your respective
    > clients, and you are indeed a credit to the legal profession, and I'm very
    > proud to have had the opportunity to have you appear before the Court
    > in this matter."

- *In re Flexi-Van Corporation, Inc. Shareholders Litigation*, C.A. No. 9672 (Delaware. Ch. 1988). Co-lead counsel; $18.4 million settlement.

- *Entezed, Inc. v. Republic of Nigeria*, I.C.C. Arb. (London 1987). Multi-million dollar award for client.

- *In re Carnation Company Securities Litigation*, No. CV84-6913 (FW) (C.D. Cal. 1987). Co-lead counsel; $13 million settlement.

- *In re Data Switch Securities Litigation*, B84 585 (RCZ) (D. Conn. 1985). Co-lead counsel; $7.5 million settlement.

- *Stern v. Steans*, 80 Civ 3903 (GLG). The court characterized the result for the class obtained during trial to jury as "unusually successful" and "incredible" (Jun 1, 1984).

- *In re Datapoint Securities Litigation*, SA 82 CA 338 (W.D. Tex.). Lead Counsel for a Sub-Class; $22.5 million aggregate settlement.

- *Malchman, et al. v. Davis, et al.*, 77 Civ. 5151 (S.D.N.Y., June 8, 1984) (TPG):

> "It is difficult to overstate the far-reaching results of this litigation and the settlement. Few class actions have ever succeeded in altering commercial relationships of such magnitude. Few class action settlements have even approached the results achieved herein.... In the present case, the attorneys representing the class have acted with outstanding vigor and dedication . . . Although the lawyers in this litigation have appeared considerably more in the state courts than in the federal court, they have appeared in the federal court sufficiently for me to attest as to the high professional character of their work. Every issue which has come to this court has been presented by both sides with a thoroughness and zeal which is outstanding .... In sum, plaintiffs and their attorneys undertook a very large and difficult litigation in both the state and federal courts, where the stakes were enormous. This litigation was hard fought over a period of four years. Plaintiffs achieved a settlement which altered commercial relationships involving literally hundreds of millions of dollars."

* * *

**KIRBY McINERNEY LLP**
W W W . K M L L P . C O M

 **David E. Kovel** is a partner based in our New York office focusing on antitrust, commodities, securities and corporate governance matters. Mr. Kovel joined the firm in 2004.

Recent cases in which Mr. Kovel has been involved include:

- Representation, as a lead counsel, of members of electricity cooperatives who seek corporate governance reforms and recovery of their longstanding capital investments in the cooperatives;

- Representation, as lead counsel, of Skandia Life Insurance Company, Ltd. and a class of shareholders in a derivative action brought against members of the Board of Directors and senior executives of Pfizer, Inc. Plaintiffs allege that Pfizer's senior management and Board breached their fiduciary duties by, among other things, allowing unlawful promotion of drugs to continue even after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread;

- Representation, as a lead counsel, of a class of New York State consumers in connection with antitrust proceedings against Microsoft;

- Representation, as lead counsel, of a class of gasoline purchasers in California in connection with Unocal, Inc.'s manipulation of the standard-setting process for gasoline. The litigation resulted in a $48 million recovery for the class;

- Representation of propane purchasers who were harmed by BP America's manipulation of the physical propane market; and

- Representation of various whistleblowers who claim that their companies have defrauded the United States Government.

Mr. Kovel is admitted to the New York State Bar, the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York, the First Circuit and the Connecticut State Bar. He graduated from Yale University (B.A.), Columbia University School of Law (J.D.) and Columbia University Graduate School of Business (M.B.A.). He is fluent in Spanish.

Mr. Kovel traded commodities for several years before attending law school. Prior to joining KM, Mr. Kovel practiced at Simpson Thacher & Bartlett LLP.

**KIRBY McINERNEY LLP**
W W W . K M L L P . C O M



**Ira M. Press** is a partner in our New York office focusing on securities and consumer litigation. Mr. Press joined the firm in 1993, and currently leads the firm's institutional investor monitoring program. In this capacity, he has provided advisory services to numerous government pension funds and other institutional investors. He has authored articles on securities law topics and has lectured to audiences of attorneys, experts and institutional investor fiduciaries.

Mr. Press' advocacy has resulted in several landmark appellate decisions including, *Rothman v. Gregor*, the first ever appellate reversal of a lower court's dismissal of a securities class action suit pursuant to the 1995 Private Securities Litigation Reform Act, and more recently, earlier this year, *Wiggins v. Janus Capital Group*, the first ever reversal of such a dismissal in the 4th Circuit Court of Appeals.

Some of Mr. Press' relevant experience includes:

- Representation of a union pension fund as lead plaintiff in *In re Moody's Corporation Securities Litigation*, a securities class action arising from Moody's misrepresentation about and in the course of its rating of mortgage-related securities. Classwide losses are estimated to be in the billions;

- Representation of the New York City Pension Funds as lead plaintiff in a class action against Wachovia Corporation arising from Wachovia's alleged misrepresentations of their exposure to the subprime market. Classwide losses are estimated to be in the billions;

- Representation of the lead plaintiff in *In re Citigroup Inc Securities Litigation*, a class action arising out of Citigroup's alleged misrepresentations regarding their exposure to losses associated with numerous off-balance sheet Variable Interest Entities. Full disclosure caused $200 billion in shareholder losses. On November 9, 2010, the Court dismissed in large part defendants' motion to dismiss;

- Representation of the NY State Common Retirement Fund as lead plaintiff in *In re National City Corporation Securities, Derivative & ERISA Litigation*, a securities class action arising from National City's alleged misrepresentations regarding exposure to subprime mortgage related losses. During the class period, the company's stock fell from approximately $37 to $6; and

- Representation, as lead counsel, of investors in Goldman Sachs common stock in a securities class action case pertaining to Goldman's alleged instruction to their research analysts to favor procurement of investment banking deals over accuracy in their research. Disclosure caused Goldman Sachs' stock to decline materially. This case recently resulted in a $29 million recovery for the class.

Mr. Press is admitted to the New York State Bar, the United States Courts of Appeals for the Second, Third, Fourth, and Eleventh Circuits, and the United States District Courts for the Eastern, Northern and Southern Districts of New York. He graduated from Yeshiva University magna cum laude (B.A., 1986) and from New York University Law School (J.D., 1989). Additionally, Mr. Press speaks Hebrew.

**KIRBY McINERNEY LLP**
WWW.KMLLP.COM

 **Joshua D. Masters** is an associate based in our New York office focusing on securities and antitrust litigation. Mr. Masters joined the firm in 2010.

Recent cases in which Mr. Masters has been involved include:

- Representation, as lead counsel, of Skandia Life Insurance Company, Ltd. and a class of shareholders in a derivative action brought against members of the Board of Directors and senior executives of Pfizer, Inc.  Plaintiffs allege that Pfizer's senior management and Board breached their fiduciary duties by, among other things, allowing unlawful promotion of drugs to continue even after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread.

Prior to joining KM, Mr. Masters worked at the Australian Mission to the United Nations, and served as a clerk to the Honorable Justice John Mansfield of the Federal Court of Australia.

Mr. Masters is admitted to the New York State Bar and the Supreme Court of New South Wales, Australia. He graduated from The University of Adelaide Law School, (Hons. LL.B., 2006), from The University of New England (B.Ec., 2008), and from New York University Law School (LL.M., 2009).

KIRBY McINERNEY LLP

W W W . K M L L P . C O M



**Edward M. Varga, III** is an associate based in our New York office focusing on securities and antitrust litigation. Mr. Varga joined the firm in 2006.

Recent cases in which Mr. Varga has been involved include:

- Representation, as lead counsel, in the securities class action *In Re Herley Industries Inc. Securities Litigation* on behalf of investors. This litigation resulted in a recovery of $10 million for the class;

- Representation of companies that offered IPO securities in antitrust litigation against the 27 largest investment banks in the United States. Plaintiffs allege that the banks conspired to price fix underwriting fees in the mid-sized IPO market; and

- Representation of the NY State Common Retirement Fund as lead plaintiff in *In re National City Corporation Securities, Derivative & ERISA Litigation*, a securities class action arising from National City's issue of alleged materially false and misleading statements regarding the Company's business, including the extent of its exposure to subprime mortgage related losses. During the class period, the company's stock fell from approximately $37 to $6.

Mr. Varga is admitted to the New York State Bar. He graduated from Cornell University (B.S., 2000)) and from New York University Law School (J.D., 2006).

**KIRBY McINERNEY LLP**
W.W.W.KMLLP.COM



**Surya Palaniappan** is an associate based in our New York office focusing on securities, consumer, and derivative litigation. Ms. Palaniappan joined the firm in 2008.

Recent cases in which Ms. Palaniappan has been involved include:

- Representation, as co-lead counsel, of a class of consumers who purchased Ford 15 passenger vans during or after 1991. These vans were ruled by the NHTSA (National Highway Transportation Safety Authority) as being unusually prone to flipping over, and they can safely carry only 8 passengers, with no one seated in the back row of the vans;

- Representation, as lead counsel, in the securities class action *In Re Herley Industries Inc. Securities Litigation* on behalf of investors. This litigation resulted in a recovery of $10 million for the class; and

- Representation of a lead plaintiff and a class of shareholders in a derivative action brought against members of the Board of Directors and senior executives of Pfizer, Inc. Plaintiffs allege that Pfizer's senior management and Board breached their fiduciary duties by, among other things, allowing unlawful promotion of drugs to continue even after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread.

Prior to joining KM, Ms. Palaniappan served as a clerk to the Honorable Justice Bruce Lander of the Federal Court of Australia. Ms. Palaniappan also practiced at DLA Phillips Fox in Sydney, Australia, where she represented the Australian Government in administrative matters in Federal Court.

Ms. Palaniappan is admitted to the New York State Bar, the United States District Courts for the Southern and Eastern Districts of New York, the High Court of Australia and the Supreme Court of South Australia. She graduated from the University of Adelaide (B.Comm.(Acc)), 2003; Hons.LL.B. (First Class), 2006). She is fluent in Tamil.

# ALAN D. HANDLER
200 East 74th Street 18A/G
New York, New York 10021
Tel. No.: (212) 744-6660
AlanDHandler@gmail.com

**PROFILE:**

A seasoned professional with extensive transactional and litigation experience ranging from multimillion dollar matters to small claims, skilled in addressing traditional business affairs as well as complex regulatory concerns. An educator, communicator and advocate who brings both in-house and outside counsel perspective to identifying opportunities, anticipating potential problems and devising lasting solutions.

**EMPLOYMENT:**

**NYC ENVIRONMENTAL CONTROL BOARD**, New York, NY                                    2009
*Administrative Law Judge*
Conduct hearings and render decisions pertaining to violations issued by NYPD and/or 11 NYC agencies charged with administering NYC quality of life laws.

