UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09 Civ. 7822 (JSR)<br><br>ECF Case |

**DEFENDANTS' MEMORANDUM OF LAW<br>IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT**

-i-

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 3

    A.    Overview of the Action and Discovery Record ..................................................... 3

    B.    Overview of the Settlement Terms ........................................................................ 3

    C.    This Court Granted Preliminary Approval of the Settlement ............................... 5

ARGUMENT ............................................................................................................................. 6

    THE PROPOSED SETTLEMENT IS BOTH PROCEDURALLY AND SUBSTANTIVELY FAIR ................................................................................................ 6

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES:**

D'Amato v. Deutsche Bank,
 236 F.3d 78 (2d Cir. 2001).................................................................................................. 6

Emerald Partners v. Berlin,
 787 A.2d 85 (Del. 2001) ...................................................................................................... 9

In re AOL Time Warner S'holder Deriv. Litig.,
 No. 02 Civ. 6302, 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ..................................passim

In re Caremark Int'l Inc. Deriv. Litig.,
 698 A.2d 959 (Del. Ch. 1996) ............................................................................................. 1

In re Citigroup Inc. S'holder Deriv. Litig.,
 964 A.2d 106 (Del. Ch. 2009).............................................................................................. 9

Mathes v. Roberts,
 85 F.R.D. 710 (S.D.N.Y. 1980)........................................................................................... 6

Stone ex rel. AmSouth Bancorp. v. Ritter,
 911 A.2d 362 (Del. 2006) .................................................................................................... 8

In anticipation of the hearing scheduled for March 7, 2011, Defendants[1] submit this memorandum in support of the final approval of the proposed settlement ("Settlement") of this derivative litigation. The terms of the Settlement are set forth in the Stipulation of Settlement [Docket No. 88], which this Court preliminarily approved by Order dated December 14, 2010 [Docket No. 95].

### PRELIMINARY STATEMENT

As this Court is aware, the core of Plaintiffs' lawsuit is that the Individual Defendants purportedly breached their duty of loyalty in connection with their alleged failure to prevent allegedly improper sales and marketing practices by Pfizer personnel with regard to certain medicines. Claims against directors for failure of oversight, as alleged here, are "possibly the most difficult theory in corporation law upon which a Plaintiff might hope to win a judgment." In re Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959, 967 (Del. Ch. 1996). Considering the difficulty of prevailing on this type of claim, coupled with the extensive record demonstrating the Defendants' unquestionable good faith and substantial oversight efforts that squarely refute Plaintiffs' claims, Defendants are confident in the merits of their position and defenses in this case. Nevertheless, Defendants believe that a resolution of this litigation will alleviate the costs and burdens to the parties and that the terms of the settlement are beneficial to, and in the interest of, Pfizer and its shareholders.

By Order dated December 14, 2010, this Court, after a hearing on the proposed Settlement, preliminarily approved the resolution reached by the parties. In significant part, the

---

[1] Pfizer Inc. ("Pfizer") and Dennis A. Ausiello, Michael S. Brown, M. Anthony Burns, Robert N. Burt, W. Don Cornwell, William H. Gray III, Constance J. Horner, James M. Kilts, Jeffrey B. Kindler, George A. Lorch, Suzanne Nora Johnson, Dana G. Mead, William C. Steere, Jr., Henry A. McKinnell, Joseph M. Feczko, Douglas M. Lankler and Ian Read (collectively, "Individual Defendants," and collectively with Pfizer, "Defendants").

proposed Settlement provides for the creation of a new Regulatory and Compliance Committee of the Board of Directors ("Regulatory Committee"), which will exercise oversight responsibilities for certain healthcare law compliance matters and further enhance Pfizer's already robust compliance polices and programs. As the Court stated at the preliminary approval hearing: "I thought the parties made very positive efforts here . . . there is much in here that I think is commendable." Preliminary Approval Hearing Tr. at 29.

The same factors that led to the Court's preliminary approval of the Settlement provide compelling grounds for the granting of final approval, including the justifications set forth in the declarations submitted by two former SEC Chairmen, Harvey L. Pitt and Richard C. Breeden, who evaluated the Settlement terms. For the Court's convenience, annexed hereto are copies of Messrs. Pitt and Breeden's declarations.[2] In assessing the Settlement, including in particular the creation of the Regulatory Committee to be funded by Pfizer's directors and officers liability insurers, Mr. Pitt opined that the Committee "will place Pfizer at the cutting edge of corporate governance practices" (Pitt Decl. ¶ 15), and Mr. Breeden likewise opined that the Settlement will secure Pfizer's position as "an industry leader with respect to board oversight of regulatory, legal and compliance matters." Breeden Decl ¶ 16.

