**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | 09-cv-7822 (JSR) |

---

## MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR BEZIRDIJIAN'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

## INTRODUCTION

Pfizer Inc. ("Pfizer" or the "Company") is a Delaware corporation.  When a shareholder of a Delware corporation takes actions that benefit all the shareholders of that corporation, Delaware law rewards the active shareholder for their actions by awarding that shareholder reasonable attorneys' fees and expenses corresponding to the benefits that flowed from those actions.  Here, Dr. Lawrence Bezirdijian ("Dr. Bezirdijian"), a shareholder in Pfizer, sent a letter to the Company's Board of Directors ("Demand Letter"), *see* Exhibit 1 to the Declaration of Caitlin M. Moyna ("Moyna Decl.") dated February 7, 2011, demanding, in light of Pfizer's recent corporate governance failures, that Pfizer "enact fundamental corporate governance and policy changes."  *See* Moyna Decl. Ex. 1 at 2.  Other Pfizer shareholders filed similar demand letters, and in response to these demand letters and subsequent litigation, Pfizer eventually resolved to enact fundamental corporate governance changes, as requested in the Demand Letter.  Following the standard articulated under controlling Delaware law, whenever a shareholder's meritorious actions assist in the creation of a common benefit for all the stockholders of a corporation, that shareholder is entitled to attorneys' fees and expenses, unless the corporation can demonstrate that the corporate benefit "did not in any way" flow from that shareholder's actions.  *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 880 (Del. 1980).  Because Dr. Bezirdijian's Demand Letter was meritorious and Pfizer faces a steep burden to demonstrate that the Company's recent corporate governance improvements were "not in any way" the result of the Demand Letter,  Dr. Bezirdijian should be awarded the reasonable attorneys' fees and expenses requested herein.

## STATEMENT OF FACTS

On October 13, 2009, Charles J. Piven, an attorney at the law firm Brower Piven, A

Professional Corporation, sent the Demand Letter on behalf of Dr. Bezirdijian to the Board of Directors ("Board") of Pfizer.  The Demand Letter demanded, *inter alia*, that "the Board enact fundamental corporate governance and policy changes to prevent recurrence of the wrongdoing described below."  *See* Moyna Decl. Ex. 1 at 2.  These wrongdoings consisted of Pfizer's illegal market activities, which led to numerous civil and criminal fines against the Company, totaling $2.3 billion since 2002, the unprecedented size of which was due to "Pfizer's recidivism" and "the seriousness and scope of Pfizer's crimes," according to United States Attorney Michael Loucks.  *See id.*

In response to the Demand Letter, Matthew Lepore, Pfizer's Vice President and Chief Counsel, wrote to Mr. Piven on behalf of the Board on December 15, 2009 ("Demand Rejection Letter"), *see* Moyna Decl. Ex. 2.  This letter stated that "the Board of Directors has determined that it is not in the best interests of Pfizer to take further action at this time with respect to the matters raised in your October 13, 2009 letter."  *See* Moyna Decl. Ex. 2 at 2.

However, in resolving the instant litigation before this Court, *In re Pfizer Inc. Shareholder Derivative Litigation*, No. 09-cv-7822 (JSR) (the "Action"), which alleges substantially the same conduct that was the subject of the Demand Letter, the Company agreed to institute corporate governance changes similar to those sought in the Demand Letter. Specifically, the central provision of the agreement to settle the Action entered into by Plaintiffs and Defendants on December 2, 2010 ("Settlement Agreement"), *see* Dkt. No. 95 at 11, is the establishment of a "Regulatory Committee of the Board of Directors" (the "Regulatory Committee") which will "exercise oversight responsibility on significant healthcare related regulatory and compliance issues."  *See* Dkt. No. 91 at 13.  According to the Settlement Agreement, the Regulatory Committee shall exist for at least five (5) years, and Pfizer shall

dedicate $75 million toward funding the Regulatory Committee.  *See* Dkt. No. 95 at 11.  These fundamental corporate governance and policy changes were substantially similar to those demanded in the Demand Letter, where Dr. Bezirdijian sought for the Board to "enact fundamental corporate governance and policy changes to prevent recurrence" of Pfizer's regulatory and compliance failures.  The Settlement Agreement also announces that Plaintiffs' counsel will seek $22 million in attorneys' fees and $1.9 million in expenses from the Court as part of the settlement, to be paid from the $75 million fund.  *See* Dkt. No. 95 at 16.  However, despite the corporate benefit conferred on all Pfizer shareholders by Dr. Bezirdijian's Demand Letter, the present settlement does not provide any award of attorneys' fees or expenses for the costs Dr. Bezirdijian incurred in helping to achieve this corporate benefit.  By letter dated Febuary 3, 2011 to Mr. Lepore, counsel for Dr. Bezidijian requested that they be compensated for the benefits to Pfizer for compliance with the Demand Letter, *see* Moyna Decl. Ex. 3, but such letter has not yet been answered by Mr. Lepore or any other person at Pfizer.

