UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION | No. 09-CV-7822 (JSR)<br><br>ECF CASE |

# PLAINTIFFS' RESPONSE TO BEZIRDJIAN'S MOTIONS FOR INTERVENTION AND AWARD OF ATTORNEYS' FEES

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Mark Lebovitch, Esq.
David L. Wales, Esq.
Beata Gocyk-Farber, Esq.
Jeroen van Kwawegen, Esq.
Jonathan D. Uslaner, Esq.
Kristin Ann Meister, Esq.
1285 Avenue of the Americas
New York, NY  10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Court-Appointed Lead Derivative Counsel*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   BEZIRDJIAN HAS NO LEGALLY PROTECTABLE INTEREST IN THIS
     ACTION ....................................................................................................................... 1

     A.   Introduction........................................................................................................ 1

     B.   Bezirdjian's Counsel is Not Entitled to Attorneys' Fees in this Action ................ 3

          1.   Bezirdjian's Demand Mimicked Previously Filed Complaints and
               Had No Role in the Litigation or in Achieving the Settlement .................. 4

          2.   Court-Appointed Lead Derivative Counsel, *Not* Brower,
               Represented Bezirdjian's Interests in this Action ....................................... 7

          3.   Bezirdjian Did Not Present a Meritorious Claim to Pfizer's Board ........... 8

II.  CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Artists Pictures Corp. v. Baron*,
   413 A.2d 876 (Del. 1980) ........................................................................................................6

*Bezirdjian v. O'Reilly et al.*,
   No. A124859, 183 Cal. App. 4th 316 (Cal. Ct. App. March 30, 2010) ....................................9

*Bird v. Lida*,
   681 A.2d 399 (Del. Ch. 1996) ............................................................................................ passim

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ...................................................................................9

*Levine v. Smith*,
   591 A.2d 194 (Del. 1991) ........................................................................................................9

*New York News, Inc. v. Kheel*,
   972 F.2d 482 (2d. Cir. 1992) ...................................................................................................4

*Spiegel v. Buntrock*,
   571 A.2d 767 (Del. 1990) ........................................................................................................8

*Tandycrafts, Inc. v. Initio Partners*,
   562 A.2d 1162 (Del. 1989) ......................................................................................................6

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d. Cir. 1990) .....................................................................................................4

Lead Plaintiffs Louisiana Sheriffs' Pension and Relief Fund ("LSPRF") and Skandia Life Insurance Company Ltd. ("Skandia" and together with LSPRF, "Lead Plaintiffs") and additional Plaintiffs Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union and Ms. Henrietta Klein ("Additional Plaintiffs" and together with Lead Plaintiffs, "Plaintiffs") respectfully submit this response to the motion for intervention and request for an award of attorneys' fees by Dr. Lawrence Bezirdjian ("Bezirdjian").

## I. BEZIRDJIAN HAS NO LEGALLY PROTECTABLE INTEREST IN THIS ACTION

### A. Introduction

On October 13, 2009, Bezirdjian sent a demand letter alleging that Pfizer's board of directors (the "Board") had breached its fiduciary duties and was unjustly enriched in connection with widespread illegal marketing practices at Pfizer. Bezirdjian demanded that Pfizer commence legal proceedings against current and former members of the Board, and that "the Board enact fundamental corporate governance and policy changes to prevent recurrence of the wrongdoing." Declaration of Caitlin M. Moyna dated February 7, 2011 ("Moyna Decl."), Exhibit 1. Bezirdjian did not specify any of the "fundamental" changes he sought, but he did threaten legal action if the Board rejected any of his demands. *Id.*

Bezirdjian's demand letter was sent after eight plaintiffs had publicly filed eight different complaints in this Court with the same factual allegations, including six complaints seeking an Order "[d]irecting Pfizer to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described [in the complaint]." Docket Nos. 09-cv-7822, 09-cv-7913, 09-cv-7983, 09-cv-8042, 09-cv-8363, and 09-cv-8544.

