UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE PFIZER INC. SHAREHOLDER
DERIVATIVE LITIGATION

No. 09-CV-7822 (JSR)

ECF CASE

## PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF SETTLEMENT OF DERIVATIVE ACTION

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
Mark Lebovitch, Esq.
David L. Wales, Esq.
Beata Gocyk-Farber, Esq.
Jeroen van Kwawegen, Esq.
Jonathan D. Uslaner, Esq.
Kristin Ann Meister, Esq.
1285 Avenue of the Americas
New York, NY  10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Court-Appointed Lead Derivative Counsel*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.      INTRODUCTION ...................................................................................... 1

II.     THE OBJECTOR'S DISINTEREST IN PURSUING THE ACTION ............................. 4

III.    ARGUMENT ............................................................................................ 5

        A.      Pfizer's Shareholders Support Approval of the Settlement ................................... 5

        B.      Plaintiffs Overcame Considerable Hurdles to Achieve The Settlement ................ 6

        C.      Vides' Objection Is Without Merit ....................................................... 7

IV.     CONCLUSION ........................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Citron v. Merritt-Chapman & Scott Corp.*,
   409 A.2d 607 (Del. Ch. 1977), *aff'd* 407 A.d 1040 (Del. 1979)..................................8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..........................................................................4, 5

*In re AOL Time Warner Shareholder Derivative Litigation*,
   No. 02 Civ. 6302(SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ..................................4

*In re Caremark International, Inc. Derivative Litigation*,
   698 A.2d 959 (Del. Ch. 1996)........................................................................6

*In re McDonnell Douglas Equiptment Leasing Securities Litigation*,
   838 F. Supp. 729 (S.D.N.Y. 1993)...................................................................4

*In re NASDAQ Market-Makers Antitrust Litigation*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................6, 8

*In re Sony SXRD Rear Projection Television Class Action Litigation*,
   No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)...................................6

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
   344 .F.3d 184 (2d Cir. 2003) (per curiam)...........................................................8

*Velez v. Novartis Pharmaceuticals Corp.*,
   No. 04 Civ. 09194(CM), 2010 WL 4877852 (S.D.N.Y. November 30, 2010) .......................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..........................................................................5, 6

STATUTES

8 *Del. C.* §102(b)(7)....................................................................................6

8 *Del. C.* §220 ...........................................................................................4

Plaintiffs respectfully submit this Reply Brief in Further Support of Derivative Settlement and in Response to the Objection of Nora Vides ("Vides") to the Settlement.[1]

## I.     INTRODUCTION

In its February 7, 2011 submissions, Plaintiffs demonstrated that the Settlement is not only fair, reasonable and adequate to Pfizer and its shareholders, but it resulted from a hard-fought litigation, was the product of tough arms'-length negotiations, and provides truly significant benefits to Pfizer and its shareholders.  The benefits of the Settlement include the creation of a new "Regulatory and Compliance Committee" (the "Regulatory Committee") with a broad mandate that addresses the specific areas of oversight that gave rise to this Action in the first place, a new Ombudsman office, specific shareholder and internal reporting, and compensation-related recommendation obligations.

Achieving this result was no small task.  Besides litigating against determined adversaries who hired several of the most skilled and aggressive defense firms in the country, Plaintiffs, through their counsel, received over 12 million pages of discovery, from which they identified the several hundred that were central to prosecuting the case, took and defended 30-plus depositions, and issued or challenged no less than seven expert reports.  Plaintiffs also prepared substantial Court submissions, including opposition papers to Defendants' motion to dismiss and summary judgment motion.

The reasons why the significant changes to Pfizer's corporate governance program required by the Settlement are valuable are detailed in the February 7, 2011 affidavit of Columbia Law Professor Jeffrey Gordon ("Gordon Aff."), ECF No. 106, and the December 2,

---

[1] Unless otherwise noted, all capitalized terms have the meaning ascribed to them in Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Settlement and Award of Attorneys' Fees and Expenses (ECF No. 105).

