UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
IN RE:                                  :        Master File No.:
                                        :        09 Civ. 7822 (JSR)
PFIZER INC. SHAREHOLDER DERIVATIVE      :
LITIGATION                              :        MEMORANDUM
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

      On February 7, 2011, Dr. Lawrence Bezidijian filed motions to intervene and for attorneys' fees in the above-captioned action. After receiving full briefing and hearing oral argument, the Court, by Order dated February 28, 2011, denied both motions in their entirety. This Memorandum sets forth the reasons for that ruling.

      The pertinent facts are as follows. On September 2, 2009, Pfizer, Inc. ("Pfizer") and its subsidiary Pharmacia & Upjohn Company, Inc. agreed to pay $2.3 billion in penalties and fines to the United States arising from their illegal promotion and marketing of "off label" uses of several regulated drugs. Between September 10, 2009 and October 7, 2009, eight separate complaints were filed by Pfizer shareholders in this Court alleging that the individual defendants, who are current and former Pfizer directors and senior executives, harmed the corporation by causing and permitting this illegal activity to occur. By Order dated October 22, 2009, the Court consolidated these eight complaints into the above-captioned derivative action.

      On October 13, 2009, Bezidijian, through his counsel, sent a demand letter to Pfizer's Board of Directors (the "Board"). See

Declaration of Caitlin M. Moyna, dated February 7, 2011 ("Moyna Decl.") at Ex. 1. The letter demanded that "the Board enact fundamental corporate governance and policy changes to prevent recurrence" of Pfizer's illegal marketing and promotional practices, but did not specify any particular actions that it desired the Board to take. Id. By letter dated December 15, 2009, the Board responded to Bezidijian that it "has determined that it is not in the best interests of Pfizer to take further action at this time with respect to the matters raised in your October 13, 2009 letter." Id. at Ex. 2 at 2.

Over the course of the following year, neither Bezidijian nor his counsel took any action in connection with the issues raised in the demand letter. Meanwhile the parties in the instant action engaged in motion practice as well as extensive document, deposition and expert discovery. After the close of discovery, the parties also undertook settlement negotiations that resulted in a proposed settlement agreement, which the Court preliminarily approved by Order dated December 14, 2010. See Def. Mem. at 3. On February 3, 2011, more than six weeks after the terms of the proposed settlement agreement had been made public, Bezidijian's counsel sent Pfizer a letter requesting "reasonable attorneys' fees" for his purported role in achieving the corporate benefits encapsulated in that agreement. Moyna Decl. at Ex. 3. On February 7, 2011, Bezidijian

2

filed the instant motions, seeking to intervene in the action for the sole purpose of procuring attorneys' fees in the amount of $220,000, i.e., 1% of the $22 million in attorneys' fees that plaintiffs' counsel separately seeks. See Pet. Fees Mem. at 8.

Turning first to Bezidijian's motion to intervene as of right, Rule 24 of the Federal Rules of Civil Procedure permits parties to intervene in actions by right if they (1) make a timely motion and (2) demonstrate an interest in the litigation that "may be impaired by the disposition of the action." D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001); see Fed. R. Civ. P. 24(a)(2). In this Circuit, "[t]he determination of timeliness [under Rule 24] is within the discretion of the district court," and that discretion should be exercised based on an analysis of the "totality of circumstances." D'Amato, 236 F.3d at 84. Relevant circumstances include, inter alia, "how long the applicant had notice of the interest before [making] the motion to intervene" and "any unusual circumstances militating for or against a finding of timeliness." Id.

Here, Bezirdijian made no effort whatsoever to participate in, or contribute to, more than a year of extensive proceedings in this action, of which he was well aware. See tr. 2/28/2011 at *3-5. Instead he chose to wait until a proposed settlement had been reached and tentatively approved, and only then, weeks before a

hearing on final approval of the settlement agreement, Bezirdijian filed his motion to intervene. The timing of Bezirdijian's motion is especially suspect given that his sole purpose in seeking to intervene is to seek attorneys' fees. In the instant circumstances, the motion therefore appears a fairly transparent attempt to affirmatively intervene in the action on the eve of its resolution in order to claim attorneys' fees without performing any of the work that would merit such an award. In light of the foregoing, the Court concludes that Bezirdijian's motion to intervene as a matter of right is untimely made and must be dismissed

Next, the Court turns to Bezirdijian's motion for permissive intervention, which is available in the Court's "broad discretion," id. at 98, where a party (1) makes a timely motion, and (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Though the parties concede that Bezirdijian's claims share common questions of law and fact with the instant action, see Def. Mem. at 4-5, for the same reasons stated above with respect to intervention by right, the Court concludes that Bezirdijian's motion for permissive intervention is untimely and must be dismissed.