**THE PAY-O-MATIC CORP.** and its subsidiaries, Syosset, NY                                    1997-2008
*Vice President/Legal and Chief Compliance Officer*
Provided business, legal and compliance guidance to the largest registered Money Services Business in New York (gross revenues: $90 million); its tri-state, licensed electronic bill payment network (750 agents); its licensed check cashing operation (130 outlets); its armored car subsidiary; its real estate holding company; and its proprietary security guard company.
- Established Legal Department
- Negotiated, Drafted and Administered Agent and Vendor Network Agreements
- Negotiated, Drafted and Administered Product, Trademark and Location License Agreements
- Oversaw Trademark and Intellectual Property Concerns
- Oversaw EEOC Compliance and Legal Defense
- Developed and Administered Anti-Harassment Policy
- Administered Risk Management and Debt Collection Program
- Attended to Legal Aspects of 135 Owned or Leased Real Estate Holdings
- Prepared, Filed and Monitored Bankruptcy Claims
- Documented and Closed Acquisitions and Sales of Businesses and Business Assets
- Negotiated New Business Opportunities
- Effectuated Corporate Reorganizations
- Oversaw Outsourced and Insurance Litigation
- Oversaw Money Services Business Licensing and Registration
- Served as Liaison with Federal and State Regulatory Agencies
- Served as Liaison with Western Union for Money Transmission and Money Order Activities
- Developed and Administered Anti-Money Laundering, Bank Secrecy Act, USA Patriot Act, and Gramm-Leach-Bliley Privacy Act Compliance Programs and Served as Chief Compliance Officer
- Developed and Administered Compliance Testing Program
- Authored bi-monthly *Concerning Compliance* educational installments for Employee Compliance Manual
- Oversaw Armed Security Guard and Federal Motor Carrier Compliance

Alan D. Handler

**SNOW BECKER KRAUSS, P.C.**, New York, NY                                1996-1997
*Partner*
- Engaged in General Litigation and Corporate Law Practice
- Conducted Trials, Appeals, Arbitrations, Mediations, Depositions, and Motion Practice on behalf of, and Rendered Legal Advice to, such clients as Pay-O-Matic, Rapid Armored, J&M Peppe Realty, Cartier, Walter E. Heller Finance, Rexene, and Snapple

**SHARFMAN, SHANMAN, PORET & SIVIGLIA, P.C.**, New York, NY             1979-1995
*Partner*
- Engaged in General Litigation, Creditors' Rights, Bankruptcy, Insurance and Reinsurance, Employment, and First Amendment Practice
- Conducted Trials, Appeals, Arbitrations, Mediations, Depositions, and Motion Practice on behalf of, and Rendered Legal Advice to, such clients as Pay-O-Matic, Rapid Armored, J&M Peppe Realty, Cartier, Walter E. Heller Finance, Rexene, Simon & Schuster, Hyatt, Oppenheimer Re, Tacoma Boat, AMCA International, Amtel, Morgantown Mining, Fairfield-Maxwell, REL Shipping, and St. James's Tower
- Trained and Supervised Associates

**WACHTELL, LIPTON, ROSEN & KATZ**, New York, NY                         1975-1979
*Associate*
- Engaged in General Litigation, Securities Law, Mergers and Acquisitions, Creditors' Rights, Bankruptcy, Employment, First Amendment, and Corporate Law Practice
- Participated in Trials, Appeals, Arbitrations, Mediations, Depositions, and Motion Practice on behalf of, and Rendered Legal Advice to, such clients as Loews Corporation, CNA Insurance, Lorillard Tobacco, Walter E. Heller Finance, Hyatt, Salomon Brothers, AMCA International, Amtel, The Columbia Spectator, and Rowan Drilling

**EDUCATION AND HONORS:**

**ACAMS**                                                                 2006
*Certified Anti-Money Laundering Specialist*

**NEW YORK UNIVERSITY SCHOOL OF LAW**                                     1975
*Juris Doctor*
- New York University Law Review, Editor
- Annual Survey of American Law, Invitation Declined
- Moot Court Competition

**HAMILTON COLLEGE**                                                      1972
*Bachelor of Arts*
- Dean's List, Freshman - Senior Years
- Departmental Honors, Speech
- Dean Alfange Essay Prize, First Place, Senior Year
- McKinney Prize Debate, First Place, Senior Year
- McKinney Prize Speaking Contest, First Place, Junior Year

**BAR ADMISSIONS:**
- Supreme Court of the State of New York, First Judicial Department
- United States Court of Appeals, Second and Eleventh Circuits
- United States District Court, Southern and Eastern Districts of New York

Alan D. Handler

**PUBLICATIONS:**

- Bi-Monthly Educational Installments (privately published): *Concerning Compliance*, 2003-2008
- Law Review Note: *Government Interceptions of Attorney-Client Communications*, 49 N.Y.U. L .Rev. 87 (1974)
- Report: *An Evaluation of the Federal 'Hire-the-Handicapped' Program in the Department of Agriculture*, published by the U.S. Civil Service Commission, 1971
- Thesis (unpublished): *Judicial Decision Prediction*, 1972
- Thesis (unpublished): *The Super Hero Comic Book*, 1967
- Produced and Directed Film: *River City*, screened by New York Museum of Modern Art and CBS News, 1968

# KYA BLACKSTONE, J.D.

720 Fulton Street, Apt. 2 • Brooklyn, New York 11238 • KBlackston@law.gwu.edu • 917-519-7244

## EDUCATION

**The George Washington University Law School,** Washington, D.C.
J.D., May 2009
- Recipient, NAACP Defense Fund Herbert Lehman Scholarship
- Participant, Moot Court Competition
- *Relevant Coursework*: Federal Income Taxation, Corporations, Transactional Legal Drafting, Negotiations, Small Business and Community Economic Development Clinic

**New York University, College of Arts & Sciences,** New York, N.Y.
B.A. in History, minor in Psychology, May 2004
- Deans List
- Recipient, College of Arts & Sciences Scholarship (2003)
- *Studied Abroad*: Florence, Italy (Spring 2002); Havana, Cuba (Summer 2002)

## EXPERIENCE

**The Law Offices Of Gordon Mehler,** New York, NY                                    2010
*Law Clerk*
- Assist white-collar criminal defense attorneys with all matters relating to representation of clients including, but not limited to legal research, writing, editing, and document review.

**The Jacob Burns Small Business and Community Economic Development Clinic,** Washington, D.C.
*Legal Fellow*                                                                                        2009
- Advised business owners and non-profit organizations on various business questions including but not limited to,
  issues regarding trademark, contract, drafting and liability, licensing and organizational structure.
- Drafted bylaws.
- Helped develop business strategic plan and case study in order to advise client how to restructure their organization.
- Developed, drafted and presented research in order to assist clients with restructuring non-profit, legal and business strategy, and contractual drafting.
- Facilitated board meetings for not-for-profits.

**The Federal Trade Commission Office of International Affairs, Consumer Protection Division,** Washington, D.C.
*Intern*                                                                                                2009
- Extensively researched various topics including consumer protection related issues including warranties, foreign discovery obligations, and European Union privacy laws.
- Analyzed and wrote memo regarding consumer warranties, which was dispersed as informational material to foreign governments.

**The George Washington University Law School,** Washington, D.C.
*Research Assistant to Professor Lawrence E. Mitchell*                                    2008-2009
- Designed and conducted research to assist Professor Mitchell with development for a book and other academic scholarship regarding democratic capitalism and the history of the New York Stock Exchange, The Ultra Vires Doctrine and watered stock.

**Miranda Correia Amendoeira & Associados Attorney's at Law,** Lisbon, Portugal
*Summer Trainee*                                                                                    2008
- Examined potential contractual liabilities for African telecommunications consortium and revised related wire-line
  telecommunications agreements.
- Analyzed European Union Directives regarding data protection as applicable to the Portuguese subsidiary of a Fortune 500
  U.S. Company.
- Wrote memos and analyzed findings for Partner and associate attorneys.
- Assisted partners with interpretation of Portuguese law in order to further facilitate communication with international
  clients.

**United States Court for the Eastern District of New York**, Brooklyn, N.Y.
*Judicial Intern, The Honorable John Gleeson*                                                    2007
- Researched and drafted preliminary opinions, which were adopted and published.
- Presented legal findings and analysis to judicial staff.

**The New York Historical Society**, New York, N.Y.
*Educator*                                                                                       2005-2006
- Developed and implemented educational programs and curriculum.
- Presented information regarding current exhibits to large groups of patrons.

**Law Offices of Gordon Mehler/Krantz & Berman LLP**, New York, N.Y.
*Paralegal*                                                                                      2003-2005
- Drafted and edited legal documents, motions, and correspondence.
- Assisted attorneys during depositions and trials and client meetings.
- Successfully created efficient filing system.
- Assisted attorneys with editing book used on Federal criminal law.

## LANGUAGES & SKILLS

Spanish, Portuguese, Italian (Intermediate and Conversational abilities).

## VOLUNTEER WORK

Brooklyn Bar Association Volunteer Lawyers Project

# Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR)  ECF CASE |

### DECLARATION OF ROBERT D. KLAUSNER
### IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND
### REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF
### KLAUSNER & KAUFMAN, P.A.

Robert D. Klausner, declares as follows:

1.     I am a member of the law firm of Klausner & Kaufman, P.A..  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.

My firm acted as one of plaintiffs' counsel in the Action.  In this capacity, my firm performed the following tasks:

I am general counsel for the Louisiana Sheriffs Pension and Relief Fund.  The Fund is a statewide multi-employer defined benefit retirement system covering approximately 20,000 participants and retirees who are current or former employees of the 64 Sheriff's offices in Louisiana.  Pursuant to the Fund's securities litigation practices, it is my responsibility to evaluate the appropriateness of any potential claim for the Fund; to independently review all pleadings; provide research, comment, and recommendations on same; advise the lead securities

{00031717.DOC;1}

counsel on state law issues regarding the investment authority and practices of the Fund; to be responsible for overseeing document production related to the Fund; to assist in the preparation of the Executive Director for his deposition; to attend and defend the deposition; review the deposition with the Executive Director for errata; provide regular updates on the progress of the litigation to the Executive Director and the Board of Trustees; consult with BLBG and the Fund regarding settlement; advise the Board of Trustees on the terms of the settlement and ensure their concurrence.

2.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this Action, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

3.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

4.      The total number of hours expended on this Action by my firm from its inception through and including January 21, 2011 is 92.70. The total lodestar for my firm for that period is $ 60,255.00, consisting of $ 60,255.00 for attorneys' time and $ 0 for professional support staff time.

{00031717.DOC;1}

5.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

6.     As detailed in Exhibit 2, my firm has incurred a total of $ 3,313.13 in unreimbursed expenses in connection with the prosecution of this Action from its inception through and including January 21, 2011.

7.     The expenses incurred in this Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

8.     With respect to the standing of my firm, attached hereto as Exhibit 3, is a brief biography of my firm and attorney in my firm who was principally involved in this Action.

I declare, under penalty of perjury, that the foregoing facts are true and correct.

Executed on _____February 2_____, 2011.

_____

ROBERT D. KLAUSNER

{00031717.DOC;1}

# Exhibit 1

## EXHIBIT 1

*In re Pfizer Inc. Shareholder Derivative Litigation*
**Case No. 09-CV-7822 (JSR)**

## TIME REPORT

### Inception through January 21, 2011

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Robert D. Klausner | 92.7 | $650.00 | $ 60,255.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Associates** | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Professional Support Staff** | | | |
| | | | |
| | | | |
| | | | |
| **TOTAL LODESTAR** | 92.7 | $650.00 | $60,255.00 |

{00031717.DOC;1}

# Exhibit 2

EXHIBIT 2

*In re Pfizer Inc. Shareholder Derivative Litigation*
**Case No. 09-CV-7822 (JSR)**

**EXPENSE REPORT**
**Inception through January 21, 2011**

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | |
| Service of Process | |
| On-Line Legal Research | |
| On-Line Factual Research | |
| Document Management/Litigation Support | |
| Telephones | |
| Faxes | |
| Postage & Express Mail | |
| Hand Delivery Charges | |
| Local Transportation | |
| Internal Copying | |
| Outside Copying | |
| Out of Town Travel | $ 2,292.72 |
| Working Meals | $ 1,020.41 |
| Court Reporting & Transcripts | |
| Staff Overtime | |
| Experts | |
| Mediation Fees | |
| Contributions to Litigation Fund | |
| | |
| | |
| | |
| **TOTAL EXPENSES:** | **$ 3,313.13** |

# Exhibit 3

EXHIBIT 3

**ROBERT D. KLAUSNER, Principal**
**Klausner & Kaufman, P.A.**
bob@robertdklausner.com

Mr. Klausner is the principal in the law firm of Klausner & Kaufman, P.A.  For more than 30 years, he has been engaged in the practice of law, specializing in the representation of public employee pension funds.  The firm represents state and local retirement systems in more than 20 states.  Mr. Klausner has assisted in the drafting of many state and local laws on public employee retirement throughout the United States. Mr. Klausner is a frequent speaker on pension education programs and has also published numerous articles on fiduciary obligations of public employee pension trustees.   He is co-author of the book State and Local Government Employment Liability, published by Thomson-West Publishers and is the author of the first comprehensive book on the law of public employee retirement systems, State and Local Government Retirement Law: A Guide for Lawyers, Trustees, and Plan Administrators, published in April 2009 and an expanded version published in April 2010.  Mr. Klausner graduated *Phi Beta Kappa* from the University of Florida with a Bachelor of Arts and from the University Florida College of Law with the degree of Juris Doctor.  For more than 10 years, Mr. Klausner has been listed in the publication *The Best Lawyers in America* and holds an "AV" rating, the highest rating for competence and ethics, from Martindale Hubbell national lawyer rating service. In 2008, Mr. Klausner successfully represented the Commonwealth of Kentucky and the Kentucky Retirement Systems in the United States Supreme Court in *Kentucky Retirement Systems v. Equal Employment Opportunity Commission, 128 S. Ct. 2361 (2008).*

Klausner & Kaufman, P.A. has been engaged exclusively in the representation of state and local government retirement systems for more than 30 years.  The firm represents approximately 100 retirement plans and related entities in more than 20 states.   The firm also serves as general counsel to the National Conference on Public Employee Retirement Systems, the primary public pension trade association representing more than 500 retirement systems with assets in excess of $3 trillion.  Klausner & Kaufman has also served as a consultant to both House of Congress and to numerous state legislatures on the management and administration of public employee retirement systems.