As further addressed below, final approval of the Settlement – a resolution achieved after extensive litigation and negotiation – is clearly warranted under the applicable standards because the Settlement will enhance Pfizer's governance structure and thereby further improve Pfizer's already strong healthcare law compliance efforts. The Settlement will, therefore, confer a substantial benefit on Pfizer and its shareholders.

---

[2]   Exhibit A is the Declaration of Harvey L. Pitt, dated December 2, 2010 [Docket No. 91-1] ("Pitt Decl."); Exhibit B is the Declaration of Richard C. Breeden, dated December 2, 2010 [Docket No. 91-2] ("Breeden Decl.").

## BACKGROUND

### A. Overview of the Action and Discovery Record

Plaintiffs brought a shareholder derivative action asserting claims that the named Pfizer officers and directors breached their fiduciary duties to Pfizer and its shareholders by failing to take action to prevent alleged "off-label" or other allegedly improper marketing and sales practices by Pfizer personnel with respect to certain medicines, including Bextra, Geodon, Lyrica and Zyvox. These alleged practices were the subject of a settlement with the Federal Government announced in January 2009, which included a guilty plea by a Pfizer subsidiary to one count of violating the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, et seq., and the payment of a criminal fine, and a civil settlement and payment. Except for the guilty plea which related to the marketing of Bextra solely, Pfizer did not admit to any allegations of wrongdoing in connection with the allegations resolved by the settlement. No individual director or officer of Pfizer was named in the government's information or in the settlement.

As previously described to this Court prior to the granting of preliminary approval, extensive discovery was taken in this case, encompassing over 30 depositions and the production of over 12 million pages of party and non-party documents.[3] Based on that comprehensive record, Defendants moved for summary judgment to dismiss before trial all claims remaining in the case. The parties engaged in intensive negotiations prior to the conclusion of briefing on the summary judgment motion, culminating in the proposed settlement agreement.

---

[3] See Defendants' Memorandum of Law in Support of Preliminary Settlement Approval [Docket No. 91] ("Defts. Prel. Appr. Br.") at 6.

**B.      Overview of the Settlement Terms**

Under the terms of the Settlement, Pfizer will establish a new Regulatory and Compliance Committee of its Board of Directors. See Stipulation of Settlement. The Committee will have oversight responsibility for law and regulatory compliance matters. To that end, the Committee will be granted broad authority, including the ability to retain experts and other consultants, and will have substantial resources at its disposal to support its mandate. A $75 million fund will be created by Pfizer's D&O insurers, which after the payment of plaintiffs' counsel's legal fee awarded in this action, will be used to fund the activities of the Regulatory Committee. The Regulatory Committee will, among other things, receive extensive reports and data from management and/or consultants, will meet at least quarterly, and will provide annual reports to the entire Board of Directors and a summary report annually in the Company's proxy statement. Its membership will consist of a majority of independent, non-employee directors, and the Committee Chair will have relevant experience in law, compliance, regulatory or governmental affairs, academia, or prior service on the board of a healthcare or highly regulated company. The Regulatory Committee will also have input into relevant incentive based compensation decisions for senior management. It also will have the opportunity to provide recommendations to reduce or extinguish incentive based compensation of persons responsible for compliance or regulatory misconduct.

In addition, the Settlement provides for the adoption and implementation of an Ombudsman Program. The program is intended to provide another "safe haven" for employees to raise compliance-related concerns without any perceived risk of reprisal.

Defendants engaged corporate governance experts Harvey L. Pitt and Richard C. Breeden, both former SEC Chairmen, to testify at the trial of this action, and also asked these experts to evaluate the proposed Settlement. Mr. Pitt pointed out that given Pfizer's size and

scope, there are "real benefits to creating a separate board committee with primary responsibility for legal and regulatory oversight." Pitt Decl. ¶¶ 25-26. Mr. Pitt further opined that "the terms of the proposed settlement, including creation of a Regulatory Committee, will materially enhance Pfizer's already sound corporate governance and compliance function." Id. ¶ 4. Mr. Breeden similarly recognized the benefits of separating the audit and regulatory compliance functions between two committees, and stated that "[b]y expanding the time and focus of the board on compliance matters, the settlement will also enhance the internal focus on such issues within management." Breeden Decl. ¶ 10. He further opined that "the proposed settlement is a fair and reasonable resolution of [this action] and will benefit the Company and its shareholders in several important respects." Id. ¶ 2.