## ARGUMENT

### I.  LEGAL STANDARD

Under Delaware law, a shareholder who takes actions that confer a benefit on all the shareholders of a corporation is entitled to recover reasonable attorneys' fees and expenses associated with attaining that benefit for all the corporation's stockholders.  *See*, *e.g.*, *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) ("In the realm of corporate litigation, the Court may order the payment of counsel fees and related expenses to a plaintiff whose efforts result in the creation of a common fund, or the conferring of a corporate benefit."); *United Vanguard Fund v. Takecare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997) ("[A] litigant who confers a common monetary benefit upon an ascertainable stockholder class is entitled to an

award of counsel fees and expenses for its efforts in creating the benefit."). *Accord Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970) (same); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939) (same).

While this "common corporate benefit" doctrine is often applied in scenarios in which the shareholder who conferred the benefit did so by filing and subsequently settling a derivate lawsuit against the corporation, *see Chrysler Corp. v. Dann*, 223 A.2d 384 (Del. 1966), the doctrine is applicable in any scenario in which a shareholder confers a benefit on all shareholders of the corporation, regardless of the way in which the benefit was attained or the shareholder's grievances addressed. *See*, *e.g.*, *Allied Artists*, 413 A.2d at 878 (shareholder awarded attorneys' fees even though their claims were mooted by merger); *Tandycrafts*, 562 A.2d at 1164 (shareholder awarded attorneys' fees even though the claims at issue were mooted by corporation's proxy statement). By being so broadly applicable, the "common corporate benefit" doctrine "'insures that, even without a favorable adjudication [of their own grievances], counsel will be compensated for the beneficial results they produced.'" *Alaska Elec. Pension, Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010) (quoting *Allied Artists*, 413 A.2d at 878); *see also United Vanguard*, 693 A.2d at 1079 ("[A]ll of the stockholders . . . benefited from plaintiffs' action and should have to share in the costs of achieving that benefit."). The "common corporate benefit" doctrine can apply even when a shareholder intervenes to seek attorneys' fees in a settled action in which that shareholder was not directly involved, so long as the intervenor satisfies the three-part test spelled out in *Allied Artists*. *See Alaska Elec.*, 988 A.2d 412 (holding that the "common corporate benefit" doctrine applies to shareholder intervenor who was not a party to the

settlement of the present action, and provided for an award of attorneys' fees from the settled

action, so long as the *Allied Artists* test is satisfied).

## II.  DR. BEZIRDIJIAN SATISFIES THE THREE-PART *ALLIED ARTISTS* TEST AND IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES

The *Allied Artists* test requires that:

[i]n order to be entitled to an award of fees under the corporate benefit doctrine, an applicant must show, as a preliminary matter, that: (i) the suit was meritorious when filed; (ii) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (iii) the resulting corporate benefit was causally related to the lawsuit.

*Alaska Elec.*, 988 A.2d at 417 (citing *Allied Artists* 413 A.2d at 876).  As explained below, Dr.

Bezirdijian satisfies this three-part test and is therefore entitled to the award of attorneys' fees.

### A.  Dr. Bezirdijain's Legal Grievances Were Meritorious When Raised

Although Dr. Bezirdijian never filed a lawsuit against Pfizer, the Delaware courts, in

examining the "meritorious when filed" requirement, have concluded that this requirement,

despite its wording, does not actually require that the stockholder seeking to recover fees and

expenses under the "common corporate benefit" doctrine have filed a lawsuit, but instead

requires that the shareholder's grievances against the corporation have merit.  The Chancery

Court has explained that "[w]hat is centrally important about the 'meritorious when filed'

qualification (which goes back to the Supreme Court's opinion in [*Chrysler*]) is the term

'meritorious,'" and not whether or not a suit was filed by the party seeking attorneys' fees.  *Bird*

*v. Lida, Inc.*, 681 A.2d 399, 405 (Del. Ch. 1996).   When the defendant in *Bird*, relying on the

"meritorious when filed" language in *Tandycrafts*, "assert[ed] that a complaint must be filed

before a benefit that flows from shareholder action can justify the award of a fee," the Chancery

Court rejected this argument.  *Bird*, 681 A.2d at 404 (quoting *Tandycrafts*, 562 A.2d at 1167).

Instead, the Chancery Court explained that:

> [t]he 'when filed' restriction is intended, I suppose, to preclude fee awards in cases that do not have 'merit' . . . . Thus the 'when filed' term means to discourage derivative suits brought as a 'fishing expedition' by denying the award of fees in such cases, even if they are later settled on beneficial terms (as may happen either because one may stumble on an arguable wrong or because strike suits are sometimes rationally dealt with in that way).