On December 15, 2009, the Board rejected Bezirdjian's demands, explaining that "after careful consideration" the Board had determined it was "not in the best interests of Pfizer to take further action at this time with respect to the matters raised in your October 13, 2009 letter." Moyna Decl., Exhibit 2. Bezirdjian, despite having written in his letter that he would take action if his demands were not complied with, did nothing in response to the Board's rejection of his demands. Instead, Bezirdjian and his counsel sat by while Plaintiffs and their counsel invested nearly a year prosecuting this Action against a motivated Board with highly experienced and skilled counsel, seeking to overcome one of the most demanding legal standards under Delaware law. Bezirdjian and his counsel, Brower Piven, P.C. ("Brower"), had absolutely no involvement in any aspect of the case:

- Never filed a lawsuit nor challenged the rejection of Bezirdjian's demand letter;

- Never contacted lead counsel or otherwise offered to assist in the prosecution of this Action;

- Never participated in this Action;

- Did not work on the briefing in opposition to the motions to dismiss and summary judgment;

- Did not work on reviewing any of the 12 million pages of discovery produced;

- Did not take or defend any of the more than 30 depositions;

- Did not prepare or respond to the interrogatories, the contention interrogatories or the requests for admissions;

- Did not work with any of the experts on their reports; and

- Never suggested a single corporate governance reform.

Now that the substantive litigation may be over, Bezirdjian and Brower move to intervene – making clear that they do not object to any part of the proposed settlement of this Action (the "Settlement") – in order to claim fees for results that they had no role in achieving.

2

Bezirdjian and Brower offer no evidence that the October 13, 2009 demand letter had any role in realizing the corporate governance benefits included in the Settlement, or that Bezirdjian was even a Pfizer shareholder during the relevant period. Moreover, the motion to intervene and request for attorneys' fees repeatedly misspell Bezirdjian's name as "Bezidijian" and "Bezirdijian," calling into question whether Bezirdjian himself reviewed and approved the motion to intervene and request for attorneys' fees before they were filed.[1]

In short, the motion to intervene and request for attorneys' fees are a textbook example of free riding. Bezirdjian and Brower had no role in the settlement achieved, have no legally protectable interest in this Action, and the Court should deny their motion to intervene and request for attorneys' fees.

### B. Bezirdjian's Counsel is Not Entitled to Attorneys' Fees in this Action

Delaware requires a shareholder who seeks an award for attorneys' fees in connection with making a demand on the board of directors to meet four requirements: "(1) the presentation of a meritorious corporate claim …, (2) the expenditure of funds or credit by the shareholder in investigating such claim, (3) action by the board that confers a quantifiable financial benefit on the corporation, (4) which action is causally related to the making of the shareholder demand." *Bird v. Lida*, 681 A.2d 399, 405 (Del. Ch. 1996). Here, Bezirdjian did not present a meritorious claim to Pfizer's Board because – in direct contradiction to the successful position taken by Plaintiffs in this Action – Bezirdjian conceded that his demand was not excused and failed to pursue his claims when the demand was rejected. Bezirdjian has offered no evidence of expending funds in investigating his non-meritorious claim, and has not shown that the corporate

---

[1] The memorandum of law in support of the motion to intervene refers to Bezirdjian ten times as "Bezidijian" (including in the title) and nineteen times as "Bezirdijian." The memorandum of law in support of the claim for attorneys' fees refers to Bezirdjian eighteen times as "Bezirdijian" (including in the title).

3

governance improvements achieved by the Settlement were causally related to his unsuccessful demand.  Bezirdjian therefore has no legally protectable interest in any attorneys' fees awarded in this Action and the motion to intervene should be denied.  *See Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96-97 (2d. Cir. 1990) (putative intervenor must have an interest in the proceeding that is "direct, substantial, and legally protectable") (citations omitted); *New York News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d. Cir. 1992) (affirming denial of intervention because putative intervenor had no legally protectable interest in the action and "[t]he Federal Rules of Civil Procedure are procedural in nature and do not provide substantive rights").