2010 affidavits of Defendants' experts and former SEC Chairman Harvey L. Pitt ("Pitt Aff.")

and Richard C. Breeden ("Breeden Aff.").  ECF No. 108, Attachments 1 & 2.  As explained by

Professor Gordon:

> In my opinion, the Reforms embodied in the Proposed Settlement will
> significantly strengthen Board oversight of Pfizer's compliance with the FDA's
> drug marketing regime and related compliance mandates and will produce other
> improvements to internal compliance and accountability.  In particular, the new
> Board committee, the "Regulatory and Compliance Committee" (the "Regulatory
> Committee") will significantly add to the Board's capacity to oversee Pfizer's
> compliance process and to the Board's capacity to act should a problem appear.
> The result will be to reduce the possibility of recurrent wrongful corporate
> conduct by Pfizer as evidenced by the guilty plea and $2.3 billion fine in the 2009
> settlement of U.S. Government charges.  Because of the financial and franchise
> risks to the Company from further violations of the FDA regulatory regime, these
> Reforms will thus provide significant value for Pfizer and it shareholders.

Gordon Aff.  at ¶2.  Professor Gordon also detailed the benefits of the new Ombudsman office,

the extensive internal reporting requirements, and the compensation-related recommendation

obligations.  Gordon Aff.  at ¶¶50- 78.  In addition, the Settlement requires one of the largest

cash payments ever in a shareholder derivative suit – $75 million – into a separate account to

fund the activities of the Regulatory Committee, thereby ensuring that the Committee is insulated

from internal budgetary or other pressures.  Gordon Aff.  at ¶40.

     Defendants' expert and former SEC Chairman Harvey Pitt similarly noted that the

corporate governance changes will "materially enhance" Pfizer's corporate governance and

compliance functions, and that "the establishment of the proposed Regulatory Committee, as set

forth in the settlement terms, will confer a significant benefit on Pfizer and its shareholders,

especially in light of the provision of a segregated source of funding for the committee's

activities over the next five years."  Pitt Aff.  at ¶¶4 and 16.  Defendants' additional expert and

former SEC Chairman Richard Breeden concluded that "the governance improvements resulting

from both the formation of the Regulatory Committee and the proposed scope of its oversight

responsibilities will cause Pfizer to be an industry leader with respect to board oversight of regulatory, legal and compliance matters." Breeden Aff. at ¶15.

The response from Pfizer's shareholders to the Settlement has been overwhelmingly positive. None of the sophisticated institutional investors who collectively hold approximately seventy percent of Pfizer's outstanding shares (*i.e.* 5.6 billion shares) has objected to the Settlement. Supplemental Joint Declaration of Mark Lebovitch and David Wales dated February 28, 2011 ("Wales Decl."), Exhibit 1 (showing that 71% of Pfizer's approximately 8 billion outstanding shares are held by institutional investors). Of course, the Settlement is fully supported by Lead Plaintiffs LSPRF and Skandia – two sophisticated institutional investors. Experts in the field of derivative litigation have suggested that the governance and monetary structure of the settlement could set new precedents in the way derivative suits are prosecuted and resolved in the future. *See*, *e.g.*, Kevin LaCroix, *Pfizer D&O Insurers Fund Unusual $75 Million Derivative Settlement*, (December 7, 2010) ("One of the things that *is* unusual about this arrangement is that, among other things, there is a specific pot of money that is to be set aside to fund the compliance reforms to which the company has agreed as part of a derivative settlement."). Wales Decl., Ex. 2. Of the tens of thousands of shareholders who hold Pfizer's approximately 8 billion outstanding shares, only one shareholder has filed an objection to the Settlement. *See* Wales Decl., Ex. 3 (showing that as, of February 22, 2011, Pfizer had 7,995,220,402 outstanding shares). No shareholder objected to the requested attorneys' fees, or to the adequacy of the notice.

The sole shareholder objecting to the settlement claims to be the beneficial owner of 200 Pfizer shares through a profit sharing plan of her employer, the Law Offices of David B. Shaev. In November 2009, Vides sent a books and records demand to Pfizer, eventually receiving a

small volume of documents.  In August 2010, when the parties in this Action were nearing the end of discovery, Vides' lawyer initiated a placeholder derivative suit in Delaware, which he then promptly stayed in favor of this Action.  Neither Vides nor her counsel ever sought to review any of the evidence or discovery in this Action, much less make any contribution to its prosecution.  Vides' and her counsel's lack of knowledge of the facts or understanding of the case is reflected in the objection, which fails to cite or discuss the Gordon, Pitt and Breeden affidavits or even the applicable legal standards.  As the lone objector, Vides bears the burden of showing that the Settlement is inadequate.  *See In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 838 F. Supp. 729, 737 (S.D.N.Y. 1993).  Vides does not meet her burden.