Because the Court has denied Bezirdijian's motion for intervention, it need not reach the merits of his accompanying motion for attorneys' fees. Nevertheless, assuming, contrary to

4

fact, that the Court were to allow Bezirdijian to intervene in this action, the Court would still find the motion for attorneys' fees without merit. Under Delaware law, which applies here, courts are permitted to "order the payment of counsel fees and related expenses to a plaintiff whose efforts result in . . . the conferring of a corporate benefit." Chan v. Diamond, 2005 WL 941477, at *3 (S.D.N.Y. Apr. 25, 2005) quoting Tandycrafts, Inc v. Initio Partners, 562 A.2d 1162, 1164 (Del. 1989). To recover fees arising from the settlement of a derivative action, the requesting party must demonstrate (1) that the "suit was meritorious when filed;" (2) that "action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved;" and (3) that "the resulting corporate benefit was causally related to the lawsuit." Allied Artists Pictures Corp. v. Baron, 413 A.2d 876, 878 (Del. 1980). Here, the motion fails because Bezirdijian has not established even the faintest inference of a causal link between the demand letter and Pfizer's plans, memorialized in the parties' proposed settlement agreement, to address the wrongful practices identified in that letter.

In the ordinary course, the burden of showing causation lies with the shareholder seeking to recover fees rather than the corporation. See, e.g., Bird, 681 A.2d at 404; Chrysler Corp. v. Dann, 223 A.2d 384, 389 (Del. 1966). Bezirdijian contends, however,

that, in the circumstances of this case, the burden of establishing causation should lie with Pfizer. Def. Mem. at 8. In support, he notes that, under Delaware law, when a shareholder files a meritorious derivative lawsuit and the corporation thereafter takes action resulting in a corporate benefit that moots the claims made in that lawsuit, the burden of proof as to causation -- for purposes of determining the plaintiffs' eligibility for an award of attorneys' fees -- shifts from the plaintiff to the corporation. Tandycrafts, 562 A.2d at 1165 (holding that, in such circumstances, the corporation must "demonstrate that the lawsuit did not in any way cause [the beneficial result]"). Bezirdijian, however, did not file and prosecute a lawsuit; he merely sent a demand letter, and Bezirdijian does not set forth any basis, in either law or logic, to support his implication that Delaware Courts would extend this burden-shifting framework to parties who took measures other than filing and prosecuting a lawsuit. There is a wide gap -- both in terms of effort expended and the sense of seriousness conveyed -- between commencing full-scale litigation and the mere sending of a four-page demand letter. Accordingly, there is ample justification for Delaware law to establish a rebuttable presumption of a causal linkage between the filing of a meritorious shareholder derivative lawsuit and the corporation taking action to moot the claims made therein, while establishing no such presumption of causality with

regard to shareholder actions that fall short of filing a lawsuit. To hold otherwise would be an open invitation for non-parties to engage in frivolous efforts at garnering an undeserved share of attorneys' fees in any shareholder derivative settlement, no matter how remote their connection to the substance of the litigation.

In any event, regardless of where the burden falls, the proof that Bezirdijian's letter played no role in securing the corporate benefits embodied in the proposed settlement agreement is compelling. The letter itself made no particularized demands for corporate changes but simply demands that the Board "enact fundamental corporate governance and policy changes." Bezirdijian's sole "evidence" of causality consists of his lawyer's speculation, first made at oral argument, that the demand letter must have had an effect in producing the settlement because it made the Pfizer directors susceptible to the latent threat that, even if they won the instant lawsuit, they would still face the possibility of a further "demand wrongfully refused" shareholder derivative lawsuit. Tr. 2/28/2011 at * 10-12. This improbable conjecture of the directors' state of mind when they settled the instant suit is flatly refuted by the record. Robert B. Fiske, Jr., counsel for certain of the defendants, stated in open court that "[w]e were deeply involved in all of those discussions at Pfizer leading up to their decision . . . [and] I can represent that at no time in any

7

discussion that I was involved in did anybody express any concern about [the demand letter or its possible consequences]." Id. at *20.  Indeed, Bezirdijian's counsel ultimately acknowledged in open court that "[he is] certain that the [Pfizer Board] was not . . . concerned" by the demand letter at any point during the course of its defense of this lawsuit, id. at *22, but argues that the letter was nonetheless "part of the mosaic of information that the defendants used in deciding to bestow [the] benefits on the shareholders of the company." Id. at *15.  This resort to metaphor is no substitute for evidence, nor, indeed, even a legitimate basis for inferring meaningful causation.

For the foregoing reasons, the Court, by Order dated February 28, 2011, denied Bezirdijian's motions for intervention and for attorneys' fees.

SO ORDERED.

Dated: New York, NY
April 28, 2011

JED S. RAKOFF, U.S.D.J.