{00031717.DOC;1}

# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR)<br><br>ECF CASE |

## DECLARATION OF JASON S. COWART
## IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND
## REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF
## POMERANTZ HAUDEK GROSSMAN & GROSS LLP

Jason S. Cowart, declares as follows:

1.     I am a member of the law firm of Pomeratnz Haudek Grossman & Gross LLP.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.  My firm acted as one of plaintiffs' counsel in the Action, and in this capacity, my firm assisted in the prosecution of this action, including work on fact and expert discovery, and research and drafting correspondence and pleadings.

2.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this Action, and the lodestar calculation based on my firm's current billing rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.  Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

3.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

4.      The total number of hours expended on this Action by my firm from its inception through and including January 21, 2011 is 1829.55.  The total lodestar for my firm for that period is $879,980.00, consisting of $879,175.00 for attorneys' time and $805.00 for professional support staff time.

5.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

6.      As detailed in Exhibit 2, my firm has incurred a total of $37,849.65 in unreimbursed expenses in connection with the prosecution of this Action from its inception through and including January 21, 2011.

7.      The expenses incurred in this Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

8.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this Action.

I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on February 7, 2011 at New York, New York.

Jason S. Cowart

# Exhibit 1

**EXHIBIT 1**

*In re Pfizer Inc. Shareholder Derivative Litigation*
Case No. 09-CV-7822 (JSR)

**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**

**TIME REPORT**

**Inception through January 21, 2011**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Axelrod, Robert J. | 1 | 675 | 675.00 |
| Cowart, Jason | 512.7 | 615 | 315,310.50 |
| Gross, Marc I | 11.6 | 825 | 9,570.00 |
| Grossman, Stanley M. | 44.5 | 880 | 38,160.00 |
| Lieberman, Jeremy | 23 | 600 | 13,800.00 |
| **Associates** | | | |
| Dell, Jessica | 590.25 | 430 | 253,807.50 |
| Hodgson, James R. | 7.8 | 500 | 3,900.00 |
| Maul, Anthony F. | 50.80 | 500 | 25,400.00 |
| Oliver, Marie | 459.4 | 375 | 172,275.00 |
| Qian, Fei-Lu | 1 | 450 | 450.00 |
| Weinrib, Tamar, A | 9.5 | 485.00 | 4,607.50 |
| Weiswasser, Susan J. | .2 | 460 | 92.00 |
| **Project Associate** | | | |
| Laurent, Christine I | 113.8 | 350 | 39,830.00 |
| **Of Counsel** | | | |
| Smollar, Leigh H. | .5 | 595 | 297.50 |
| **Professional Support Staff** | | | |
| Yamada, Paul M. | 3.5 | 230 | 805.00 |
| | | | |
| **TOTAL LODESTAR** | 1829.55 | | $879,980.00 |

# Exhibit 2

EXHIBIT 2

*In re Pfizer Inc. Shareholder Derivative Litigation*
Case No. 09-CV-7822 (JSR)

**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**

**EXPENSE REPORT**
**Inception through January 21, 2011**

| CATEGORY | AMOUNT |
|---|---|
| On-Line Legal Research | 3,561.27 |
| Telephone and fax | 61.33 |
| Postage & Express Mail | 6.49 |
| Local Transportation | 1,059.01 |
| Internal Copying | 1,007.60 |
| Working Meals | 1,204.56 |
| Court Reporting & Transcripts | 206.25 |
| Staff Overtime | 667.80 |
| Contributions to Litigation Fund | 30,000.00 |
| Document Retrieval | 75.34 |
| | |
| | |
| **TOTAL EXPENSES:** | **37,849.65** |

# Exhibit 3

# POMERANTZ
## HAUDEK GROSSMAN & GROSS LLP

# the Pomerantz Firm

Pomerantz Haudek Grossman & Gross LLP ("Pomerantz" or "Firm") is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation. The Firm was founded in 1936 by the late Abraham L. Pomerantz, one of the "pioneers who developed the class action/derivative action field."[1] Mr. Pomerantz rose to national prominence as a "champion of the small investor" and a "battler against corporate skullduggery."[2] Today, senior partners Stanley M. Grossman and Marc I. Gross maintain the commitments to excellence and integrity passed down by Mr. Pomerantz. Mr. Grossman has been recognized as one of the top New York City based securities litigators, and has served on the Ethics Committee of the New York City Bar Association. Mr. Gross has over thirty years experience litigating securities fraud and derivative actions and is a Vice President of the Institute of Law and Economic Policy.

For more than 70 years, the Firm has consistently shaped the law, winning landmark decisions that have expanded and protected investor rights, and initiated historic corporate governance reforms. The Firm's primary focus is on securities, antitrust and insurance-related litigation.

## Courts Have Consistently Acknowledged Firm's
## Ability to Successfully Litigate on Behalf of Investors

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors. In approving the $225 million settlement in *In re Comverse Technology Inc. Sec. Litig.*, No. 06-CV-1825 (E.D.N.Y.) in June 2010, Judge Nicholas G. Garaufis stated:

> As outlined above, the recovery in this case is one of the highest ever achieved in this type of securities action. . . . The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and as far as the court can tell, Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation.

In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL Docket No. 331 (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated:

---

[1] New York Law Journal (August 1, 1983).

[2] Robert J. Cole, *Class Action Dean*, The National Law Journal, Vol. 1 No. 2 at 1 (Sept. 25, 1978).

> Counsel for the plaintiffs I think did an excellent job. . . . They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial.

In approving a $146.25 million settlement in *In re Charter Communications Sec. Litig.*, 02 CvI186 (E.D. Mo. 2005), in which Pomerantz served as sole Lead Counsel, Judge Charles A. Shaw praised the Firm's efforts:

> This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial." In awarding fees to Pomerantz, the Court cited "the vigor with which Lead Counsel . . . investigated claims, briefed the motions to dismiss, and negotiated the settlement . . ..

Also, in certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y.), Judge Gerard D. Lynch stated that Pomerantz had "ably and zealously represented the interests of the class."

Numerous courts have made similar comments:

- Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Sec. Litig.*, No 05-CV-0725-W-ODS (W.D. Mo.), a class action that involved a massive fraud and restatements spanning several years, the District Court observed that the Firm ". . . has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."

- In *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633, (N.Y. Supreme Court, Onondaga County), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, "It was a pleasure to work with you. This is a good result. You've got some great attorneys working on it."

- In *Steinberg v. Nationwide Mutual Insurance Co.*, 99 CV 7725 (E.D.N.Y.), Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." (2004 U.S. Dist. LEXIS 17669 at *24)

- In *Mercury Savings and Loan*, CV 90-87 LHM (C.D. Cal.), Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."

- In *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.), Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering . . . [in] an extremely complex matter," and concluded that the

case was "very well-handled and managed." (Tr. at 6, 5/20/92; Tr. at 10, 10/10/92)

- In *Nodar v. Weksel*, 84 Civ. 3870 (S.D.N.Y.), Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result." (Tr. at 21-22, 12/27/90)

- In *Klein v. A.G. Becker Paribas, Inc.*, 83 Civ. 6456 (S.D.N.Y.), Judge Goettel complimented the Firm for providing "excellent . . . absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87)

- In *Digital Sec. Litig.*, 83-3255Y (D. Mass.), Judge Young lauded the Firm for its "[v]ery fine lawyering." (Tr. at 13, 9/18/86)

- In *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y.), Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."

- In *Rauch v. Bilzerian*, 88 Civ. 15624 (Sup. Ct. N.J.), the court, after trial, referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

## Legacy of Setting
<u>Important Precedents</u>

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance.

- *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y. 3d (2005) (New York State's highest court found for the first time that a lead managing underwriter can owe fiduciary duties to an issuer in connection with the issuer's IPO even where the underwriting contract does not establish any fiduciary relationship);

- *Ross v. Bernhard*, 396 U.S. 531 (1970) (establishing the right to trial by jury of derivative actions);

- *Kronfeld v. TWA*, 832 F.2d 726 (2d Cir. 1987) (holding, *before Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made);

- *In re Summit Medical Systems Secs. Litig.*, 294 F.3d 969 (8th Cir. 2002) (holding that standing existed for aftermarket purchasers who could trace their purchase of shares to a false registration);

- *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190 (2d Cir. 1984) (establishing limits on advisory fees charged by investment advisors under the Investment Company Act). Recently, the Supreme Court adopted the stand set by Pomerantz in *Gartenberg. (See Jones v. Harris)*;

- *Fogel v. Chestnutt*, 533 F.2d 731 (2d Cir. 1975) (private right of action under Investment Advisory Act and duty of fund managers to make full disclosures to outside directors in all areas where there was a possibility of any conflict of interest); *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971) (similar);

- *In re Comverse Technology Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. 2007) (clarifying the standards for calculating the "largest financial interest" in the selection of lead plaintiffs in a manner consistent with the Supreme Court's ruling on loss causation in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005)).

- *See also, Pearlman v. Feldmann*, 219 F.2d 173 (2d Cir. 1955); *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS 2005 (S.D.N.Y. 2005); *Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) (GEL); *DeMarco v. Robertson Stephens*, 318 F. Supp. 2d 110 (S.D.N.Y. 2004); *In re Green Tree Fin. Corp. Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002); *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997); *In re Texas International Company Sec. Litig.*, [1988-89 Decisions] Fed. Sec. L. Rep. (CCH) ¶ 94,125 (W.D. Okla. 1988); *Fisher v. Kletz*, 266 F. Supp. 180 (S.D.N.Y. 1967).

## Significant Recoveries
## <u>Achieved for the Class</u>

Among the class and shareholder derivative actions in which Pomerantz was Lead or Co-Lead Counsel are:

- *In re Comverse Technology Inc. Sec. Litig.*, No. 06-CV-1825 (E.D.N.Y. 2010) ($225 million recovery);

- *In re Charter Communications, Inc. Sec. Litig.*, No. 05-CV-1186 (E.D. Mo. 2005) ($146.25 million recovery);

- *In re Methionine Antitrust Litig.*, Master File No. C-99-3491-CRB, MDL No. 1311 (N.D. Cal. 2002) ($107 million recovery);

- *In re First Executive Corporation Sec. Litig.*, CV-89-7135 DT (Kx) (C.D. Cal. 1994) ($102 million recovery);

- *In re Salomon Brothers Treasury Litig.*, 91 Civ. 5471 (RPP) (S.D.N.Y. 1994) ($100 million recovery);

- *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (Supreme Court, N.Y., Onondaga County 1998) ($100 million recovery);

- *In re Telerate, Inc. Shareholders Litig.*, Civ. 1115 (Del. Ch. 1989) ($95 million benefit).