### C.    This Court Granted Preliminary Approval of the Settlement

On December 2, 2010, the parties moved this Court for preliminary approval of the Settlement. At the hearing held on December 6, 2010, this Court commented that the parties provided "a lot of very useful material," including "useful" expert declarations, which in sum comprised a "full presentation from both sides." Prelim. App. Hearing Tr. at 3, 18. The Court observed the "very positive effort" embodied in the proposed resolution, and stated "there is much in here that I think is commendable." Prelim. App. Hearing Tr. at 29. The Court granted preliminary approval of the proposed Settlement on December 14, 2010. See Order at 2. As required by the Preliminary Approval Order, on December 17, 2010, the parties complied with the notice requirements by Pfizer's filing with the SEC a copy of the Settlement as an Exhibit to a Form 8-K and posting the Settlement to Pfizer's website. See Declaration of Hal S. Shaftel regarding Compliance with Notice Requirements in Settlement Order ("Shaftel Decl."), attached hereto as Exhibit C. Lead Counsel also posted the Settlement on its website. Id. ¶ 4. In addition, on December 20, 2010, a summary notice was published in The Wall Street Journal,

USA Today, and over the Business Wire.  Id. ¶ 3.  To date, no objections to the settlement have been raised by any shareholders.

## ARGUMENT

### THE PROPOSED SETTLEMENT IS BOTH PROCEDURALLY AND SUBSTANTIVELY FAIR

Settlement of derivative litigation is favored, since the company and its shareholders are not benefitted from the burdens of ongoing litigation.  In re AOL Time Warner S'holder Deriv. Litig., No. 02 Civ. 6302, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (shareholder derivative actions are "'notoriously difficult and unpredictable [and therefore] settlements are favored'") (quoting Mathes v. Roberts, 85 F.R.D. 710, 713 (S.D.N.Y. 1980)) (other citations omitted).  The two factors a court must consider when reviewing a settlement of a derivative action– procedural and substantive fairness – are clearly present here.  In re AOL Time Warner, 2006 WL 2572114, at **3-4.

The primary indicator of procedural fairness is whether the negotiating process involved "'arms-length negotiations'" and the parties "'engaged in the discovery necessary to effective representation of the [plaintiffs'] interests.'"  In re AOL Time Warner, 2006 WL 2572114, at *3 (quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)) (other citations omitted).  As explained to the Court prior to granting preliminary approval, the parties engaged in extensive document, deposition and expert discovery which provided all parties with a clear and comprehensive factual picture of the case.[4]  Settlement negotiations took place only after that discovery had been concluded, and were conducted in a manner that ensured each party's interests were fairly represented. Indeed, four law firms were involved in the lengthy

---

[4]   See Defts. Prel. Appr. Br. at 6-8.

negotiations, including Lead Plaintiffs' Counsel and a separate law firm representing the director Defendants, officer Defendants and Pfizer Inc. In fact, Lead Plaintiffs' Counsel characterized the process to this Court as "perhaps the most dramatic negotiations I've ever seen." Prelim. App. Hearing Tr. at 9. Thus, it is clear that the Settlement was reached in a hard fought, but fair and appropriate manner.

Substantive fairness balances the following factors: (i) the reasonableness of the settlement compared to any potential trial recovery; (ii) the likelihood of success compared to risks of continued litigation; (iii) the likely duration and cost of continued litigation; and (iv) any potential objections. See In re AOL Time Warner, 2006 WL 2572114, at *3. Each of these considerations clearly weighs in favor of approving the settlement. The primary benefits of the Settlement – structural corporate governance enhancements – will provide a "substantial benefit" to both Pfizer and its shareholders by bolstering its already robust compliance program. See, e.g., id. at *4 (finding substantial benefit where instituting direct board involvement with compliance and internal controls, which provides for greater management accountability).

Two corporate governance experts retained by Defendants reviewed the governance enhancements provided in the Settlement and recognized that they will benefit the Company in many respects. In particular, Mr. Pitt emphasized that the Regulatory Committee is granted meaningful authority and means to discharge its responsibilities. Pitt Decl. ¶¶ 19-21. Mr. Pitt offered the view that the Regulatory Committee "will place Pfizer at the cutting edge of corporate governance practices" and that "the establishment of the proposed Regulatory Committee . . . will confer a significant benefit on Pfizer and its shareholders." Id. ¶¶ 15-16. Likewise, Mr. Breeden recognized the benefit of reducing the Audit Committee's work load, and therefore enabling it to focus on audit issues. Breeden Decl. ¶ 12. Mr. Breeden concluded that the Regulatory Committee will operate as an "industry leader" on compliance matters and

"establishment of the new Regulatory Committee should prove beneficial to Pfizer." Id. ¶¶ 15-16.