*Id.* Thus, what the "meritorious when filed" language actually requires is that the grievances of a shareholder seeking to employ the "common corporate benefit" doctrine have merit, regardless of whether the shareholder instituted litigation.

Pfizer's actions following the Demand Letter demonstrate the merit of the grievances set forth in that letter. The Demand Letter demanded that "the Board enact fundamental corporate governance and policy changes to prevent recurrence of the wrongdoing described" therein. *See* Moyna Decl. Ex. 1 at 2. Considering the $2.3 billion in fines levied against Pfizer since 2002 due to illegal market activities, it is hard to argue that there was no merit to Dr. Bezirdijian's demands. Dr. Bezirdijian's demand was not the commencement of a "fishing expedition" but was instead a meritorious demand based on the known wrongdoings of Pfizer at the time of the Demand Letter. Thus, the first requirement of *Allied Artists* test is satisfied.

### B. The Actions Producing Benefits to Pfizer Were Taken by Pfizer Prior to a Judicial Resolution of the Merits

The second requirement of *Allied Artists*, that the "action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved," is also satisfied here. When the defendants' benefit-producing actions are the very same actions that resolve the pending litigation, this requirement is satisfied. *See, e.g.*, *Allied Artists*, 413 A.2d at 880 (awarding attorneys' fees where defendant's merger was both the action that produced the corporate benefit and the event that mooted, and therefore resolved, the plaintiff's claims). Here, the corporate benefit – institution of significant corporate governance changes – occurred before

a judicial resolution of the grievances at issue in the Demand Letter and the actions.

**C. The Corporate Benefit to Pfizer Was Causally Related to Dr. Bezirdijian's Grievances**

The third requirement of *Allied Artists*, that "the resulting corporate benefit was causally related" to the applicant's grievances, in met by Dr. Bezirdijian.[1]  *First*, the results of the Demand Letter, the corporate governance changes recently instituted by Pfizer, clearly constitute a corporate benefit.  Delaware "law recognizes that a pecuniary benefit to the corporation is not a prerequisite to a fee award to counsel."  *Allied Artists*, 413 A.2d at 878 (citing *Chrysler*, 223 A.2d at 386); *see also Tandycrafts*, 562 A.2d at 1165 ("Typically, successful derivative or class action suits which result . . . in the imposition of changes in internal operating procedures that are designed to produce such monetary savings in the future, are viewed as fund creating actions.").  A corporate "benefit need not be measurable in economic terms.  Changes in corporate policy . . . may justify an award of counsel fees."  *Tandycrafts*, 562 A.2d at 1165 (internal citations and quotations omitted).

Here, Pfizer's own experts attested to the corporate benefits provided by Pfizer's corporate governance changes.  Defendants' expert Harvey L. Pitt stated, "the Regulatory Committee will provide Pfizer and its various constituencies with significant and enduring benefits, and will place Pfizer at the cutting edge of corporate governance practices."  Dkt. No. 91-1 at ¶15.  Pitt further explained that "there are real benefits to creating a separate board

---

[1] The *Allied Artists* test states in full that "the resulting corporate benefit was causally related to the lawsuit."  But, much like the "meritorious when filed" requirement, which *Bird* explained was actually focused on the word "merit" and not "filed," this third requirement of *Allied Artists* should be read to focus on the causal connection between benefit and the applicant's grievances, and not whether the applicant's grievances were in the form of a lawsuit or otherwise.  *Cf. Tandycrafts*, 562 A.2d at 1165 ("[T]he critical inquiry [in applying the "common corporate benefit" doctrine] is not the status of the plaintiff but the nature of the corporate or class benefit which is causally related to the filing of suit.").

committee with primary responsibility for legal and regulatory oversight." Dkt. No. 91-1 at ¶26. Defendants' expert Richard C. Breeden similarly testified that the Regulatory Committee "will produce several immediate benefits for Pfizer and its shareholders." Dkt. No. 91-2 at ¶8. These actions by Pfizer constitute a clear corporate benefit to all of Pfizer's stockholders.

*Second*, the requisite causal connection between the Demand Letter and Pfizer's corporate governance changes exists here. In satisfying the causal connection requirement, Pfizer, as "the party who takes the action that cures the alleged wrong to the corporation's benefit and thereby moots or settles the lawsuit should bear the burden of demonstrating" that the Demand Letter did not in any way cause it to institute corporate governance controls. *Allied Artists*, 413 A.2d at 880. Put another way, "***[o]nce it is determined that action benefiting the corporation chronologically followed the filing of a meritorious suit, the burden is upon the corporation to demonstrate 'that the lawsuit did not in any way cause their action.*'" *Tandycrafts*, 562 A.2d at 1165 (internal citations and quotations omitted) (emphasis added). The burden is shifted to the corporation because "[i]t is the defendant, and not the plaintiff, who is in a position to know the reasons, events and decisions leading up to the defendant's action." *Allied Artists*, 413 A.2d at 880.