1. <u>Bezirdjian's Demand Mimicked Previously Filed Complaints and Had No Role in the Litigation or in Achieving the Settlement</u>

Between September 10 and October 7, 2009, shareholders filed eight different complaints alleging that Pfizer's Board consciously ignored the widespread illegal promotion of Pfizer drugs, causing the federal government to levy $2.3 billion in criminal and civil fines.  Docket Nos. 09-cv-7822, 09-cv-7913, 09-cv-7983, 09-cv-8042, 09-cv-8289, 09-cv-8363, 09-cv-8388, and 09-cv-8544.  In addition to monetary damages, six of these complaints, including the complaints of Co-Lead Plaintiffs LSPRF and Skandia, specifically requested an Order "[d]irecting Pfizer to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described [in the complaint]."  *See* Joint Declaration of Mark Lebovitch and David L. Wales dated February 18, 2011 ("Leb. Decl."), Exhibit 1 (LSPRF complaint) and Exhibit 2 (Skandia complaint).

Bezirdjian sent his demand letter <u>after</u> the eight complaints had been publicly filed with this Court.  Bezirdjian's letter mimicked the factual allegations of the complaints and similarly

4

demanded that "the Board enact fundamental corporate governance and policy changes to prevent recurrence of the wrongdoing." *See* Moyna Decl., Exhibit 1, at 2. Bezirdjian's demand letter did not indicate how Pfizer could or should improve its corporate governance policies. Bezirdjian did not demand the creation of a new Regulatory Committee of the Board with a mandate to oversee Pfizer's marketing activities and regulatory compliance, did not demand a review of Pfizer's compensation policies for employees and contractors promoting Pfizer drugs, did not demand the possible clawback of executive incentive compensation, and did not demand the creation of an Ombudsman program to allow employees to voice work-related concerns without fear of retaliation. In short, Bezirdjian did not demand any of the significant corporate governance changes achieved by the Settlement. *See* Affidavit of Professor Jeffrey N. Gordon dated February 7, 2011 in support of final approval. ECF No. 106.

On December 15, 2009, the Board rejected Bezirdjian's demand, determining "after careful consideration" that it was "not in the best interests of Pfizer to take further action at this time with respect to the matters raised in your October 13, 2009 letter." Moyna Decl., Exhibit 2.

Bezirdjian's demand letter and the Board's rejection of his demand played no role in prosecuting this Action. The letter and rejection were never mentioned in the motion to dismiss or the parties' summary judgment papers, were never discussed in any of the 35 fact and expert depositions, never marked as exhibits at any deposition, never referred to in any interrogatory or interrogatory response, and never referred to by any of the 7 experts retained by Plaintiffs and Defendants. Leb. Decl. ¶¶ 14-17. Likewise, Bezirdjian's demand letter and the Board's rejection of the demand were never mentioned in the Settlement negotiations, nor were they a factor in the terms of the Settlement. Leb. Decl. ¶ 18. In short, Bezirdjian's demand letter did not cause any of the corporate governance improvements achieved by the Settlement and his

5

counsel is therefore not entitled to attorneys' fees. *See Bird¸* 681 A.2d at 405 (requiring a causal relationship between the demand and action by the board conferring a corporate benefit).

In their request for attorneys' fees, Bezirdjian and Brower make no attempt to explain how Bezirdjian's demand letter caused the corporate governance improvements included in the Settlement for which they now seek payment. Instead, they assert that it is Pfizer's burden to show that the demand letter "did not in any way cause it to institute corporate governance controls." Motion for an Award of Attorneys' Fees at 8 (*citing Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 880 (Del. 1980) and *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989)).

Bezirdjian's and Brower's reliance on *Allied Artists* and *Tandycrafts* for reversing the burden of proof is misplaced. These cases make clear that, under Delaware law, an award for attorneys' fees is the exception, not the rule, and limited to specific, narrowly defined instances. Pursuant to *Allied Artists* and *Tandycrafts*, an award for attorneys' fees may be appropriate where the Board improved its corporate governance policies after a shareholder brought a meritorious lawsuit. *See Tandycrafts*, 562 A.2d at 1165 ("Once it is determined that action benefiting the corporation chronologically followed the filing of a meritorious suit, the burden is upon the corporation to demonstrate 'that the lawsuit did not in any way cause their action'") (*quoting Allied Artists*, 413 A.2d at 880).