In contrast, the Gordon, Pitt and Breeden affidavits, and the Joint Declarations of Mark Lebovitch and David Wales in support of approval of the Settlement, dated February 7, 2011 (ECF No. 107 at ¶¶81- 88) detail the benefits of the Settlement in light of the *Grinnell* factors.[2] ECF Nos. 106, 108 (Attachments 1 & 2), and 107.  The unsubstantiated objection from the only objector should be rejected and the Settlement approved.

## II.     THE OBJECTOR'S DISINTEREST IN PURSUING THE ACTION

On November 15, 2009, Vides sent a written demand to inspect Pfizer's books and records pursuant to 8 *Del. C.* §220.  Vides' demand was made after this Court had already appointed lead derivative counsel.  Vides' demand sought access to many of the same categories of documents that Plaintiffs requested and obtained in this Action.  Wales Decl., Ex 4.  On December 9, 2009, Vides filed a complaint for the inspection of Pfizer's books and records in the Chancery Court of Delaware.  Pfizer moved to dismiss this complaint on January 7, 2010.  Vides

---

[2] *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302(SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006).

4

abandoned her complaint and sent a new demand on January 26, 2010, attempting to cure the identified deficiencies and requesting the same categories of documents.  Wales Decl., Ex 5.

After receiving the amended demand, Pfizer produced 9,446 pages of heavily redacted Board materials.  Vides and her counsel accepted this modest production without further request or objection.  In contrast, Plaintiffs' counsel in this Action received more than 12 million pages of discovery.  On August 3, 2010, Vides filed a verified derivative complaint against Defendants in Delaware Chancery Court.  Wales Decl., Ex 6.  Vides' complaint simply summarized and copied parts of the operative complaint prepared by Lead Counsel in this Action.  ECF No. 34.  Vides promptly entered into a stipulation with the Defendants staying her action pending the resolution of this Action.  Wales Decl. Ex. 7.

Vides' counsel never offered to assist in the prosecution of this Action, nor suggested a single requirement for what Vides would consider an adequate Settlement.  Wales Decl. ¶¶ 3-7.  Instead, Vides and her counsel were merely copying Lead Counsel's efforts in this Action to lay the groundwork for an objection to any future settlement.  The Court should reject Vides' improper attempt to disrupt the Settlement.  *See Grinnell*, 495 F.2d  at 464 (Explaining that "[t]o allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process.").

## III.    ARGUMENT

### A.    Pfizer's Shareholders Support Approval of the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *13 (S.D.N.Y. November 30, 2010); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the

settlement.").  In addition, a lack of objections by institutional investors with the largest stake in the litigation and settlement, as here, also weighs in favor of the proposed settlement.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998).

Here, out of tens of thousands of shareholders holding Pfizer's 8 billion outstanding shares, including more than 1,500 institutional investors, only 1 shareholder representing 200 shares is objecting to the Settlement.  *See* Wales Decl., Ex. 1.  Thus, the reaction of Pfizer's shareholders weighs overwhelmingly in favor of approving the Settlement.  *See Wal-Mart*, 396 F.3d at 118 (settlement deemed fair where "[o]nly eighteen class members out of five million objected to the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("Of approximately 175,000 class members only 22 (0.0126%) have chosen to opt out of the class, and only 45 have voiced objections," thereby "support[ing] approval of the Settlement.").

### B.  Plaintiffs Overcame Considerable Hurdles to Achieve The Settlement

Plaintiffs achieved the Settlement despite facing a formidable challenge: pursuing a legal theory that has been recognized as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  In their summary judgment motion, Defendants argued that "[t]o hold defendants personally liable for an alleged breach of loyalty, plaintiffs must prove that each defendant acted "intentionally" and in "bad faith." ECF No. 82 at 25.  Defendants also argued that Plaintiffs' claims failed because of the Delaware exculpation clause, 8 *Del. C.* § 102(b)(7), and the corresponding Pfizer by-law.