- *In re Sorbates Direct Purchaser Antitrust Litig.*, C98-4886 Cal (N.D. Cal. 2000) (over $82 million recovery);

- *In re Elan Corp. Sec. Litig.*, No. 02-CV-0865(RMB) (S.D.N.Y. 2005) ($75 million recovery);

- *In re Salomon Analysts AT&T Litig.*, No. 02-CV-865 (S.D.N.Y.) ($74.75 million recovery);

- *In re Boardwalk Marketplace Sec. Litig.*, M.D.L. Docket No. 712 (D. Conn. 1994) (over $66 million benefit);

- *In re National Health Laboratories, Inc. Sec. Litig.*, CV-92-1949-H (CM) (S.D. Cal. 1995) ($64 million recovery);

- *In re Safety-Kleen Corp. Stockholders Litig.*, C.A. No. 3:00-CV-736-17 (D.S.C. 2004) ($54.5 million recovery);

- *In re Livent, Inc. Noteholders Sec. Litig.* Case No. 98-CV-7161 (S.D.N.Y. 2003) ($17.25 million aggregate settlements; $36 million additional judgment (with interest);

- *In re Transkaryotic Sec. Litig.*, No. 03-10165 (D. Mass 2008) (member of Executive Committee) ($50 million recovery);

- *Mardean Duckworth v. Country Life Insurance Co.*, No. 98 CH 01046 (Ill. Cir. Ct., Cook Cty.) ($45 million recovery);

- *In re Summit Metals, Inc. v. Gray*, No., 98-2870 (D. Del. 2004) ($43 million judgment and required turnover of the stock of two corporations);

- *In re Ocean Drilling & Exploration Company Shareholders Litig.*, Civ. No. 11898 (Del. Ch. 1991) ($38 million cash benefit);

- *In re National Student Marketing Sec. Litig.*, MDL Docket No. 105 (D.D.C. 1983) ($35 million recovery).

- *Hurley v. FDIC*, Civil Action No. 88-1940-T (D. Mass. 1992) ($29 million judgment after trial against two former officers of First Service Bank for Savings);

- *In re American Italian Pasta Company Sec. Litig.*, No. 05-CV-0725 (W.D. Mo. 2008) ($28.5 million settlement)

- *In re Data Point Sec. Litig.*, SA-82-CA-338 (W.D. Tex. 1987) ($28.4 million recovery);

- *Wallace v. Fox*  Docket No. 3:96-CV-00772 (PCD) (D. Conn. 1997) (Northeast Utilities Shareholder Derivative Action) ($25 million recovery);

- *In re AM International, Inc. Sec. Litig.*, M-21-31, MDL Docket No. 494 (S.D.N.Y. 1987) ($23 million recovery);

- *Frank v. Paul* (CenTrust Savings Bank Sec. Litig.), 90-0084-CIV (S.D. Fla. 1996) ($20 million recovery); and

- *In re Woolworth Corporation Sec. Class Action Litig.*, 94 Civ. 2217 (RO) (S.D.N.Y. 1997) (recovery of $20 million);

Pomerantz is also at the forefront of innovative class actions against health insurance companies to protect both patients and doctors from abuses of managed care. It represents both individuals and large medical associations, including the AMA. Among its precedent-setting cases are *Wachtel v. Health Net, Inc.*, (D.N.J.), where, as Co-Lead Counsel, Pomerantz reached a $250 million settlement; and *American Medical Assoc. v. United Healthcare*, in which the Court appointed Pomerantz as Settlement Class Counsel and granted preliminary approval to a $350 million settlement. In these cases, the Firm charged that the insurer was improperly reducing health care benefits for members who received treatments from out-of-network providers. In approving the *Health Net* settlement, Judge Faith S. Hochberg observed:

> There has been an enormous amount of highly professional time put into what's a very important issue here, and that is to make sure that when people are covered by insurance coverage, that they get what they believed that they are entitled to. This settlement will go a very long way and reverberate far beyond this courtroom in that. And I believe it has already done so.

Biographies of the Firm's attorneys follow.

## STANLEY M. GROSSMAN

Stanley M. Grossman, a senior partner at Pomerantz, is recognized as a leader in the plaintiffs' securities bar. He was featured in the New York Law Journal (August 1, 1983) article: "*Top Litigators in Securities Field – A Who's Who of City's Leading Courtroom Combatants.*" Mr. Grossman has litigated securities (individual and class), derivative and antitrust actions with the Firm for 39 years on behalf of both institutional and individual clients.

Mr. Grossman has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the firm biography. *See. e.g., Ross v. Bernhard*, 396 U.S. 531; *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem*, 818 F.2d 1433 (9th Cir.); *In re Salomon Bros. Treasury Litig*, 9 F.3d 230 (2d Cir.). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Investment Partners v. Scientific-Atlanta*, No. 06-43 (2007). Other examples of cases where he was the Lead or Co-Lead counsel for plaintiffs and the class include: *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); *In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Mr. Grossman. In *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 79 Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Mr. Grossman was also the lead trial attorney in *Rauch v. Bilzerian* (Super. Ct. N.J.)(directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Mr. Grossman is frequently invited to speak at law schools and professional organizations. In June 2010 he will present *Silence Is Golden – Until It Is Deadly: The*

*Fiduciary's Duty to Disclose*, at the Institute of American and Talmudic Law. In April 2010, he was a panelist on *Securities Law: Primary Liability for Secondary Actors*, sponsored by the Federal Bar Council. In 2009, Mr. Grossman was a featured speaker at the Practicing Law Institute's Securities Litigation and Enforcement Institute and a panelist on a Practicing Law Institute "Hot Topic Briefing" entitled "*StoneRidge*- Is There Scheme Liability or Not?"  He was a panelist at an April 2008 Conference sponsored by the Institute for Law and Economic Policy, entitled "The Continuing Evolution of Securities Class Actions." Mr. Grossman also participated as a panelist on securities litigation developments at the 2008 annual meeting of the ABA Section of Litigation. Mr. Grossman is the author of "Commentary:  The Social Meaning of Shareholder Suits," 65 BROOKLYN LAW REV. (1999), among other articles.

Mr. Grossman is a nationally respected authority on the subject of corporate governance. He served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a regular advisor to Congress on legislation to protect investors and is a former president of the National Association of Securities and Consumer Trial Attorneys ("NASCAT") During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Mr. Grossman is recognized for his commitment to ethical practices and the enhanced quality of legal representation. He served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee, which interviewed and evaluated the qualification of judicial candidates. He is also actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He serves on the board of the Appleseed Foundation, a national public advocacy group and is a director of the Lincoln Center Institute for the Arts in Education.

Mr. Grossman is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

## MARC I. GROSS

Marc I. Gross is a senior partner of Pomerantz. For over three decades, he has focused on securities fraud class actions and derivative actions, while also litigating antitrust and consumer cases. Mr. Gross heads the Firm's Institutional Investor Practice and New Case Groups. He is Lead Counsel in many of the Firm's major pending cases, including Chesapeake, where he represents the Louisiana Municipal Police Employees' Retirement System in challenging a grant of $75 million bonus to a CEO, in a year when the company's profits plunged and its stock price fell 60%.

Mr. Gross's numerous notable achievements include: *In re Charter Communications Inc. Sec. Litig.* ($146.25 million settlement); *In re Salomon Analyst AT&T Litig.* ($74.75 million settlement); *In re Elan Corp. Sec. Litig.* ($75 million settlement); *In re National Health Labs, Inc. Sec. Litig.* ($64 million recovery); *Snyder v. Nationwide Insurance Co.* (derivative settlement valued at $100 million).

Other examples of Mr. Gross' representation as sole or Co-Lead Counsel are: *In re Elan Corp. Sec. Litig.*, No. 02-CV-865 (S.D.N.Y.) ($75 million settlement); *In re Salomon Analysts AT&T Litig.*, No. 02-CV-865 ($74.75 million settlement) (S.D.N.Y.); *In re National Health Labs., Inc. Securities*, CV-92-1949-H (S.D. Cal. 1995) ($64 million recovery); *In re American Italian Pasta Co. Sec. Litig*, No 05-CV0725-W-ODS (S.D.N.Y.) ($28.5 million settlement); *Mardean Duckworth v. Country Life Insurance Co*, No. 98 CH 01046 (C.D. Ill. 2000) ($45 million settlement); and *Frank v. Paul* (*Centrust Savings Bank Securities Litigation*), 93 Civ. 1453 (E.D.N.Y. 1996) (over $20 million recovery). He was a member of the Plaintiffs' Executive Committee in *In re Transkaryotic Therapies Sec. Litig.* 03-cv-10165-RWZ (D. Mass.), which has settled for $50 million (court approval of settlement has been requested).

Mr. Gross has extensive trial experience, including *In re Zila Inc. Securities Litig.*, (D.C. Ariz. (PHX)) and *In re Zenith Labs Securities Litig.*, (D.C. N.J.)

Courts have been highly complimentary of Mr. Gross's legal representation. For example, in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), where he was Co-Lead Counsel, the Court, in approving the settlement valued at $100 million for defrauded life insurance policy customers in New York, stated:

> The Court approves the settlement in all respects. It is so ordered, and I compliment you all, not only the manner in which you arrived at this result today, but the time that you -- in which it was done. And I think you all did a very, very good job for all the people. You made attorneys look good. I thank you very much. It was nice working with you all.

Mr. Gross was the attorney-in-charge of *Texas Int'l Co. Sec. Litig.* (W.D. Okla.), where, in granting class certification, the Court observed:

> The performance of plaintiffs' counsel thus far leaves the Court with no doubt that plaintiffs' claims will be vigorously and satisfactorily prosecuted throughout the course of this litigation.

In the course of approving the subsequent settlement of the case, the Court added:

> I would like to compliment all the parties and attorneys in this case. . . . You have all worked together better than I think any case I've had that involved these extensive issues and parties and potential problems. And I

for one appreciate it. And I think it shows certainly a great deal of professionalism on all your part.

Mr. Gross has been a member of the New York City Bar Association's Federal Courts Committee, an early neutral evaluator for the Eastern District of New York, and a mediator for the Commercial Division of the Supreme Court of the State of New York. He is currently a Vice President of the Institute of Law and Economic Policy ("ILEP"), a not-for-profit organization devoted to promoting academic research and dialogue in securities law issues and litigation, and for many years was an officer of NASCAT. He is a frequent speaker at legal forums on various shareholder-related issues, including *Risk Management and Due Diligence* (Brooklyn Law School, March 2009); *Say-on-Pay* (Vanderbilt Law School, March 2009); *Basic – 20 Years Later* (Wisconsin Law School/ILEP November 2008/University of Arizona, April 2008); and *The Scott/Paulson "Reform" Proposal* (Duke, 2007). Mr. Gross spoke on excess compensation at the Israeli Pension Fund Conference in October 2009. In April 2010 he headed the panel *Class Actions* at the conference entitled "Protection of Investors in the Wake of the 2008-2009 Financial Crisis," co-sponsored by the University of Pennsylvania School of Law Institute for Law and Economic Policy, and Huntington National Bank.

Mr. Gross is the author of the journal article *"Loser-Pays - or Whose 'Fault' Is It Anyway: A Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It'"*, which appeared in 64 Law & Contemporary Problems (Duke Law School) (2001) in an issue addressing Complex Litigation at the Millennium.

Mr. Gross is active in civic affairs and served as Chairman of Neighbors Helping Neighbors, a not-for-profit housing group based in Brooklyn, New York.

Mr. Gross graduated from New York University Law School in 1976, and received his undergraduate degree from Columbia University in 1973.

Mr. Gross is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, the Western District of Missouri, District of Arizona, the United States Courts of Appeals for the First, Second, Third and Eighth Circuits, and the United States Supreme Court.

## **SHAHEEN RUSHD**

Shaheen Rushd graduated *summa cum laude* from New York Law School in 1981 and obtained her undergraduate degree from Kalamazoo College in 1977 (*magna cum laude*; elected to Phi Beta Kappa).