The Settlement is also appropriate because the Plaintiffs' likelihood of success on the merits of the case is low in light of the factual record and the substantial burden imposed by Delaware law for Plaintiffs to prevail. See In re AOL Time Warner, 2006 WL 2572114, at *5 (finding settlement was appropriate where there were "considerable barriers to any potential recovery at trial"). As previously explained to this Court in the request for preliminary approval, Plaintiffs face an extremely high burden of demonstrating that the Individual Defendants consciously disregarded their duty of oversight. See Stone ex rel. AmSouth Bancorp. v. Ritter, 911 A.2d 362, 370 (Del. 2006). Here, the compelling evidence squarely refutes the crux of Plaintiffs' claims. See Defts. Prel. Appr. Br. at 17-19. As is well documented, Pfizer's Board of Directors, including its Audit Committee in particular, frequently met and considered law compliance issues. See Declaration of Hal S. Shaftel in Support of Defendants' Motion for Preliminary Settlement Approval [Docket No. 92], Exs. 2, 12, 18-22, 26-43, 45, 52-54. For example, on a regular basis, management substantively conferred with the Board of Directors and/or the Audit Committee regarding the status and operation of Pfizer's compliance programs and policies, government investigations, healthcare audits and other matters related to law compliance. Id., Exs. 2, 18-22, 26-38, 40, 42, 43, 45, 52. In fact, annually the Chief Compliance Officer provided the Audit Committee with a detailed summary of compliance activities and confirmation of the adequacy of the resources devoted to these matters. See id., Exs. 18-22. Indeed, based on the record developed, Defendants' corporate governance experts concluded that Pfizer's board, Audit Committee and senior management diligently and in good faith discharged their oversight role and therefore there is no indicia of conscious disregard of such duties. E.g., Pitt Decl. ¶ 3; Breeden Decl. ¶ 5. Plaintiffs themselves concede in their Complaint that Pfizer

had extensive reporting systems and controls.  See Plaintiffs' Consolidated and Amended Complaint ¶ 151 [Docket No. 34] ("The 2002 and 2004 CIAs contained extensive reporting requirements to make senior management and the Board aware of non-compliance . . ."); see also id. ¶¶ 131, 181.  That admission leaves Plaintiffs to argue that Defendants consciously disregarded or affirmatively encouraged violations of the law, and that they did so both intentionally and in bad faith.  Such a burden is a heavy one to carry and there is no evidence in the record to support it.

Moreover, Defendants are also protected by 8 Del. C. § 141(e), which permits the Individual Defendants, as they did here, to reasonably rely on those reporting to them in carrying out their oversight responsibilities.  See In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 132 (Del. Ch. 2009) ("directors of Delaware corporations are fully protected in relying in good faith on the reports of officers and experts").  Furthermore, Section 102(b)(7), codified at 8 Del. C. § 102(b)(7), eliminates personal liability for directors of companies such as Pfizer, where shareholders have adopted the requisite provision in its Certificate of Incorporation, for breach of fiduciary duty claims that do not involve bad faith, duty of loyalty violations, intentional misconduct or the receipt of improper personal benefits.  See Emerald Partners v. Berlin, 787 A.2d 85, 90 (Del. 2001).  Accordingly, it would be very difficult for Plaintiffs to successfully litigate their claims.

Another factor favoring the Settlement is the cost of continued prosecution of this action, which would be substantial given that the case involves fifteen individual defendants, numerous other non-party fact and expert witnesses, and an extensive documentary record.  Further, the duration of continued litigation is also unknown, in light of the possibility of one or more appeals.  Settlement will also favorably resolve the related matters currently pending in

other jurisdictions, and will allow the Company to focus on its core commercial activities for the benefit of its shareholders.  See In re AOL Time Warner, 2006 WL 2572114, at *3.

Finally, at this point, Defendants are unaware of any Pfizer shareholders who will object to this Settlement. To the contrary, Defendants believe shareholders will recognize the benefits of the corporate governance aspects of the Settlement, which will further enhance Pfizer's already robust compliance program and activities.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant final approval of the Settlement.

Dated:   New York, New York
         February 7, 2011

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/   Dennis J. Block
    Dennis J. Block
    Hal S. Shaftel
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile:  (212) 504-6666

*Counsel for Director Defendants*

-10-

**DAVIS POLK & WARDWELL LLP**


By: /s/ Robert B. Fiske, Jr.
    Robert B. Fiske, Jr.
    James P. Rouhandeh
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Counsel for Executive Defendants*


**DLA PIPER LLP (US)**


By: /s/ John R. Wellschlager
    John R. Wellschlager
    John C. Dougherty
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone: (410) 580-4140
Facsimile: (410) 580-3140

*Counsel for Nominal Defendant Pfizer Inc.*