Here, Pfizer cannot demonstrate that Dr. Bezirdijian's demand did not in any way cause the corporate benefits obtained here. The Demand Letter sought fundamental corporate governance changes, and following the Board's receipt of Dr. Bezirdijian's demand letter, Pfizer instituted such corporate governance changes. It stands to reason that the pressure created by Dr. Bezirdijian's demand letter was among the factors that caused Pfizer to create the Regulatory Committee of the Board of Directors, and Pfizer cannot demonstrate, ***without a doubt***, that this is

not the case.[2]  Therefore, the third requirement of *Allied Artists* is satisfied.

## III. THE COURT SHOULD AWARD DR. BEZIRDIJIAN'S REQUESTED ATTORNEYS' FEES

The Court should award Dr. Bezirdijian attorneys' fees and expenses of $220,000 for the benefits conferred upon Pfizer shareholders by their actions.  In "the fixing of the amount of the award the [trial court] enjoys a level of discretion which [the appellate court] will disturb only upon a clear showing of abuse of such discretion."  *Tandycrafts*, 562 A.2d at 1165; *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (appellate courts will overturn district court's award of fees only upon an abuse of discretion).  Examining the reasoning of the Delaware cases it is clear that Dr. Bezirdijian's actions fall precisely within the scope of the "common corporate benefit" doctrine.  As *Allied Artists* explained:

> [t]he reason for allowing an award of attorneys' fees to plaintiff's counsel where a defendant corporation takes steps to settle or moot a case and in so doing produces the same or similar benefit sought by the shareholder's litigation is to prevent frustration of the remedial policy of providing professional compensation for such suits when meritorious.  This rule insures that, even without a favorable adjudication, counsel will be compensated for the beneficial results they produced, provided that the action was meritorious and had a causal connection to the conferred benefit.

413 A.2d at 878.   Similarly, as *Tandycrafts* stated, when a shareholder's actions yield "consequential benefit for all other members of a class, or for the corporation itself, there is no justification for denying recourse to the fee shifting standard which has evolved for the therapeutic purpose of rewarding individual effort which flows to a class."  562 A.2d at 1166.

---

[2] For instance, in *Alaska Electrical*, the corporation demonstrated at trial that its "solitary goal" in taking the actions that created the corporate benefit at issue had "nothing to do" with the actions of the shareholder seeking to apply the "common corporate benefit" doctrine.  *Alaska Elec.*, 988 A.2d at 418.  Only with such overwhelming evidence can Pfizer rebut the presumption of causation entitling Dr. Bezirdijian to a reasonable award of attorneys' fees.

Here, the requested award of $220,000 is only 1% of the $22 million fee in attorneys' fees Plaintiffs' counsel in the action stated that they would request and which Defendants have agreed not to oppose, and to pay, if awarded.  Taking into consideration the differing positions of Plaintiffs' attorneys who instituted litigation and Dr. Bezirdijian's actions through the Delaware demand process, an award of 1% of the fees sought by the Plaintiffs' counsel in the Action is appropriate in light of Dr. Bezirdijian's meritorious Demand Letter.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should grant intervenor Dr. Bezirdijian's motion for an award of attorneys' fees and expenses in the amount of $220,000, an award which is fair and reasonable.

Dated:  February 7, 2011     **BROWER PIVEN**
            A Professional Corporation
          David A.P. Brower
          Caitlin M. Moyna
          488 Madison Avenue
          Eighth Floor
          New York, New York 10022
          Telephone: (212) 501-9000
          Facsimile:  (212) 501-0300

          *Counsel for Plaintiff Dr. Lawrence Bezirdijian*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on February 7, 2011, the following documents were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those indicated as non-registered participants:

Notice of Intervenor Lawrence Bezidijian's Motion to Intervene; Memorandum in Support of Intervenor Lawrence Bezidijian's Motion to Intervene; Notice of Intervenor Lawrence Bezidijian's Motion for an Award of Attorneys' Fees and Expenses; Memorandum in Support of Intervenor Lawrence Bezidijian's Motion for an Award of Attorneys' Feees and Expenses, and the Declaration of Caitlin M. Moyna in Support of Intervenor Lawrence Bezidijian's Motion to Intervene and Motion for an Award of Attorneys' Fees and Expnses.

_____/s/ David A.P. Brower_____
David A. P. Brower