However, *Allied Artists* and *Tandycrafts* do not stand for Bezirdjian's novel proposition that the company should bear the burden of proving that corporate governance improvements are unrelated to a rejected shareholder demand. And for good reason. Any such rule would result in a flood of demands, followed by a flood of fee applications whenever a board of directors would thereafter improve the company's corporate governance policies. In *Bird*, Chancellor Allen

6

addressed this concern by explaining that Delaware law would not support a fee award "whenever a shareholder risks the expenditure of funds in monitoring corporate management …[,]" but only in "instances in which a Rule 23.1 demand is satisfied and derivative litigation is thus avoided." *Bird*, 681 A.2d at 407.  Here, the demand was rejected and derivative litigation was not avoided.  Bezirdjian's demand had no role in achieving the corporate governance benefits of the Settlement and merits no award for attorneys' fees.

2. <u>Court-Appointed Lead Derivative Counsel, *Not* Brower, Represented Bezirdjian's Interests in this Action</u>

On October 22, 2009, the Court ordered that the complaints on file, and "any subsequently filed or transferred derivative actions on behalf of Pfizer Inc. that are related to the claims asserted in these actions, [were] consolidated for all purposes," and would be maintained under master file number 09-cv-7822.  ECF No. 29.

On November 4, 2009, the Court appointed BLB&G as sole lead counsel in the Action. ECF No. 32.  BLB&G thereby undertook the obligation of prosecuting this case in the best interest of Pfizer and all of its shareholders, including Bezirdjian (to the extent he was, in fact, a Pfizer shareholder).  Bezirdjian and Brower did nothing to request a role in the Action.  For example, they never requested this Court to appoint Brower as lead counsel, never indicated that they were willing and able to undertake the responsibilities of prosecuting this Action in the best interest of Pfizer and its shareholders, and never contacted BLB&G with an offer to assist in prosecuting this Action.  Leb. Decl. ¶ 6.

Bezirdjian and Brower were also content to have BLB&G and the other counsel bear the burdens and litigation risks inherent in prosecuting this Action.  As detailed in Lead Plaintiffs' motion for final approval, the accompanying Affidavit of Professor Jeffrey N. Gordon and the Joint Declaration of Mark Lebovitch and David Wales in support of final approval, BLB&G and

7

the other counsel prosecuting this Action spent more than $16 million in attorney time and more than $1.6 million in litigation expenses to prosecute this action through summary judgment briefing.  Counsel's out-of-pocket expenses included more than $900,000 for medical marketing and corporate governance experts who helped understand Pfizer's systemic problems and who were critical in crafting the significant corporate governance reforms achieved by the Settlement.  ECF Nos. 104-107.  By contrast, Bezirdjian and Brower have offered no evidence of incurring any fees or expenses for achieving the corporate governance improvements that they now seek payment for.  Bezirdjian's claim for attorneys' fees should therefore be rejected.  *See Bird*, 681 A.2d at 405 (requiring the expenditure of funds or credit by the shareholder seeking attorneys' fees for investigating a meritorious demand).

>    3.    Bezirdjian Did Not Present a Meritorious Claim to Pfizer's Board

Bezirdjian's October 13, 2009 demand letter alleged that the Pfizer Board had breached its fiduciary duties and was unjustly enriched in connection with widespread illegal marketing practices at Pfizer.  Bezirdjian asserted that the wrongdoing at Pfizer and related civil and criminal legal actions "should be well known to each member of the Board" and threatened "other legal remedies" if the Board would not respond in thirty days or rejected Bezirdjian's demands for legal action against current and former members of the Board and the enactment of corporate governance changes.  *See* Moyna Decl., Exhibit 1.

By sending this letter, Bezirdjian conceded the independence and disinterestedness of a majority of Pfizer's Board.  *See Spiegel v. Buntrock*, 571 A.2d 767, 775-76 (Del. 1990) ("A shareholder who makes a demand can no longer argue that demand is excused") (citation omitted).   Any Board decision to reject Bezirdjian's demand would therefore be subject to judicial review under the business judgment rule.  *See id.*  (*citing Aronson v Lewis*, 473 A.2d 805, 813 (Del. 1984) and *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784-86 (Del. 1981)).

8

Bezirdjian was well aware of his significant concessions when he sent the demand letter. *See Bezirdjian v. O'Reilly et al.*, No. A124859, 183 Cal. App. 4th 316, 325-26 (Cal. Ct. App. March 30, 2010) (affirming March 11, 2009 dismissal of Bezirdjian's complaint for failing to rebut the presumption of the business judgment rule that the Board properly refused demand.) (*citing Aronson*, 473 A.2d at 813).