Ironically, the objector's focus on a handful of Board and Audit Committee materials, without reference to the deposition testimony and other evidence obtained in this Action that puts them in context, illustrates the Defendants' primary defense.  Throughout this Action,

Defendants argued that they were aware, on a high level, of problems and that instances of misconduct were brought to their attention, and that they reasonably relied on management to address the identified problems.  In their summary judgment motion, Defendants argued that discovery had confirmed their defense and affirmatively showed the Board to have acted reasonably and appropriately by relying on management, and certainly not in bad faith.

Despite these hurdles, Plaintiffs were able to assemble an evidentiary record significant enough that Defendants agreed to the terms of the Settlement after Plaintiffs served their opposition to the summary judgment motion.  Defendants only accepted the Settlement terms after hard-fought litigation, including voluminous reports from high-profile and respected experts, and after the parties had exchanged summary judgment papers.

### C.    Vides' Objection Is Without Merit

Vides argues that the Settlement is inadequate because there is no monetary recovery, there is no reason to believe that the Regulatory Committee will take its mandate seriously, and "there is no provision for what happens when the money set aside (net of attorneys' fees) is expended and/or the five years expires."  Vides Objection, ¶ 7.

Vides' objection does not mention the legal standard or litigation risks assumed by Plaintiffs and their counsel while Vides and her counsel sat by idly.  The single case relied on by Vides is inapposite in this Action.  Vides' objection also ignores the benefits of the Settlement as detailed in the Gordon, Pitt and Breeden affidavits, raising the question whether Vides and her counsel even read Defendants' summary judgment papers and the Gordon, Pitt and Breeden affidavits before filing the objection.  Vides stands alone in her desire to sacrifice the substantial benefits of the Settlement to continue the litigation, even though she has shown no willingness or ability to do so herself.  *See In re NASDAQ*, 187 F.R.D. at 479 (explaining that "an objection

based on an assertion or argument not readily supportable at trial should not be permitted to bar settlement.").  Vides' objection is meritless and should be rejected.

*First*, the Settlement requires payment of $75 million – one of the largest cash payments in a shareholder derivative suit – into a separate account to fund the activities of the Regulatory Committee.  As explained by Professor Gordon, the Settlement requires that these funds can only be used to support the activities of the Regulatory Committee, thereby ensuring that the Committee is insulated from internal budgetary or other pressures.  Gordon Aff. at ¶40. Chairman Pitt noted that "the establishment of the proposed Regulatory Committee, as set forth in the settlement terms, will confer a significant benefit on Pfizer and its shareholders, ***especially in light of the provision of a segregated source of funding for the committee's activities over the next five years***."  Pitt Aff. at ¶16 (emphasis added).  Vides is wrong to argue that the Settlement provides no monetary recovery, and the single case cited by Vides in support of her argument is inapposite.[3]

*Second*, the Settlement requires the Regulatory Committee to make written recommendations to the Compensation Committee regarding potential "clawbacks" of awarded incentive compensation of wrongdoers, their supervisors, senior management, compliance personnel or attorneys in case of serious allegations of future misconduct.  These compliance incentive and enforcement changes were specifically designed to provide a deterrent to future

---

[3]  In *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 .F.3d 184 (2d Cir. 2003) (per curiam), the court discussed application of the New York faithless servant doctrine after a "lengthy bench trial" had established that the defendant had breached his duty of loyalty by accepting business opportunities that belonged to his employer.  *Id.* at 187-88.  Here, there has been no determination that the individual defendants breached their duty of loyalty, there are no allegations that the individual defendants usurped business opportunities, and the unjust enrichment claims were dismissed.  Moreover, this Action is governed by Delaware law – not New York law – which does not clearly support forfeiture of compensation absent the usurpation of opportunity.  *See Citron v. Merritt-Chapman & Scott Corp.*, 409 A.2d 607, 611 (Del. Ch. 1977), *aff'd* 407 A.d 1040 (Del. 1979).

misconduct without damaging Pfizer's ability to attract and retain talented employees.  Gordon Aff. at ¶¶75-78.