Ms. Rushd joined the Firm as an associate in January 1983 and became a partner in July 1991. Previously, Ms. Rushd was a staff attorney at the New York Regional Office of the Federal Trade Commission and served as law clerk to the Honorable Leonard I. Garth, Circuit Court Judge of the United States Court of Appeals for the Third Circuit.

Ms. Rushd specializes in securities and antitrust class actions and is a member of the Firm's Institutional Investor Practice Group. She has participated in the litigation of many of the Firm's major cases, including *StoneRidge Investment Partners v. Scientific-Atlanta, Inc.; EBC I, Inc. v. Goldman Sachs & Co.; Comverse Technology, Inc. Sec. Litig* ; *Kronfeld v. TWA*; and *In re Safety-Kleen Corp. Stockholders Litigation*. She was also part of the successful trial teams in *Walsh v. Northrop Grumman, et al.*, CV-94-5105 (E.D.N.Y.) and *Rauch v. Bilzerian*, 88 Civ. 15624 (Super. Ct. N.J.).

Ms. Rushd was a trustee of Kalamazoo College from 1996 through June 2002. She has served as an Adjunct Instructor at New York Law School and was a member of the New York City Bar Association's Antitrust and Trade Regulation Committee. She is a member of the ABA Section of Business Law.

Ms. Rushd is admitted to practice in New York, the United States District Court for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Eighth and Eleventh Circuits, and the United States Supreme Court.

## PATRICK V. DAHLSTROM

Patrick V. Dahlstrom joined Pomerantz as an associate in the Fall of 1991 and became a partner in January 1996. He is the resident partner in the Firm's Chicago office.

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the Administrative Law Journal, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Mr. Dahlstrom is a member of the Firm's Institutional Investor Practice and New Case Groups, and has extensive experience litigating cases under the PSLRA. He was partner-in-charge of *In re Comverse Technology Sec. Litig.*, No. 06-CV-1825 (E.D.N.Y.), in which the Firm, as Lead Counsel, recovered a $225 million settlement for the Class – the second-highest ever for a case involving the back-dating of options – and obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a lead plaintiff, in a manner consistent with *Dura*, 544 U.S. 336 (2005). In *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), Mr. Dahlstrom obtained the first class certification in a federal securities case involving fraud by analysts.

Mr. Dahlstrom is the partner-in-charge in many of the Firm's pending securities fraud class actions and has, in addition to *Comverse*, obtained significant settlements. *See In re Sealed Air Corp. Sec. Litig.*, No. 03-CV-4372 (D.N.J.)($20 million settlement approved

December 2009); *In re Safety-Kleen Stockholders Securities Litigation*, 3:00-736-17 (D. S.C.) (as Co-Lead Counsel, Firm obtained $54.5 million settlement); *In re Livent, Inc. Noteholders Securities Litigation*, 98 Civ. 7161 (S.D.N.Y.) (Firm, as sole Lead Counsel, obtained $17 million settlement, plus $36 million judgment (including interest)); and *In re Woolworth Corporation Securities Class Action Litigation*, 94 Civ. 2217 (S.D.N.Y.) (Firm, as Co-Lead Counsel, secured a $20 million settlement).

Mr. Dahlstrom was a member of the trial team in *In re ICN/Viratek Securities Litigation*, 87 Civ. 4296 (S.D.N.Y.), which after trial, settled for $14.5 million. The court praised the trial team stating:

> [P]laintiffs' counsel did a superb job here on behalf of the class. . . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task. . . . The trial work was beautifully done and I believe very efficiently done.

In November 2009, Mr. Dahlstrom spoke at the SACRS Fall Conference, as the featured speaker at the Board Chair/Vice Chair Session entitled: "Cleaning Up After the 100 Year Storm. How trustees can protect assets and recover losses following the burst of the housing and financial bubbles."

Mr. Dahlstrom is admitted to practice in New York and Illinois, as well as the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, Western District of Pennsylvania, the United States Courts of Appeals for the Fourth, Sixth, Seventh and Eight Circuits, and the United States Supreme Court.

## D. BRIAN HUFFORD

D. Brian Hufford joined the Pomerantz Firm in April 1993 and became a partner in July 1995. After obtaining a Masters of Urban Affairs from Wichita State University in 1982, Mr. Hufford attended the Yale Law School, where he was Notes and Topics Editor for the *Yale Law and Policy Review* and was awarded the Thomas I. Emerson Prize for the Outstanding Legislative Services Project. After graduating from Yale in 1985, Mr. Hufford spent two years in Washington, D.C. as an Honors Attorney in the United States Department of the Treasury's Honors Law Program. From 1987 until he joined the Firm in 1993, he was a litigation associate at Davis Polk & Wardwell, where he worked primarily on securities and class actions. His article "*Deterring Fraud vs. Avoiding the Strike Suit: Reaching an Appropriate Balance,*" was published in 61 *Brooklyn Law Rev.* 593 (Summer 1995).

Resident in the Firm's Columbus, Ohio office, Mr. Hufford has prosecuted not only a number of securities and antitrust cases, but is also the attorney-in-charge of the Firm's Insurance Practice Group. Mr. Hufford is the partner-in-charge of the *United Health-Group* case, where in December 2009, the Court granted preliminary approval to a $350 million settlement. As Co-Lead Counsel, he obtained the $250 million settlement in

*Wachtel v. Health Net, Inc.*, No. 01-CV-4183 (D.N.J.), one of the largest settlements ever reached in a health insurance litigation. Recently Pomerantz was selected by the Judicial Panel on Multidistrict Litigation to lead the *Aetna Health Insurance Litigation*. The Court specifically acknowledged the work of Mr. Hufford as a critical basis for its decision.

Mr. Hufford's efforts have set numerous important precedents. *See, e.g., Batas v. Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001), (court upheld the adequacy of pleading of the claim that Prudential relied on improper procedures for the determination of medical necessity in its health insurance contracts); *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997) (motion to dismiss denied, with court ruling that plaintiff had adequately alleged that defendant breached fiduciary duties under ERISA by misrepresenting the financial incentives it paid to physicians to reduce medical expenditures); *American Medical Association v. United Healthcare Corp.*, 2002 U.S. Dist. LEXIS 20309 (S.D.N.Y. Oct. 23, 2002) (motion to dismiss denied where plaintiffs claimed that the defendant relied on an improper database for determining "usual, customary and reasonable" fees for the purpose of reimbursing subscribers for services received from out-of-network health care providers). Mr. Hufford was also the partner-in-charge in *Addison v. American Medical Security*, Case No. CA 001455-AB (Cir. Ct., Palm Beach Cty., Fla.), in which plaintiffs won a two-week bench trial.

Mr. Hufford has written and lectured in the area of healthcare litigation. The court in *Orthopaedic Surgery Associates of San Antonio v. Prudential Health Car Plan, Inc.*, quoted extensively an article written by Mr. Hufford for a PLI Seminar, entitled "*Managed Care Litigation: The Role of Providers*," 1216 PLI/Corp. 487 (Nov. 2000), citing it as "instructive." He served as a panelist for a forum sponsored by the American Corporate Counsel Association entitled "Considerations in Deciding Whether to Mediate, Arbitrate or Litigate Business Disputes." Further Mr. Hufford was featured in the book *Net Law: How Lawyers Use the Internet*, by Paul Jacobsen (Jan. 1997), which discusses how he has effectively used the Internet to investigate some of the firm's pending class actions.

Mr. Hufford is admitted to practice in New York and Ohio, the United States District Courts for the Southern and Eastern District of New York, and the United States Courts of Appeals for the Second and Third Circuits.

## ROBERT J. AXELROD

Robert J. Axelrod, a Pomerantz partner, practices securities, antitrust, and insurance litigation. As a member of the Firm's Insurance Practice Group, Mr. Axelrod, together with partner, Brian Hufford, is litigating cases on behalf of a number of medical associations and subscribers, against such insurers as United Healthcare Corporation, CIGNA, Aetna, Wellpoint, First American Title Insurance Company, Commonwealth Land Title Insurance Company and Fidelity. Mr. Axelrod was on the successful trial team in the action against American Medical Security. Mr. Axelrod was also part of the Pomerantz Litigation team in *Wachtel v. Health Net Inc.* ($200 million cash settlement); and *Steinberg v. Nationwide Mutual Ins. Co.* (E.D.N.Y.) (settlement equivalent to 50% of total damages possible had statute of limitation been waived and had additional defendants been joined).

Mr. Axelrod serves as a member of the Class Action Committee of the New York State Bar Association. He is a member of the Temple University College of Liberal Arts Alumni Board, and serves as a trustee and General Counsel of Temple Beth El in Huntington, New York.

Mr. Axelrod is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and Third Circuits.

## MICHAEL M. BUCHMAN

Michael M. Buchman, a Pomerantz partner, has litigated complex antitrust and consumer protection class action for over ten years. Mr. Buchman served as an Assistant Attorney General in the Antitrust Bureau of the New York State Attorney General's Office after receiving an LL.M. in international antitrust and trade law from Fordham University School of Law. Mr. Buchman received his J.D. from The John Marshall Law School. Over the past several years, Mr. Buchman has spearheaded an effort to challenge anticompetitive conduct by pharmaceutical companies designed to artificially inflate the price of brand name prescriptions drugs. He has served as Co-Lead counsel in a number of "generic drug" cases, including *In re Buspirone Antitrust Litig.*, MDL 1413 (S.D.N.Y.) (obtaining a $90m settlement); *In re Relafen Antitrust Litig.*, 01-CV-12222 (D. Mass.) (obtaining a $75m settlement); and *In re Augmentin Antitrust Litig.*, 02 Civ. 445 (E.D. Va. Norfolk Div.) (obtaining a $29m settlement). Some of the settlements achieved by Mr. Buchman have resulted in substantial "cy pres" monetary awards for well known charitable organizations. For example, in *Augmentin*, awards exceeding $100,000 were donated on a "cy pres" basis to St. Jude Children's Research Hospital and Children's Rights of New York.

Mr. Buchman's efforts have been acknowledge by courts. Former Chief Judge William G. Young noted in *Relafen*

> [t]his proposed settlement is the result of a great deal of very fine lawyering

Similarly, in *Buspirone*, Judge John G. Koeltl stated:

> Let me say that the lawyers in this case have done a stupendous job. They really have.

His "tenacious and skillful" work has also been recognized outside of the "generic drug" cases by Judge Lewis A. Kaplan of the Southern District of New York in an international antitrust class action brought on behalf of foreign purchasers and sellers of works of art sold at auction by Christie's and Sotheby's, which resulted in a $40 million settlement.

Mr. Buchman was actively involved in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.) (resulting in a $1.027 billion settlement) and *In re Visa Check/Mastermoney Antitrust Litigation*, CV 96-CV-5238 (E.D.N.Y.) (resulting in a $3billion settlement), two of the largest antitrust settlements in the over one hundred year history of the Sherman Act.

Mr. Buchman frequently speaks on antitrust and consumer protection class action issues. On February 7, 2007, he spoke at the 4th National In-House Counsel Conference on Managing Complex Litigation on class certification issues. In 2002, he was interviewed by and appeared on the CBS Evening News in connection with generic drug litigation. That same year, he presented at the Practicing Law Institute's 10th Annual Consumer Financial Services Litigation on Recent Developments in State Unfair Deceptive Acts and Practices Statutes and Private Attorney General Litigation.

Mr. Buchman has also authored or co-authored articles on procedure or competition law, including a Task Force on Dealer Terminations for The Association of the Bar of the City of New York, Committee on Antitrust and Trade Regulation entitled *Dealer Termination in New York* dated June 1,1998, and *What's in a Name — the Diversity Death-Knell for Underwriters of Lloyd's of London and their Names; Humm v. Lombard World Trade, Inc.*, Vol. 4, Issue 10 International Insurance Law Review 314 (1996).

Mr. Buchman is admitted to practice in New York and Connecticut, the United States District Courts for the Southern and Eastern Districts of New York, District of Connecticut, and District of Arizona, the United States Court of Appeals for the Second Circuit, the United States Court of International Trade and the United States Supreme Court.