Sixty-three days after Bezirdjian sent the letter, the Board rejected each of his demands. In a letter dated December 15, 2009, Pfizer Chief Counsel Corporate Governance, Matthew Lepore, explained that "[i]n determining how to respond to the allegations raised in your letter, our Board carefully considered a significant amount of information, including among other things, information presented at Board meetings held on October 22 and December 14, 2009" and that in assessing this information, the Board took into account that Pfizer already had an extensive compliance program and that Pfizer's Audit Committee, after discussing and evaluation the allegations in the demand letter, recommended that the letter be rejected. Accordingly, Lepore explained, the Board determined "after careful consideration" that it was "not in the best interests of Pfizer to take further action at this time with respect to the matters raised in your October 13, 2009 letter." Moyna Decl., Exhibit 2.

Delaware law still allowed Bezirdjian to bring a claim that the Board's rejection of his demands was not made in good faith or on an informed basis. *See Levine v. Smith*, 591 A.2d 194, 212-13 (Del. 1991) (affirming Chancery Court application of the "traditional business judgment rule," evaluating whether the board of directors' response to a shareholder's demand was made on an "informed basis" and in "good faith"), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). However, given the Board's careful and detailed response to Bezirdjian's demand letter, any such claim was not likely meritorious. *See Bezirdjian*, 183 Cal.

9

App. 4th at 325-26. Bezirdjian and his counsel decided not to pursue the claim, thereby waiving it regardless of merit and rendering any subsequent claim for attorneys' fees in connection with the demand contrary to Delaware law. *See Bird*, 681 A.2d at 404 (requiring a successful demand for awarding attorneys' fees in the absence of successful litigation) (*quoting Kaufman v. Shoenberg*, 92 A.2d 295, 295 (Del. Ch. 1952)).

Bezirdjian's decision to concede the Board's independence by making a demand was inconsistent with Lead Plaintiffs strategy to litigate demand futility, which was correct and resulted in the litigation that exclusively achieved the Settlement.

## II.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully submit that the Court should deny Bezirdjian's motion to intervene and request for an award of attorneys' fees.

Dated:  New York, New York
        February 18, 2011

        **BERNSTEIN LITOWITZ BERGER**
          **& GROSSMANN LLP**

        By:    /s/ Mark Lebovitch
            Mark Lebovitch, Esq.
            David L. Wales, Esq.
            Beata Farber, Esq.
            Jeroen van Kwawegen, Esq.
            Jonathan D. Uslaner, Esq.
            Kristin Ann Meister, Esq.
            1285 Avenue of the Americas
            New York, New York 10019
            Tel:  212-554-1400
            Fax:  212-554-1444

        *Court-Appointed Lead Derivative Counsel and Counsel for Co-Lead Plaintiff Louisiana Sheriffs' Pension and Relief Fund*

        **KIRBY McINERNEY LLP**
        David E. Kovel, Esq.
        Edward M. Varga, Esq.
        Surya Palaniappan, Esq.

825 Third Avenue
New York, New York 10022
Tel:  212-371-6600
Fax:  212-751-2540

*Counsel for Co-Lead Plaintiff Skandia Life Insurance Company Ltd.*

**KLAUSNER & KAUFMAN, P.A.**
Robert D. Klausner, Esq.
10059 N.W. 1st Court
Plantation, FL  33324
Tel:  (954) 916-1202

*Counsel for Co-Lead Plaintiff Louisiana Sheriffs' Pension and Relief Fund*

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser, Esq.
Brett D. Stecker, Esq.
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Tel:  610-225-2677

*Counsel for Additional Plaintiff Henrietta Klein*

**POMERANTZ HAUDEK GROSSMAN
   & GROSS LLP**
Jason S. Cowart, Esq.
Marie L. Oliver, Esq.
100 Park Avenue, 26th Floor
New York, NY  10017
Tel:  (212) 661-1100

**BARRACK RODOS & BACINE**
Daniel E. Bacine, Esq.
Julie B. Palley, Esq.
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, PA 19103
Tel:  (215) 963-0600

*Counsel for Additional Plaintiff Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union*

11