Vides argues that these changes are inadequate because "there is no assurance that any recommendation will be made or followed."  Vides Objection at ¶7(a).  This is a non-sequitur, because people can always violate laws and policies.  Here, following the Settlement, the Regulatory Committee will receive detailed reports and presentations, including copies of key documentation and analyses, identifying any systemic misconduct in the marketing of Pfizer drugs in the future.  If the Regulatory Committee ignores these reports and presentations, its members risk a future finding that their decisions were not made in good faith and warrant criminal or civil liability.  Similarly, the Compensation Committee cannot ignore a written recommendation from the Regulatory Committee to claw back compensation because of serious compliance violations without exposing its members to liability.  The Settlement was specifically and thoughtfully crafted to provide strong incentives to the Board to take its oversight and compensation responsibilities seriously.  In the event of future systemic misconduct, the Board can no longer claim that it simply relied on management to address wrongdoing.

Vides also argues that the Settlement is inadequate because "the only lesson that can work is to have a clawback the wrongdoers pay and pay in the future for the misconduct and that will help compensate Pfizer and its shareholders for the substantial damage that occurred and could incur in the future."  Vides Objection, ¶7(b).  In fact, the Settlement expressly provides for a clawback of incentive compensation from "wrongdoers" in case of future misconduct, as well as from their direct supervisors. Insurance will make a $75 million payment on behalf of the individual defendants for allegations of past misconduct.  Moreover, lessons were surely learned. Defendants faced depositions confronting them with hard questions about their own

9

responsibility for Pfizer's compliance lapses that they likely would not want to repeat, were given a detailed education about what went wrong at Pfizer, and unquestionably learned the difference between "check the box" oversight and serious corporate oversight.

*Third*, the Settlement specifically bars any possibility of a windfall for Pfizer.   If any funds are remaining from the $75 million payment after the Regulatory Committee's initial five-year term, it will not be turned over to Pfizer, but reverts back to the insurers.  Plaintiffs expect, however, that the Committee will take its mandate and its detailed requirements seriously, and use all available resources to their fullest extent to ensure that systemic drug marketing problems are detected and stopped.  *See* Gordon Aff.  ¶¶40-45.

## IV.    CONCLUSION

For the reasons set forth in Plaintiffs Memorandum of Law in Support of Final Approval and the reasons set forth above, the Court should approve the Settlement and the request for attorneys' fees and expenses, and reject the sole objection to the Settlement.

Dated: New York, New York
        February 28, 2011

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

By:   /s/ Mark Lebovitch
      Mark Lebovitch, Esq.
      David L. Wales, Esq.
      Beata Farber, Esq.
      Jeroen van Kwawegen, Esq.
      Jonathan D. Uslaner, Esq.
      Kristin Ann Meister, Esq.
      1285 Avenue of the Americas
      New York, New York 10019
      Tel:  212-554-1400
       Fax:  212-554-1444

*Court-Appointed Lead Derivative Counsel and Counsel for Co-Lead Plaintiff Louisiana Sheriffs' Pension and Relief Fund*

10

**KIRBY McINERNEY LLP**
David E. Kovel, Esq.
Edward M. Varga, Esq.
Surya Palaniappan, Esq.
Joshua D. Masters, Esq.
825 Third Avenue
New York, New York 10022
Tel:  212-371-6600
Fax:  212-751-2540

*Counsel for Co-Lead Plaintiff Skandia Life Insurance Company Ltd.*

**KLAUSNER & KAUFMAN, P.A.**
Robert D. Klausner, Esq.
10059 N.W. 1st Court
Plantation, FL  33324
Tel:  (954) 916-1202

*Counsel for Co-Lead Plaintiff Louisiana Sheriffs' Pension and Relief Fund*

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser, Esq.
Brett D. Stecker, Esq.
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Tel:  610-225-2677

*Counsel for Additional Plaintiff Henrietta Klein*

**POMERANTZ HAUDEK GROSSMAN
    & GROSS LLP**
Jason S. Cowart, Esq.
Marie L. Oliver, Esq.
100 Park Avenue, 26th Floor
New York, NY  10017
Tel:  (212) 661-1100

**BARRACK RODOS & BACINE**
Daniel E. Bacine, Esq.
Julie B. Palley, Esq.
Two Commerce Square
2001 Market Street – Suite 3300

Philadelphia, PA 19103
Tel:  (215) 963-0600

*Counsel for Additional Plaintiff Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees represented by Local 85 of Amalgamated Transit Union*