## JASON S. COWART

Jason S. Cowart, a Pomerantz partner, graduated *cum laude* from Northwestern University Law School in 1999. While in law school, he won the Moot Court competition and was an editor of the Journal of International Law and Business.

After law school, Mr. Cowart served as a law clerk to United States District Court Judge Richard Enslen. Prior to joining the Pomerantz Firm, Mr. Cowart was a litigation

associate at Sidley Austin Brown & Wood LLP for over four years. During that time, Mr. Cowart concentrated his practice on complex commercial litigation including antitrust, contract, fraud, and health care-related matters.

Mr. Cowart is the co-author of *State Immunity, Political Accountability and Alden v. Maine*, 75 Notre Dame L. Rev. 1069 (2000). In January 2010, as a featured speaker at the Public Funds Summit, he presented "Where Are the Corporate Governance Reforms? An up-to-the-minute overview of initiatives designed to increase shareholder power."

Mr. Cowart is admitted to practice in New York and the District of Columbia., the United States District Court for the Southern and Eastern Districts of New York, Western District of Michigan, and the District of Columbia. Mr. Cowart also is admitted to practice before the United States Supreme Court.

## CHERYL D. HAMER

Cheryl D. Hamer joined Pomerantz in January 2003, and became a partner in January 2007. She is the resident partner in the Firm's Washington, DC office.

Ms. Hamer is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University

Ms. Hamer has long experience working with Public and Taft-Hartley pension and welfare funds. As a member of the Firm's Institutional Investor Practice Group, she has been involved in a number of cases, including securities *In re American Italian Pasta Co. Sec. Litig.* and *In re Symbol Technologies, Inc. Sec. Litig*

Before joining Pomerantz, Ms. Hamer served as Of Counsel to nationally known securities class action law firms focusing on plaintiff securities fraud litigation. In private practice for over 20 years, she has litigated, in both state and federal courts, Racketeer Influenced and Corrupt Organizations, Continuing Criminal Enterprise, death penalty and civil rights cases. She has also authored numerous criminal writs and appeals.

Ms. Hamer was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration, where she taught Non-Profit Corporate Law, from 1996 to 1998.

Ms. Hamer currently serves as a pro bono attorney for the Mid-Atlantic Innocence Project. She has served as vice-chair of Freeing the Innocent Imprisoned Committee, chair and vice-chair of the Death Penalty Litigation Committee, Liaison to American Bar Association, and a member of the Nominating Committee of the National Association of Criminal Defense Lawyers and as a Liaison to the American Bar Association. She has served on numerous non-profit boards of directors including Shelter From the Storm, the Native American Preparatory School and the Southern California Coalition on Battered Women for which she received a community service award. She is a member

of the Litigation and Individual Rights and Responsibilities Sections of the American Bar Association, the Corporation, Finance & Securities Law and Criminal Law and Individual Rights Sections of the District of Columbia Bar, the litigation and International Law Sections of the California State Bar, and the National Association of Public Pension Attorneys (NAPPA).

Ms. Hamer is admitted to practice in the State of California, the District of Columbia and the State of New Mexico, the United States District Court for the Northern, Southern, Eastern and Central Districts of California, the District of New Mexico, the District of Columbia, the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Tenth and Eleventh Circuits, and the United States Supreme Court.

## JEREMY A. LIEBERMAN

Jeremy A. Lieberman became associated with the Firm in August 2004 and became a partner in January 2010.

Mr. Lieberman graduated from Fordham University School of Law in 2002. While in law school, Mr. Lieberman served as a staff member of the *Fordham Urban Law Journal*. Upon graduation, Mr. Lieberman began his career at Chadbourne & Parke LLP as a litigation associate, where he specialized in complex commercial litigation.

At Pomerantz, Mr. Lieberman specializes in securities litigation. He has an active role in a number of high-profile securities class and derivative actions. Mr. Lieberman regularly consults with Pomerantz's international institutional clients, including pension funds, about their rights under the U.S. securities laws.

He is a member of the New York State Bar Association and the Federal Bar Council. He is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second Circuit.

## H. ADAM PRUSSIN

H. Adam Prussin, a Pomerantz partner, graduated *cum laude* from Yale College in 1969, and, after obtaining a Masters Degree from the University of Michigan in 1971, received his J.D. from Harvard Law School in 1974.

In addition to securities litigation, Mr. Prussin has extensive experience prosecuting shareholder derivative actions. Mr. Prussin was special litigation counsel in the derivative actions on behalf of Summit Metals, Inc., which resulted in entry of judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff. Mr. Prussin is Co-Lead Counsel in several of the Firm's pending derivative actions.

Mr. Prussin has published several articles on the subject of the standards and procedures for obtaining dismissal of shareholder derivative actions, including *"Termination of Derivative Suits Against Directors on Business Judgment Grounds: From Zapata to Aronson,"* 39 The Business Lawyer 1503, 1984; *"Dismissal of Derivative Actions Under the Business Judgment Rule: Zapata One Year Later,"* 38 The Business Lawyer 401, 1983; and *"The Business Judgment Rule and Shareholder Derivative Actions: Viva Zapata?,"* 37 The Business Lawyer 27, 1981. In June 2009 he spoke at the 6th Annual Securities Litigation Conference in New York, participating in the panel discussion, "From Behind Enemy Lines: The Perspective of Two Prominent Plaintiff Attorneys."

Before joining the Firm, Mr. Prussin was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. Mr. Prussin played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

Before joining Silverman, Harnes in 1994, Mr. Prussin was Of Counsel to Weil, Gotshal & Manges. While there, he represented numerous corporate defendants in shareholder derivative actions and class actions, and also in general commercial, bankruptcy and antitrust disputes.

Mr. Prussin is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Ninth and D.C. Circuits.

## MURIELLE STEVEN WALSH

Murielle Steven Walsh, a Pomerantz partner, graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Ms. Steven Walsh interned with the Kings County District Attorney's Office and worked within the mergers and acquisitions group of Sullivan & Cromwell.

At Pomerantz, Ms. Steven Walsh specializes in securities and corporate governance-related litigation. Ms. Steven Walsh was part of the trial team in *Lewis v. Beall*, a derivative action in California state court that focused on the duties of corporate directors. More recently, in *In re Livent Noteholders' Securities Litigation*, Ms. Steven Walsh was one of the lead attorneys prosecuting this securities class action against the company's former chief executive officers, and in that case convinced the Second Circuit to uphold the district court's grant of summary judgment on behalf of plaintiffs. She is also part of the team working on the *EBC I v. Goldman Sachs* case.

Ms. Steven Walsh currently serves as a member of the editorial board for Class Action Reports. She previously served as a Solicitor for the Legal Aid Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Ms. Steven Walsh is admitted to practice in New York and in the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second Circuit.

## JOSHUA B. SILVERMAN

Joshua B. Silverman is Of Counsel to Pomerantz. He is a 1993 graduate of the University of Michigan, where he received *Phi Beta Kappa* honors, and a 1996 graduate of the University of Michigan Law School.

Mr. Silverman specializes in securities litigation with an emphasis on litigation involving structured financial instruments. He serves as Co-Lead counsel for three large public funds in litigation related to Countrywide's mortgage-backed securities. Mr. Silverman played a key role in the Firm's representation of investors before the United States Supreme Court in *StoneRidge*, and is engaged in the prosecution of many of the Firm's pending class cases, including *In re Sealed Air Corp. Sec. Litig.*

Before joining Pomerantz, Mr. Silverman practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in commodities fraud and civil RICO cases. Mr. Silverman also spent two years as a securities trader.

Mr. Silverman is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeals for the Seventh and Eighth Circuits, and the United States Supreme Court.

## LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar is Of Counsel to Pomerantz. She graduated from Chicago-Kent College of Law in 1996, and spent the next five years specializing in complex litigation, handling a broad variety of matters. She has been associated with the Firm since January 2002. Ms. Handelman Smollar specializes in securities fraud litigation. Ms. Handelman Smollar co-authored an article for the Illinois Institute for Continuing Legal Education (IICLE) entitled "*Shareholder Derivative Suits and Stockholder Litigation in Illinois,*" published in IICLE Chancery and Special Remedies 2004 Practice Handbook.

Ms. Handelman Smollar is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, Eastern District of Missouri, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## JAY DOUGLAS DEAN

Jay Douglas Dean graduated in 1988 from Yale Law School. While at Yale, Mr. Dean was Senior Editor of the Yale Journal of International Law. In 2009, he became an associate at Pomerantz, where he focuses on insurance litigation.

For many years, Mr. Dean served as an Assistant Corporation Counsel in the Office of the Corporation Counsel of the City of New York, most recently in its Pension Division, which represents the Trustees of the City's five pension funds.

Prior to that, Mr. Dean was a litigation associate with the firms of Berlack Israels & Liberman (currently known as Brown Rudnick LLP), Shea & Gould, and Curtis, Mallet-Prevost, Colt & Mosle LLP., where he had extensive involvement in commercial and securities matters. His experience includes criminal defense of junk bond underwriter Drexel Burnham Lambert, the successful jury trial of a bank's claims against its fidelity bond issuer and trial preparation on behalf of institutional plaintiffs in the *Wedtech* securities litigation.

Mr. Dean was co-author of chapters entitled "Criminal Forfeiture" and "Racketeer Influenced and Corrupt Organizations" in the *Criminal Defense Techniques* treatise published by Matthew Bender in 1990.

Mr. Dean is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York, and the Second Circuit Court of Appeals.

## JESSICA N. DELL

Jessica N. Dell graduated from CUNY School of Law in 2005. At CUNY Ms. Dell participated in three semesters of the school's award winning clinical programs where she represented indigent clients in family court and filed comprehensive applications for immigration relief under the Violence Against Women Act.

In addition to her clinical work she has interned at the Urban Justice Center, National Advocates for Pregnant Women, and at Human Rights Watch, where she was the recipient of an Everett fellowship for her work in the HIV/AIDS division.

Ms. Dell focuses on the prosecution of securities fraud litigation.

## R. JAMES HODGSON

R. James Hodgson graduated from the University of Pennsylvania Law School in 2003. While in law school, he served as a judicial intern to the Honorable John F. Keenan, United States District Judge, Southern District of New York. He also served as a Senior Editor of the University of Pennsylvania Law Review and, upon graduation, was recognized with an award for "Exemplary Public Service while at Penn Law School."

Following law school, Mr. Hodgson was associated with the law firm of Fried, Frank, Harris, Shriver & Jacobson LLP for nearly four years. At Fried, Frank, Mr. Hodgson focused his practice on general commercial and securities litigation, regulatory defense, copyright enforcement, and white-collar criminal defense. In addition, he has tried (on a

pro bono basis) numerous asylum law cases on behalf of refugees seeking asylum protection in the United States.

Mr. Hodgson focuses on the prosecution of securities fraud litigation.

Mr. Hodgson is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit. He is a member of the Association of the Bar of The City of New York.

## ADAM G. KURTZ

Adam G. Kurtz graduated cum laude from New York Law School in 1988, where he was Book Review Editor of the New York Law School Law Review. In June 2009, Mr. Kurtz received an MBA from the Baruch/Mt. Sinai Graduate Program in Health Care Administration. He is a member of the American Health Lawyers Association.

Following law school, Mr. Kurtz served as a law clerk to the Honorable Juan G. Burciaga, then Chief United States District Judge, District of New Mexico and began his career as a litigation associate at Cravath, Swaine & Moore, where he worked on complex securities fraud and antitrust litigation. He was a solo practitioner in New Mexico where he concentrated on federal criminal defense and civil litigation. In addition, Mr. Kurtz served as an Assistant Corporation Counsel in the General Litigation and Labor and Employment law divisions of the New York City Law Department.

Mr. Kurtz focuses on the prosecution of complex antitrust litigation.

Mr. Kurtz is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

## MARIE L. OLIVER

Marie L. Oliver graduated *cum laude* from Rutgers University School of Law in 2008. While in law school, she was an articles editor for the *Rutgers Journal of Law and Public Policy* and a Dean's Academic Excellence Scholar. She received the Health Law Award from the American Bar Association and Bureau of National Affairs, and the Pro Bono Award for Significant Service, for her pro bono projects on domestic violence, bankruptcy, and income tax assistance issues. During law school, she interned for the Honorable Petrese B. Tucker of the United States District Court for the Eastern District of Pennsylvania.

Ms. Oliver focuses on the prosecution of securities fraud litigation.

Ms. Oliver is a member of the New York County Lawyers Association and the New York State Bar Association. She is admitted to practice in New York.

### FEI-LU QIAN

Fei-Lu Qian graduated from Albany Law School of Union University in 2003. Mr. Qian was Associate Editor of the Albany Law Review. While in law school, he interned at the New York State Office of the Attorney General.

Mr. Qian began his legal career as an associate at Lovell Stewart Halebian LLP, where his area of practice was securities litigation.

Mr. Qian focuses on the prosecution of securities fraud litigation.

Mr. Qian is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

### TAMAR A. WEINRIB

Tamar A. Weinrib graduated from Fordham University School of Law in 2004 and, while there, participated in and coached Moot Court competitions.

After law school, Ms. Weinrib worked as a litigation associate in the New York office of Clifford Chance US LLP for over three years, where she focused on complex commercial litigation. In addition, she was involved in pro bono cases, including a criminal appeal and a housing dispute filed with the Human Rights Commission.

Ms. Weinrib focuses on the prosecution of securities fraud litigation.

Ms. Weinrib is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

### SUSAN J. WEISWASSER

Susan J. Weiswasser graduated from Brooklyn Law School in 2000. While in law school, she served as a law clerk intern to the Honorable Edward R. Korman, Judge of the United States District Court for the Eastern District of New York. She also served as a legal intern with the New York State Capital Defender Office. As an attorney, she has worked with the Monday Night Law and Pro Bono Bankruptcy Clinics of The City Bar.

Ms. Weiswasser's practice focuses on insurance and securities litigation.

Ms. Weiswasser is a member of the New York City Bar Association. She is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Third Circuit.

# Exhibit 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR)<br><br>ECF CASE |

### DECLARATION OF ROBERT WEISER
### IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND
### REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF
### THE WEISER LAW FIRM, P.C.

I, ROBERT WEISER, declare as follows:

1.      I am the managing director of The Weiser Law Firm, P.C. (the "Weiser Firm"). I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the "Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.

2.      The Weiser Firm represents stockholders in different types of litigation, but it specializes in stockholder derivative litigation, and I have spent most of my professional career litigating stockholder derivative actions.  Accordingly, I am very aware of relevant authority relating to the legal issues in this type of litigation, along with prevailing corporate governance practices.

3.      The Weiser Firm acted as one of plaintiffs' counsel in the Action.   In this capacity, we assisted in the prosecution of the Action, including, but not limited to, working on fact and expert discovery, and researching and drafting correspondence and pleadings.

4.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in the Action, and the lodestar calculation based on my firm's current billing rates.  For

personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

5.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

6.      The total number of hours expended on the Action by my firm from its inception through and including January 31, 2011 is 2,873.75. The total lodestar for my firm for that period is $1,102,412.50, all of which was attorneys' time. We did not bill any staff time to this file.

7.      My firm's lodestar figures are based upon the firm's billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.      As detailed in Exhibit 2, my firm has incurred a total of $57,066.98 in unreimbursed expenses in connection with the prosecution of the Action from its inception through and including January 31, 2011.

9.      The expenses incurred in the Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

10.     With respect to the standing of the Weiser Firm, attached hereto as Exhibit 3 is our firm biography which details the background and experience of the attorneys at my firm who

principally litigated the Action.

     I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on February 1, 2011.

                                          _____
                                          **ROBERT WEISER**

# Exhibit 1

**EXHIBIT 1**

*In re Pfizer Inc. Shareholder Derivative Litigation*
**Case No. 09-CV-7822 (JSR)**

**The Weiser Law Firm, P.C.**

**TIME REPORT**

**Inception through January 21, 2011**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Robert Weiser | 340 | $595 | $202,300.00 |
| | | | |
| **Of Counsel** | | | |
| Kathleen Herkenhoff | 202.5 | $450 | $91,125.00 |
| | | | |
| **Associates** | | | |
| Debra Goodman | 165 | $500[1] | $75,500.00[2] |
| Brett Stecker | 367 | $375 | $137,625.00 |
| Jeffrey Ciarlanto | 271 | $225 | $60,975.00 |
| | | | |
| **Staff Attorneys** | | | |
| Katie Ryan | 152.25 | $350 | $53,287.50 |
| Jeff Silow | 1,376 | $350 | $481,600.00 |
| | | | |
| | | | |
| **TOTAL LODESTAR** | 2,873.75 | | $1,102,412.50 |

---

[1]   This reflects her current billing rate when she founded her own firm in April, 2010.  Her billing rate at the Weiser Firm was $400 per hour.

[2]   Ms. Goodman billed 75 hours in the Action at $400 per hour while she was employed by the Weiser Firm, and 95 hours at $500 after she founded her own firm.

# Exhibit 2

**EXHIBIT 2**

*In re Pfizer Inc. Shareholder Derivative Litigation*
**Case No. 09-CV-7822 (JSR)**

**The Weiser Law Firm, P.C.**

**EXPENSE REPORT**
**Inception through January 21, 2011**

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | $75.00 |
| On-Line Legal & Factual Research | $29,008.88 |
| Faxes | $23.00 |
| Postage & Express Mail | $109.20 |
| Travel | $6,213.40 |
| Internal Copying | $87.50 |
| Investigator | $1,500.00 |
| Deposition & Discovery Costs | $50.00 |
| Contributions to Litigation Fund | $20,000.00 |
| **TOTAL EXPENSES:** | **$57,066.98** |

# Exhibit 3

# THE WEISER LAW FIRM, P.C.

## A LEADING NATIONAL SHAREHOLDER LITIGATION FIRM DEDICATED EXCLUSIVELY TO PROTECTING INDIVIDUAL AND INSTITUTIONAL SHAREHOLDERS' INTERESTS AND PROMOTING IMPROVED CORPORATE GOVERNANCE PRACTICES

### *FIRM BIOGRAPHY*

The Weiser Law Firm, P.C., a national shareholder litigation firm, was founded by its two principals, Patricia C. Weiser and Robert B. Weiser, in December, 2004. Prior to December, 2004, Ms. Weiser and Mr. Weiser had both managed litigation groups at one of the nation's largest shareholder litigation firms. The Weiser Law Firm is devoted to protecting the interests of individual and institutional investors in shareholder class, derivative and ERISA actions in state and federal courts nationwide. The attorneys at The Weiser Law Firm devote a large percentage of their time to addressing complex corporate governance issues.

### PATRICIA C. WEISER

Ms. Weiser, a founding member of the firm, received her law degree from the Widener University School of Law in Wilmington, Delaware. While in law school, she served as an intern for the Honorable Clarence J. Newcomer, U.S.D.J. for the Eastern District of Pennsylvania. She is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the Eastern District of Michigan.

Ms. Weiser's practice is focused on shareholder class action litigation challenging management misconduct in connection with corporate takeovers and disputed contests for corporate control. Ms. Weiser participated as lead or co-lead counsel in the following notable cases:

> *In re Storage USA Shareholder Litigation (Shelby County Chancery Court, Tennessee)*, in which Class Counsel were solely responsible for an aggregate financial benefit to the class of $10.5 million in connection with the acquisition of the company by its controlling shareholder;

*In re Sodexho Marriot Shareholders Litigation (Delaware Chancery Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $166 million for members of the class, in connection with the acquisition of the company by its controlling shareholder, Sodexho Alliance, S.A.;

*In re Travelocity.com Shareholder Litigation, (Delaware Chancery Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $75 million for members of the class, in connection with the acquisition of the company by its controlling shareholder, Sabre Holdings;

*In re Delhaize America Shareholder Litigation (North Carolina Business Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $225 million for the members of the class in connection with the acquisition of the company by it controlling shareholder; and

*Lieb, et al. v. Unocal Corporation, et al. (Los Angeles Superior Court)*, in which Class Counsel shared responsibility for creating a $500 million benefit via the increased consideration paid by Chevron Corp. to Unocal shareholders in the merger. In addition, Co-Lead Counsel caused defendants to issue important additional disclosures relating to the proposed merger with Chevron prior to the shareholder vote on the merger.

Ms. Weiser was also part of the litigation team that won an injunction in the seminal Delaware Chancery Court case *In re Pure Resources Shareholder Litigation*, forcing changes to certain terms of the proposed transaction as well as the public disclosure of significant additional information concerning the transaction, and, ultimately being partially responsible for an aggregate financial benefit of approximately $41 million for the shareholder class.

## ROBERT B. WEISER

Mr. Weiser, a founding member of the firm, received his law degree from the Villanova University School of Law. While in law school, he also served as a law clerk for the Honorable Clarence J. Newcomer, U.S.D.J. for the Eastern District of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Weiser's practice is focused on shareholder derivative litigation and ERISA class action litigation. While employed at his prior firm, Mr. Weiser managed the firm's shareholder derivative litigation practice, with a particular focus on

corporate governance matters.  Mr. Weiser has been involved in some of the most successful

shareholder derivative actions in the history of corporate litigation.  Over the past several years,

Mr. Weiser has been among the nationwide-leaders in prosecuting "option backdating cases" on

a derivative basis.  In addition to being among the attorneys that developed the central pleading

theory in the backdating cases (which in turn produced some of the ground-breaking decisions

in this area of law), Mr. Weiser (along with his co-counsel) successfully prosecuted backdating

cases which caused the subject corporations to cumulatively receive tens of millions of dollars

in benefits.  More recently, Mr. Weiser has launched a wave of actions that challenge the

executive compensation awarded at the nation's largest banks which received federal "bailout"

funds.  A sampling of the notable cases in which Mr. Weiser has served as lead or co-lead

counsel include:

> *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003).  Mr. Weiser was co-lead counsel in the Oracle action.  In that case, plaintiffs challenged certain multi-million dollar stock sales made by Oracle's senior officers, including Larry Ellison, Oracle's founder.  Oracle's board of directors appointed a "special litigation committee" to investigate plaintiffs' claims, and after a lengthy investigation, the committee moved to dismiss the case, having concluded that plaintiffs' claims lacked merit.  Among other things, plaintiffs' challenged the independence of the committee members, their good faith, and their ultimate conclusion.  The court denied the committee's motion, which allowed the action to proceed to trial.  At the time it was issued, the Oracle decision was one of only four reported Delaware cases where a special litigation committee's motion to dismiss was denied by a Delaware chancellor and many commentators view the Oracle case as a landmark decision for shareholders.  For example, the *Wall Street Journal* called the seminal decision "one of the most far-reaching ever on corporate governance." This case eventually settled for $100 million on the eve of trial.  Mr. Weiser believes that the $100 million recovery was the second largest derivative settlement ever.  The Oracle case, and its impact on corporate governance matters nationwide, is the subject of numerous scholarly articles and treatises.

> *In re Affiliated Computer Services Derivative Litig.,* USDC for the ND of TX, No. 3:06-cv-1110.  In this option backdating action, plaintiffs challenged the stock option grants received by ACS' officers & directors over a multi-year period.  Plaintiffs in a related action purported to settle these claims for approximately $1.8 million, a paltry sum which Mr. Weiser and his co-counsel believed was far less than they were worth.  After objecting to the settlement of the related action, and engaging in a contentious discovery battle, Mr. Weiser and his co-counsel were able to materially enhance the settlement by securing a $30 million recovery for ACS.  Mr. Weiser believes that this is the largest derivative recovery in an action litigated in Texas.

*In re KB Home Derivative Litigation*, Superior Court of the State of CA, Los Angeles County, Master File No. BC355179.  Mr. Weiser was co-lead counsel in this action.  In this option backdating action, plaintiffs challenged the stock option grants received by KB Home's officers & directors over a multi-year period.  In addition to obtaining valuable corporate governance enhancements for KB, Mr. Weiser and his co-lead counsel settled this action for benefits worth at least $30 million to KB, making it one of the largest derivative settlements in the history of California corporate litigation.

*David, et al., v. Wolfen, et al.*, Superior Court of the State of CA, Orange County, Lead Case No. 01-CC-03930 (the "Broadcom Derivative Action").  Mr. Weiser was co-lead counsel in the Broadcom Derivative Action.  Like the Oracle case, the Broadcom Derivative Action was also produced a ground-breaking settlement.  In connection with the eventual settlement of the Broadcom Derivative Action, plaintiffs were able to compel Broadcom to make sweeping, substantial changes to its corporate governance practices which included a provision which allows Broadcom's shareholders to nominate directors to Broadcom's Board.  In particular, the shareholder-nominated director provision was thought to be a highly significant and unusual achievement for Broadcom's shareholders.  As the *Associated Press* reported in commenting on the settlement: "[in contrast to the Broadcom settlement] the Securities and Exchange Commission has met fierce resistance to a proposal just to allow shareholder nominations under very limited circumstances."  This type of corporate governance relief has only been achieved in a handful of shareholder derivative actions, and it became a model for corporate governance settlements that followed.

*Barry v. Cotsakos*, CV 49084 (San Mateo County, CA) (the "Etrade Derivative Litigation").  Mr. Weiser was co-lead counsel in the Etrade Derivative Litigation.  Mr. Weiser believes that the Etrade Derivative Litigation is one of the most successful executive compensation cases ever brought against a publicly traded corporation's board of directors.  In that case, the plaintiff challenged the payment of excessive compensation awarded to Etrade's then-current Chief Executive Officer.  As a result of the settlement of the case, Etrade's Chief Executive Officer returned approximately $25 million to the Company, and he also agreed to forego other valuable financial benefits.  The Etrade settlement also provided for sweeping changes to the company's corporate governance practices and the structure of its Board.  These measures, and the resulting change in the public's perception of Etrade, were profiled in a September 8, 2003 *Wall Street Journal* article entitled "How One Firm Uses Strict Governance To Fix Its Troubles."  Since the time of the Etrade settlement, Etrade added independent directors to its Board, who have since forced out the company's Chief Executive Officer.  In response to these changes, the Company's stock increased more than 300% in the 18 months following the settlement and the "new" Etrade was the subject of several positive media reports.

*Klotz v. Parfet, et al.*,Case No. 03-06483-CK (In the Circuit Court of Jackson County, Michigan) (the "CMS Derivative Litigation").  Mr. Weiser was co-lead counsel in the CMS Derivative Litigation.  In that case, plaintiff alleged that CMS' Board of Directors failed to develop and implement adequate corporate governance practices and internal controls.  Plaintiff alleged that the Board's internal control failures caused the Company to suffer enormous damages to its reputation and prestige.  In settling the CMS Derivative Litigation, the Weiser Firm was able to recover $12 million for the Company, and the Board agreed to adopt what one commentator called "some of the most substantial corporate governance reforms" ever undertaken by a publicly traded corporation.  Mr.

Weiser believes that the CMS derivative settlement is the largest in the history of Michigan corporate litigation.

*Gebhardt v. Allumbaugh, et al.,* Case No. 2002-13602 (Harris County, Texas)(the "El Paso Derivative Litigation"). Mr. Weiser was lead counsel in the El Paso Derivative Litigation. This action centered on the Company's alleged anti-competitive conduct in California during that the state's energy crisis of 2001-02. In addition to making sweeping changes to the Board's structure and the Company's corporate governance practices, Mr. Weiser was able to secure a $16.75 million recovery for the Company. Mr. Weiser believes that the El Paso Derivative Litigation was either the first or second largest derivative settlement in Texas history at the time it was agreed to.

*Eliasoph v. Johnson*, C.A. No. 05–CVS-3698 (North Carolina General Civil Litigation Court)(the "SPX Derivative Litigation"). Mr. Weiser was lead counsel in the SPX Derivative Litigation. Like the Etrade Derivative Litigation, Mr. Weiser believes that the SPX Derivative Litigation is among the most successful executive compensation cases ever brought against a publicly traded corporation's board of directors. In this case, the plaintiff challenged the fairness of the Company's entire executive compensation structure. In connection with the settlement of the SPX action, the Company's board of directors agreed to adopt a new executive compensation plan which was designed in part, with plaintiff's counsel and her expert. The new compensation plan more closely aligned shareholder and management interests and it was estimated that the new plan would save the Company at least $25 million.

*In Re Staples, Inc. Shareholders Litigation*, 792 A.2d 934 (Del. Ch. June 5, 2001). Mr. Weiser was one of three lead counsel in the Staples action. In that case, plaintiffs secured a financial benefit worth at least $12 million to Staples by winning an injunction preventing Staples from holding a shareholder vote on an improperly disclosed recapitalization plan that would have unfairly benefitted Staples' insiders at the expense of the Company and its stockholders.

*Wanstrath v. Doctor R. Crants, et al.*, C.A. No. 99-1719-III (Tenn. Chan. Ct., 20th Judicial District, 1999)(the "Prison Realty Derivative Litigation"). In the Prison Realty Derivative Litigation, plaintiff challenged the transfer of assets from Prison Realty to a private entity owned and controlled by several of the Company's top executives. Plaintiffs also alleged that the proposed transaction would have crippled the Company's liquidity. Plaintiffs were able to halt the planned transaction, which prevented the Company from suffering a $120 million loss, which was a highly significant victory in light of the Company's then-precarious financial position. As a result of the settlement of the case, the members of the Company's top management were removed, the composition of the Board of Directors was significantly altered and important corporate governance provisions were also put in place to prevent future abuse. Notably, all of these corporate benefits occurred at a time when the Company was facing near-certain bankruptcy which would have wiped out shareholders' equity in the Company. Because the Company had adopted these significant changes, it was able to renegotiate the terms of its credit facility with its lenders and it never had to file for bankruptcy protection. Since the time the case was settled, the Company's new management has led the Company, now-named Corrections Corporation of America, to profitability, and the price of the common stock increased more than 400% in the two years following the settlement.

*Huscher v. Curley, et. al.*, No. 00 Civ. 21379 (Mich. Cir. Ct., 2000) (the "Sotheby's Derivative Litigation"). In the Sotheby's Derivative Litigation, plaintiffs alleged that the Company's Chief Executive Officer had entered into illegal price-fixing agreements with the Company's leading purported competitor, Christie's International PLC. As a result of the settlement of this case, the Company received the return of certain monetary benefits which had been provided to the Chief Executive Officer that were worth approximately $12 million to the Company. In addition, significant changes in the Company's top management and Board of Directors were achieved in conjunction with the settlement of the case.

Mr. Weiser has been a frequent commentator on corporate governance matters and has lectured on corporate governance issues in both this country and abroad.

## BRETT D. STECKER

Mr. Stecker is a graduate of Franklin & Marshall College and of Villanova University School of Law. While in college, Mr. Stecker earned a B.A. in Government and served as a legislative intern for United States Senator Alfonse M. D'Amato. While in law school, Mr. Stecker served as an Executive Member of the Moot Court Board and represented Villanova in national competitions. Upon graduation from law school, Mr. Stecker was an associate with the Litigation Department of Blank Rome LLP in Philadelphia, PA. After two years at that firm, Mr. Stecker moved to Weir & Partners, LLP, a boutique commercial litigation firm in Philadelphia, where he focused his practice on banking litigation in cases dealing with consumer lending, check fraud, and the enforcement of guarantee and other security agreements. At The Weiser Law Firm, Mr. Stecker concentrates his practice on shareholder derivative and ERISA litigation.

## JEFFREY J. CIARLANTO

Mr. Ciarlanto is a graduate of The Pennsylvania State University and Villanova University School of Law. While in college, Mr. Ciarlanto earned Bachelor of Arts degrees in Economics and Political Science and graduated with honors. During law school, Mr. Ciarlanto served as the Business Editor of Villanova Law's Sports and Entertainment Law Journal. Mr. Ciarlanto also served as a judicial extern for the Honorable Matthew D. Carrafiello of the Philadelphia Court of Common Pleas. Mr. Ciarlanto is licensed to practice law in Pennsylvania and New Jersey. Prior to joining The Weiser Law Firm, Mr. Ciarlanto was an associate at Marks, O'Neill, O'Brien & Courtney, P.C., where he focused his practice on labor and employment law. At The Weiser Law

Firm, Mr. Ciarlanto concentrates his practice on shareholder derivative and ERISA litigation.

## HENRY J. YOUNG

Mr. Young is a graduate of the University of Sheffield, England and of William Mitchell College of Law, Minnesota.  Mr. Young earned a B.A. in Archaeology and worked as an archaeologist before moving to the United States and attending law school.  During law school, Mr. Young received the 2000 Kennedy Scholarship for Public Service and the 1997 Founders' Scholarship.  He was also a guest student at Brooklyn Law School specializing in International Law.  Mr. Young has devoted almost his entire legal career to representing investors harmed by corporate fraud and executive malfeasance.  At The Weiser Law Firm, he concentrates his practice on protecting the interests of investors in corporate mergers and acquisitions.

## KATHLEEN A. HERKENHOFF

Ms. Herkenhoff joined The Weiser Law Firm in January 2010, opening the firm's San Diego, California office. As detailed below, Ms. Herkenhoff has been exclusively litigating securities actions for 16 years, first at the Securities and Exchange Commission ("SEC") and most recently as a Partner at Coughlin Stoia Geller Rudman & Robbins LLP in San Diego.

Ms. Herkenhoff earned her Bachelor of Arts degree in English Literature from the University of California (Berkeley) in 1989. She earned her Juris Doctor degree from Pepperdine University School of Law in 1993, where she was on the Dean's Honor List and received American Jurisprudence Awards in both Constitutional Law and Agency-Partnership. Following law school, Ms. Herkenhoff worked at the SEC's Los Angeles office, investigating and prosecuting complex securities fraud and insider trading actions.

In 1997, Ms. Herkenhoff joined Milberg Weiss Bershad Hynes & Lerach LLP in Los Angeles, California, and ultimately moved to the firm's San Diego office, where she served as a Partner from 2002 to 2009 (the San Diego office became known as Coughlin Stoia). Over the past 12 years at Coughlin Stoia, Ms. Herkenhoff has practiced in all areas of securities class and derivative

litigation, working tirelessly to achieve nearly one billion in settlement recoveries for victimized shareholders. Many of these settlements also include sweeping corporate governance improvements negotiated by Ms. Herkenhoff. A sample of notable settlements includes:

- *$618 million in opt-out litigation against AOL Time Warner, Inc.*
- *$122 million in class action against Mattel, Inc.*
- *$100 million in class action against Honeywell International, Inc.*
- *$30+ million in derivative stock option backdating cases*

Ms. Herkenhoff continues her nearly two decades of securities litigation experience by joining the firm's extensive securities and derivative practice groups.  Ms. Herkenhoff is licensed to practice law in all California state and federal courts, as well as in the District of Colorado

### LOREN R. UNGAR

Mr. Ungar earned his Bachelor of Science degree in Business Administration from the University of Arizona in 1998 and graduated with a joint J.D./M.B.A. degree from Hofstra University School of Law in 2001.  During law school, Mr. Ungar served as a legal intern for the Office of the New York State Attorney General and was selected to study abroad at the University of Nice School of Law in Nice, France, where he studied under Justice Antonin Scalia of the United States Supreme Court.

Prior to joining The Weiser Law Firm, Mr. Ungar worked for an AV rated law firm in Manhattan where he handled all aspects of trial and appellate practice in New York state and federal courts, specializing in commercial, products liability and toxic tort ligation.  At The Weiser Law Firm, Mr. Ungar litigates a broad range of securities class actions, including corporate mergers, acquisitions and buyouts in state and federal courts across the country.  Mr. Ungar is admitted to practice before the state courts of New York, New Jersey, Pennsylvania and Arizona as well as the United States District Court for the Southern and Eastern Districts of New York, District of New Jersey and Eastern District of Pennsylvania.